Robert A. Gutkin, Esq. (Pro hac vice)
Blair M. Jacobs, Esq. (Pro hac vice)
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004-2415
Tel: 202-383-0100
Fax: 202-637-3593

Attorneys for Plaintiff
LEIGHTON TECHNOLOGIES LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC,   )<br>                                                            )<br>   Plaintiff and Counterclaim Defendant,   )<br>                                                            )<br>v.                                                         )<br>                                                            )<br>OBERTHUR CARD SYSTEMS, S.A.,       )<br>                                                            )<br>   Defendant and Counterclaim Plaintiff.  )<br>                                                            ) | 04 Civ. 02496 (CM)<br><br>**PLAINTIFF LEIGHTON TECHNOLOGIES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S REQUEST TO STAY DAMAGES DISCOVERY** |

## I.  INTRODUCTION

Plaintiff Leighton Technologies LLC ("Leighton") files this Memorandum in Opposition to Defendant Oberthur Card Systems, S.A.'s ("Oberthur") request to stay any discovery pertaining to damages for a period of six months. Contrary to Oberthur's suggestions, such a request is not the standard practice in patent litigation. *See, e.g., F & G Scrolling Mouse L.L.C. v. IBM Corp.*, 190 F.R.D. 385 (M.D.N.C. 1999). To the contrary, such requests have only been granted on those rare occasions where the Defendant has made a strong showing that substantial prejudice will be avoided, not compounded, by bifurcating or staying discovery. *See, e.g., Caterpillar, Inc. v. Deere & Co.*, No. 96 C 5355, 1997 U.S. Dist. LEXIS 550 (N.D. Ill. Jan. 13,

1997), attached as Exhibit A. Oberthur has not come close to satisfying this high standard and its request to stay damages discovery should be denied.

Oberthur's request is highly prejudicial to Leighton, a small company already facing the substantial expense of conducting discovery abroad in France and in the United States. Oberthur's request is not offered to facilitate Leighton's discovery, but is instead intended to place even further roadblocks and obstacles in front of Leighton's discovery efforts. Oberthur's request will:

1) Force Leighton to duplicate discovery. Oberthur's own websites indicate that liability and damages documents and witnesses are likely located in the manufacturing and sales offices in both the United States and France.[1] It is far easier to obtain this testimony and information in response to one set of discovery requests rather than multiple sets of requests and depositions.

2) Prevent Leighton from discovering facts that relate to both liability and damages issues, such as commercial success for validity (*e.g.*, nonobviousness).

3) Delay Leighton from obtaining information that is necessary to evaluate the worth of its case, and thus delay settlement.

4) Create unnecessary discovery disputes by requiring a determination of what is and is not subject to discovery.

5) Provide insufficient time for what Oberthur itself calls burdensome discovery, unless the entire matter is further delayed well beyond the nine month discovery period suggested by Oberthur, something Leighton should not be forced to do.

Any potential benefits presented by Oberthur's proposed course of discovery are far outweighed by the severe costs and burden that would be imposed on Leighton. This matter has been pending since March of 2004, Leighton should be permitted to proceed with all discovery in an efficient manner that will allow timely resolution of all issues relating to Leighton's infringement claims.

---

[1] Attached hereto as Exhibit B are true and correct copies of Oberthur's organizational chart and facility location in the United States. Oberthur both manufacturers and sells the accused product from locations in France and the United States.

## II. ARGUMENT

### A. Based Upon Oberthur's Statements, Waiting Until The End Of Discovery To Commence Damages Discovery, Will Not Give Leighton Enough Time.

Oberthur's proposed Scheduling Order, submitted at the same time as Oberthur's Motion for a Stay, provides a total of nine months for discovery, from April 6, 2005 through January 6, 2006.[2] Oberthur's proposed Scheduling Order further provides that of the nine month total period for discovery, only three months at the end of discovery will be available for damages, October 8, 2005 through January 6, 2006. Oberthur further states that damages discovery will be far more complex than liability discovery:

> **Discovery of Defendant's damages related documents presents an enormously larger burden than does discovery of defendant's infringement related documents.... These documents [damages] are widely scattered over at least two continents in at least 4 different facilities among many individuals. Each of Defendant's employees maintains documents on their own personal computer(s). Many, if not most, of these documents are not found on central servers. Indeed, contrary to the practice in many companies, most e-mails falls into this category of documents and can be found *only* on individual computers.**

Oberthur's Memorandum, p. 3 (emphasis added).

