# **EXHIBIT C**

MOORE U.S.A. INC., and TOPPAN FORMS CO., LTD., Plaintiffs,-vs- THE STANDARD REGISTER COMPANY,
Defendant.
98-CV-485C(F)

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEWYORK

2000 U.S. Dist. LEXIS 9137

May 26, 2000, Decided

DISPOSITION: [*1] Moore's First Motion to Compel (Item 109) granted in part and denied in part; Moore's Second Motion to Compel (Item 121) granted; Moore's Third Motion to Compel (Item 144) granted; SRC's Motion to Compel (Item 134) granted in part and denied in part; SRC's Motion to Stay Damages Discovery (Item 136) denied.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff filed an action for patent infringement against the defendant. The district court denied one of defendant's motions for summary judgment. Plaintiff filed several motions to compel the defendant to produce evidence. Defendant also filed a motion to compel, as well as a motion to stay damages discovery.

OVERVIEW: Plaintiff sued defendant for patent infringement. During discovery, both parties filed motions to compel. Defendant was ordered to list its contentions of non-infringement for all of the adhesives that defendant had used or sold commercially since 1993. Plaintiff was ordered to serve its claim construction for each of the patent's claims. Plaintiff could properly claim a privilege for its communications with a third party regarding a suit for infringement against defendant. Thus, the court granted defendant's motion to compel to the extent that plaintiff must provide all non-privileged, responsive information. Defendant was not entitled to discover the mental impressions and legal analysis of plaintiff's counsel. However, defendant's interrogatory did not require plaintiff to disclose its attorneys' core work product. Plaintiff showed that the documents contained trade secrets and/or confidential business information. The court denied defendant's motion to de-designate the subject documents.

OUTCOME: Plaintiff's first motion to compel was granted in part and denied in part; plaintiff's second motion to compel was granted; plaintiff's third motion to compel was granted; defendant's motion to compel was granted in part and denied in part; and defendant's motion to stay damages discovery was denied.

CORE TERMS: adhesive, discovery, competitor, patent, responsive, motion to compel, confidential, trade secrets, oral argument, styrene, invoices, protective order, confidentiality, disclosure, documents relating, consummation, negotiation, disclose, suppliers, log, patented, mailer, own product, pressure-sensitive, non-infringement, non-privileged, insubstantial, de-designate, spectroscopy, declaration

LexisNexis(R) Headnotes

Patent Law: Infringement Actions: Claim Interpretation: General Overview
[HN1] Federal policy is in favor of settling claim construction in a patent infringement case prior to trial. However, it may be improper to determine proper claim construction prior to completion of discovery.

Patent Law: Infringement Actions: Infringing Acts: Use
Patent Law: Remedies: Damages: General Overview
[HN2] See 35 U.S.C.S. § 271.

Civil Procedure: Disclosure & Discovery: Privileged Matters
Patent Law: Ownership: Conveyances: Licenses

[HN3] The community of interest doctrine applies to communications between attorneys for the inventor patentee, and the attorneys for optionee and potential licensor, in view of the parties' joint economic objectives reflected by an exclusive option agreement for a non-exclusive license for one party and corresponding foreign patents relating to a U.S. patent application filed by another party.

Civil Procedure: Disclosure & Discovery: Work Product
[HN4] The work product doctrine derives from the Federal Rules of Civil Procedure, which provides that a court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation whenever the court orders a party to produce materials prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3).

Trade Secrets Law: Factors: General Overview
Evidence: Privileges: Trade Secrets
[HN5] New York courts have set forth a number of factors to be used in determining whether information rises to the level of a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. New York courts use a substantially similar test to determine whether information qualifies as confidential business information.

Civil Procedure: Disclosure & Discovery: Privileged Matters
[HN6] New York law requires the proponent of confidentiality to show "good cause" why documents or information should remain confidential. An example of "good cause" would be that disclosure of the information would lead to "clearly defined and very serious injury" to the proponent's business.

