James David Jacobs (JJ-7351)
Todd S. Sharinn (TS-0581)
Frank M. Gasparo (FG-2958)
Susan R. Knox (SK-4110)
BAKER & McKENZIE LLP
805 Third Avenue
New York, New York 10022
(212) 751-5700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------

LEIGHTON TECHNOLOGIES LLC,          )
                                     )
        Plaintiff,                   )
                                     )
              vs.                    )      04 Civ. 02496 (CM)
                                     )
OBERTHUR CARD SYSTEMS, S.A.,         )
OBERTHUR CARD SYSTEMS OF             )      **ANSWER TO SECOND AMENDED**
AMERICA CORPORATION,                 )      **COMPLAINT, AFFIRMATIVE**
                                     )      **DEFENSES AND**
        Defendants.                  )      **COUNTERCLAIMS**
                                     )
-----------------------------------------------------
OBERTHUR CARD SYSTEMS, S.A. and      )
OBERTHUR CARD SYSTEMS OF             )
AMERICA CORPORATION                  )
                                     )
        Counterclaim Plaintiffs,     )
                                     )
              vs.                    )
                                     )
LEIGHTON TECHNOLOGIES LLC,           )
GENERAL PATENT CORPORATION           )
INTERNATIONAL, GENERAL PATENT        )
CORPORATION, IP HOLDINGS LLC,        )
ALEXANDER I. POLTORAK,               )
PAUL J. LERNER, AND                  )      **ELECTRONICALLY FILED**
KEITH LEIGHTON,                      )
                                     )
        Counterclaim Defendants.     )
-----------------------------------------------------

Defendants Oberthur Card Systems, S.A. ("OCS-France") and Oberthur Card Systems of America Corporation ("OCSA" and collectively with OCS-France as "OCS-Entities"), by their undersigned counsel, answer the Second Amended Complaint ("Second Amended Complaint") of Leighton Technologies LLC ("Leighton Technologies") as follows:

1.     OCS-Entities are without sufficient knowledge or information to form a belief as to the truth of each and every allegation contained in paragraph 1 of the Second Amended Complaint and therefore deny the same, except that OCS-Entities admit that Leighton Technologies purports to state a claim arising under the Patent Laws of the United States.

2.     OCS-France denies each and every allegation of paragraph 2 of the Second Amended Complaint, except OCSA admits that it has solicited business in this judicial district.

3.     OCS-Entities deny each and every allegation of paragraph 3 of the Second Amended Complaint.

4.     OCS-Entities deny each and every allegation of paragraph 4 of the Second Amended Complaint, except that OCS-Entities are without sufficient knowledge or information to form a belief as to the truth of the allegations that Leighton Technologies is a limited liability company organized and existing under the laws of the State of New York with its principal place of business at 75 Montebello Park, Suffern, NY 10901-2740 and therefore deny the same.

5.     OCS-Entities deny each and every allegation of paragraph 5 of the Second Amended Complaint, except that OCS-Entities admit that OCS-France is a corporation organized and existing under the laws of France with its principal place of business at 71/73 rue des Hautes-Pâtures, 92726 Nanterre Cedex, France and that it is a manufacturer and distributor of laminated plastic cards that contain microchips, sometimes referred to as "smart cards".

6.        OCS-Entities admit that OCSA is a Delaware corporation with its principal place of business at 3150 E. Ana Street, Rancho Dominguez, CA. 90221.

7.        OCS-Entities deny each and every allegation of paragraph 7 of the Second Amended Complaint.

8.        OCS-Entities deny each and every allegation of paragraph 8 of the Second Amended Complaint, and therefore deny the same, except admit that what purports to be a copy of the '207 patent is attached to the Second Amended Complaint as Exhibit A.

9.        OCS-Entities deny each and every allegation of paragraph 9 of the Second Amended Complaint, and therefore deny the same, except admit that what purports to be a copy of the '099 patent is attached to the Second Amended Complaint as Exhibit B.

10.       OCS-Entities deny each and every allegation of paragraph 10 of the Second Amended Complaint, and therefore deny the same, except admit that what purports to be a copy of the '155 patent is attached to the Second Amended Complaint as Exhibit C.

11.       OCS-Entities deny each and every allegation of paragraph 11 of the Second Amended Complaint, and therefore deny the same, except admit that what purports to be a copy of the '367 patent is attached to the Second Amended Complaint as Exhibit D.

