Robert A. Gutkin, Esq. (Pro hac vice)
Blair M. Jacobs, Esq. (Pro hac vice)
Christina A. Ondrick (Pro hac vice)
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC  20004-2415
Tel:  202-383-0100
Fax:  202-637-3593

Attorneys for Plaintiff
LEIGHTON TECHNOLOGIES LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>OBERTHUR CARD SYSTEMS, S.A., and<br>OBERTHUR CARD SYSTEMS OF AMERICA<br>CORP.<br><br>    Defendants. | 04 Civ. 02496 (CM) (LMS) |

**PLAINTIFF LEIGHTON TECHNOLOGIES' MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY**

**TABLE OF CONTENTS**

I.        INTRODUCTION .......................................................................................... 1

II.       THE LEGAL STANDARD FOR SUMMARY JUDGMENT OF INVALIDITY  2
   A.     Obviousness (35 U.S.C. § 103)................................................................... 3
   B.     Anticipation (35 U.S.C. § 102) .................................................................. 4

III.      FACTS ........................................................................................................... 5

IV.       ARGUMENT.................................................................................................. 7
   A.     Oberthur Cannot Establish a Prima Facie Case of Obviousness ............ 7
          1.    Oberthur's Summary Judgment Arguments are Not Supported By Proper
                Evidence ...................................................................................... 8
          2.    Oberthur's Claim Chart is Inadmissible...................................... 8
          3.    Oberthur's Attempts To Read Several Elements and Limitations Out of the
                Leighton Patents Are Contrary To the Established Legal Test For Assessing
                Obviousness................................................................................. 9
          4.    Oberthur's Hindsight Analysis Is Completely Improper ............ 11
          5.    Oberthur Fails to Provide Any Evidence Of Motivation To Combine
                References ................................................................................... 12
   B.     The Prior Art Cited By Oberthur Does Not Disclose Heating Said Core for a First
          Period of Time and Applying Encapsulating Pressure for a Second Period of Time
          To Encapsulate the Electronic Element ................................................... 15
   C.     None of the References Cited by Oberthur are Enabling ...................... 17
   D.     The Testimony of Oberthur's Witnesses Creates Material Issues of Factual
          Dispute ..................................................................................................... 18
   E.     Oberthur Fails to Provide Any Discussion of Secondary Considerations ............ 20
          1.    Unexpected Results/Skepticism .................................................. 21
          2.    Long-felt Need/Failure of Other Invent ...................................... 22
          3.    Commercial Success.................................................................... 23

V.        CONCLUSION............................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.,*
   346 F.3d 1075 (Fed. Cir. 2003)...................................................................................... 10

*Advanced Display Sys., Inc. v. Kent State Univ.,*
   212 F.3d 1272 (Fed. Cir. 2000).......................................................................... 9, 10, 23

*Al-Site Corp. v. VSI Int'l Inc.,*
   174 F.3d 1308 (Fed. Cir. 1999)...................................................................................... 14

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S. Ct. 2505 (1986)............................................................................. 3

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,*
   229 F.3d 1120 (Fed. Cir. 2000).............................................................................. 13, 14

*Burlington Indus., Inc. v. Quigg,*
   822 F.2d 1581 (Fed. Cir. 1987)...................................................................................... 21

*Ecolochem, Inc. v. Southern California Edison Co.,*
   227 F.3d 1361 (Fed. Cir. 2000)...................................................................................... 14

*Fromson v. Advance Offset Plate, Inc.,*
   755 F.2d 1549 (Fed. Cir. 1985)...................................................................................... 20

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
   110 F.3d 1573 (Fed. Cir. 1997).............................................................................. 22, 23

*Graham v. John Deere Co.,*
   383 U.S. 1, 86 S. Ct. 684 (1966)........................................................................ 3, 11, 20

*Hazani v. United States Int'l Trade Comm'n,*
   126 F.3d 1473 (Fed. Cir. 1997).................................................................................. 4, 18

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,*
   21 F.3d 1068 (Fed. Cir. 1994)........................................................................................ 23

*In re Brouwer,*
   77 F.3d 422 (Fed. Cir. 1996).......................................................................................... 11

*In re Dembiczak,*
   175 F.3d 994 (Fed. Cir. 1999).................................................................................... 4, 13

*In re Dow Chem. Co.,*
   837 F.2d 469 (Fed Cir. 1988)........................................................................... 12, 21, 22

*In re Fine,*
   837 F.2d 1071 (Fed. Cir. 1988)....................................................................................... 4

*In re Gartside,*
   203 F.3d 1305 (Fed. Cir. 2000)........................................................................................ 3

*In re Hedges,*
   783 F.2d 1038 (Fed. Cir. 1986)................................................................................ 21, 22

*In re Kotzab,*
   217 F.3d 1365 (Fed. Cir. 2000).................................................................................. 4, 13

*In re Omeprazole Patent Litig.,*
   222 F. Supp. 2d 423 (S.D.N.Y. 2002)............................................................................. 5

*In re Rouffet,*
   149 F.3d 1350 (Fed. Cir. 1998).......................................................................... 4, 13, 14

*In re Zurko*,
    258 F.3d 1379 (Fed. Cir. 2001).................................................................. 18

*Joslyn Corp. v. RTE Corp.*,
    684 F. Supp. 967 (N.D. Ill. 1988) .......................................................... 20

*Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*,
    367 F.3d 1381 (Fed. Cir. 2004)................................................................. 4

*Lucente v. Int'l Bus. Mach. Corp.*,
    310 F.3d 243 (2d Cir. 2002) ..................................................................... 20

*MDS Assocs., Ltd. P'ship v. United States*,
    37 Fed. Cl. 611 (1997) ................................................................................ 2

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005)................................................................. 23

*Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*,
    139 F.3d 877 (Fed. Cir. 1998)................................................................... 3

*Motorola, Inc., v. Interdigital Tech. Corp.*,
    121 F.3d 1461 (Fed. Cir. 1997)................................................................. 14

