James David Jacobs (JJ-7351)
David Zaslowsky (DZ-5182)
Frank M. Gasparo (FG-2958)
Todd S. Sharinn (TS-0581)
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 751-5700
Attorneys for Defendant Oberthur Card Systems, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>OBERTHUR CARD SYSTEMS, S.A.,<br><br>Defendant and Counterclaim Plaintiff. | 04 Civ. 02496 (CM)(LMS) |

OBERTHUR CARD SYSTEMS, S.A.'s
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY

TABLE OF CONTENTS

Page

I. THE OAKWOOD BROCHURES ANTICIPATE SEVERAL ASSERTED CLAIMS .......... 1

A. The Claim Chart Shows Every Element .......... 2

B. Leighton's Argument Regarding a Pressure Limitation In Step (c)(i)_Is Not Supported by the Claim Language .......... 2

C. The Claim Chart Did Not Have to be Prepared by a Person Skilled in the Art .......... 6

D. The Prior Art Is "Enabled" .......... 7

II. ALL REMAINING ASSERTED CLAIMS ARE OBVIOUS OVER THE PRIOR ART .......... 10

A. Leighton's General Arguments Are Without Merit .......... 11

1. Plaintiff Misapplies the "Motivation to Combine" Concept .......... 11

2. Oberthur Does Not Read Out Any Limitations .......... 13

3. There Is No Evidence Of "Hindsight" .......... 14

B. The Secondary Considerations Do Not Create Any Genuine Issue of Material Fact .......... 14

III. CONCLUSION .......... 17

TABLE OF AUTHORITIES

**CASES**

***B.F. Goodrich Co. v. Aircraft Braking Sys. Co.*, 72 F.3d 1577, 1582-83 (Fed. Cir. 1996) .......... 13**

***Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.* 246 F.3d 1368, 1379 (Fed. Cir. 2001) .......... 8**

***Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120 (Fed. Cir. 2000) .......... 11, 16**

***Commark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) .......... 6**

***Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed. Cir. 1991) .......... 14**

***Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306-07 (Fed. Cir. 2001) .......... 9**

***Kohn v. Eimer*, 265 F. 900, 902 (2d Cir. 1920) .......... 7**

***Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 35 n. 20, 63 S.Ct. 1393 (1943) .......... 16**

***Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997) .......... 11**

***Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp*, 424 F.3d 1347, 1355 (Fed. Cir. 2005) .......... 7**

***Para-Ordnance Mfg, Inc., v. SCS Importers Int'l, Inc.*, 73 F.3d 1085, 1088-89 (Fed. Cir. 1995) .......... 13**

***Prima Tek II, L.L.C. v. Polypap, S.A.R..L.*, 412 F.3d 1284, 1290 n7 (Fed. Cir. 2005) .......... 7**

***Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 73 F.3d 1568, 1573 (Fed. Cir. 1996) .......... 12**

***Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1355 (Fed. Cir. 2001) .......... 16**

**STATUTES**

**35 U.S.C. § 112 .......... 7**

**5 U.S.C. § 102 (b) .......... 1, 10**

## I. THE OAKWOOD BROCHURES ANTICIPATE SEVERAL ASSERTED CLAIMS

Plaintiff attempts to raise many legal and factual issues in its brief. It is, we believe, no accident that Plaintiff rarely distinguishes between issues that relate to anticipation and those that relate to obviousness because Plaintiff obviously hopes that if it is persuasive on any argument, the Court will deny Oberthur's motion in its entirety. However, "anticipation" and "obviousness" are distinct legal concepts and it is significant that only a portion of the issues raised by Plaintiff relate to Oberthur's argument that the Oakwood Brochures anticipate certain of the claims in the Leighton patents. (The "Anticipated Claims" are claim 20 of the '367 patent and claims 1, 6-8 and 11-15 of the '155 patent; in certain places in this memorandum we discuss claim 20 of the '367 patent as a proxy for all the others. In the claim chart annexed to this memorandum as Appendix B we note for the first time that claims 8 and 15 of the '155 patent are anticipated by the Oakwood Brochures.)

