**BAKER & MCKENZIE**

Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036, USA

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakernet.com

Docket in case # 04 cv/cr 2496
As: Settel
Date: 3/24/06

LMS/USMJ

RECEIVED
MAR 17 2006

March 16, 2006

James D. Jacobs
Tel: +1 212 891 3951
James.D.Jacobs@bakernet.com

Hon. Lisa Margaret Smith
United States Magistrate Judge
United States Courthouse
300 Quarropas Street, Room 428
White Plains, NY 10601-4150

RE:  *Leighton Technologies LLC v. Oberthur Card Systems, S.A.*, No. 04 Civ. 02496 (CM)(LMS)

Dear Judge Smith:

We represent defendant Oberthur Card Systems, S.A. ("Oberthur") in the above-referenced case. Oberthur respectfully requests that the Court order plaintiff Leighton Technologies LLC to produce communications between Keith Leighton ("Leighton") and his patent counsel and his patent counsel's work product up through today on the basis of Leighton's fraud on the United States Patent and Trademark Office ("PTO").

Oberthur does not request this relief lightly. Indeed, the relief requested does not seek the production of any communications with trial counsel or trial counsel's work product. Rather it is narrowly crafted to limit discovery to documents that could further establish that Leighton defrauded the PTO.

To justify its request Oberthur is not required to conclusively prove a fraud on the PTO. Rather, Oberthur need only make a *prima facie* showing that a fraud has occurred. *See Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 48 U.S.P.Q.2d 1817, 1823 (S.D.N.Y. 1998). Such a fraud can be shown by circumstantial evidence that Leighton (1) made a knowing, willful or intentional act of misrepresentation or omission before the PTO, (2) that was material, (3) upon which the PTO relied in deciding to issue the patent. *See id.* at *21-22. Here, the circumstances indicate that Leighton perpetrated at least two frauds on the PTO.

The first such fraud was committed in Leighton's prosecution of the '367 patent application. On December 6, 2000, and again on May 8, 2002, the PTO rejected the '367 patent application in view of Japanese patent 6-176214 ("JP '214"). *See* Office Action, mailed December 6, 2000, pp. 6-7, Ex. A; *see also* Office Action, mailed May 8, 2002, p. 4, Ex. B. In response, Leighton amended its claims to recite that the pressure during cooling was at least 10% greater than the pressure during heating (the "higher cooling pressure limitation"). Leighton assured the PTO that this limitation distinguished the '367 patent from the prior art. *See* Amendment dated October 2, 2002, pp.5-6, Ex. C. Leighton was well aware at the time of filing his patents and throughout their prosecution that to properly laminate plastic cards it had been well known in the industry for many years that the pressure during cooling should be at least 10% greater than the pressure during heating. *See* Leighton Deposition I, p. 37,

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:

**BAKER & McKENZIE**

Ex. D; see also Leighton Deposition II, pp. 181-183, Ex. E. Leighton's deceit was successful: in allowing the '367 patent application the PTO cited the higher cooling pressure limitation as the distinguishing feature and the sole reason for allowing the '367 patent. *See* Notice of Allowability, dated October 9, 2002, p. 2, Ex. F.

Additional evidence exists that Leighton recognized that increasing pressure during the cooling cycle did not provide a patentable distinction. All of Leighton's patent applications discussed in their specification and recited in substance in one or more dependent claims that the pressure during cooling was higher than the pressure during heating. *See* claims 6 and 7 of the '207, '099 and '155 patents. Nevertheless, in his first three patent applications Leighton amended *all* his claims to include the limitation of "the absence of a non-electronic carrier," a limitation nowhere previously found in any of his applications, to traverse the PTO's rejections that the claims were unpatentable over the prior art.

During the prosecution of the '367 patent application Leighton's fourth application on his lamination process, the Examiner cited JP '214, which showed a plastic laminated card having an electronic element "in the absence of" a non-electronic carrier. JP '214 left Leighton with no choice but to introduce another limitation to overcome this newly cited prior art.

Recognizing that none of the prior art *of record* taught a pressure during cooling that was higher than the pressure during heating, Leighton added the higher cooling pressure limitation. If higher pressure during cooling was truly the "invention", as Leighton asserted in the '367 application, why did Leighton not rely on that limitation to overcome the PTO's earlier rejections of his claims, rather than introducing the never before referenced "absence of a non-electronic carrier" limitation, to distinguish the prior art? The answer is that Leighton knew that the higher cooling pressure limitation was old and well known in the industry as a standard practice when making laminated plastic cards, and thus he never believed that the higher pressure during cooling added patentability. Indeed, Leighton testified that he had been using a higher cooling pressure in his manufacture of plastic laminated cards since the 1970's. *See* Exs. D and E. Leighton only resorted to the higher cooling pressure limitation in the '367 application to defraud the PTO when all else failed.

Leighton committed another fraud on the PTO during the prosecution of the '155 patent application. The '155 application was co-pending with the '367 application. Despite knowing that the '155 application was before a different examiner, Leighton failed to bring JP '214 to the attention of the '155 examiner in the four months between the PTO's rejection of the '367 application and allowance of the '155 patent. Since the claims in these co-pending applications were substantially similar, and Leighton added the allegedly inventive higher cooling pressure limitation to the '367 claims to distinguish those claims over the JP '214 patent, Leighton clearly knew of JP '214's materiality to the related '155 application. Nevertheless, Leighton never rectified this failure.

Hon. Lisa Margaret Smith
March 16, 2006

Page 2

**BAKER & McKENZIE**

Courts faced with similar situations have found a *prima facie* showing of fraud. In *Leybold-Heraeus Tech., Inc. v. Midwest Instr. Co.*, 118 F.R.D. 609, 616-617 (E.D. Wis. 1987), the court held that the defendant successfully established a *prima facie* showing of the intent element where it had presented evidence that the inventor knew of relevant prior art, but failed to disclose such relevant information to the PTO. Similarly, in *Bristol-Myers Squibb Co.*, 48 U.S.P.Q.2d at 1823 the court noted that the withholding of an article was a material withholding, and that, because there was a clear inference from the inventors' conduct that they knew or should have known of the materiality of the reference, a *prima facie* case for disclosure had been made.

Leighton did more than just withhold the relevant art: in both instances he knew that it was material. As such, our case is distinguishable from the cases that will likely be cited by Leighton's counsel. *See Vardon Golf Co. v. Karsten Manufacturing Corp.*, 213 F.R.D. 528 (N.D. Ill. 2003) (no evidence of deceptive intent offered); *Marusiak v. Adjustable Clamp Co.*, No. 01 C 6181, 2002 U.S. Dist. LEXIS 24729 (N.D. Ill. Dec. 27, 2002) (withheld information not material); *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 05-1224, 05-1228 (Fed. Cir. Feb. 27, 2006) (sufficient factual evidence to indicate that inventor would not have appreciated the relevance of the withheld material such that summary judgment would have been inappropriate); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998) (ultimately finding that there was sufficient evidence that the material was fraudulently withheld because the material was clearly relevant and the presumption was that the inventor knew of the material's relevance).

Because Oberthur has established a *prima facie* case that Leighton and his patent attorneys intentionally withheld material information from the PTO, the work product of Leighton's patent counsel, as well as all communications between Leighton and his patent counsel to date, are therefore discoverable. *See, e.g., Bristol-Myers Squibb Co.*, 48 U.S.P.Q.2d at 1823; *Leybold-Heraeus Tech., Inc.*, 118 F.R.D. at 616-617.

Yours very truly,

James David Jacobs

Enclosures
cc:   Robert Gutkin, Esq.