**Sutherland**
■ **Asbill &** ■
**Brennan** LLP

ATTORNEYS AT LAW
**BLAIR M. JACOBS**
DIRECT LINE: 202.383.0773
E-MAIL: blair.jacobs@sablaw.com

1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
202.383.0100
Fax 202.637.3593
www.sablaw.com

Docket in case # 04 cv/cr 2496
As: Letter
Date: 3/24/06   LMS/USMJ

MAR 24 2006
S.D. W.P. OF N.Y.

RECEIVE
MAR 22 2006

March 21, 2006

<u>VIA FEDERAL EXPRESS</u>

The Honorable Lisa Margaret Smith
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street, Room 428
White Plains, New York 10601-4150

      Re:    Leighton Technologies, LLC v. Oberthur Card Systems., S.A.,
               Case No. 04 Civ. 02496 (CM) (LMS)

Dear Magistrate Judge Smith:

      On behalf of Plaintiff Leighton Technologies, LLC, we write in response to Oberthur's March 16, 2006 letter, which seeks every single communication that has ever occurred between Keith Leighton and his patent lawyers, regardless of the substance of the communication. This issue is very different from the one addressed by the Court last week, involving Oberthur's decision to voluntarily waive its attorney-client communications in order to rely upon an advice of counsel defense to allegations of willfulness. Instead, Oberthur here accuses Mr. Leighton of fraud, deceit and a crime in order to pierce the attorney-client privileges and protections that exist between Mr. Leighton and the attorneys that prosecuted the patents at issue on his behalf. Not surprisingly, there is an extremely high burden of prima facie proof necessary to establish fraud or a crime before a court will even consider such a request. Oberthur has not come close to satisfying this high burden. Instead, at best, Oberthur lays out its argument for inequitable conduct in order to challenge the validity of the patents. According to case law, such a showing is clearly insufficient as a matter of law to justify piercing fundamental privileges and protections.

      Oberthur spends the vast majority of its letter walking through the problems it argues occurred in different aspects of the prosecution of the patents. These are likely areas that will be covered at trial by patent attorneys and expert testimony. What is at issue here, and what Oberthur spends little time on, is providing a prima facie case that fraud or a crime has occurred. Such a showing is necessary to warrant the extreme relief that Oberthur seeks. Unfortunately, Oberthur's letter to the Court presents a very misleading picture. As the Court is aware, and as is set forth on the face of the patents-in-suit, ***Mr. Leighton's inventions deal exclusively with the lamination of smart cards, or cards with electronics embedded in them***. Mr. Leighton never claimed to invent smart cards, and in fact he disclosed and discussed at length the difficulties encountered when pre-existing conventional processes were used in an attempt to place electronic elements into smart cards. *See, e.g.* '367 Patent, Col. 2, lns. 4-14 (discussing

The Honorable Lisa Margaret Smith
March 21, 2006
Page 2

difficulties with incorporating electronic elements into smart cards using conventional lamination techniques). So called "conventional cards" (without electronics), have been around in some form since the 1950's. Instead, Mr. Leighton invented a specific process for manufacturing smart cards that both meets industry standards and provides an aesthetically pleasing smart card that can accept printing. Mr. Leighton's invention thus has nothing to do with plastic cards that do not have electronics embedded in them. This fact undermines the entire basis for Oberthur's request.

Mr. Leighton confirmed that his invention was very different from the manufacture of conventional cards during the course of the two days of his deposition. While Mr. Leighton acknowledged that he had made conventional plastic cards since 1970, he testified that he had only discovered the process in his patents shortly before filing his provisional application in 1995. See Exhibit 1, Leighton Deposition, October 9, 2005, page 17, lines 5 – 17; and, page 141, lines 3 - 10.

***Oberthur's counsel continually asked Mr. Leighton during his depositions to ignore his invention, and to instead answer questions based on the lamination of cards that do not include electronic elements:***

> Q.    Mr. Leighton, let me ask the question again. I ask you to listen very carefully to the question. I am not in the question asking you anything about electronics. A few minutes ago, you defined what you understood a plastic laminated card to be.
> A.    Correct.
> Q.    That's all I'm asking about now. I'm not asking about electronics. I'm not asking about smart cards. I'll ask you again. In 1970, you made a plastic laminated card using the steps i, ii and iii; is that correct?
> Mr. Gutkin:    Misstates testimony.
> The Witness:    No.
> Mr. Gutkin:    Asked and answered.
> Q.    You can answer the question.
> A.    What I did back in 1970 are not the same steps that I have written out here in this document.