Oberthur's own acknowledgement of the difficulties that Leighton is likely to encounter in obtaining damages discovery clearly indicates that three months of discovery will not be adequate for damages. Even assuming that Leighton serves a document request upon Oberthur at the very commencement of the proposed period for damages on October 8, 2005; and, that Oberthur fully produces all of the requested information within the thirty days allotted under F.R.C.P. 34; Leighton will only have two months to review documents, obtain translations,[3]

---

[2] In view of the hearing set for April 18, 2005, as a result of Oberthur's Motion, a Scheduling Order has not yet been entered and therefore discovery has not yet commenced.

[3] Oberthur is a French company.

notice and depose witnesses, seek third party discovery, and serve any follow up requests for documents and other discovery. The above dates assume the unlikely scenario of no discovery disputes or requests for additional time to respond to discovery. Experience teaches that Oberthur's proposed three months of damages discovery is simply not a viable method for the parties to fairly discover relevant damages information. Indeed, Oberthur's unreasonably short period of damages discovery would undoubtedly prejudice Leighton's ability to obtain necessary information and testimony.

In contrast, ***Leighton's Proposed Scheduling Order provides for the completion of all discovery in eight months, by December 9, 2005.*** This case has been pending for more than a year, and even under Leighton's proposal, it will not go to trial in less than two years from the filing of the Complaint. Leighton should not be forced to endure further delays, particularly when they are due to efforts designed to hinder or keep Leighton from discovering information necessary to prosecute its case. Oberthur's stated intention of filing dispositive motions has nothing to do with orderly and efficient discovery. Indeed, there is no guarantee that such motions will be promptly considered and issues of material fact routinely prevent early case resolution through motion practice. It is eminently unfair to Leighton that the standard rules of discovery be altered solely to suit Oberthur's preferred schedule, particularly where Oberthur has not demonstrated any prejudice that would flow from handling all discovery, including damages discovery, at once. While it is obvious that all defendants would like to minimize their efforts in the discovery process, Leighton is entitled to certain information under the rules and Oberthur's proposed stay of damage discovery will do nothing more than make it more difficult and expensive for Leighton to prosecute its case.

B.  **Patent Cases Do Not Lend Themselves to the Bifurcation of Discovery**

The gist of Oberthur's argument appears to be that staying damages discovery is appropriate because Oberthur intends to file an early dispositive motion. In *Moore U.S.A. Inc. v. The Standard Register Co.*, 98-CV-485C(F), 2000 U.S. Dist. LEXIS 9137, at * 16 (W.D.N.Y. May 26, 2000) (attached as Exhibit C) the Court held that staying damages discovery in deference to the defendant's dispositive motion would unfairly impair the plaintiff's ability to advance its case. The motion for a stay of damages discovery was denied. *Id*. at *16-17. In *F & G Scrolling Mouse*, the Court acknowledged that even in light of the broad discretion afforded by F.R.C.P. 42(b), in a patent matter bifurcating issues like liability and damages is not the normal course of events. *Id.* at 386. Courts have found that bifurcation with a stay of damages discovery can be counter-productive to case resolution, because such discovery assists a party in evaluating the value of its case.

Moreover, staying damages discovery may also increase the number of discovery disputes and delays. In *Caterpillar*, the Court recognized that in the absence of strong showing by defendant of substantial prejudice by proceeding with all discovery, and in view of the overlapping issues such as commercial success which pertains to both liability and damages, a stay of damages discovery was inappropriate and would contravene the purpose of F.R.C.P. 42(b). *Id*. at *8-9.

Oberthur's request would likewise contravene the purpose of F.R.C.P. 42(b) and, as such, should be denied.

C.  **Oberthur's Proposed Stay Will Increase Discovery Disputes and Inefficiency.**

It is very likely that infringement and damages evidence will substantially overlap. For example, issues such as commercial success are relevant to both liability (validity) and damages.

Moreover, given the fact that Leighton and Oberthur were unable to even reach an agreement upon a Scheduling Order, Leighton is extremely uncomfortable giving Oberthur carte blanche to determine who and what constitutes liability or damages information or knowledge. It is a far easier, but by no means easy, task to determine and confirm whether information is reasonably calculated to lead to the discovery of admissible evidence under F.R.C.P. 26(b)(1), then it is to also try to determine whether discovery is damages or liability based. Leighton's proposed schedule offers the additional benefit of completely eliminating disputes concerning what evidence relates to liability and what relates to damages.