Civil Procedure: Disclosure & Discovery: Protective Orders
[HN7] A party's compilation of information regarding a competitor's products in a patent case should be produced under a protective order.

COUNSEL: For MOORE U.S.A. INC., plaintiff: Laurence B. Oppenheimer, Cohen, Swados, Wright, Hanifin, Bradford & Brett, Buffalo, NY.

For MOORE U.S.A. INC., plaintiff: James D. Berquist, Esq., Robert A. Rowan, Nixon & Vanderhye, P.C., Robert A. Vanderhye, Nixon & Vanderhye, Arlington, VA.

For STANDARD REGISTER COMPANY, defendant: Brian P. Crosby, Esq., Gibson, McAskill & Crosby, Buffalo, NY.

For STANDARD REGISTER COMPANY, defendant: Charles L. Gholz, Christina M. Gadiano, Andrew M. Ollis, Esq., William T. Enos, Esq., Oblon, Spivak, McClelland, Maier & Beustadt, P.C, Arlington, VA.

For STANDARD REGISTER COMPANY, defendant: James F. Gottman, Esq., Killworth, Gottman, Hagan & Schaeff, LLP, Dayton, OH.

For STANDARD REGISTER COMPANY, counter-claimant: Brian P. Crosby, Esq., Gibson, McAskill & Crosby, Buffalo, NY.

For STANDARD REGISTER COMPANY, counter-claimant: William T. Enos, Esq., Oblon, Spivak, McClelland, Maier & Beustadt, P.C., Arlington, VA.

For MOORE U.S.A. INC., counter-defendant: Laurence B. Oppenheimer, Cohen, Swados, Wright, Hanifin, Bradford & Brett, Buffalo, NY.

For MOORE U.S.A. INC., counter-defendant: Robert A. Vanderhye, Nixon & Vanderhye, Arlington, VA.

Case 1:04-cv-02496-CM   Document 53-3   Filed 04/12/2005   Page 4 of 11

Page 6
2000 U.S. Dist. LEXIS 9137, *

JUDGES: JOHN T. CURTIN, United States District Judge.

OPINIONBY: JOHN T. CURTIN

OPINION: DECISION AND ORDER

CURTIN, DISTRICT JUDGE

INTRODUCTION

Plaintiff Moore North America, Inc. ("Moore") and defendant The Standard Register Company ("SRC") have engaged in extensive litigation since Moore commenced this action for patent infringement in August of 1998. By an order of May 17, 2000, the court has already denied one of SRC's motions for summary judgment. Item 167. By this order and opinion, the court takes up the following: (1) Moore's First Motion to Compel, Item 109; (2) Moore's Second Motion to Compel, Item 121; (3) Moore's Third Motion to Compel, Item 144; (4) SRC's Motion to Compel, Item 134; and (5) SRC's Motion to Stay Damages Discovery, Item 136.

DISCUSSION

At oral argument, the court heard detailed arguments regarding many discovery disputes. From the bench, the[*2] court indicated its ruling on most of these issues and also explained the rationale for its decisions. As such, the court makes the following discovery orders in summary fashion.

I. Moore's First Motion to Compel

As to Interrogatory No. 1, the court grants Moore's motion and directs SRC to set forth its contentions of non-infringement for all of the adhesives that SRC has used or sold commercially since 1993. SRC shall also set forth its non-infringement contentions under the doctrine of equivalents. SRC may reserve the right to supplement its non-infringement contentions at any point before the close of discovery.

As to Interrogatory No. 5, the court grants Moore's motion and directs SRC to set forth its contentions of invalidity as fully as possible at this time. Again, SRC may reserve its right to supplement its invalidity contention at any point before the close of discovery.

As to Interrogatory No. 8, SRC conceded at argument that it should answer this Interrogatory fully.