12.       OCS-Entities deny each and every allegation contained in paragraph 12 of the Second Amended Complaint.

13.       OCS-Entities deny each and every allegation of Paragraph 13 of the Second Amended Complaint, except that OCS-France admits that it has made smart cards in France.

14.       OCS-Entities deny each and every allegation of Paragraph 14 of the Second Amended Complaint.

15.     OCS-Entities deny each and every allegation of Paragraph 15 of the Second Amended Complaint.

16.     OCS-Entities deny each and every allegation of Paragraph 16 of the Second Amended Complaint.

17.     OCS-Entities deny each and every allegation of Paragraph 17 of the Second Amended Complaint.

18.     OCS-Entities deny each and every allegation of Paragraph 18 of the Second Amended Complaint.

19.     OCS-Entities deny each and every allegation of Paragraph 19 of the Second Amended Complaint.

20.     OCS-Entities deny each and every allegation of Paragraph 20 of the Second Amended Complaint.

21.     OCS-Entities deny each and every remaining allegation of Paragraph 21 of the Second Amended Complaint.

22.     OCS-Entities deny each and every allegation of Paragraph 22 of the Second Amended Complaint.

23.     OCS-Entities repeat and reallege the denials in paragraphs 1 through 22 as if fully set forth here.

24.     OCS-Entities deny each and every allegation of Paragraph 24 of the Second Amended Complaint.

25.     OCS-Entities deny each and every allegation of Paragraph 25 of the Second Amended Complaint.

26.         OCS-Entities deny each and every allegation of Paragraph 26 of the Second Amended Complaint.

27.         OCS-Entities deny each and every allegation of Paragraph 27 of the Second Amended Complaint.

28.         OCS-Entities deny each and every allegation of Paragraph 28 of the Second Amended Complaint.

29.         OCS-Entities deny each and every allegation of Paragraph 29 of the Second Amended Complaint.

30.         OCS-Entities deny each and every allegation of Paragraph 30 of the Second Amended Complaint.

31.         OCS-Entities deny each and every allegation of Paragraph 31 of the Second Amended Complaint.

32.         OCS-Entities deny each and every allegation of Paragraph 32 of the Second Amended Complaint.

33.         OCS-Entities deny each and every allegation of Paragraph 33 of the Second Amended Complaint.

## <u>DEFENSES</u>

### FOR AND AS A FIRST AFFIRMATIVE DEFENSE

34.         Leighton Technologies fails to state a claim upon which relief may be granted against OCS-Entities.

### FOR AND AS A SECOND AFFIRMATIVE DEFENSE

35.         This court lacks jurisdiction over the person of OCS-France.

## FOR AND AS A THIRD AFFIRMATIVE DEFENSE

36.        Pursuant to Article 15 of the Civil Code of France, the French courts have exclusive jurisdiction over OCS-France.

## FOR AND AS A FOURTH AFFIRMATIVE DEFENSE

37.        Leighton Technologies' claims are barred due to its or its predecessors in interests' laches.

## FOR AND AS A FIFTH AFFIRMATIVE DEFENSE

38.        Leighton Technologies is estopped from bringing its claims in this action.

## FOR AND AS A SIXTH AFFIRMATIVE DEFENSE

39.        This action is barred in whole or part by 28 U.S.C. § 1498(a).

## FOR AND AS A SEVENTH AFFIRMATIVE DEFENSE

40.        This action is barred because of Leighton Technologies' unclean hands.

## FOR AND AS AN EIGHTH AFFIRMATIVE DEFENSE

41.        This action is barred because the '207, '099, '155, and '367 patents are invalid, not infringed and unenforceable.

## FOR AND AS A NINTH AFFIRMATIVE DEFENSE

42.        This action is barred because Plaintiff Leighton Technologies lacks standing to sue.

## FOR AND AS A TENTH AFFIRMATIVE DEFENSE

43.        OSC-Entities reserve the right to raise additional affirmative defenses at trial as such facts supporting any such affirmative defense become known to OSC-Entities during the pendency of this action.