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984).................................................................. 20

*Richardson-Vicks, Inc. v. Upjohn Co.*,
    122 F.3d 1476 (Fed. Cir. 1997)................................................................ 20

*Rockwell Int'l Corp. v. United States*,
    147 F.3d 1358 (Fed. Cir. 1998)................................................................ 17

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000)................................................................. 21

*Salazar v. Proctor & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005)................................................................ 11

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*,
    253 F. Supp. 2d 624 (S.D.N.Y. 2003)............................................... 19, 20

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
    859 F.2d 878 (Fed. Cir. 1988)................................................................. 11

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983)................................................................ 21

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999)............................................................ 4, 13

*TechSearch, LLC v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002)................................................................. 8

*Titanium Metals Corp. v. Banner*,
    778 F.2d 775 (Fed. Cir. 1985).................................................................... 5

*Torpharm, Inc. v. Ranbaxy Pharms., Inc.*,
    336 F.3d 1322 (Fed. Cir. 2003)................................................................ 11

*Uniroyal Inc. v. Rudkin-Wiley Corp.*,
    837 F.2d 1044 (Fed. Cir. 1988)................................................................. 4

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000)................................................................ 22

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
    231 F.3d 1339 (Fed. Cir. 2000)............................................................ 3, 11

**Statutes**

35 U.S.C. § 103................................................................................................................ 3
35 U.S.C. § 282................................................................................................................ 2

## I.    __INTRODUCTION__

The four patents involved here, U.S Patent Nos. 5,817,207 ("the '207 patent"); 6,214,155 ("the '155 patent"); 6,036,099 ("the '099 patent"); and 6,514,367 ("the '367 patent") each address a specific method of laminating contactless smart cards.  Plaintiff Leighton Technologies LLC ("Leighton") has never contended that the inventor, Keith Leighton, invented the process of hot lamination for plastic cards, smart cards, contactless cards, or placing a chip or other electronic element inside of a plastic card using hot lamination.  Instead,  Mr. Leighton invented a much better way to make certain types of contactless smart cards, with a highly coordinated lamination process using heat, cooling and the application of pressure to encapsulate an electronic element without using a non-electronic carrier.  The claims of the four patents-in-suit were carefully crafted to reflect this highly coordinated process.

Unlike the lamination of standard plastic cards, manufacturing smart cards with sensitive electronics embedded within the card raises unique issues.  Oberthur now contends that the process reflected in the Leighton patents was obvious, or alternatively anticipated in its entirety by brochures from a lamination machine manufacturer, Oakwood Design.  Oberthur's motion suffers from several notable defects.  The motion ignores claim terms in their entirety, fails to incorporate or even address this Court's construction of those claims, and instead improperly attempts to cobble together, through hindsight, only certain elements and limitations found in the Leighton patents.  As to the critical claim issues in dispute, Oberthur never compares the claim language to the prior art.  Instead, Oberthur attempts to sidestep the required obviousness analysis by erroneously relying exclusively upon an amendment made in the prosecution history of one of the patents.  Thereafter, Oberthur limits its focus to a single limitation for all of the patents, increased pressure during a cooling cycle, even though the four patents at issue here

contain numerous claim elements. Oberthur's argument improperly reads important limitations out of the invalidity process.

Moreover, Oberthur completely fails to provide testimony of one skilled in the art for the majority of references cited, thus failing as a matter of law to present even a cognizable argument of obviousness. With regard to the two declarations submitted by Oberthur relating to the Oakwood brochures, the subsequent depositions of the declarants, Mr. Smith and Mr. Mosteller, raised serious issues regarding the competency of their declarations and, at a minimum, created numerous disputed issues of material fact. In fact, the Oakwood references actually teach away from the Leighton inventions. At a minimum, questions of fact exist as to what the prior art discloses and how a person of ordinary skill would interpret it.

Instead of attempting to explain how the cited prior art suggests, teaches or motivates a person of ordinary skill in the art to combine the prior art in the manner claimed, Oberthur provides a lengthy claim chart, prepared by one of its attorneys, piling up prior art without explaining why or how such references would be combined. The vast majority of the references cited by Oberthur in its claim chart, however, were already considered by the PTO in granting the Leighton patents.

## II.    THE LEGAL STANDARD FOR SUMMARY JUDGMENT OF INVALIDITY

A patent is presumed valid, and the burden of establishing invalidity as to any claim of a patent rests upon the party asserting such invalidity. 35 U.S.C. § 282. The presumption of validity may only be overcome by clear and convincing evidence. *MDS Assocs., Ltd. P'ship v. United States*, 37 Fed. Cl. 611, 624 (1997). The standard of clear and convincing evidence "has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Id.*

As a result of the presumption of validity and the high burden for defeating this presumption, summary judgment must be denied whenever there is a genuine issue of material fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

### A.    Obviousness (35 U.S.C. § 103)

Oberthur contends that it is entitled to summary judgment because every claim in the asserted patents are obvious. Such a showing, however, requires actual evidence that it would have been obvious to one skilled in the art to modify the teachings of a reference or combine the teachings of more than one reference to accomplish the claimed invention. *In re Gartside*, 203 F.3d 1305, 1319 (Fed. Cir. 2000).

Obviousness is a question of law based upon underlying factual inquiries, including: 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) the objective indicia of nonobviousness (or so called "secondary considerations"), including the failure of others, unexpected benefits, copying and commercial success. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 694 (1966); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000). If a genuine factual dispute exists on any of the above issues, including any secondary consideration, summary judgment is not appropriate. *Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998).

When obviousness is based on the teachings of multiple prior art references, the movant must also establish some "teaching, suggestion, or motivation" that would have led a person of ordinary skill in the art to combine the relevant prior art teachings in the manner claimed. *In re*

*Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998); *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1359-60 (Fed. Cir. 1999). "Our case law makes clear that the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references." *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999). Merely "combining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability—the essence of hindsight." *Id.*; *see also In re Kotzab*, 217 F.3d 1365, 1371 (Fed. Cir. 2000). The invention must be considered as a whole without the benefit of hindsight, and the claims must be considered in their entirety. *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988) ("One cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention.").