The concept of anticipation under 35 U.S.C. § 102 (b) as it relates to this case is relatively straightforward: Is there a single prior art reference in which there is found, either expressly or inherently, each of the properly construed claim limitations of the Anticipated Claims? In order for the Court to decide the anticipation issue, it must determine the following sub-issues:

> Has Oberthur shown in its claim chart that the Oakwood Brochures include, either expressly or inherently, each of the limitations of the Anticipated Claims, as this Court construed them in its Markman decision?
>
> Does the claim language support Plaintiff's newly proposed construction regarding a pressure limitation in step (c)(1)?
>
> Are the Oakwood Brochures sufficient alone to anticipate the Anticipated Claims or is it necessary for Oberthur to prove anticipation through a person of ordinary skill in the art?
>
> Are the Oakwood Brochures "enabling"?

If the Court determines these issues in Oberthur's favor, then Oberthur is entitled to summary judgment on its anticipation defense, irrespective of any of the other issues that Plaintiff raises.

**A. The Claim Chart Shows Every Element**

Oberthur submitted (annexed as Exhibit A to its first memorandum a claim chart that showed that the Oakwood Brochures included each of the limitations of claim 20 of the '367 patent and the other Anticipated Claims, as this Court construed the claim terms in its Markman decision. In opposing the motion, Plaintiff submitted its own claim chart in which it argued why it believed that certain limitations were missing from the Oakwood Brochures. Oberthur now submits (as Appendix B to this brief) a reply claim chart in which it responds to each of the points raised by Plaintiff. The reply claim chart demonstrates that the Oakwood Brochures include, either expressly or inherently, each of the properly construed claim limitations of the Anticipated Claims.

**B. Leighton's Argument Regarding a Pressure Limitation In Step (c)(i) Is Not Supported by the Claim Language**

The Oakwood Brochures are at the heart of Oberthur's arguments concerning anticipation and obviousness. Thus, the comparison of the Oakwood Brochures to the Leighton patents is the most critical issue on this motion. Interestingly, however, in its 25-page brief, Plaintiff devotes only two pages (15-16) to actually addressing the Oakwood Brochures. It is there that Plaintiff introduces its newly minted claim construction that the steps of the Leighton lamination process require a particular, but unstated, timing and sequence of pressures. We respond here to that argument and we respectfully request that, in analyzing Plaintiff's argument, the Court focus specifically on the language of the claim, and in particular limitation (c), rather than on the gloss that Plaintiff is now trying to impose.

The material language from the claim that Plaintiff discusses in its brief is as follows:

> (i) heating said core for a first period of time;
>
> (ii) applying a first pressure to said core for a second period of time such that said at least one electronic element is encapsulated by said core;

(iii) cooling said core while applying a second pressure to said core, the second pressure being at least 10% greater that the first pressure.

The diagram from the Oakwood Brochures demonstrates a card set being heated for a "first period" of time (red line). The diagram also shows the application of a "first pressure" for a "second period" of time (green line). And, the Oakwood diagram shows a second pressure that is at least 10 percent greater than the first pressure (yellow line).




In the figure in our opening brief, the red line continued across the horizontal line at the top of the diagonal. Plaintiff appears to complain that this first period of time overlaps with the second period of time. Since step (c)(i) does not state how long the first period of time lasts, it does not matter that we changed where the red line terminates.

What argument does Plaintiff make in its brief to try to get around the Oakwood Brochures? In a word, "timing." Plaintiff repeatedly uses the word "before" (with italics and underlining) in urging that the timing of certain steps is of utmost significance to its defense of this motion. Plaintiff argues that the Leighton patents are different from the Oakwood Brochures because "the Leighton patents require in the claims that the core be heated 'for a first period of time' ***before*** any pressure, other than a 'minimal' pressure, is applied for a 'second period of time'"[1] Opposition at 15 (emphasis in original). In other words, according to Plaintiff, the Leighton patents require that application of anything other than a "minimal" pressure begin only after heating the core for a "first period of time" ends. To evaluate this construction, the Court should look, as it did during the Markman hearing, to the specific language of the claims.

Indeed, the issue of the amount of pressure that can be applied early in the process was previously argued to the Court during the Markman hearing. At that time, we argued that if the Leighton patents were to achieve their purpose of avoiding damage to the electronic element, no more than minimal pressure could exist prior to the "first period of time".