See Exhibit 2, *Id.* at p. 22, line 18 – p. 23, line 15.

> Q.    Is it not correct that your testimony as the cycle – the lamination that you're now describing you did in 1970 doesn't meet step three which is that the pressure during the cooling phase has to be ten percent greater than the pressure during the heating phase?
> Mr. Gutkin: Vague and ambiguous. Calls for a legal conclusion.
> BY MR. JACOBS:    You can read and answer the question.
> A.    What I'm reading here in number three of the process of 20 here, I'm heating ten percent greater, but what I'm doing here is not the same as what I did in 1970.

WO 479893.1

The Honorable Lisa Margaret Smith
March 21, 2006
Page 3

> Q. Okay, and I'm asking you, sir, the question is: When is the first time you made a plastic laminated card? Remember, plastic laminated card; I'm not talking electronics. When is the first time you made a plastic laminated card in which the pressure during the cooling phase was at least ten percent greater than the pressure during the heating phase?
> A. I couldn't recall that.

See Exhibit 3, *Id*. at p. 35, line 6 – p. 36, line 6.

Oberthur's allegations of fraud thus make no sense, as Mr. Leighton surely could not have specifically intended to defraud the patent office by not informing the examiner of something that had nothing to do with his invention.

As can be seen, Oberthur's argument regarding fraud on the patent office is misleading because ***all of the cited evidence concerning the 10% limitation deals exclusively with conventional cards, not the inventions at issue, smart cards with electronic elements***. Oberthur's counsel framed all of his questions during the depositions in a manner that specifically excluded electronic elements. There was no testimony that increasing pressure during the cooling cycle was known in the manufacture of cards that contained electronic elements. Therefore, Oberthur has not come close to meeting its burden of establishing a *prima facie* case that fraud has been committed.

Oberthur next points to Leighton's alleged failure to notify the Examiner of the co-pending '155 application that the JP '214 reference had been discovered by the examiner of the '367 patent application. Here, Oberthur's request fails because no evidence of a required ***intent*** exists. Oberthur has taken the depositions of certain of the attorneys who prosecuted these patent applications and will take depositions of the others in April. These depositions will possibly shed light on why JP '214 was not disclosed during the examination of the co-pending '155 application. Perhaps it was an administrative oversight? Perhaps one of the patent attorneys decided that the examiner of the '155 application would not find JP '214 relevant. The point here is that until these depositions are taken, no evidence regarding the ***intent*** to defraud the Patent Office exists. *In Re Richard Roe*, 168 F.3d 69, 71 (2d Cir. 1999)(prima *facie* case of fraud or crime not shown by showing that requested material "might provide evidence to facilitate the fraud or crime.")

A brief examination of the law surrounding this area confirms that Oberthur has not come close to satisfying its high burden. Indeed, this Court just recently discussed the law surrounding the crime-fraud exception in *In Re Omnicron Inc .Securities Litigation*, __ F. Supp. 2d ___, 2006 467746 (S.D.N.Y., Feb. 28, 2006). After thoroughly examining the law surrounding this question, the Court there concluded that "a more stringent test" for establishing a *prima facie* showing of fraud "would serve a number of important policy interests." *Id*. at *7.

The Court also provided crucial guidance suggesting that Oberthur's motion here is unfounded and premature:

WO 479893.1

The Honorable Lisa Margaret Smith
March 21, 2006
Page 4

> It bears further emphasis that the Fourth Circuit in *Duplan* took particular note, we have done, of the timing of the crime-fraud motion. The *Duplan* court pointed out that a motion made during discovery is not the movant's last opportunity to seek to pierce the privilege on that basis. Rather, the party will have the opportunity to do so again at the time of trial, when he may have additional evidence to proffer in support of his contentions....