Oberthur cites to the factors for determining a reasonable royalty under *Georgia-Pacific Corp. v United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), as supporting their position that damages discovery may be burdensome. These same factors are applicable in virtually every patent case and, as noted above, bifurcation is <u>not</u> the norm. Moreover, Oberthur fails to mention the related nature of many of the *Georgia Pacific* factors to both liability and damages (*i.e.*, the utility and advantages of the patented product over other modes or devices; the nature of the patented invention and the benefits to those who have used the invention; the extent to which the infringer has made use of the invention). It is also likely that many of the witnesses that must necessarily be deposed in this matter will be able to testify about both liability and damages issues.[4] Therefore, it is likely that Leighton would be forced to depose witnesses twice, an expensive and disruptive proposition.[5]

---

[4] As set forth in Exhibit B, Oberthur has both manufacturing and sales arms in the United States and abroad.

[5] Oberthur fails to offer to undertake any steps to ameliorate the gross inefficiency of conducting duplicative discovery. At a minimum, Oberthur should have offered to provide all its witnesses for deposition in New York, This would at least minimize the expense of multiple trips abroad or to the West Coast for document review and depositions.

One of the purposes of bifurcation is to promote judicial economy. Judicial economy is not promoted, however, by increased discovery, motions and disputes requiring judicial intervention. Beyond this, the substantial overlap of issues caused by Oberthur's proposed stay will increase the parties' costs and lead to increased inefficiency. Oberthur's sole reason for requesting a stay is to delay production of certain documents and information. This reason simply does not justify the increased inconvenience, expense and tax on judicial economy caused by the requested stay.

### III.  CONCLUSION

For all of the reasons set forth above, Leighton respectfully requests that Oberthur's motion be denied.


Dated: April 12, 2005

>SUTHERLAND ASBILL & BRENNAN LLP
>
>   /s/Robert A. Gutkin
>By:  Robert A. Gutkin, Esq. (Pro hac vice)
>Blair M. Jacobs (Pro hac vice)
>Attorneys for Plaintiff
>LEIGHTON TECHNOLOGIES LLC
>1275 Pennsylvania Avenue, N.W.
>Washington, DC  20004-2415
>Tel:  202-383-0751
>Fax: 202-637-3593

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing pleading has been made on counsel for **OBERTHUR CARD SYSTEMS, S.A.**, by sending a copy of this document by telecopier on April 12, 2005 to the following:

>James David Jacobs (JJ-7351)
>Frank M. Gasparo (FG-2958)
>805 Third Avenue
>New York, New York 10022

IT IS HEREBY ALSO CERTIFIED that, pursuant to court order, a courtesy copy of the foregoing document was sent by telecopier on April 12, 2005 to the following:

>The Honorable Lisa Margaret Smith
>U.S. Magistrate Judge
>United States District Court for the Southern District of New York
>300 Quarropas Street, Room 428
>White Plains, NY 10601-41

Dated: April 12, 2005

/s/Robert A. Gutkin
Robert A. Gutkin (pro hac vice)

WO 382254.1

# **EXHIBIT A**

CATERPILLAR, INC., Plaintiff, v. DEERE & COMPANY, Defendant.
No. 96 C 5355

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1997 U.S. Dist. LEXIS 550

January 13, 1997, Decided
January 14, 1997, DOCKETED

DISPOSITION: [*1] Motion to Bifurcate (Stay) Discovery DENIED. Motion to Bifurcate Trial DENIED without prejudice as premature at this stage.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant competitor filed motions for a stay of discovery on the issues of willfulness and damages pending trial on liability and to separate the trial of willfulness and damages from the trial of liability in plaintiff patent holder's patent and trademark infringement action under § 43 of the Lanham Act, the Illinois Trademark Registration Act, and the Illinois Uniform Deceptive Trade Practices Act.

OVERVIEW: After the patent holder filed an action alleging patent and trademark infringement against the competitor under various acts, including the Lanham Act, the competitor sought a stay of discovery on the issues of willfulness and damages pending trial on liability and also sought to separate the trial of willfulness and damages from the trial of liability. The patent holder contended that a stay of discovery relating to willfulness was inappropriate because evidence of willfulness was relevant to rebut the competitors defenses of laches and estoppel. The court denied the competitor's motions to stay discovery and to bifurcate the trial. The court held that (1) due to overlapping evidence and absent any information relating to attorney-client privilege, the competitor failed to meet its burden of proving that a stay of willfulness discovery and consequent bifurcation of trial was necessary to avoid prejudice and (2) evidence of sales, which was relevant to show commercial success, overlapped both the liability and damages issues. Thus, the court held that staying the discovery would have contravened the goals of R. 42(b), which included convenience and the avoidance of prejudice.