As to Interrogatory No. 10, the court grants Moore's motion. As a threshold matter, the court finds that SRC's offer to provide Moore with a sample of the accused adhesive is insufficient. SRC[*3] should provide an answer as to all adhesives that SRC has used. If SRC purchased certain ingredients from third-party suppliers and is not familiar with the chemical subparts of those ingredients, then it should give Moore the names of its suppliers and a description of the products purchased. In addition, at argument, counsel for the parties had a fruitful discussion regarding this dispute. In light of that discussion, it appears that the parties now agree on the meaning of this Interrogatory and also on what information is being sought. Specifically, the court recalls that Moore's counsel explained the phrase "different formulations" as it is used in this Interrogatory. According to Moore, the term "different formulations" does not extend to adhesives that contain different amounts of water, wheat starch, dyes, or tackifiers. Moore went on to explain that this Interrogatory seeks the formulation of SRC adhesives that differ from one another in some significant way. By way of example, Moore alleged that SRC has made or used an adhesive that contained "Dow 620." Moore contends that Dow 620 contains styrene. In light of this discussion at oral argument, the court directs SRC to answer[*4] this Interrogatory.

As to Interrogatory No. 12 and Document Requests 33, 35, and 36, the court grants Moore's motion and directs SRC to provide full and complete disclosure. If SRC intends to proceed under Rule 33(d) of the Fed. R. Civ. P., then SRC shall respond to these requests by producing responsive "summary level documents." If no such documents exist, then SRC shall explain why, and then produce the specific documents from which the requested information can reasonably be derived.

Case 1:04-cv-02496-CM   Document 53-3   Filed 04/12/2005   Page 5 of 11

Page 7
2000 U.S. Dist. LEXIS 9137, *

As to Document Request No. 13, the court reserves decision at this time and directs counsel for SRC to consult with their client and to determine as soon as reasonably possible whether SRC will rely on an attorney opinion letter as a defense to willful infringement.

As to Document Request No. 18, the parties indicated to the court that there is no further dispute.

II. Moore's Second Motion to Compel

As to Document Request No. 17 and Moore's second motion to compel, SRC recognized its obligation to supplement its response at oral argument. The court grants Moore's motion and directs SRC to supplement its response by producing the previously withheld pages from the laboratory notebooks. The[*5] court emphasizes that the withheld pages are subject to the existing protective order and are, at present, for attorneys' eyes only.

III. Moore's Third Motion to Compel

As to Document Request No. 42 and Moore's third motion to compel, the court grants Moore's motion and directs SRC to produce unredacted versions of the requested invoices and purchase orders. Here, the court acknowledges SRC's legitimate interest in preserving the confidentiality of its suppliers' identities. In light of those interests, the court orders that the requested invoices and purchase orders only be disclosed to Moore's counsel and not to any representative of Moore's business interests. Furthermore, Moore's counsel shall take particular care not to relate information to their client that could reasonably allow Moore to infer the identities of SRC's suppliers. This decision on Moore's third motion to compel comports with the court's ruling as to Moore Interrogatory No. 10. See supra.

IV. SRC's Motion to Compel

By its motion to compel, SRC claims that Moore failed to comply with dozens of its discovery requests. In reviewing the papers, the court finds that Moore does not dispute SRC's[*6] entitlement to Document Requests Nos. 1-4, 7-8, 10-13, 17-19, 21-22, 26-28, 30, 32, 34, 50-51, 56, 61, 85, 88, 90-91. Therefore, the court denies SRC's motion as premature or moot with respect to these enumerated requests.

As to the remaining demands, the court addresses SRC's requests by grouping together those requests that relate to one another factually or legally.