## COUNTERCLAIMS

44.        OCS-France and OSCA (collectively, the "OCS-Entities"), for their

counterclaims against Leighton Technologies, LLC, General Patent Corporation, General Patent

Corporation International, IP Holdings LLC, Alexander I. Poltorak, Paul J. Lerner and Keith

Leighton allege as follows:

### I.  JURISDICTION AND VENUE

45.        This Court has subject matter jurisdiction over the counterclaims pursuant to

28 U.S.C. §§ 1331, 1338(a) and (b), 1367(a), 2201 and 2202 and 35 U.S.C. § 291.

### II.  THE PARTIES

46.        OCS-France is a corporation organized and existing under the laws of France

with its principal place of business at 71/73 rue des Hautes-Pâtures, 92726 Nanterre, Cedex,

France.

47.        OCSA is a Delaware corporation having its principal place of business at 3150

E. Ana Street, Rancho Dominguez, CA 90221.

48.        OSCA sells plastic laminated cards, including what Plaintiff defines as smart

cards to banks, financial institutions, government, communications companies and other entities

within the United States.

49.        Upon information and belief Leighton Technologies is a limited liability

company organized and existing under the law of New York State with its principal place of

business at Montbello Park, 75 Montbello Road, Suffern, NY 10901.

50.        Upon information and belief, General Patent Corporation ("GPC") is a New

York corporation with its principal place of business at Montbello Park, 75 Montbello Road,

Suffern, NY 10901.

51.      Upon information and belief, General Patent Corporation International ("GPCI") is a New York corporation with its principal place of business at Montbello Park, 75 Montbello Road, Suffern, NY 10901.

52.      Upon information and belief, IP Holdings LLC ("IPH") is a limited liability company organized and existing under the law of New York State with its principal place of business at Montbello Park, 75 Montbello Road, Suffern, NY 10901.

53.      Upon information and belief, GPCI owns 33% of Leighton Technologies and IPH own 17% of Leighton Technologies.

54.      Upon information and belief, Alexander I. Poltorak ("Poltorak") is an individual and a domiciliary of the State of New York, and is Chief Executive Officer of GPCI and President of GPC and a managing member of IPH.

55.      Upon information and belief, Paul J. Lerner ("Lerner") is an individual and a domiciliary of the State of New York, and is Senior Vice President and General Counsel of both GPCI and GPC and a managing member of IPH.

56.      Upon information and belief, Keith Leighton ("Leighton" and collectively with Leighton Technologies, GPC, GPCI, IPH, Poltorak and Lerner as, the "Counterclaim Defendants") is an individual and a domiciliary of the State of Ohio who owns 49.5625% of Leighton Technologies.

57.      Upon information and belief, Counterclaim Defendants Poltorak and Lerner control and have directed Counterclaim Defendants GPC, GPCI or IPH, jointly and severally, to engage and to continue to engage in the illegal activity set forth below.

### III. GENERAL ALLEGATIONS

58.     Counterclaim Defendant Leighton Technologies alleges in the Second Amended Complaint, as it has done at various times before and most notably through its Complaint and Amended Complaint filed in the present action, that OCS-Entities infringe United States Letters Patent Nos. 5,817,207 (the "'207" patent), 6,036,099 (the "'099" patent), 6,214,155 (the "'155" patent), and 6,514,367 (the "'367" patent, and collectively with the '207, '099 and '155 patents as, the "Patents").

59.     Counterclaim Defendant Leighton Technologies maintains its allegations that OCS-Entities infringe the Patents despite learning, since its filing of this action, through discovery and most notably Counterclaim Defendant Leighton's Deposition that, among other things, Counterclaim Defendant Leighton has been increasing the pressure exerted by the laminating machines during cooling to at least 10% more than the pressure used while heating the same since at least 1970 and well before the dates on which he filed his patent applications; that manipulating the pressure in such a way was well known in the industry since at least 1970 and well before the dates on which he filed his patent applications; and that the inventions claimed by the Patents were never his to use, make, assign, license or otherwise transfer ownership therein.

60.     The '207, '099, '155, and '367 patents are invalid because each of them fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

61.     OCS-Entities' smart cards do not infringe any claim of the '207, '099, '155, and '367 patents.

## FOR AND AS A FIRST COUNTERCLAIM
### (Inequitable Conduct In The Prosecution Of The '367 Patent As To Counterclaim Defendant Leighton)

62.      OCS-Entities repeat and reallege the allegations in paragraphs 1 through 61 inclusive as if fully set forth here.

63.      This is a claim for a declaratory judgment of unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201 *et seq*.