"The grant of summary judgment of invalidity for obviousness must be done on a claim by claim basis." *Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1384 (Fed. Cir. 2004). Finally, any obviousness analysis must be conducted at "the time the invention was made." *Uniroyal Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (Fed. Cir. 1988).[1]

## B.    Anticipation (35 U.S.C. § 102)

Anticipation is a question of fact, as is the question of whether a prior art reference inherently discloses a patent claim limitation. *Hazani v. United States Int'l Trade Comm'n*, 126 F.3d 1473, 1477 (Fed. Cir. 1997). In evaluating allegations of anticipation, the relevant question is whether a patent claim "read[s] on" the prior art. *Titanium Metals Corp. v. Banner*, 778 F.2d

---

[1] Defendants submit the declaration of one of Oberthur's employees, Barry Mosteller, in support of their Motion. Yet, at deposition Mr. Mosteller testified that he did not even begin to work on contactless cards until 2002, years after the inventions at issue. (*See* Mosteller Depo. at 77:23-78:15, attached to Ondrick Decl. as Exh. 1).

775, 781 (Fed. Cir. 1985).  All the claim limitations in the patent at issue must be, expressly or inherently, present in a single prior art reference, as understood by a person of ordinary skill in the art, at the time the patent application was filed.  *In re Omeprazole Patent Litig.*, 222 F. Supp. 2d 423, 571 (S.D.N.Y. 2002).

## III.    FACTS

In light of the fragile nature of the electronics that are placed inside of contactless smart cards, and the need for substantial temperature and pressure to laminate a plastic card, there were a number of problems facing the industry at the time of the Leighton inventions.  *See* Leighton Declaration ¶¶ 3 - 12.  These problems were well documented in a number of prior art patents. For example, U.S. Patent No. 5,804,026, (the '026 patent) entitled "Method for Producing Identity Cards, and Identity Card Produced According to that Method," filed just a few months before the earliest Leighton patent, describes with specificity the problems facing the smart card industry:

> In the case of such chip cards or, generally, in the case of carriers containing, among other elements, electronic or merely electric components, i.e. in the simplest of all cases a coil and/or a capacitor tuned to a specific frequency in the way of a resonant circuit, which allows the implementation of access control systems, anti-theft devices by fastening such carrier elements to goods, personal verification systems, and the like, *__production may give rise to considerable problems__*.
>
> …
>
> *__A laminating process of this type, which distinguishes itself by the action of heat and pressure, may for various reasons be found to be unsuited for embedding sensitive electronic components__*, because the latter are at least exposed to considerable forces, may suffer and even be destroyed by the laminating process, while another aspect relates to the possibility that the electronic components may show, i.e. become detectable, through the surfaces of adjacent card layers.  *__It is, therefore, undesirable for such components to contact or to be positioned directly against the adjacent layers, and this also because the components do not necessarily have a perfectly plane smooth surface, but may exhibit scores or open spaces which may give rise to undulations or to adjacent molten plastic material__*

*flowing into such open spaces, which again may have a destroying effect*.

(*See* '026 patent, col. 1, lns. 14-23 and 34-50, attached to Ondrick Decl. as Exh. 2) (emphasis added).

The earlier U.S. Patent No. 4,450,024 patent further described failed efforts to laminate microcircuits into smart cards as follows:

> *It refers to the fact that the production by means of a hot lamination technique is not possible as the IC arrangement is too greatly endangered especially by the thermal stress*....
>
> It also turned out that not only the thermal stress, but also the great mechanical stress during the laminating process can endanger the IC arrangement to the same degree, especially when local pressure peaks in the area of the arrangement. *This type of stress can break the silicon wafer and/or destroy the junctions of the crystal and the connection leads, which are endangered by the effect of the heat anyway*.

(*See* '024 patent, col. 2, lns. 25-28; 38-45, attached to Sharinn Decl. as Exh. 14) (emphasis added).

At the recent deposition of Bill Sanko, an inventor on several patents on laminating machines, who has been in the lamination business since the 1980's, Mr. Sanko testified during examination by Oberthur's counsel that:

> Q    Okay. We're going to switch gears again. Prior to 1995, are you aware of any laminators that were used to laminate plastic cards having a hard object between plastic sheets?
>
> A    I don't recall when chip cards came along. I don't know. See, the date I'm not sure of. I can't honestly tell you. I mean, somewhere along the line I became aware of the fact that they were putting chips in cards, but when that was, I don't know. I've never done it.
>
> ...They were never imbedded, they were always placed in a drilled or milled pocket, that's the way they decided to do it. I've never seen them imbedded like Keith [Leighton] does it.
> You know, I've been in I don't know how many plants, I've been in almost everyone's plant and talked to them about processes, I've

> never seen that imbedding process done.  I'm confident it was never
> done prior to Keith doing it, but that's my own opinion, I'm going on
> record as saying that.[2]

(*See* Sanko Depo. at 85:16-25, 86:5-16, attached to Ondrick Decl. as Exh. 3).

The Leighton patents directly address and offer a solution for the problems associated with embedding sensitive electronics in plastic using heat and pressure.  As the Court stated in its claim construction ruling, the Leighton patents "claim the use of a 'highly coordinated' lamination process involving heat, cooling and the application of pressure to encapsulate an electronic component...."  (Claim Construction Order at p. 2, attached to Sharinn Decl. as Exh. 5).  The use of Leighton's novel and unique lamination process, with all of its limitations and steps, eliminated the need for a non-electronic carrier, by placing the electronic element directly between plastic sheets.  Oberthur improperly excludes those limitations and steps from its analysis.