> MR. J. JACOBS: You can't apply pressure before you heat the core. Otherwise, you're going to crack the sensitive electronic element.

Sharinn Supp. Decl. Ex. 1 at 100:12-14; s*ee also id.* at 104:3-6. In its Markman brief Plaintiff disagreed and argued that there was no limitation on the amount of pressure. Sharinn Supp. Decl. Ex. 2 at 20. The Court rejected our argument and, in its Markman decision, held specifically that there could be a pressure prior to the "first pressure":

> '[A] first pressure' does not necessarily mean that no pressure was applied during a prior step. While step (c)(i) does not specifically state that pressure must be applied, it does not preclude the application of pressure, either.

Sharinn Decl. Ex. 5 at 40.

Interestingly, each side is now arguing the opposite of what it argued during the Markman hearing. The difference, of course, is that we have changed our position to be consistent with the Court's holding. In contrast, Plaintiff's argument is contrary to the Court's holding and inconsistent with its prior arguments.

That is, Plaintiff is now arguing that any pressure applied prior to the "first pressure" cannot be more than "minimal". That contention is inconsistent with Plaintiff's earlier position on page 20 of Plaintiff's Markman Brief, where Plaintiff argued that the use of the term "minimal ram pressure" in certain claims does not "preclude the use of a higher pressure" in those claims that do not contain that limitation – such as during step (c)(i). Accordingly, by

---

[1] However, we do not want the Court to believe for a second that, even if the Asserted Claims contained this limitation, which they do not, they would be valid. *See, infra*, p. 17.

Plaintiff's own admission, there is nothing that precludes the application of any particular pressure during step (c)(i). And, more significant than Plaintiff's admission is the Court's holding that step (c)(i) does not preclude pressure. Furthermore, since step (c)(i) does not preclude the application of pressure, there is also no basis for precluding the application of any particular amount of pressure, including an amount that may be equal to the level of the "first pressure".

Further evidence comes from those claims in which Leighton specifically limited the pressure to be applied in the "first period." For example, as this Court noted on page 39 of its Markman decision, dependent claim 18 of the '367 patent is a "process according to claim 1, wherein the pressure on said core in step (c)(1) is less than 10 p.s.i." Sharinn Decl. Ex. 5 at 39. That is, in this particular claim, Leighton established a specific ceiling for the pressure during the "first period." Thus, under the doctrine of claim differentiation (s*ee, e.g., Karlin Technology Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999)), for those claims that do not mention a specific pressure during the first period (such as claim 20 of the '367 patent), the pressure during the first period can be at any level – including a level equal to, or even greater than, the "first pressure" that is applied during the "second period."

Looked at another way, implicit in Plaintiff's argument is that the Oakwood diagram does not anticipate because the level of "encapsulation pressure" is reached before the "second period." But if Leighton's invention required that the amount of pressure to be used prior to the "second period" be something different than the "first pressure" (encapsulation pressure), it was incumbent upon Leighton to so provide in the claims – as he did in claim 18. Thus, there is no merit to Plaintiff's argument that the Oakwood Brochures do not anticipate because the level of the so-called "encapsulation pressure" is reached before the "first period" is completed. Simply

put, nothing in claim 20 of the '367 patent prevents pressure being applied during the heating phase.

Finally, an undercurrent in all of Plaintiff's arguments is the implicit assumption that claim 20 of the '367 patent includes a limitation that encapsulation pressure must not be applied until the core sheets are sufficiently soft to permit them to flow to encapsulate the electronic element. But that limitation cannot be read into the claims simply on the basis that Plaintiff now says it is what the inventor intended. Rather, the language of the claims themselves amply demonstrate that only claim 16 of the '207 patent and claim 15 of the '155 patent, and the few claims dependent therefrom, include this limitation. Thus, under basic tenets of patent law, the limitation cannot be read into the other claims (such as claim 20 of the '367 patent) that did not include the limiting language. *See. e.g., Karlin.,* 177 F.3d at 971-72. Nor can the specifications be relied on in support of this interpretation because that would transgress the rule that limitations cannot be imported into a claim from the specifications. *See, e.g., Commark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

In sum, Plaintiff's attempt in its brief to discredit the Oakwood Brochures focuses on a comparison of the alleged timing of certain steps described in the Oakwood Brochures and in the Leighton patents. However, those arguments are based on reading into the claims certain limitations that are not included in the actual claim language of the Leighton patents and are contrary to this Court's Markman holding.