*Id.*

The *In Re Omnicron* court went on to endorse Magistrate Judge Brazil's statement in *Laser Inds. Ltd. v. Reliant Technologies, Inc.*, 167 F.R.D. 417 (N.D. Cal. 1996) that courts are in a better position to rule on motions such as this *after* having seen the witnesses testify. The Court further agreed with Magistrate Judge Brazil's observation that "judges should exercise considerable caution when they are pressed during the discovery stage of complex litigation to find that a showing of crime or fraud is sufficient to justify penetrating the privilege has been made." *Id.* (quoting *Laser Industries*, 167 F.R.D. at 436).

This Court should refuse Oberthur's request for the same reasons that the *In Re Omnicron* court refused a similar request. Oberthur's request could be renewed *after* the depositions and pertinent expert witness reports have been submitted. At this point, however, Oberthur has not satisfied its burden.

This conclusion is fully supported by the case law. Indeed, the burden falls upon the party seeking discovery on this basis to prove first, a prima facie case of criminal or fraudulent conduct, and second, that the communications were made in furtherance of the fraud. *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. at 155. Thus, because Oberthur is alleging fraud on the patent office, it is Oberthur's burden to present a prima facie case of fraud "by clear and convincing evidence of a failure to disclose material information or submission of false material information **with an intent to mislead**." *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559 (Fed.Cir.1984). Oberthur's speculation and citation to irrelevant testimony does not demonstrate the requisite intent. At best, the facts and evidence that Oberthur has proffered might demonstrate some type of a failure to disclose. This does not satisfy the high of burden of showing a *prima facie* case of criminal or fraudulent conduct. *See Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528 (N.D. Ill. 2003).

The *Vardon* case reinforces the conclusion that Oberthur's speculation here falls short of demonstrating the required intent to defraud.

> Here, Karsten asserts that the jury's finding in August 2002 that Allen engaged in inequitable conduct before the Patent Office establishes a *prima facie* showing of fraud. Inequitable conduct, however, is distinguishable as a lesser offense than common law fraud, and includes types of conduct less serious than "knowing and willful" fraud. Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1069 (Fed.Cir.1998) In *Marusiak v. Adjustable Clamp Co.*, the defendant argued that plaintiff committed a fraud against the Patent Office by failing to disclose construction of his prototype in the patent application. No. 01 C 6181, 2002 WL

WO 479893.1

The Honorable Lisa Margaret Smith
March 21, 2006
Page 5

>    31886834, at *1 (N.D.Ill.Dec.27, 2002), the court <u>recognized that a finding of fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct</u>. *Id.* at *2. Furthermore, the Court determined that unless there is clear and independent evidence of deceptive intent together with a clear showing of reliance, there can be no finding of common law fraud.

*Id.* (emphasis added).

The "evidence" submitted by Oberthur here does not come close to the level of evidence submitted in *Karstan*, as the movant there had already established inequitable conduct on the Patent Office. Oberthur here seeks waiver here in hope of possibly establishing inequitable conduct. As such, the requisite *prima facie* case has not been established here, and it may not be established even if Oberthur is eventually able to convince a jury that inequitable conduct exists.

Oberthur argues that this case is different from the above-described body of law because Mr. Leighton knew that the withheld prior art was material. No evidence is offered to support this contention  Moreover, each of the cases distinguished by Oberthur in its letter actually includes the same argument that Oberthur makes here: that waiver should apply because certain materials were intentionally and knowingly withheld from the patent office. Those courts rejected this argument and found that an intent to mislead the patent office is different from an intent to not provide something to the patent office. This Court should reach the same conclusion.

Finally, the two cases that purportedly favor Oberthur's position are wholly inapposite here. Both the *Bristol Myers* and *Lybold Heraeus* cases involved situations where memoranda discussing relevant prior art existed and these facts were withheld from the patent office. Not only do no such memoranda exist here, but the allegedly withheld information has nothing to do with the invention described in the patents-in-suit.

Plaintiff Leighton respectfully requests that the Court deny Oberthur's request for waiver.

Respectfully,

*/s/ Blair M. Jacobs*  /RAG/

Blair M. Jacobs

cc: James Jacobs, Esq. (By E-mail and Federal Express)
    Robert Gutkin, Esq.

WO 479893.1