OUTCOME: The court denied the competitor's motions for a stay of discovery on the issues of willfulness and damages pending trial on liability and to separate the trial of willfulness and damages from the trial of liability in the patent holder's patent and trademark infringement action under the Lanham Act, the Illinois Trademark Registration Act, and the Illinois Uniform Deceptive Trade Practices Act.

CORE TERMS: willfulness, infringement, discovery, copying, patent, infringer, phase, patent infringement, burden of proving, separate trial, attorney-client, insubstantial, convenience, overlapping, premature, estoppel, willful, overlap, prevail, laches

LexisNexis(R) Headnotes

Civil Procedure: Trials: Separate Trials
[HN1] Fed. R. Civ. P. 42(b) allows a court to order a separate trial in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience demonstrates its worth. The major consideration of a court applying R. 42(b) is directed toward the choice most likely to result in a just final disposition of the litigation. The party seeking separate trials bears the burden of proving that separate trials are justified.

Civil Procedure: Trials: Separate Trials
Patent Law: Infringement Actions: Burdens of Proof
[HN2] Separate trials on the issues of liability and willfulness in a patent infringement action does not promote the interests expressed in Fed. R. Civ. P. 42. Rather than furthering convenience and judicial economy, separate trials results in duplication of effort due to the overlapping evidence required to establish both liability and willfulness. In addition, a single trial prevents the parties from bringing the same witnesses back into court a second time to elicit the same testimony, reducing undue delay, expense and inconvenience to all parties involved in the litigation.

Patent Law: Infringement Actions: Infringing Acts: Intent & Knowledge
Patent Law: Infringement Actions: Doctrine of Equivalents: Elements: Ordinary Skill
Patent Law: Inequitable Conduct: Effect, Materiality & Scienter: General Overview
[HN3] With respect to the overlap between willfulness and patent infringement liability, evidence of copying is also relevant to infringement under the doctrine of equivalents not because the doctrine of equivalents rests on the subjective awareness or motivation of the accused infringer, but rather because copying suggests that the differences between the claimed and accused products or processes, measured objectively, are insubstantial. When an attempt to copy occurs, the fact-finder may infer that the copyist, presumably one of some skill in the art, has made a fair copy, with only insubstantial changes. Such an inference, of course, does not dominate the doctrine of equivalents analysis. Instead, where the inference arises, it must be weighed together with the other evidence relevant to the substantiality of the differences. Evidence of independent development is highly relevant to refute a patent owner's contention that the doctrine of equivalents applies because the accused infringer copied, that is, intentionally appropriated the substance of the claimed invention. When the patent owner asserts copying, evidence that the accused infringer developed its product or process without knowing of the patent becomes relevant in rebuttal.

COUNSEL: For CATERPILLAR INC, plaintiff: Michael Rowe Feagley, Donald William Rupert, Michael O. Warnecke, Robert Stephen Rigg, Mayer, Brown & Platt, Chicago, IL.

For DEERE & CO., defendant: Kathleen Ann Lyons, Thomas C. Elliott, Jr., Keith V. Rockey, Rockey, Rifkin and Ryther, Chicago, IL.

For DEERE & CO., counter-claimant: Kathleen Ann Lyons, Rockey, Rifkin and Ryther, Chicago, IL.

For CATERPILLAR INC, counter-defendant: Michael Rowe Feagley, Donald William Rupert, Michael O. Warnecke, Robert Stephen Rigg, Mayer, Brown & Platt, Chicago, IL.

JUDGES: JOHN A. NORDBERG, United States District Judge. Magistrate Judge Keys

OPINIONBY: JOHN A. NORDBERG

OPINION: MEMORANDUM OPINION AND ORDER

Plaintiff Caterpillar, Inc. ("Caterpillar") brings a five count Complaint against Defendant Deere & Company ("Deere") alleging patent infringement of U.S. Patent No. 5,279,378 ("the '378 patent") in Count I and trademark and trade dress infringement in violation of § 43 of the Lanham Act in Count II. Counts III through V allege a violation of the Illinois Trademark Registration[*2] Act, common law unfair competition, and a violation of the Illinois Uniform Deceptive Trade Practices Act, respectively. Caterpillar also requests that damages be trebled pursuant to 35 U.S.C. §§ 284-285, alleging willful and deliberate infringement. Finally, Plaintiff requests a jury trial. In answering the Complaint, Deere denies infringement and asserts invalidity.