A. Documents Held by Moore Canada and Toppan of Japan

With respect to SRC's discovery demands relating to documents in possession of Moore Limited (or "Moore Canada") and Toppan of Japan, n1 the court partially grants and partially denies SRC's motion. First, the court denies SRC's motion as to documents held by Moore Canada. Second, the court grants Moore thirty (30) days from the filing of this order to make further disclosure of documents that Moore has received from Toppan and has kept in its own files. In addition, the court grants SRC's motion to compel production of documents held by Toppan to the extent that it directs Moore to do everything reasonably within its power to produce responsive documents held by Toppan. In light of the fact that Toppan has apparently retained counsel here in the United States, [*7] Moore's ability to facilitate discovery from Toppan should be improved.

------------------Footnotes------------------

n1 Document Requests Nos. 13, 14, 25, 46, 47, 48, and 86.

------------------End Footnotes------------------

Case 1:04-cv-02496-CM    Document 53-3    Filed 04/12/2005    Page 6 of 11

Page 8
2000 U.S. Dist. LEXIS 9137, *

B. Documents Relating to Moore's Decision to Sue SRC

With respect to Document Request No. 6, the court grants SRC's motion to the extent that it demands any non-privileged documents relating to Moore's decision to sue or not to sue SRC. However, the court recognizes that some of the responsive documents will be subject to attorney-client privilege. Therefore, the court directs Moore both to produce any responsive, non-privileged documents and to serve on SRC a privilege log that details the basis of privilege for each responsive document.

C. Legal Invoices

With respect to Document Request No. 23, the court finds that Moore's legal invoices are privileged to the extent that they might be relevant to the present action. Therefore, the court denies SRC's motion to compel production of Moore's legal invoices and directs Moore to serve on SRC a privilege log that explains [*8]the basis of privilege for its legal invoices. Counsel for Moore agreed at oral argument that his office could logically organize such a privilege log by discussing the invoices on a month-to-month basis.

D. Moore's Tax Returns

With respect to Document Request No. 83, the court reserves judgment on the issue of whether SRC can compel Moore to produce copies of its federal tax returns.

E. Pressure-Sensitive Adhesives vs. Pressure-Seal Adhesives

The court reserves judgment on the issue of whether SRC can compel Moore to produce documents relating to pressure-sensitive adhesives, as opposed to documents relating only to pressure-seal adhesives. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 Document Requests Nos. 5, 9, 16, 24, 29, and 36.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

F. SRC's Interrogatories

Although the court did not hear argument regarding certain Interrogatories from SRC--namely 1, 3, 4, 5, 6, and 8--the court finds that the parties have presented very thorough arguments through their papers. In the interests of resolving SRC's motion to compel in its entirety, [*9] the court also issues a decision regarding the Interrogatories that did not receive attention at oral argument. Where the court has decided an issue not discussed at argument, the court also provides a more detailed explanation of its conclusion.

Interrogatory No. 1

In its motion to compel, SRC claims that Moore has failed to answer Interrogatory No. 1 because: (1) Moore has not provided SRC with a construction or interpretation of the claims in the '128 patent and (2) Moore has failed to identify persons with knowledge of Moore's allegations. See Item 134, p. 27. With respect to SRC's second complaint regarding Moore's failure to identify persons with knowledge, the court simply notes that Moore has in fact identified Michael Maier as such a person. See Item 150, Exh. H, p. 2.

Case 1:04-cv-02496-CM   Document 53-3   Filed 04/12/2005   Page 7 of 11

Page 9
2000 U.S. Dist. LEXIS 9137, *

Moore denies that it is obligated to provide SRC with a claim construction. "[The] claims of the '128 patent are straightforward and clear and no interpretation is required." Item 150, p.21. However, by dismissing SRC's demand for claim construction in this way, Moore has improperly made itself the arbiter of whether its claims are "clear and unambiguous." Although Moore may believe that the[*10] '128 patent's claims are clear and unambiguous, SRC may reasonably require construction of the claims. Here, the court notes the [HN1] federal policy in favor of settling claim construction prior to trial. See, e.g., Markman v. Westview Instruments, Inc., 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996).