64.      Upon information and belief, on August 5, 1999 Counterclaim Defendant Leighton, the purported predecessor in interest of Leighton Technologies, filed U.S. Patent Application Serial Number 09/368,846 (the "'367 patent application"), which matured into the '367 patent.

65.      Counterclaim Defendant Leighton's Attorneys of Record listed with the USPTO in connection with the prosecution of the '367 patent application were initially the law firm of Oldham and Oldham Co., L.P.A. (the "Oldham Firm") and from that firm most notably Mark A. Watkins, Esq., Registration Number 33,813 ("Attorney Watkins"), and then the firm Hahn, Loeser & Parks, LLP (the "Hahn Firm"), and most notably from that firm Attorneys Watkins with Michael H. Minns, Registration Number 31,985 ("Attorney Minns").

66.      The Primary Examiner responsible for the United States Patent and Trademark Office ("USPTO") examination and allowance of the '367 patent application was Jeff H. Aftergut ("Examiner Aftergut").

67.      During the prosecution of the '367 patent application, Examiner Aftergut participated in two Interviews with applicant's Attorneys of Record, on November 30, 2000 and October 9, 2002, and mailed to applicant's Attorneys of Record, among other things, Office Actions on December 6, 2000 and May 8, 2002.  Through both of these Office Actions,

Examiner Aftergut specifically rejected all of the then pending claims under 35 U.S.C. § 103, relying upon the reference Japanese Patent 6-176214 ("JP 214") as prior art.

68.     On October 2, 2002, in response to these rejections of all of the then-pending claims in the '367 patent application, Counterclaim Defendant Leighton, by and through his Attorneys of Record, amended the '367 patent application by adding a limitation that required the pressure during cooling to be at least 10% greater than the pressure during heating.

69.     In addition, Counterclaim Defendant Leighton, by and through his Attorneys of Record, represented to Examiner Aftergut that the prior art neither taught nor suggested "to **increase** the pressure during cooling to **at least 10% greater than the pressure applied during heating** . . . ." Emphasis in original.

70.     Examiner Aftergut and Counterclaim Defendant Leighton's Attorneys of Record participated in a second Interview on October 9, 2002.

71.     Following the second Interview, Examiner Aftergut issued a Notice of Allowability dated October 9, 2002.  The Notice of Allowability included an Examiner's Amendment through which Examiner Aftergut specifically explained that his "reasons for allowance: "[were that] [n]one of the prior art of record taught or suggested that one skilled in the art at the time the invention was made to apply a second pressure upon the assembly during cooling wherein **the second pressure was at least 10% greater than the first pressure** applied during assembly and heating." Emphasis added.

72.     The '367 patent issued through the USPTO on February 4, 2003.

73.     Upon information and belief, Counterclaim Defendant Leighton and his Attorneys of Record were aware of prior art that suggested and taught the greater than 10%

pressure limitation at the time of filing the Amendment After Final Rejection dated October 2, 2002 and participating in the second Interview on October 9, 2002.

74.      That prior art was material to the patentability of the claims in the '367 patent application.

75.      That prior art was not cumulative of the other references of record in the '367 patent application.

76.      Upon information and belief, Counterclaim Defendant Leighton and his Attorneys of Record intended to deceive and did deceive the USPTO by failing to cause this prior art to be made of record during their prosecution of the '367 patent application.

77.      By failing to cause this prior art to be made of record during their prosecution of the '367 patent application, Counterclaim Defendant Leighton and his Attorneys of Record violated their duty to disclose to the USPTO all information known to them to be material to patentability of the claims of the '367 patent application and engaged in inequitable conduct.

78.      Upon information and belief, Counterclaim Defendant Leighton acquired the '367 patent by intentionally deceiving the USPTO and specifically by failing to disclose relevant prior art.

79.      By reason of the foregoing, an actual and justiciable case and controversy exists between OCS-Entities and Counterclaim Defendant Leighton Technologies as to whether the '367 patent is unenforceable by reason of the inequitable conduct of Counterclaim Defendants Leighton, his Attorneys of Record or Leighton Technologies.

80.      OCS-Entities are entitled to a declaratory judgment that the '367 patent is unenforceable.

**FOR AND AS A SECOND COUNTERCLAIM**
**(Inequitable Conduct In The Prosecution Of The '155 Patent As To Counterclaim**
**Defendant Leighton)**

81.     OCS-Entities repeat and reallege the allegations in paragraphs 1 through 80 inclusive as if fully set forth here.