## IV.    ARGUMENT

### A.    Oberthur Cannot Establish a Prima Facie Case of Obviousness

Oberthur's memorandum presents a number of flawed arguments.  First, Oberthur contends, without support, that this Court can ignore many claim limitations because of events that purportedly occurred during the prosecution of the patents-in-suit at the United States Patent and Trademark Office ("PTO").  Second, Oberthur's entire argument is not supported by evidence of one skilled in the art.  Third, to the extent Oberthur did attempt to introduce facts through one of ordinary skill, its arguments reflect a classic hindsight and piecemeal approach routinely rejected by the courts.  Finally, numerous issues of material factual dispute prevent summary judgment.

---

[2] Mr. Sanko further testified that the lamination machines that he made and reworked could not duplicate the Leighton lamination process. (*See* Sanko Depo. at 88:4-89:16, 89:23-91:7, attached to Ondrick Decl. as Exh. 4).

**1.    Oberthur's Summary Judgment Arguments are Not Supported By Proper Evidence**

As a threshold matter, Oberthur's obviousness arguments fail because they are not adequately supported through testimony of one skilled in the art. Testimony concerning the validity of patents must, among other things, (1) come from one skilled in the art, and (2) identify each claim element, and explain in detail how each claim element is disclosed in the prior art reference. Such testimony is insufficient if it is merely conclusory. *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("Mere denials or conclusory statements are insufficient")

Oberthur has **_not_** submitted a declaration of one of ordinary skill that identifies each claim element in the four Leighton patents. Examination of the two declarations submitted by Oberthur reveals conclusory statements relating to **_select limitations_** in the Leighton patents. The declarants provide virtually no analysis on an element by element basis. While Oberthur has presented a claim chart at Appendix A to its moving papers, this was prepared by its attorneys and lacks support from one of ordinary skill. Moreover, the cited references do not disclose the presence of each element. Beyond this obvious evidentiary defect, Oberthur's conclusory declarations also fail to consider the Court's claim construction, fail to describe any motivation to combine references, and are wholly silent on secondary considerations such as the long-felt need for Leighton's inventions or failed attempts of others.

**2.    Oberthur's Claim Chart is Inadmissible**

As described above, Oberthur's claim chart is inadmissible because it was not created or supported by testimony of one of ordinary skill. The chart is also substantively flawed. For example, Oberthur's chart relies on eight different pieces of prior art, yet Oberthur provides declarations that address only the two Oakwood brochures.

The Oberthur declarations are deficient on other grounds. They fail to clearly describe the operative steps of each and every claim at issue, and they certainly fail to disclose **_how_** those operative steps are performed or described in the cited prior art. This is a fundamental and incurable failing.

<strong>3.    Oberthur's Attempts To Read Several Elements and Limitations Out of the Leighton Patents Are Contrary To the Established Legal Test For Assessing Obviousness</strong>

Oberthur foregoes the required element-by-element test and creates a freshly minted argument that the prosecution history of these patents somehow makes only two elements relevant for the purposes of invalidity analysis. (*See* Oberthur Memorandum, pp. 16-17). Oberthur's argument oversimplifies the invalidity test and is incorrect as a matter of law.

Oberthur argues that the inventiveness of Leighton's patents is limited to two features: (1) the absence of a non-electric carrier; and (2) the "greater than 10% limitation." (*See* Oberthur Memorandum, pp. 16-17). From this faulty assumption, Oberthur condenses its summary judgment argument to just these elements. *Id.* Oberthur's argument ignores the fundamental requirement that "invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). An obviousness inquiry similarly requires, among other things, that there be a "reason, suggestion, or motivation" in the prior art that would lead one of ordinary skill in the art to combine the references in a way to encompass each and every limitation of the patents-in-suit.

*Id.* at 1353. Neither test permits a summary judgment movant to read numerous limitations out of the required analysis by citation to the prosecution history, as Oberthur has done here.[3]

Oberthur appears to argue that prosecution history estoppel somehow precludes Leighton from arguing that the methods claimed in the Leighton patents were patentable for any reason other than the "absence of non-electronic carrier" and the "greater than 10% limitations," even though Leighton presented the PTO with other substantial, well-founded obviousness arguments during the prosecution of the patents in suit. Not only is does this unprecedented argument find no support in the law, but Leighton has never argued or conceded the patentability of its lamination processes depended solely on the two elements identified by Oberthur.

Leighton has consistently distinguished his processes from the prior art based on the entirety of the claims and limitations, which include the heat/pressure cycle not previously contemplated. For example, during the prosecution of the '367 patent Leighton argued that the lamination process was patentable because nothing in the prior art disclosed or suggested placing the card assembly into the press and "then heating the press and assembly under minimal pressure as does [Leighton's] invention." ('367 Prosecution History, February 15, 2002 Remarks to Office Action, pp. OCS_C_045468 and 045469, attached to Sharinn Decl. as Exh. 7).

Leighton's amendments during the prosecution of his patents do not result in a disavowal of claim scope. The Federal Circuit has long recognized that an Examiner's Statement of Reasons for Allowance "will not necessarily limit a claim." *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003). Consequently, an applicant's silence

---

[3] Oberthur brazenly describes its improper legal analysis on page 17 of its Memorandum, indicating that "for sake of brevity" it would "not provide a detailed narrative proving the invalidity of all of the asserted claims."

regarding statements made by the examiner, without more, "do not amount to a clear disavowal of claim scope." *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) (internal quotations omitted). "A patentee is not required to fight tooth and nail every possible adverse thought a patent examiner commits to paper"; it is enough to point out one argument to overcome a rejection and sustain patentability. *Torpharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003).

In short, Oberthur's attempt to read many claim limitations out of the invalidity analysis contradicts the entire body of law on invalidity. "The test of obviousness *vel non* is statutory. It requires that one compare the claim's 'subject matter as a whole' with the prior art 'to which said subject matter pertains.'" *In re Brouwer*, 77 F.3d 422, 425 (Fed. Cir. 1996). Oberthur's failure to perform this analysis and the other analysis contemplated in *Graham*, including the secondary considerations, mandates denial of its motion.