### C. <u>The Claim Chart Did Not Have to be Prepared by a Person Skilled in the Art</u>

Plaintiff argues that the Court should disregard Oberthur's claim chart because it was not offered by a person skilled in the art. *See* Opposition at 8. Plaintiff's assertion that testimony is required from one skilled in the art is simply untrue. Not only does Plaintiff fail to cite to any authority in support of such a proposition, but also Plaintiff fails to respond to or distinguish the

cases that we cited on page 16 of our moving memorandum that hold that expert testimony is not required. *See Prima Tek II, L.L.C. v. Polypap, S.A.R..L.*, 412 F.3d 1284, 1290 n7 (Fed. Cir. 2005) ("Expert testimony [as to inherent anticipation] was not required, the technology being easily understood without expert testimony").

Not only is testimony not necessary, courts have often treated it with skepticism and counseled against considering it. For example, Judge Learned Hand stated in *Kohn v. Eimer*, 265 F. 900, 902 (2d Cir. 1920):

> We have not the slightest with [sic] to minimize the vital importance of expert testimony in patent suits, or to suggest that we are not absolutely dependent upon it within its proper scope; but that scope is often altogether misapprehended, as the appellant has misapprehended it here. Specifications are written to those skilled in the art, among whom judges are not. It therefore becomes necessary, when the terminology of the art is not comprehensible to a lay person, that so much of it as is used in the specifications should be translated into colloquial language; in short, that the judge should understand what the specifications say. This is the only permissible use of expert testimony which we recognize. When the judge has understood the specifications, he cannot avoid the responsibility of deciding himself all questions of infringement and anticipation, and the testimony of experts upon these issues is inevitably a burdensome impertinence.

**D. <u>The Prior Art Is "Enabled"</u>**

Plaintiff states on page 17 of its Opposition that the prior art references would not enable one to "use a lamination device as described in the Leighton patents." The "use" standard, however, is the enablement standard under 35 U.S.C. § 112 and it is wrong for Plaintiff to ask this Court to apply that standard to a section 102 analysis. As the Federal Circuit recently stated:

> While section 112 'provides that the specification must enable one skilled in the art to 'use' the invention,' . . . 'section 102 makes no such requirement as to an anticpatory disclosure.' Significantly, we have stated that 'anticipation does not require actual performance of the suggestions in a disclosure.'

*Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp*, 424 F.3d 1347, 1355 (Fed. Cir. 2005). "[A]nticipation only requires that those suggestions be enabled to one of skill

in the art." *Id.* c*iting Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.* 246 F.3d 1368, 1379 (Fed. Cir. 2001).

Here, the Oakwood Brochures certainly suggest to a person skilled in the art how to practice the claimed invention and, indeed, provide sufficient detail to meet even the stricter section 112 test. The Oakwood Series 6 Brochure includes a separate section entitled "Simple Operation" that describes how the Oakwood laminator is used to laminate card sets: "The card sets to be laminated are inserted between stainless steel laminating plates and inserted into the machine on the laminating tray." Sharinn Decl. Ex. 10 at 3.

On the following page in the Oakwood Series 6 Brochure, the construction of one such card set is illustrated that can be laminated using this "simple operation" -- a plastic card having an "electronic element" (inductive codings or chip) placed directly between plastic sheets. Sharin Decl. Ex. 10 at 4.[2] The Oakwood Sales Brochure provides even further details on the lamination cycle through a pressure and temperature versus time diagram. The Oakwood Series 6 Brochure and the Oakwood Sales Brochure also describe and illustrate how to adjust the increased pressure during the cooling cycle by manually operating a setting control. Sharinn Decl. Ex 10 at 2.