Before the Court is Deere's Motion for Bifurcation of Discovery and Trial on the Issues of Liability and Damages. Deere seeks a stay of discovery on willfulness and damages pending trial on liability. Consequently, Deere also seeks to separate the trial of willfulness and damages from the trial of liability, requiring separate juries.

ANALYSIS

[HN1] Rule 42(b) allows a court to order a separate trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, ..., always preserving inviolate the right of trial by

Case 1:04-cv-02496-CM    Document 53    Filed 04/12/2005    Page 12 of 13

Page 36
1997 U.S. Dist. LEXIS 550, *

jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States." The advisory committee note to Rule 42(b) provides "While separation of issues for trial is not to be routinely ordered, it is important[*3] that it be encouraged where experience has demonstrated its worth." The "major consideration" of a court applying Rule 42(b) "is directed toward the choice most likely to result in a just final disposition of the litigation." In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986). The moving party bears the burden of proving that separate trials are justified. See THK Am., Inc. v. Nippon Seiko K.K., 141 F.R.D. 463 (N.D. Ill. 1991).

I. WILLFULNESS

   Judge Holderman rejected a similar request in Remcor Products Co. v. Servend International, Inc., 1994 U.S. Dist. LEXIS 15473, No. 93 C 1823, 1994 WL 594723, at *1 (N.D. Ill. Oct. 28, 1994), finding as follows:

[HN2]
Separate trials on the issues of liability and willfulness would not promote the interests expressed in Rule 42. Rather than furthering convenience and judicial economy, separate trials would result in duplication of effort due to the overlapping evidence required to establish both liability and willfulness. See Keyes Fibre Co. v. Packaging Corp. of Am., 763 F. Supp. 374, 375 (N.D. Ill. 1991) ("The evidence relating to [defendant's] state of mind when it committed the infringement, which is clearly relevant to damages, [*4] cannot be neatly separated from the underlying liability issue of whether the patent was infringed upon in the first place."); Kimberly-Clark Corp. v. James River Corp., 131 F.R.D. 607, 609 (N.D. Ga. 1989) (The willfulness determination "is a finding of fact inextricably bound to the facts underlying the alleged infringement."). In addition, a single trial would prevent the parties from bringing the same witnesses back into court a second time to elicit the same testimony, reducing undue delay, expense and inconvenience to all parties involved in this litigation. Keyes Fibre, 763 F. Supp. at 376.


See also Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1091 (N.D. Ga. 1996); Westvaco Corp. v. Int'l Paper Co., 1991 U.S. Dist. LEXIS 19454, 23 U.S.P.Q.2D (BNA) 1401, 1416-17 (E.D. Va. May 7, 1991). The Federal Circuit recently elaborated on the overlap between willfulness and patent infringement liability in Hilton Davis Chemical Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1519 (Fed. Cir. 1995), cert. granted on other grounds, 134 L. Ed. 2d 95, 116 S. Ct. 1014, 64 U.S.L.W. 3574 (Feb. 26, 1996), explaining that

[HN3]
Evidence of copying is also relevant to infringement under[*5] the doctrine of equivalents not because the doctrine of equivalents rests on the subjective awareness or motivation of the accused infringer, but rather because copying suggests that the differences between the claimed and accused products or processes--measured objectively--are insubstantial. When an attempt to copy occurs, the fact-finder may infer that the copyist, presumably one of some skill in the art, has made a fair copy, with only insubstantial changes. Such an inference, of course, would not dominate the doctrine of equivalents analysis. Instead, where the inference arises, it must be weighed together with the other evidence relevant to the substantiality of the differences.

    ...

   Evidence of independent development is highly relevant ... to refute a patent owner's contention that the doctrine of equivalents applies because the accused infringer copied, that is, intentionally appropriated the substance of the claimed invention... When the patent owner asserts copying, evidence that the accused infringer developed its product or process without knowing of the patent becomes relevant in rebuttal.


Id. (citations omitted). In light of this binding authority, Defendant's [*6]reliance upon Wilden Pump & Engineering Co. v. Pressed & Welded Products Co., 655 F.2d 984, 989 (9th Cir. 1981) is unavailing, as the Federal Circuit explained that intent not being an element of infringement is inapposite to the relevance of copying to infringement under the doctrine of equivalents. Hilton Davis, 62 F.3d at 1519.