However, "courts have held that [it may be improper] to determine proper claim construction . . . prior to completion of discovery." Conopco, Inc. v. Warner-Lambert Co.,   F. Supp.  , 2000 U.S. Dist. LEXIS 1601, *13, 2000 WL 342872, at *4 (D.N.J. Jan. 26, 2000) (citing Toter, Inc. v. Visalia, 1997 U.S. Dist. LEXIS 18898, 44 U.S.P.Q.2D (BNA) 1312 (E.D. Cal. 1997)). In light of decisions like Conopco, the court orders Moore to serve its claim construction for each of the '128 patent's claims by September 1, 2000.

Interrogatory No. 2

With respect to Interrogatory No. 2, Moore states that this motion represents the first time it has heard of deficiencies in its response. Nevertheless, the court grants SRC's motion and directs Moore to supplement its response after it conducts further research.

Interrogatory No. 3

Here, SRC complains that Moore's[*11] answer is improper because Moore has answered this Interrogatory only after rephrasing the original question. See Item 134, p.28. The court has reviewed Interrogatory No. 3 and Moore's answer, and finds that Moore has answered this Interrogatory with a sufficiently clear "yes." That is, Moore contends that, under the doctrine of equivalents, the '128 patent would cover a pressure-sensitive adhesive that contains all the components of claim 1 except for styrene. Therefore, the court denies SRC's motion to compel a further response to Interrogatory No. 3.

Interrogatory No. 4

In its answer, Moore describes its theory on damages at some length. See Item 134, Exh. E, pp. 5-7. SRC objects to Moore's answer because "although the '128 patent concerns adhesive, Moore responds . . . by referring to SRC's business mailer forms." Item 134, p. 29. SRC insists that "Moore cannot turn the '128 patent, which does not concern business mailer forms, into a mechanism for obtaining damages for business mailer forms." Id. For its part, Moore insists that its theory on damages is valid under 35 U.S.C. § 271. Item 150, p. 22. [HN2] Section 271 provides that damages are[*12] available against "whoever without authority . . . uses . . . any patented invention, within the United States . . ., [and thereby] infringes the patent." 35 U.S.C § 271(a) (1994) (emphasis added). Therefore, Moore believes that it will be entitled to compensation for the unlawful use of the accused adhesives on SRC's business forms. Item 150, p.22. Furthermore, Moore argues that it will be entitled to damages arising from SRC's sales of products that are related to its business forms. See id. at 23 (citing cases).

The court will not decide the scope of Moore's potential damages at this stage of the litigation. Therefore, the court finds that Moore's response to Interrogatory No. 4 is proper and complete to the extent that it discloses the damages to which Moore believes it will be entitled. Moore has pledged to supplement its answer with expert analysis from its damages experts. Therefore, the court denies SRC's motion to compel a further answer to Interrogatory No. 4 at this time.

Interrogatory No. 5

By this motion, SRC seeks to compel Moore to identify all of the persons involved in the negotiation and consummation of these licensing agreements. [*13]See Item 134, p. 30. SRC's argument on this point is well taken. While Moore claims that the documents themselves reveal the identity of the people who signed the documents, revealing that much is not enough.

Rather, SRC has asked for the identities of each person who was involved in the negotiation and consummation of these agreements. In all likelihood, it was not just the signatories of the agreements who were involved in the negotiation

Case 1:04-cv-02496-CM   Document 53-3   Filed 04/12/2005   Page 8 of 11

Page 10
2000 U.S. Dist. LEXIS 9137, *

and consummation of those agreements. Therefore, the court grants SRC's motion as to Interrogatory No.5 and directs Moore to answer Interrogatory No. 5 by identifying each and every person who was involved in the negotiation or consummation of the various licensing agreements set forth in Moore's original answer to this Interrogatory.