82.     This is a claim for a declaratory judgment of unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

83.     Upon information and belief, on September 22, 1998 Leighton, the purported predecessor in interest of Leighton Technologies, filed U.S. Patent Application Serial Number 09/158,290 ("'155 patent application"), which matured into the '155 patent.

84.     The Attorneys of Record listed with the USPTO in connection with the prosecution of the '155 patent application are the Oldham Firm, and most notably Attorney Watkins.

85.     The Primary Examiner responsible for the USPTO's examination and allowance of the '155 patent application was Francis J. Lorin ("Examiner Lorin").

86.     Both the '155 and '367 patent applications were examined by two different patent examiners at the USPTO – specifically, Examiner Lorin for the '155 patent application and Examiner Aftergut for the '367 patent application.

87.     Both the '155 and '367 patent applications were prosecuted by the same Attorneys of Record – specifically Attorneys Watkins and Minns.

88.     On December 6, 2000, the USPTO mailed to Counterclaim Defendant Leighton's Attorneys of Record a rejection of all of the then-pending claims in the '367 patent application.  In forming this rejection, Examiner Aftergut relied upon JP 214 as prior art.

12

89.    On December 6, 2000 the '155 patent application was pending in the USPTO and did not issue until April 10, 2001.

90.    Counterclaim Defendant Leighton and his Attorneys of Record did not disclose JP 214 to the examiner before the '155 patent issued on April 10, 2001.

91.    JP 214 was material to the patentability of the claims in the '155 patent application.

92.    JP 214 was not cumulative of the other references of record during the prosecution of the '155 patent application.

93.    Upon information and belief, Counterclaim Defendant Leighton and his Attorneys of Record intended to deceive and did deceive the USPTO by failing to cause JP 214 to be made of record during their prosecution of the '155 patent application.

94.    Upon information and belief, Counterclaim Defendant Leighton acquired the '155 patent by intentionally deceiving the USPTO and specifically by failing to disclose relevant prior art.

95.    By failing to cause JP 214 to be made of record during their prosecution of the '155 patent application, Counterclaim Defendant Leighton and his attorneys of record violated their duty to disclose to the USPTO all information known to them to be material to the patentability of the claims of the '155 patent application and engaged in inequitable conduct.

96.    By reason of the foregoing, an actual and justiciable case and controversy exists between OCS-Entities and Counterclaim Defendant Leighton Technologies as to whether the '155 patents is unenforceable by reason of Counterclaim Defendant Leighton's and his Attorneys of Records' inequitable conduct.

97.     OCS-Entities are entitled to a declaratory judgment that the '155 patent is unenforceable.

### FOR AND AS A THIRD COUNTERCLAIM
### (Patent Invalidity and Noninfringement As To The Counterclaim Defendants)

98.     OCS-Entities repeat and reallege the allegations in paragraphs 1 through 97 inclusive as if fully set forth here.

99.     This is a claim for a declaratory judgment of non-infringement, unenforceability and invalidity, arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

100.     Counterclaim Defendant Leighton Technologies alleges in the Second Amended Complaint and at various times before alleged that OCS-Entities' smart cards infringe the '207, '099, '155, and '367 patents.

101.     OCS-Entities do not infringe any claim of the '207, '099, '155, and '367 patents.

102.     The '207, '099, '155, and '367 patents are invalid because each of them fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

103.     By reason of the foregoing an actual and justiciable case and controversy exists between OCS-Entities and Counterclaim Defendant Leighton Technologies as to whether the '207, '099, '155, and '367 patents are invalid and not infringed.

104.     OCS-Entities are entitled to a declaratory judgment that they have not infringed, contributed to the infringement of or induced the infringement of, and are not infringing, contributing to the infringement of or inducing the infringement of any valid and enforceable claim of the '207, '099, '155, and '367 patents.

### FOR AND AS A FOURTH COUNTERCLAIM
### (Patent Misuse As To Counterclaim Defendant Leighton Technologies)

105.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 104 inclusive as if fully set forth here.

106.    This is a claim for a declaratory judgment of unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201 *et seq.*

107.    In paragraph 12 of the Second Amended Complaint the Counterclaim Defendant Leighton Technologies asserts that it "is the owner by assignment [from Counterclaim Defendant Leighton] of . . . the Patents . . . and has right to sue, and recover damages, for infringement thereof."