### 4.    Oberthur's Hindsight Analysis Is Completely Improper

Oberthur asks the Court to accept the piecemeal hindsight analysis previously denounced by the Federal Circuit. The Federal Circuit has long recognized that "***virtually all [inventions] are combinations of old elements***." *Yamanouchi*, 231 F.3d at 1343 (emphasis added). If the "identification of each claimed element in the prior art were sufficient to negate patentability, very few patents would ever issue." *Id.* Relying upon voluminous unrelated prior art references is simply not enough to establish a prima facie case that a patent is invalid because of obviousness.

Oberthur's memorandum illustrates what Courts have long held not to be a sufficient basis for invalidating claims for obviousness, a hindsight and piecemeal approach. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 885-87 (Fed. Cir. 1988). "In determining whether such a suggestion can fairly be gleaned from the prior art, the full field of the invention

must be considered; for the person of ordinary skill is charged with the knowledge of the entire body of technological literature, ***including that which might lead away from the claimed invention***." *In re Dow Chem. Co.*, 837 F.2d 469, 472 (Fed Cir. 1988) (emphasis added).

Oberthur erroneously relies almost exclusively on the prosecution history of the '367 as discussed above. Oberthur's argument is flawed and legally impermissible, however, because amending a claim may limit the scope of the claim for purposes of infringement for later arguing equivalents, however it has absolutely no impact on the validity of earlier filed and issued patents, or the validity of the '367 patent.

Oberthur's reliance upon the Oakwood laminating machine brochures to support either obviousness or anticipation is puzzling, since the Oakwood references ***teach away*** from the novelty of Leighton's inventions. The Oakwood references teach the application of encapsulating pressure ***before*** the application of temperature. (*See* Leighton Decl. ¶¶ 11-12). This was precisely the process described that caused overpressure that destroyed electronics. (*See* Leighton Decl. ¶¶11-12). At the recent deposition of Oberthur's most knowledgeable designee on November 17, 2005, Mr. Yann Limelette, testified to the problems created by a lamination process such as the one proposed by Oakwood. (*See* Limelette Depo. at 75:13-77:7, 100:18-101:11, 123:8-125:9, 170:17-171:19, attached to Ondrick Decl. as Exh. 5).

Oberthur has not shown ***how*** the Oakwood equipment could be used to manufacture contactless smart cards with electronic elements using the methods described in the Leighton patents.

### 5.    Oberthur Fails to Provide Any Evidence Of Motivation To Combine References

When obviousness is based on multiple prior art references, the movant must establish some "teaching, suggestion, or motivation" that would have led a person of ordinary skill in the

art, at the time the invention was made, to combine the relevant prior art teachings in the manner claimed. *Rouffet*, 149 F.3d at 1355; *Tec Air*, 192 F.3d at 1359-60. "Our case law makes clear that the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references." *Dembiczak*, 175 F.3d at 999.

Oberthur's papers fail to cite clear and particular evidence *__from the prior art__* showing why the cited references would be combined. Perhaps Oberthur's silence can be attributed to the fact that one skilled in the art would not have been motivated to combine the prior art cited by Oberthur because the prior art led away from the methods addressed in the claims of Leighton's patents. For example, the '026 patent shows that increased pressure during the first heating cycle would damage the electronic element. (*See* '026 patent, col. 1, lns. 14-50, attached to Ondrick Decl. as Exh. 2). Leighton solved this problem by going against the prior art and successfully inventing a method for laminating a contactless smart card.

Merely "combining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability—the essence of hindsight." *Dembiczak*, 175 F.3d at 998-99; *see also Kotzab,* 217 F.3d at 1371 (Particular findings must be made as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed.).

In *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120 (Fed. Cir. 2000), the Federal·Circuit stated:

> *__A motivation to combine must be shown through evidence__*. "This showing must be *__clear and particular__*, and broad conclusory statements about the teachings of multiple references, standing alone, are not 'evidence.'" However, "the suggestion to combine

need not be express and 'may come from the prior art, as filtered through the knowledge of one skilled in the art."

*Id.* at 1125 (emphasis added) (*quoting Motorola, Inc., v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997)). Oberthur's moving papers fail to consider the full field of the invention and contain no actual evidence of a motivation to combine, instead rely on unsupported speculation such as how the industry would interpret and implement a naked caption to a graph. (*See* Leighton Mem. p. 23). This is not a clear and particular showing of a motivation to combine.

Oberthur appears to argue that one of ordinary skill would have been motivated to combine by knowledge of the smart card industry and developments therein. Skill level alone, however, will rarely be enough to demonstrate obviousness. *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308 (Fed. Cir. 1999). "[U]nable ... to point to any specific teaching or suggestion for making [the requisite] combination," the accused infringer "instead relies on what it presumes is the level of knowledge of one of ordinary skill in the art at the time of the invention to supply the missing suggestion to combine." *Id.* at 1324. "Rarely, however, will the skill in the art component operate to supply missing knowledge or prior art to reach an obviousness judgment." *Id.*; *see also Ecolochem, Inc. v. Southern California Edison Co.*, 227 F.3d 1361, 1374 (Fed. Cir. 2000) ("The absence of a convincing discussion of the specific sources of the motivation to combine the prior art references, particularly in light of the strength of prior art teaching away from the use of [a cited prior art reference], is a critical omission in the district court's obviousness analysis....").

In the final analysis, Oberthur's Memorandum lacks the necessary evidence of the "teaching, suggestion, or motivation" that would have led a person of ordinary skill to combine the relevant prior art teachings in the manner claimed. *Rouffet*, 149 F.3d at 1355.