Thus, as a general matter, the Oakwood Brochures suggest to a person skilled in the art how to practice the claimed invention and enable one skilled in the art to 'use' the invention, thus meeting both enablement tests under sections 102 and 112. Essentially, the analysis can end there, but, because Plaintiff's enablement arguments also address a specific aspect of the Oakwood laminator, Oberthur is compelled to respond to that as well.

---

[2] Leighton often repeats in its Opposition that the teachings in the Oakwood Brochures fall short because these prior art references fail to describe ***how*** the Oakwood laminator could be used to manufacture a plastic card using the process recited in the Asserted Claims. *See* Opposition at

The specific point that Plaintiff makes about the Oakwood laminator (pp. 17-18) is that it is allegedly not weight compensated. However, it is black letter law that only the claimed invention need be enabled. *See Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306-07 (Fed. Cir. 2001). Here, each of the Asserted Claims simply recites the term "laminator apparatus." The claims do not even mention, much less require, a weight compensating press. Accordingly there is no requirement that the prior art, including the Oakwood Brochures, teach this limitation.

Assuming, *arguendo*, that the claim required that a press be weight compensated, Plaintiff provides no admissible factual support that the Oakwood Series 6 press is not weight compensated. In fact, to the contrary, Bill Sanko, an individual who has been designing, selling and repairing laminators since 1977 and upon whose expertise Plaintiff relied on in its Opposition at 6, testified that a press that has a "[s]ingle opening" "essentially accomplishes the same thing" as a weight compensated press. Sharinn Supp. Decl. Ex. 3 at 62:21-63:13. Since the Oakwood laminator has a "single opening" it is, effectively, a weight compensated press.

It is also significant that the only factual statement Plaintiff makes about the non-compensating machine is the statement by Mr. Leighton that "making a card in [the Oakwood] manner was problematic in terms of obtaining a satisfactory yield." Opposition at 18 citing Leighton Decl, ¶ 12. There is, however, a huge – and legally distinguishable – difference between saying that something is not enabled and saying that it does not produce a commercially viable yield. The latter is in fact completely irrelevant to determining enablement. As the Federal Circuit recently held, "enablement does not require an inventor to meet lofty standards for success in the commercial marketplace." *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333,

---

12 and 18. However, as shown above, the Oakwood Brochures in fact show how the Oakwood laminator could be used.

1338 (Fed. Cir. 2003) (stating that because the claims of the patents "state[d] no standard of cleaning", the patents had only to "enable a person of skill in the art to make and use a system or apparatus to achieve any level of contaminant removal without undue experimentation" to be enabling).

Here, if yield was an important part of Leighton's invention, Leighton should have included a limitation such as, "a specific percentage of electronic elements that are not destroyed or damaged during the lamination process." Because the claims as actually drafted did not include any limitation regarding yield, it is improper for Plaintiff to argue that certain art is not anticipatory because it supposedly had a low yield. Thus, even if one wanted to assume that Leighton is correct in saying that the process of the Oakwood Brochures would have had a low yield, it is irrelevant. Indeed, Leighton's admission that the process of the Oakwood Brochures resulted in any yield, is an admission that it was enabled.[3]

* * * * *

In sum, Oberthur has demonstrated that the Oakwood Brochures include, either expressly or inherently, each of the properly construed claim limitations of the Anticipated Claims. There are no issues of material fact. Thus, Oberthur is entitled to summary judgment that the Anticipated Claims are invalid under 35 U.S.C. § 102 (b).

## II.ALL REMAINING ASSERTED CLAIMS ARE OBVIOUS OVER THE PRIOR ART

All of the remaining 43 Asserted Claims are obvious over the teachings of the Oakwood Brochures in combination with the teachings of other prior art. As previously noted, the analysis concerning anticipation is different from the analysis concerning obviousness. Yet, in the apparent hope that the Court will meld the two, Plaintiff fails to distinguish between these two

analyses. We implore the Court to keep the analyses separate. As just one example, Plaintiff sprinkles throughout its obviousness contentions its timing argument related to "before," but, because we already responded to that in Point I, we will not respond again here. Furthermore, because we already demonstrated in Point I that the Oakwood Brochures anticipate claim 20 of the '367 patent and the other Anticipated Claims, none of the arguments relating to obviousness in any way affect that conclusion.