   In the present case, Plaintiff argues that copying is at issue. Likewise, Plaintiff contends that evidence of willfulness is relevant to rebut the defenses of laches and estoppel. See THK Am., Inc. v. NSK, Ltd., 917 F. Supp. 563, 567 (N.D. Ill. 1996); IPPV Enter. v. Cable/Home Communication Corp., 26 U.S.P.Q.2D (BNA) 1714, 1716-17 (S.D. Cal. Jan. 4,

Case 1:04-cv-02496-CM Document 53 Filed 04/12/2005 Page 13 of 13

Page 37
1997 U.S. Dist. LEXIS 550, *

1993); Southwire Co. v. Essex Group, Inc., 570 F. Supp. 643, 647-49 (N.D. Ill. 1983). Accordingly, due to overlapping evidence, a stay of discovery relating to willfulness is inappropriate.

The Federal Circuit has noted the utility of a separate trial on willfulness in order to avoid prejudice arising from the reliance-on-counsel defense to willfulness. The court explained that a single trial on liability and willfulness may force a party "to choose between waiving the [attorney-client] privilege[*7] in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found." Quantum Corp. v. Tandon Corp., 940 F.2d 642, 644 (Fed. Cir. 1991); see also Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1572 (Fed. Cir. 1988). However, premature loss of the privilege is not a concern if other issues in the liability phase of the trial, such as the defenses of laches and estoppel, will also require disclosure of the material. IPPV, 26 U.S.P.Q.2D (BNA) at 1717 (S.D. Cal. 1993). As Plaintiff notes, Defendant has neither made the privilege argument nor the type of showing necessary to sustain the argument. Rather, Plaintiff merely argues that willfulness evidence may "influence the jury to find infringement where none exists by invoking more emotional issues," (mem. at 12), and that trying willfulness with damages would simplify the case, (oral argument). The Court finds that, absent the information relating to attorney-client privilege, the Defendant has not met its burden of proving that a stay of willfulness[*8] discovery and consequent bifurcation of trial is necessary to avoid prejudice. Moreover, the case upon which Defendant relies did not order a stay of discovery, but rather held that one jury would hear the case in phases, with the willfulness phase being held only after a validity and infringement phase. Amsted Indus. Inc. v. National Castings, Inc., 1990 U.S. Dist. LEXIS 8553, 1990 WL 106548, at *1-3 (N.D. Ill. July 11, 1990). Accordingly, the Court DENIES the Motion to stay willfulness discovery.

II. DAMAGES

Defendant also seeks to stay damages discovery based upon expense, primarily the expense of experts, which may be obviated either should Defendant prevail in the liability stage of trial or should Plaintiff prevail and the parties settle the damages issue in light of the potentially limited commercial sales by Defendant and Plaintiff being primarily concerned with injunctive relief. However, at least one court has found that limited sales and injunction as a primary goal counsel against a stay of damages discovery. Keyes Fibre Co. v. Packaging Corp. of Am., 763 F. Supp. 374, 376 (N.D. Ill. 1991). Moreover, as the same court noted, the first argument can be made in any case. Id. Absent[*9] a strong showing by Defendant, the Court will not assume the risk of incurring great delay and expense should these events fail to pass. The Court finds that Deere has not made such a showing. Further, as Plaintiff aptly emphasizes, evidence of sales overlaps both the liability and damages issues when such evidence, clearly relevant to damages, is used to show commercial success, a secondary consideration in the determination of validity. See Graham v. John Deere Co., 383 U.S. 1, 17-18, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966); Air-Shields Inc. v. BOC Group, 1993 WL 315231 (D. Md. Sept. 25, 1992) (reconsidering 23 U.S.P.Q.2D (BNA) 1955, 1957 (Feb. 28, 1992)); Westvaco Corp. v. Int'l Paper Co., 23 U.S.P.Q.D.2d 1401, 1417 (E.D. Va. May 7, 1991); Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1434 (D. Del. 1989). But see Mag Instrument, Inc. v. J. Baxter Brinkmann Int'l Corp., 123 F.R.D. 543 (N.D. Tex. 1988). Accordingly, the Court DENIES the Motion to stay damages discovery, finding that a stay of damages discovery would contravene Rule 42(b)'s goals.

CONCLUSION

The Court DENIES the Motion to Bifurcate (Stay) Discovery for the reasons [*10]given. Further, the Court DENIES the Motion to Bifurcate Trial, without prejudice, as premature at this stage. Rather, the Court will determine the trial procedure when the issues that remain for trial are known.

ENTER:

JOHN A. NORDBERG

United States District Judge

DATED: January 13, 1997