Interrogatory No. 6

Facing an issue similar to the one raised by Interrogatory No. 6, Judge Patterson of the Southern District set forth the following rule of law:

Under In re Regents of the University of California, 101 F.3d 1386 (Fed. Cir.1996), [HN3] the community of interest doctrine applies to communications between attorneys for the inventor patentee, and the attorneys for optionee [*14]and potential licensor, in view of the parties' joint economic objectives reflected by the exclusive option agreement for a non-exclusive license for the United States and corresponding foreign patents relating to a U.S. patent application filed by the University. [Id.] at 1389-90.

Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 1998 U.S. Dist. LEXIS 4200, *4, 1998 WL 158961, at *2 (S.D.N.Y. Apr. 1, 1998). Thus, Moore may properly claim a privilege for its communications with Toppan regarding a suit for infringement against SRC. Based on the present record, the court cannot decide which of Moore's many litigation-related communications with Toppan are privileged. Therefore, the court grants SRC's motion to compel to the extent that Moore must provide all non-privileged, responsive information. If Moore believes that the responsive information is privileged, then Moore must carry its burden of establishing this privilege. Thus, Moore must create a privilege log and explain the bases of privilege for all responsive information.

Interrogatory No. 7

With respect to Interrogatory No. 7, the court finds that Moore must read this Interrogatory more broadly than it has. Therefore, [*15] the court orders Moore to supplement its response with information regarding anyone affiliated with Moore who has testified in a proceeding involving the '128 patent. The court finds that Moore need not create summaries of any responsive testimony.

Interrogatory No. 8

[HN4] The work product doctrine derives from the Federal Rules of Civil Procedure, which provides that a court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" whenever the court orders a party to produce materials prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3). The court agrees that SRC is not entitled to discover the mental impressions and legal analysis of Moore's counsel. See Upjohn Co. v. United States, 449 U.S. 383, 401-02, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981) (finding core work product entitled to "special protection").

However, Interrogatory No. 8 does not require Moore to disclose its attorneys' core work product. Rather, SRC has asked Moore to disclose the identity of the people who provided Moore's counsel with the information that [*16]led to Moore's counsel's forming the legal opinion that "'SRC has made an insubstantial change in the patented adhesive by substituting additional quantities of MMA to compensate for the absence of styrene.'" Item 134, Exh. E, pp. 1-2. The work product doctrine does not protect the identity of the people who provided the relevant technical and scientific information to Moore's counsel. The court grants SRC's motion as to Interrogatory No. 8 and orders Moore to answer this Interrogatory, providing SRC with the identities of any people who provided the information to Moore's counsel, which led to the legal opinion that SRC had made an "insubstantial change" to the patented adhesive.

V. SRC's Motions to Stay Damages Discovery

With respect to SRC's motion to stay damages discovery, the court observes that SRC has already received answers to a certain number of its own damages discovery requests and that SRC has moved to compel Moore's compliance with a number of other damages discovery requests. In addition, the court finds that staying damages discovery in deference to SRC's dispositive motion would unfairly impair Moore's ability to advance its case. Therefore, the court denies[*17]

Case 1:04-cv-02496-CM   Document 53-3   Filed 04/12/2005   Page 9 of 11

Page 11
2000 U.S. Dist. LEXIS 9137, *

SRC's motion to stay damages discovery pending the resolution of its outstanding motion for summary judgment (Item 100).

VI. SRC's Motion to De-Designate Certain Documents

Although the court did not hear argument regarding SRC's motion to de-designate certain documents, the court again finds that the parties have presented very thorough arguments through their papers. As such, the court will decide this motion without hearing oral argument.

By this motion, SRC seeks to declassify certain documents that Moore has produced to SRC ("the subject documents"). See Item 140, Exh. A (containing copies of the subject documents). The subject documents are comprised of Moore's records of its own scientific analysis of competitors' commercial adhesives. See id. In fact, the bulk of the subject documents concern Moore's testing of SRC's commercial adhesives.