108.    Upon information and belief, Counterclaim Defendant Leighton was never the owner of any right, title or interest in and to the inventions claimed by the Patents, and thus Counterclaim Defendant Leighton could not convey good and proper title of the same onto Counterclaim Defendant Leighton Technologies.

109.    Upon information and belief, the Counterclaim Defendants Leighton Technologies, GPC, GPCI, IPH, Poltorak and Lerner knew or should have known that Counterclaim Defendant Leighton was never the owner of any right, title or interest in and to the inventions claimed by the Patents, and thus that Counterclaim Defendant Leighton could not convey good and proper title of the same onto Counterclaim Defendant Leighton Technologies.

110.    Upon information and belief, Counterclaim Defendants Leighton Technologies, GPC, GPCI, IPH, Poltorak and Lerner knew or should have known when each was issued that the '207, '099, '155 and '367 patents were invalid, or were procured by inequitable conduct, or both.

111.    For the reasons set forth above, Counterclaim Defendant Leighton Technologies have misused one or more of the '207, '099, '155 and '367 patents by attempting to obtain licenses therefrom.

112.    For the reasons set forth above, Counterclaim Defendant Leighton Technologies has misused one or more of the '207, '099, '155 and '367 Patents by asserting claims of infringement despite knowing that the patents upon which the claims are based are invalid and unenforceable.

113.    The '207, '099, '155 and '367 patents are each unenforceable by reason of Leighton Technologies' patent misuse.

114.    OCS-Entities are entitled to a declaratory judgment that the '207, '099, '155 and '367 patents are unenforceable.

**FOR AND AS A FIFTH COUNTERCLAIM**
**(Tortious Interference with Prospective Economic Advantage As To Counterclaim Defendants Leighton Technologies, GPC, GPCI, IPH, Poltorak and Lerner)**

115.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 114 inclusive as if fully set forth here.

116.    OCS-Entities have business relationships with multiple third parties that purchase their card products for distribution or resale, as well as with multiple third parties that supply component products and technologies for use in card products that OCS-Entities manufacture or supply.

117.    The Counterclaim Defendants have interfered with the business relations between OCS-Entities and various entities that purchase card products from OCS-Entities or supply component products or technologies to OCS-Entities.

118.     Specifically, the Counterclaim Defendants have served multiple discovery requests on OCS-Entities that have, as a foreseeable result, required that OCS-Entities inform customers and suppliers of the ongoing litigation and that it produce confidential proprietary information of its customers and suppliers in discovery despite non-disclosure agreements prohibiting the dissemination or disclosure of such information.

119.     The Counterclaim Defendants have interfered with the business relations between OCS-Entities and various entities that purchase card products from OCS-Entities or supply component products or technologies.

120.     The Counterclaim Defendants have interfered with OCS-Entities' business relations using dishonest, unfair and improper means, including misrepresentation, civil litigation and economic pressure.

121.     As a result of the Counterclaim Defendants' dishonest, unfair and improper interference with OCS-Entities' business relations, OCS-Entities have suffered damages, and will continue to suffer damages.

## FOR AND AS A SIXTH COUNTERCLAIM
**(Attempted Monopolization Under Section 2 of the Sherman Act (15 USC § 2) As To Counterclaim Defendants Leighton Technologies, GPC, GPCI, IPH, Poltorak and Lerner)**

122.     OCS-Entities repeat and reallege the allegations in paragraphs 1 through 121 inclusive as if fully set forth here.

123.     OSC-Entities and the Counterclaim Defendants participate in the market for plastic laminated cards capable of operating in a contactless mode, i.e., hyrbrid cards, contact-less cards, and dual interface cards (the "Relevant Market").

124.     As set forth above, upon information and belief, Counterclaim Defendants GPCI, IPH, GPC, Poltorak or Lerner and Leighton Technologies knew or should have known

when each was obtained that the '207, '099, '155 and '367 patents were invalid or unenforceable.

125.    The Counterclaim Defendants knew or should have known when instituting this action that the patents that they sought to enforce were invalid or unenforceable.

126.    The Counterclaim Defendants knew or should have known when filing the Second Amended Complaint that the patents that they sought to enforce were invalid or unenforceable.

127.    Counterclaim Defendants have acquired monopoly power in the Relevant Market, or, alternatively, have attempted to acquire monopoly power in the Relevant Market, not through normal growth and development, or as a consequence of having a superior product. Instead, Counterclaim Defendants have gained, or sought, such power by unlawful means, including by the enforcement in bad faith of patents the Counterclaim Defendants knew or should have known were invalid or unenforceable.