**B.    The Prior Art Cited By Oberthur Does Not Disclose Heating Said Core for a First Period of Time and Applying Encapsulating Pressure for a Second Period of Time To Encapsulate the Electronic Element**

The Court's claim construction ruling notes the following when construing the meaning of sequential terms such as first, second, etc.: "[t]he context of these terms in the patents in suit makes it abundantly clear that the terms are used to denote the relative order of steps – that is, their order vis-à-vis each other." (*See* Claim Construction Order p. 37, attached to Sharinn Decl. as Exh. 5). With this construction in mind, the Leighton patents require in the claims that the core be heated "for a first period of time" ***before*** the pressure used to encapsulate the electronic element is applied for "a second period of time." (*See, e.g.*, '207 patent, claim 1, col. 6, lns. 18-40, attached to Sharinn Decl. as Exh. 1).

The prior art cited in Oberthur's claim chart does not disclose this process, let alone disclose this process being used in conjunction with the other required elements. In the cited prior art, there is no indication that any pressure applied before or concurrent with the temperature is minimal, or anything other than the same pressure to encapsulate. Oberthur cites the '024 patent, the Oakwood brochures, and the '214 patent as satisfying this element of the Leighton method. (*See* Oberthur claim chart, pp. A3-A4). Each of these pieces of prior art teaches the application of pressure to encapsulate ***concurrent with*** or ***before*** the core is heated.

The '024 patent claims disclose that the carrier containing the integrated circuit is exposed to pressure at the same time it is being heated. (*See* '024 patent, claim 1, col. 6, ln. 53 – col. 7, ln. 8, attached to Sharinn Decl. As Exh. 14). The electronic element is encapsulated by the concurrent application of heat and pressure. In contrast, the Leighton patents require an electronic element (in the absence of a non-electronic carrier) to be encapsulated when a first pressure is applied to the core for ***a second period of time***, following a heating phase which occurs during ***a first period of time***.

The Oakwood references suffer from the same infirmity – both brochures show a lamination process where encapsulation pressure is applied to the PVC **_before_** the core is heated for a "first period of time."  This is clearly demonstrated in the "Typcial Lamination Cycle" diagram provided with both brochures and on page 21 of Oberthur's opening Memorandum.  For further confirmation see also the Deposition of Richard Smith (Oakwood's founder) at pages 59:16-60:2; and 61:20-24, attached to Ondrick Decl. as Exh. 6.  The Oakwood references therefore do not suggest heating the plastic during a first period of time and applying pressure to encapsulate during a second period of time.  Instead, those references teach precisely the opposite: applying pressure first and then applying heat to encapsulate during a second period of time.

Finally, the '214 Japanese patent (attached to Sharinn Decl. as Exh. 6) discloses only a high level description of a "thin-type contactless IC card."  The patent does not discuss or disclose the precise temperature and pressure cycles that should be employed to construct such a card.  It certainly does not disclose a lamination method that includes heating the card for a first period of time and then applying pressure for a second period of time to encapsulate the circuit.

Oberthur has failed to produce any reference showing the existence of this crucial limitation (and additionally, the motivation to combine this limitation with the other required limitations), which is common to every Leighton patent.

Oberthur's claim chart is inadmissible for the reasons discussed above and, beyond that, it only tells part of the story.  Leighton attaches hereto as Appendix A claim charts that show (in green and red) numerous elements and limitations in the patent claims not disclosed in the Oakwood brochures.  We analyze only the Oakwood brochures because the other references in Oberthur's chart were not supported by testimony of one of ordinary skill, and in fact do not

contain the claimed limitations, they are fatally deficient.  At the very least, Leighton's claim

chart creates further material issues warranting denial of Oberthur's motion.

### C.     None of the References Cited by Oberthur are Enabling

As set forth in the Court's Claim Construction decision, the Leighton Patents:

> claim the use of a "highly coordinated" lamination process
> involving heat, cooling and the application of pressure to
> encapsulate an electronic component that is essential to signal
> transmission between two plastic sheets to form contactless and
> dual function smart cards.  The Patents allegedly improve over the
> prior art by eliminating the need to create a protective barrier
> around the embedded electronic element, thereby uncomplicating
> the manufacturing process.  Plaintiff's process also produces a card
> with a surface smooth enough to receive dye sublimation printing.

(Claim Construction Order p. 2, attached to Sharinn Decl. as Exh. 5).

Consequently, in order to "read on" the elements and limitations described in the

lamination process outlined in the Leighton patents claims, the prior art would necessarily have

to enable one of skill in the art to embed an electronic element without the protection of some

type of protective barrier.  *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358 (Fed. Cir. 1998).

"That prior art patents may have described failed attempts or attempts that used different

elements is not enough.  The prior art must be enabling." *Id.* at 1365.

Cumulatively or individually, the references cited by Oberthur are not enabling.  They do

not provide sufficient information to enable one skilled in the art to make and/or use a lamination

device as described in the Leighton patents.  (*See* Leighton Response to Oberthur Claim Chart.)

### The Oakwood Brochures

Mssrs. Mosteller, Limelette and Smith all testified that there were overpressure problems

and excessive damage done to chips when companies attempted to laminate contactless cards

using non-weight compensated lamination machinery.  (*See* Mosteller Depo. at 35:9-36:13;

Limelette Depo. at 75:21-77:7; Smith Depo. at 41:22-25, 45:1-20, attached to Ondrick Decl. as

Exhs. 7, 5 and 8, respectively). At his deposition, Mr. Limelette also explained the significance of weight compensating, or counterbalanced lamination machinery. (*See* Limelette Depo. at 72:1-77:7, attached to Ondrick Decl. as Exh. 5). The Oakwood equipment is non-weight compensating. Thus, if one of ordinary skill attempted to use the Leighton process to manufacture contactless smart cards with the non-weight compensating Oakwood lamination equipment, the electronic elements would likely have been destroyed or damaged during the process. (*See* Leighton Decl. ¶12).

Part of the solution to this problem also includes using increased pressure during the cooling cycle. The '026 patent fails to teach this limitation and the Oakwood brochures fail to disclose how this could be accomplished. Mr. Mosteller testified that it was "basic knowledge" to use increased pressure during a cooling cycle. (*See* Mosteller Depo. at 93:19-23, 93:25-94:5, 94:7, attached to Ondrick Decl. as Exh. 9). Basic knowledge, however, is not enough to establish invalidity. *In re Zurko*, 258 F.3d 1379, 1385 (Fed. Cir. 2001) (refusing to invalidate claims of patent because "[t]his assessment of basic knowledge and common sense was not based on any evidence in the record and, therefore, lacks substantial evidence support").