**A. <u>Leighton's General Arguments Are Without Merit</u>**

It would appear that Plaintiff has identified every argument that a court has ever mentioned with respect to obviousness and, after quoting standard boiler plate language from case law, makes conclusory statements that each defense applies here. Lacking from Plaintiff's arguments is a showing that these issues really apply.

**1. Plaintiff Misapplies the "Motivation to Combine" Concept**

Plaintiff complains that Oberthur does not adequately address motivation to combine in its moving papers. *See* Opposition at 12-14. However, in cases like the one at hand where the motivation to combine is so self evident, an extended discussion is unnecessary. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997). As Plaintiff points out, the Federal Circuit's decision in *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120 (Fed. Cir. 2000), offers valuable insight into what is required to show a motivation to combine. *See* Opposition at 13. In that case, the Federal Circuit held that the motivation to combine can arise from the references themselves:

> The first requirement [for a determination of obviousness] is that a showing of a suggestion, teaching, or motivation to combine the prior art references is an essential evidentiary component of an obviousness holding. ***<u>This evidence may flow from the prior art references</u>***

---

[3] Plaintiff's statements on page 18 of its Opposition about the '026 patent and the testimony of Barry Mosteller are not relevant to, and do not detract in any way from, Oberthur's showing regarding enablement.

> ***themselves***, the knowledge of one of ordinary skill in the art, ***or***, in some cases, from the nature of the problem to be solved. ***However, the suggestion more often comes from the teachings of the pertinent references***.

Id. at 1124-25the (emphasis added) (internal quotations and citations omitted).

Plastic laminated contactless, dual interface and hybrid smart cards meeting ISO standards for thickness and having printed and textured surfaces existed long before Leighton's alleged invention. As set forth in Appendix C (which is a chart listing the differences between the teachings of the Oakwood Brochures and the non-anticipated Asserted Claims, together with the prior art which teach these differences), each of the non-anticipated features of the Leighton patents was commonly associated with laminated cards years before Leighton's (supposedly) novel lamination method arose.

For example, the only limitation of claim 1 of the '207 patent not found in claim 20 of the '367 patent is the "coating … said outer surfaces of said core with a layer of ink …." However, printing on plastic laminated cards was known by Leighton since at least 1970. *See, e.g.*, Sharinn Supp. Decl. Ex. 4 at 18:1-16. Indeed, it is known to all of us who used credit cards that they have printing on them.

As the Federal Circuit has held, "there is no requirement that prior art contain an express suggestion to combine known elements to achieve the claimed invention." *See Motorola*, 121 F.3d at 1472. While Leighton claims to have invented a new process for laminating cards, Leighton also carried with him the general knowledge of all those in the industry with respect to basic functionality of plastic laminated cards. Combining Leighton's new process with the existing general features was self evident. Thus, it was unnecessary to identify express motivation to combine these prior existing features with Leighton's purported invention. Motivation to combine has been found in much less compelling circumstances. *See, e.g., Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 73 F.3d 1568, 1573 (Fed. Cir. 1996); *B.F.*

*Goodrich Co. v. Aircraft Braking Sys. Co.*, 72 F.3d 1577, 1582-83 (Fed. Cir. 1996); *Para-Ordnance Mfg, Inc., v. SCS Importers Int'l, Inc.*, 73 F.3d 1085, 1088-89 (Fed. Cir. 1995);

**2. Oberthur Does Not Read Out Any Limitations**

Plaintiff argues (*e.g.*, pages 1, 9, 10, and 12)) that our obviousness argument is based only on the prosecution history of the '367 patent and the inventiveness of two features: the absence of a non-electronic carrier and the greater than 10% limitation. It is true that we believe that those two features are the critical ones. Indeed, this Court recognized the significance of the former. "Leighton's modification of the language indicated that the '207 patent—and the rest of the Patents—improved on the '024 patent by eliminating the need to specifically protect the electronic element during lamination." Sharinn Decl. Ex. 5 at 13. And the examiner left no doubt with respect to the latter when he granted the '367 patent application: "None of the prior art of record taught or suggested … to apply a second pressure … during cooling wherein the second pressure was at least 10% greater than the first pressure applied during assembly and heating." Sharinn Decl. Ex. 7 at OCS_C_045509.