Pursuant to this action's protective order, Moore has labeled all of the subject documents "highly confidential." Item 95, Exh. A, P 5. n3 SRC demands declassification of the subject documents because the subject documents allegedly show that, at the time it commenced the present action, Moore knew that SRC's accused adhesive[*18] contained no styrene, and that SRC's accused adhesive was "different" from Moore's. See Item 140, pp. 3-4. As a result, SRC seeks to declassify the subject documents because (1) SRC believes that the subject documents are very damaging to Moore's claims and (2) SRC's counsel wishes to show the documents to SRC's stockholders and employees so that they may assess the parties' respective positions.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -



n3 The protective order provides that highly confidential documents can only be seen by: "(a) outside counsel for any party in this litigation . . . ; (b) any expert or consultant retained by or at the request of counsel . . . ; (c) the Court and any of its personnel; and (d) one in-house attorney designated and agreed to in advance by each party." Item 95, Exh. A, P 12; see also id. P 13.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

For its part, Moore aggressively asserts an interest in preserving the confidentiality of the subject documents. In arguing for the confidentiality of the subject documents, Moore offers two arguments. First, Moore argues that [*19]it has already admitted the information that SRC seeks to disclose to its stockholders and employees. That is, Moore claims that it has already admitted that, at the time it commenced this action, it knew that SRC's accused adhesive contained no styrene. See Item 155, p.2. Indeed, a review of Moore's answer to SRC's Interrogatory No. 3 supports Moore's position: "It is Moore's contention that SRC has made an insubstantial change in the patented adhesive by substituting additional quantities of MMA to compensate for the absence of styrene." Item 155, Exh. A, pp. 4-5 (emphasis added). Therefore, Moore argues, there is no reason to declassify the subject documents.

Second, Moore argues that the subject documents contain trade secrets and other confidential research and development information. In order to determine whether the subject documents contain trade secrets or confidential business information, this court must look to New York law. See Integrated Cash Management Services, Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990).

[HN5] New York courts have set forth a number of factors to be used in determining whether information rises to[*20] the level of a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the

Case 1:04-cv-02496-CM    Document 53-3    Filed 04/12/2005    Page 10 of 11

Page 12
2000 U.S. Dist. LEXIS 9137, *

amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Id. at 173. New York courts use a substantially similar test to determine whether information qualifies as confidential business information. United States v. International Business Machines Corp., 67 F.R.D. 40, 46 (S.D.N.Y. 1975).

Moreover, [HN6] New York law requires the proponent of confidentiality to show "good cause" why documents or information should remain confidential. See Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 143 (S.D.N.Y. 1997). An example of "good cause" would be that disclosure of the information would lead to "clearly defined and very serious injury" to the [*21]proponent's business. Id.

Here, Moore insists that the subject documents contain information that qualifies as both trade secrets and confidential business information. In support of this argument, Moore has submitted the Declaration of David K. Rice, who is the Manager of Moore's Materials and Product Development Group. See Item 155, Exh. E. Overall, Moore insists that the subject documents be kept confidential because they contain information on a number of sensitive topics, including: (1) Moore's testing methodologies; (2) Moore's specific equipment and equipment settings; (3) various results and analyses from tests conducted by Moore; and (4) Moore's frank comparisons of its own adhesives to the adhesives made by SRC and other non-party competitors. See Item 155, Exh. E, P 6.

Rice states that Moore does not permit the information found in the subject documents to circulate outside of Moore's own business. See Item 155, Exh. E, P 8. Rice also avers that this same information is not even widely disseminated among Moore employees. See id. Furthermore, Rice claims that the information at issue provides Moore with a distinct business advantage since it allows Moore [*22]"to compare its products to those of competitors," which then allows Moore to make accurate assessments of its competitive place in the market. Id. PP 3-4.