128.    There is a dangerous probability that Counterclaim Defendants' efforts to monopolize the Relevant Market will succeed.

129.    As a direct and proximate result of Counterclaim Defendants' violation of Section 2 of the Sherman Act, OCS-Entities have sustained injury to their business and property, including but not limited to the costs and expenses of this action, loss of reputation, loss of sales, injury to business relationships, and other such losses and costs inherent in the disruption of OCS-Entities' business caused by Counterclaim Defendants' conduct.

130.    As a direct and proximate result of Counterclaim Defendants' violation of Section 2 of the Sherman Act, the consuming public is being denied the benefit of full and free competition in the Relevant Market and competition has been harmed.

131.    In addition to its actual damages, OSC-Entities are entitled to recover treble damages and their reasonable attorneys' fees, together with costs of suit.

**FOR AND AS A SEVENTH COUNTERCLAIM**
**(Attempted Monopolization Under Section 2 of the Sherman Act (15 USC § 2) As To The**
**Counterclaim Defendants).**
**(Walker Process – Fraud)**

132.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 131 inclusive as if fully set forth here.

133.    As set forth above, upon information and belief, Counterclaim Defendant Leighton and his Attorneys of Record intended to, and did, deceive the USPTO by failing to cause prior art to be made of record during their prosecution of the '367 patent application.

134.    Counterclaim Defendants knew or should have known when it initiated the lawsuit that the '367 patent was procured by fraud.

135.    The Counterclaim Defendants knew or should have known when filing the Second Amended Complaint that the '367 patent that they sought to enforce was invalid and unenforceable.

136.    Counterclaim Defendants have acquired monopoly power in the Relevant Market, or, alternatively, have attempted to acquire monopoly power in the Relevant Market, not through normal growth and development, or as a consequence of having a superior product. Instead, Counterclaim Defendants have gained, or sought, such power by unlawful means, including by the commission of fraud in the procurement of the '367 Patent and the attempted enforcement of a patent it knew or should have known was procured by fraud.

137.    There is a dangerous probability that Counterclaim Defendants' efforts to monopolize the Relevant Market will succeed.

138.    As a direct and proximate result of Counterclaim Defendants' violation of Section 2 of the Sherman Act, OCS-Entities have sustained injury to their business and property, including but not limited to the costs and expenses of this action, loss of reputation, loss of sales, injury to business relationships, and other such losses and costs inherent in the disruption of OCS-Entities' business caused by Counterclaim Defendants' conduct.

139.    As a direct and proximate result of Counterclaim Defendants' violation of Section 2 of the Sherman Act, the consuming public is being denied the benefit of full and free competition in the Relevant Market and competition has been harmed.

140.    In addition to its actual damages, OSC-Entities are entitled to recover treble damages and their reasonable attorneys' fees, together with costs of suit.

## FOR AND AS A EIGHTH COUNTERCLAIM
### (Attempted Monopolization Under Section 2 of the Sherman Act (15 USC § 2) As To The Counterclaim Defendants)
### (Walker Process - Fraud)

141.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 140 inclusive as if fully set forth here.

142.    As set forth above, upon information and belief, Counterclaim Defendant Leighton and his Attorneys of Record intended to, and did, deceive the USPTO by failing to cause JP 214 to be made of record during their prosecution of the '155 patent application.

143.    Upon information and belief, Counterclaim Defendant Leighton and his Attorneys of Record intentionally failed to cause additional relevant prior art to be made of record during their prosecution of the '155 patent application.

144.    Upon information and belief, Counterclaim Defendant Leighton acquired the '155 patent by intentionally deceiving the USPTO and specifically by failing to disclose relevant prior art.

145.    Upon information and belief, Counterclaim Defendants knew or should have known that the '155 patent was procured by fraud when they initiated this lawsuit.

146.    Counterclaim Defendants have acquired monopoly power in the Relevant Market, or, alternatively, have attempted to acquire monopoly power in the Relevant Market, not through normal growth and development, as a consequence of having a superior product. Instead, Counterclaim Defendants have gained, or sought, such power by unlawful means, including, by the commission of fraud in the procurement of the '155 Patent and the attempted enforcement of a patent it knew or should have known was procured by fraud.