In sum, Oberthur has filed to demonstrate *how* one of ordinary skill could overcome the known problems of laminating electronic elements directly between two plastic sheets, even if the Leighton process was somehow disclosed in different pieces of prior art.

### D. The Testimony of Oberthur's Witnesses Creates Material Issues of Factual Dispute

The Federal Circuit has made clear that "[f]or summary determination to be proper, there must be no genuine dispute whether the limitations of the claimed invention are disclosed, either explicitly or inherently, by an allegedly anticipating prior art reference." *Hazani*, 126 F.3d at 1477. Similarly, questions of fact regarding the scope and content of the prior art may not be

resolved on summary judgment, as this determination is reserved for the fact-finder. *Scanner*

*Techs. Corp. v. ICOS Vision Sys. Corp.*, 253 F. Supp. 2d 624, 641 (S.D.N.Y. 2003).

Here, there are genuine questions of fact regarding the scope and content of the

references relied upon by Oberthur in its moving papers. For example, Mr. Mosteller, an

Oberthur employee who supplied a declaration in support of Oberthur's motion, disagreed in

deposition with Mr. Richard Smith, a founder of Oakwood who supplied Oberthur's other

declaration, regarding the protective attributes of the five layers of Oakwood's cards:[4]

| | |
|---|---|
| Q: | And each one of the layers would have some protective effect on the coils during the lamination process, right? |
| Mr. Gasparo: | Objection |
| A: | No. |
| Q: | Were you aware that Mr. Smith, the founder of Oakwood, was deposed in this case last week? |
| A: | No. I don't believe, no. |
| Q: | And if Mr. Smith testified as founder of Oakwood that each of the layers shown here on this card provided some type of protective affect during the lamination process, would you have reason to disagree with his testimony? |
| Mr. Gasparo: | Objection |
| A: | ***I would have a difference of opinion, which I'd like to discuss with him***. |

(Mosteller Dep. at 53:17-54:9, attached to Ondrick Decl. as Exh. 11) (emphasis added).

This is just one example of the disputes created by the testimony of Messrs. Smith and

Mosteller. Mr. Smith changed his own testimony on cross-examination by Oberthur's counsel,

flip-flopping his position regarding the existence of certain limitations in the prior art. (*See*

*generally* Smith Depo. at 100:7-107:21, attached to Ondrick Decl. as Exh. 12). Conflicts in the

evidence on a factual issue, including dueling statements of one of ordinary skill in the art, may

---

[4] *See* Smith Depo. at 82:23-83:16, 88:3-90:7, attached to Ondrick Decl. as Exh. 10. This distinction is important because the Court has construed a "non-electronic carrier" to be "a device that holds an electronic element to ***protect*** it from physical damage during lamination." (Claim Construction Order p. 25, attached to Sharinn Decl. as Exh. 5).

not be resolved on summary judgment. *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *Scanner Techs.*, 253 F. Supp. 2d at 641.

**E.    Oberthur Fails to Provide Any Discussion of Secondary Considerations**

It is well established that summary adjudication is improper, even if a *prima facie* showing of obviousness exists, ***if there is a genuine disputed fact as to the existence and probative value of any secondary consideration***. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556-57 (Fed. Cir. 1985); *Joslyn Corp. v. RTE Corp.*, 684 F. Supp. 967, 972 (N.D. Ill. 1988). Oberthur's Motion fails to provide any discussion or evidence whatsoever regarding secondary considerations. As set forth by Leighton in this Opposition and the related filings, the secondary considerations here squarely support a finding of non-obviousness.

The "objective indicia of non-obviousness," referred to as secondary considerations, include, among other things, (1) commercial success; 2) copying; (3) long-felt, but unresolved need; (4) the failure of others; (5) unexpected result created by claimed inventions; (6) unexpected properties of the claimed inventions; and (7) skepticism of skilled artisans before the invention. *Graham*, 383 U.S. at 17-18, 86 S. Ct. at 694. Although they are "but a part of the 'totality of the evidence' that is used to reach the ultimate conclusion of obviousness," *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997) (citations omitted), these secondary considerations are by no means secondary in importance. To the contrary, they "can constitute 'highly probative, objective criteria fully capable of serving as a foundation for the legal conclusion of unobviousness.'" *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 895-96 (Fed. Cir. 1984) (citations omitted). More than that, "'secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.'" *Ruiz v. A.B. Chance*

*Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)).

### 1.    Unexpected Results/Skepticism

Recognition of need, and difficulties encountered by those skilled in the art "are classical indicia of nonobviousness." *Dow Chem. Co.,* 837 F.2d at 472.  The skepticism of skilled artisans about the invention also lends great weight towards a finding of nonobviousness.  *See, e.g., Ruiz*, 234 F.3d at 668 (The patent owner "presented testimony that Rupiper, one of the inventors of the prior art, had expressed skepticism that [the patent owner's] prototype model offered advantages over the concrete haunch method.  'Proceeding contrary to the accepted wisdom … is strong evidence of unobviousness.'") (emphasis added) (*quoting In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986)); *see also Burlington Indus., Inc. v. Quigg*, 822 F.2d 1581, 1582-83 (Fed. Cir. 1987) (A prima facie case of obviousness based on the prior art was rebutted by testimonial evidence that the invention met with initial incredulity and skepticism by experts.).

Here, the undisputed evidence of record indicates that the prior art led away from Leighton's idea of employing the claimed methodology for embedding an electronic element in the absence of an electronic carrier.  As discussed above, the '024 and '026 prior art patents clearly discuss the recognized problems associated with embedding an electronic element directly between two plastic sheets.  This is precisely why it would ***not*** have been obvious to combine the references cited by Oberthur.  Those skilled in the art would not have done this because it would have led to the manufacture of defective cards.  The Leighton patents solved the overpressure problem by going against the conventional wisdom of the prior art and successfully devising a pressure/temperature lamination process for electronic elements.