Thus, we continue to believe that, as a practical matter, showing that prior art included the two specific elements that were the basis for patentability is an appropriate way to focus on the key issues on this motion. However, as Plaintiff knows well, that is not all that we did. Rather, we submitted a claim chart (annexed as Ex. B) in which we applied, with painstaking detail, against the prior art the limitations of each of these 43 claims that Plaintiff accuses Oberthur of infringing. For the same reasons as set forth above with regards to the anticipation argument, the claim chart did not have to be prepared by a person skilled in the art. And, with this brief, we are submitting a reply claim chart in which we respond to the specific points that Plaintiff raised in the claim chart it submitted with its Opposition. Oberthur's claim chart establishes that all of the limitations of the Asserted Claims are found in the prior art.

### 3. There Is No Evidence Of "Hindsight"

Another argument that Plaintiff makes (pp. 11-12) is the conclusory statement that Oberthur's obviousness analysis should be rejected because it is a "hindsight and piecemeal approach." However, Plaintiff does not explain how Oberthur's obviousness argument relies on hindsight. Moreover, Plaintiff's argument about "hindsight" is actually an argument that the Oakwood Brochures allegedly "teach away" from Leighton's invention. But that argument is, in turn, based on Plaintiff's contention about the word "before," which we explained in Point I.B., is without any merit because it assumes a claim limitation beyond those actually included in the patent.

Furthermore, the "evidence" that Plaintiff relies on for its teaching away argument is the statement by Keith Leighton in his declaration that "the [Oakwood] graph shows the type of pressure and temperature that did not work at Motorola." Leighton Decl. ¶ 11. That statement should be entitled to no weight because it is inconsistent with Leighton's deposition testimony. Throughout Leighton's deposition, when Oberthur sought to question him about the Oakwood graph, Leighton obstinately claimed that he was unable to understand the graph. *See* Sharinn Supp. Decl. Ex. 5 at 248:14-17 ("Q[:] … What don't you understand about this graph? A[:] The whole thing."); *see also id.* at 229:21-248:13, 248:17-257:9. Having prevented Oberthur from questioning him about the graph, Leighton cannot now assert that he understands the graph sufficiently to know that it shows what was allegedly attempted at Motorola.

## B. <u>The Secondary Considerations Do Not Create Any Genuine Issue of Material Fact</u>

Plaintiff's discussion of secondary considerations is another example of an effort to blur the distinction between anticipation and obviousness. But the law is clear that secondary considerations are not relevant to anticipation. *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed. Cir. 1991) ("Evidence of secondary considerations as evidence

of non-obviousness is irrelevant when the claimed invention is anticipated under section 102.") Thus, consideration of the secondary considerations issue should not in any way influence the Court's decision concerning anticipation.

In connection with the secondary considerations argument, however, there is an additional, and more subtle, effort by Plaintiff to mix anticipation and obviousness. We have already demonstrated above that the essence of Leighton's invention – which Leighton describes on page 21 of its Opposition as "going against the conventional wisdom of the prior art and successfully devising a pressure/temperature lamination process" – is anticipated by the Oakwood Brochures. Because, as just noted, secondary considerations relating to an anticipated invention are not relevant, any evidence of secondary considerations that relate to the temperature/lamination process are irrelevant. Rather, the only relevant secondary considerations are those relating to an "invention" in a claim that is not anticipated.

Plaintiff's arguments do not respect that distinction. Plaintiff's evidence of secondary considerations should be addressed to claims we allege are not antipcated, for example, claims reciting milling (claim 1 of the '099 and '367 patents), creating a textured surface (claims 2 and 3 of the '207, '099, '155 and '367 patents), and printing (claims 1, 11 and 16 of the '207, claims 1 and 12 of the '099, and claims 8 and 12 of the '367 patents), which include limitations in addition to Leighton's basic "invention" (*e.g.*, claim 20 of the '367 patent). Instead, however, all of Plaintiff's secondary consideration evidence (which we do not in any event believe is sufficient) is addressed to Leighton's basic "invention" which we allege is anticipated. Thus, assuming the Court agrees with our anticipation argument, Plaintiff fails to present any relevant secondary consideration evidence pertaining to limitations other than those recited in Leighton's basic "invention".