Moreover, Moore insists that declassification of the subject documents would cause serious injuries to Moore's business. "SRC is a direct competitor of Moore. Like Moore, it sells business forms using pressure seal adhesives. Revealing [this information] . . . presents a clear risk that SRC will use [it] to its own advantage, such as changing its own product as a result of obtaining such information from Moore . . . ." Item 155, p. 9. Moore states that declassifying the subject documents could also allow SRC to circulate the information to other Moore competitors. See id.

SRC denies that the subject documents contain any confidential information. SRC argues that the subject documents are nothing more than "internal memoranda reflecting the results of Moore's routine spectrographic analysis of SRC's accused adhesive." Item 140, p. 5. In support of its position, SRC has submitted the Declaration of Joseph P. Kennedy. See id. Exh. B. n4

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 Kennedy is a Distinguished Professor of Polymer Science and Chemistry at the University of Akron. See Item 139, Exh. B, P 1.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*23]

Through Kennedy's declaration, SRC argues that the subject documents reveal none of Moore's "proprietary or trade-secret spectrographic techniques." Id. Exh. B at p. 3. SRC notes that the subject documents only reveal that Moore has the capacity to use Fourier Transform Infra Red ("FTIR") spectroscopy technology as well as Scanning Electron Microscopy ("SEM") technology. See id. p. 6 and Exh. A. SRC maintains that "Moore . . . cannot reasonably assert that its possession of FTIR spectroscopy capability is secret, since any company that needs to analyze polymeric materials like Moore . . . would be expected to have a commercially available FTIR spectrometer . . . ." Id. Exh. B, P 7. Kennedy further asserts that the subject documents reveal that Moore used its FTIR spectroscopy in a "conventional manner"

when generating the subject documents. Thus, SRC concludes that the subject documents would reveal none of Moore's proprietary or trade secrets.

In a case not unlike the present one, a district court from this circuit found that [HN7] a party's compilation of information regarding a competitor's products should be produced under a protective order. See DDS, Inc. v. Lucas Aerospace Power Transmission Corp., 182 F.R.D. 1, 5 (N.D.N.Y. 1998).[*24] In that case, Magistrate Judge Hurd found that:

The defendant's documentation relating to the plaintiffs' Bearings are also trade secrets. These documents are a compilation of information obtained regarding the plaintiffs' product which provide the defendant with a business advantage. The defendant can evaluate the strengths and weaknesses of the plaintiffs' Bearings and adjust its own product in order to make the product more competitive in the market.

In each case, the harm in disclosing the above information to the other side is clear. Revealing confidential information to one's direct competitor presents a clear risk that the other side will use the information to its own advantage, such as soliciting its competitor's customers and changing its own product as a result of obtaining information from its competitor.

Id. The court in DDS nevertheless recognized the relevance of the disputed information and ordered the plaintiff to produce the compilation subject to a protective order. Id. at 7. This court takes a position substantially similar to the one taken in DDS.

The court finds that Moore has shown that the subject documents contain trade [*25] secrets and/or confidential business information. Even if the issue were a closer one, the court would err in favor of preserving confidentiality rather than lifting it. As such, the court denies SRC's motion to de-designate the subject documents.

CONCLUSION

Consistent with the terms stated herein and in open court on April 27, 2000, the court now grants in part and denies in part Moore's First Motion to Compel (Item 109); grants Moore's Second Motion to Compel (Item 121); grants Moore's Third Motion to Compel (Item 144); grants in part and denies in part SRC's Motion to Compel (Item 134); and denies SRC's Motion to Stay Damages Discovery (Item 136).

The court directs the parties to make responses consistent with this order not later than July 31, 2000.

At this time, the court reserves judgment on certain issues raised by Moore's First Motion to Compel (Item 109, Document Request 13) and SRC's Motion to Compel (Item 134, Document Requests 5, 9, 16, 24, 29, 36, and 83). Therefore, these two motions--Items 109 and 134--are still partially pending. The court will issue a separate order resolving these motions after further consideration.

So ordered.

JOHN T. CURTIN

United[*26] States District Judge

Dated: May 26, 2000