147.    There is a dangerous probability that Counterclaim Defendants' efforts to monopolize the Relevant Market will succeed.

148.    As a direct and proximate result of Counterclaim Defendants' violation of Section 2 of the Sherman Act, OCS-Entities have sustained injury to their business and property, including but not limited to the costs and expenses of this action, loss of reputation, loss of sales, injury to business relationships, and other such losses and costs inherent in the disruption of OCS-Entities' business caused by Counterclaim Defendants' conduct.

149.    As a direct and proximate result of Counterclaim Defendants' violation of Section 2 of the Sherman Act, the consuming public is being denied the benefit of full and free competition in the Relevant Market and competition has been harmed.

150.    In addition to its actual damages, OSC-Entities are entitled to recover treble damages and their reasonable attorneys' fees, together with costs of suit.

**FOR AND AS A NINTH COUNTERCLAIM**
**(Restraint of Trade in Violation of Section 1 of the Sherman Act (15 USC § 1) As To The Counterclaim Defendants)**

151.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 150 inclusive as if fully set forth here.

152.     Some or all of the Counterclaim Defendants entered into a contract, combination or conspiracy in unreasonable restraint of interstate or foreign trade and commerce.

153.     Upon information and belief, after responding to a solicitation from Counterclaim Defendants GPC, GPCI or IPH "for patent holders to maximize the worth of their patents," Counterclaim Defendant Leighton Technologies was created by Counterclaim Defendants GPCI, IPH, GPC, Poltorak or Lerner and Counterclaim Defendant Leighton, on the advice of one or more of Counterclaim Defendants GPCI, IPH, GPC, Poltorak or Lerner.

154.     The purpose of the agreement between Counterclaim Defendants GPCI, IPH, GPC, Poltorak, Lerner and Leighton in forming Counterclaim Defendant Leighton Technologies was to unreasonably and unlawfully restrain interstate or foreign trade and commerce.  To achieve that purpose, the Counterclaim Defendants threatened to sue or sued competitors in bad faith for infringement of invalid or fraudulently obtained patents, with the intent to exclude those competitors from the Relevant Market and to monopolize the Relevant Market.

155.     The conduct of the Counterclaim Defendants and their co-conspirators has taken place in and affected the interstate and foreign trade and commerce of the United States. The conduct of the Counterclaim Defendants and their co-conspirators has directly, substantially and foreseeably restrained such trade and commerce.

156.     As a direct and proximate result of Counterclaim Defendants' violation of Section 1 of the Sherman Act, OCS-Entities have sustained injury to their business and property, including but not limited to the costs and expenses of this action, loss of reputation, loss of sales, injury to business relationships, and other such losses and costs inherent in the disruption of OCS-Entities' business caused by Counterclaim Defendants' conduct.

157.    As a direct and proximate result of Counterclaim Defendants' violation of Section 1 of the Sherman Act, the consuming public is being denied the benefit of full and free competition in the Relevant Market and competition has been harmed.

158.    In addition to actual damages, OSC-Entities are entitled to recover treble damages and reasonable attorneys' fees, together

## PRAYER FOR RELIEF

WHEREFORE, OCS-Entities request judgment as follows:

A.    For an order dismissing Counterclaim Defendant Leighton Technologies' patent infringement claims with prejudice with Counterclaim Defendant Leighton Technologies to recover nothing thereon;

B.    For a declaration that the '207, '099, '155, and '367 patents are invalid, not infringed, and unenforceable;

C.    For damages that OCS-Entities have incurred as a result of the Counterclaim Defendants' tortious interference with the OCS-Entities' business relations, as well as punitive damages;

D.    For damages that the OCS-Entities have incurred as a result of Counterclaim Defendants' having violated 15 U.S.C. §§ 1 and 2, which damages should be trebled pursuant to 15 U.S.C. § 15, § 4;

E.    For a declaration that this case is exceptional under 35 U.S.C. § 285;

F.    For a finding that the Counterclaim Defendant Leighton Technologies' bad faith initiation of the present action has been willful, and awarding OCS-Entities its damages trebled;

G.    For an award to OCS-Entities of their costs, interest, and attorneys' fees; and

H.    For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       November 10, 2005

BAKER & McKENZIE LLP

_____/s_____
By: James David Jacobs (JJ-7351)
Attorneys for Defendants
805 Third Avenue
New York, New York 10022
(212) 751-5700