This factor further demonstrates that Oberthur has not met its substantial burden of demonstrating obviousness by clear and convincing evidence. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349-50 (Fed. Cir. 2000) (If one piece of prior art teaches away from an aspect of the claimed invention, "that finding alone can defeat [accused infringer's] obviousness claim…. A reference will teach away if it suggests that the line of development is unlikely to be productive of the result sought by the [patentee].").

Indeed, the '026 patent, filed a few months before Leighton's earliest '207 patent, provides explicit evidence of "skepticism in the art" surrounding Leighton's invention, stating that the type of lamination process claimed by the Leighton patents ***"may for various reasons be found to be unsuited for embedding sensitive electronic components***, because the latter are at least exposed to considerable forces." (*See* '026 patent, col. 1, lns. 36-39, attached to Ondrick Decl. as Exh. 2) (emphasis added).

The '026 patent is credible and unbiased evidence that Leighton proceeded contrary to the accepted wisdom. "Proceed[ing] contrary to the accepted wisdom … is 'strong evidence' of unobviousness." *Hedges*, 783 F.2d at 1041 (citations omitted).

### 2.    Long-felt Need/Failure of Other Invent

As set forth above regarding the '026 patent, as well as in the Leighton Declaration regarding Mr. Leighton's experience at Motorola, there were failures in electronics prior to the patents. "Recognition of need, and difficulties encountered by those skilled in the field, are classical indicia of unobviousness." *Dow Chem. Co*, 837 F.2d at 472 (emphasis added). In *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573 (Fed. Cir. 1997), the district court erred in disregarding objective evidence of nonobviousness in assessing the validity of the patent-in-suit, which claimed a dialysis system with recalibrating sensors to measure accurately

the impurities removed from a patient's blood. "[O]thers in this market had tried to solve the need for improved accuracy of the ultrafiltration monitors.... [T]hose skilled in the art tried numerous, ultimately unsuccessful, solutions – improving the electronics, improving the flowmeter technology, and recalibrating before dialysis." *Id.* at 1579-80.

Although it is but one of the "secondary considerations" that must be addressed under such circumstances, the Federal Circuit has held that evidence of failed attempts by others in the industry to develop a solution to the problem solved by the patented invention is often "determinative on the issue of obviousness," because it constitutes "virtually irrefutable evidence" of nonobviousness. *Advanced Display Sys.*, 212 F.3d at 1285. Failure of others to invent is a strong argument when used against those who tried and failed to solve a problem and then adopted the solution that they are now arguing is obvious. *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 (Fed. Cir. 1994). The numerous failed attempts by Oberthur and others to develop a solution for the problem solved by Leighton thus constitutes strong evidence of nonobviousness.

### 3.    Commercial Success

Courts consider commercial success because the law presumes that market forces would have caused a company to bring the product to market sooner had it been obvious to persons skilled in the art. *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005). Commercial success is relevant to the obviousness inquiry when a causal relationship between the invention and the commercial success of the product embodying the invention can be shown. *Id.* A high degree of commercial success gives rise to the inference that others have tried and failed to find the proper resolution of an existing problem. *Id.*

Here, a January/February 2005 article for the International Card Manufacturers Association (ICMA) shows that two employees of Burkle (a leading lamination machine manufacturer) discussed the importance of using certain lamination steps in the manufacture of contactless smart cards. A copy of the article with the relevant steps highlighted is attached to the Ondrick Declaration as Exhibit 13.   These are the steps also set forth in the Leighton patents. (*See* asserted claims of Leighton patents attached to Sharinn Decl. as Exhs. 1-4. There has been a dramatic increase in the use of contactless cards in the United States for payments. See 2005 article for ICMA entitled "Contactless Payments Come to the USA," authored by Jay Wargo, Mühlbauer (a lamination equipment manufacturer). A highlighted copy of the article is attached to the Ondrick Declaration as Exhibit 14. See also highlighted Exhs. 15-17 to the Ondrick Declaration. Oberthur itself has discussed the burgeoning US market for contactless cards. See highlighted copy of Oberthur's 2004-2005 Annual Report and a November 15, 2005 Oberthur Press Release, attached to the Ondrick Declaration as Exhibits. 16 and 17, respectively. The Burkle article and Oberthur's press statements constitute strong evidence that Leighton's novel process has garnered commercial success. This is yet another factor indicating the nonobviousness of the patents-in-suit.

## V.    CONCLUSION

Oberthur has failed to meet its high burden on summary judgment of proving the obviousness of four patents by clear and convincing evidence. Oberthur's attempt to read out several limitations and elements for the claims of the Leighton patents cannot succeed and is not permitted under the law on obviousness. Oberthur has also failed to provide actual evidence of any motivation to combine the prior art it raises in its motion. Oberthur also ignores strong secondary considerations of nonobviousness such as failures of others and skepticism that Leighton's lamination process would work. Finally, Oberthur cannot resolve the many material

facts in dispute to simply piecing together numerous references without providing adequate evidentiary support from one skilled in the art or suggesting a reason to combine them. Accordingly, Leighton respectfully requests that Oberthur's Motion for Summary Judgment of Invalidity be denied.

Dated: December 7, 2005

SUTHERLAND ASBILL & BRENNAN LLP

_____/s/Robert A. Gutkin_____

By:  Robert A. Gutkin, Esq. (Pro hac vice)
     Blair M. Jacobs (Pro hac vice)
     Christina A. Ondrick (Pro hac vice)
     Attorneys for Plaintiff
     LEIGHTON TECHNOLOGIES LLC
     1275 Pennsylvania Avenue, N.W.
     Washington, DC  20004-2415
     Tel:  202-383-0751
     Fax: 202-637-3593