Moreover, even if the Court were to consider Plaintiff's evidence concerning secondary considerations, Plaintiff has failed to establish their existence. For example, the courts make clear that, on the commercial success issue, the burden is on the patent owner to prove a nexus between the claimed invention and commercial success. *See, e.g., Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 35 n. 20, 63 S.Ct. 1393 (1943); *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1355 (Fed. Cir. 2001) ("nexus was not proven between [(a)] patented feature and the [(patent owner's)] substantial sales"); *Brown & Williamson*, 229 F.3d at 1130 ("A nexus between commercial success and the claimed features is required"). Thus, in this case, it is not sufficient for Plaintiff to show that there has been commercial success in the area of contactless cards. Rather, because there are a number of ways to make contactless cards, Plaintiff must also show that there is a nexus between that alleged success and Leighton's allegedly inventive lamination process. Plaintiff has not come close to meeting that burden. Putting aside the fact that some of the evidence refers to hoped-for future success rather than actual, current commercial success,[4] none of the alleged success referred to in Plaintiff's evidence demonstrates any nexus to the Leighton lamination process.

Plaintiff also asserts that Leighton's lamination process was a novel and, thus, unexpected result. But that argument conveniently ignores that, during the prosecution of the '367 patent, the examiner rejected the same argument. The Examiner explained that:

> [UK 2,279,610 (the "610 patent") makes] clear that in order to avoid damaging the integrated circuit which was being encapsulated that one would have heated the assembly, then applied heat and pressure to the assembly in the press and then cooled the assembly while pressure was maintained.

---

[4] *See, e.g.,* Ondrick Declaration, Ex. 14 at 2 ("The benefits seem clear and the business case strong, but the end-user will ultimately determine the success of the contactless card initiative in the USA."); Ex. 15 at 1 ("[C]ontactless technology promises to add new applications and markets that will further accelerate the growth of the industry.").

Sharinn Ex. 7, Office Action mailed 5/8/02, *see* OCS_C_045487. Indeed, the '610 patent fully discloses at p. 3 that substantial pressure should not be applied to a plastic sandwich containing a printed circuit prior to the time the plastic softened:

> Preferably the pressing process comprises: closing a press until the sheet of thermoplastic protective material is in thermal contact with a heating unit; and ***applying a greater pressure once the thermoplastic material is softened. If the greater pressure were applied immediately before the thermoplastic material had time to soften than components on the printed circuit would effectively be crushed*** by the hard thermoplastic material.

'610 patent at 3 (emphasis added).

Leighton's proofs of long felt need and providing a solution where others failed suffer all the same deficiencies as its other arguments regarding secondary considerations: irrelevancy to the anticipated claims and no proof that they apply to the claims that are obvious over the prior art. Additionally, for support Plaintiff relies: on the'026 patent, a patent that neither the four examiners of the Leighton patent applications, nor Oberthur, nor even Plaintiff previously cited; Keith Leighton's admissions that he failed to solve the alleged problem while at Motorola; and Oberthur's purported "failed attempts." A single, possibly aberrant statement in a heretofore irrelevant patent, the inventor's own prior failures, and a totally unsupported claim that Oberthur experienced "failed attempts" do not establish a long felt need or failure by *others*.

## III. CONCLUSION

Oberthur respectfully requests that the Court find that each of the Asserted Claims are invalid pursuant to 35 U.S.C. § 102 or § 103 in view of the prior art.

| Dated: New York, New York<br>January 5, 2006<br><br>Of Counsel:<br>David Zaslowsky<br>Frank M. Gasparo<br>Todd S. Sharinn | BAKER & McKENZIE LLP<br>______/S/__________________<br>By: James David Jacobs (JJ-7351)<br>Attorneys for Oberthur Card Systems, S.A.<br>1114 Avenue of the Americas<br>New York, New York 10036<br>(212) 751-5700 |
|---|---|