**BAKER & MCKENZIE**

Baker & McKenzie LLP
805 Third Avenue
New York, NY 10022, USA

Tel: +1 212 751 5700
Fax: +1 212 759 9133
www.bakernet.com

Docket in case # 04 CV/GR 2496
As: Letter
Date: 3/24/06     LMS/USMJ

FILED
MAR 2 4 2006
W.P.
S.D. OF N.Y.

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe & Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Düsseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South America
Bogotá
Brasilia
Buenos Aires
Calgary
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

March 22, 2006

Hon. Lisa Margaret Smith
United States Magistrate Judge
United States Courthouse
300 Quarropas Street, Room 428
White Plains, NY 10601-4150

James D. Jacobs
Tel: +1 212 891 3951
Fax: +1 212 310 1651
James.D.Jacobs@bakernet.com

Via Fax: 914-390-4135

RE: *Leighton Technologies LLC v. Oberthur Card Systems, S.A.*, No. 04 Civ. 02496 (CM)(LMS)

Dear Judge Smith:

On behalf of Oberthur Card Systems, S.A. ("Oberthur") we write in reply to the March 21, 2006 letter brief filed by Leighton Technologies, LLC ("Leighton") in opposition to Oberthur's letter brief of March 16, 2006. In its opposition letter, Leighton asks this court to deny Oberthur's request that Leighton be ordered to produce communications between Keith Leighton and his patent counsel as well as his patent counsel's work product, notwithstanding the *prima facie* case of fraud on the patent office shown by Oberthur.

Leighton argues that the discovery Oberthur seeks is premature and that a higher standard for showing a *prima facie* case of fraud applies. As support, it relies upon *In Re Omnicon Inc. Sec. Litig.*, No. 02 Civ. 4483, 2006 U.S. Dist. LEXIS 7617 (S.D.N.Y. Feb. 28, 2006). However, the *Omnicon* case is readily distinguishable. Unlike the present circumstances, where the many authorities confronting the crime-fraud exception in the context of patent prosecution have settled on a clear standard (see discussion in our moving letter), the *Omnicon* court struggled with the meaning of "probable cause" and "prima facie case" in a securities fraud case. Indeed, the court acknowledged that in other contexts the "terms 'probable cause' and 'prima facie case' have recognized meanings ...." *Id.* at 15.

The *Omnicon* court also found that, at the "relative[ly] early phase of pretrial proceeding ... before the commencement of depositions ...." (*Id.* at 14), the *Omnicon* plaintiff had failed to establish that "defendants concealed key information". *Id* at 28-29. Plaintiff's allegations that defendants' actions deviated from accepted accounting practices was also contradicted by the "actions (or inactions) of both accounting firms and the Commission". *Id* at 28. Thus, not surprisingly, the court held that "[f]or now" the record "does not clearly reflect that key facts were hidden" and permitted plaintiff to take further discovery. *Id.* at 29.

The present circumstances are strikingly different from those in *Omnicon*. Here, there is no question that "key facts were hidden." Leighton does not even dispute that JP '214 should have been cited to the PTO during the prosecution of the '155 patent application, *i.e.*, that JP '214 was material to the prosecution of that application. Indeed, when pressed during his deposition, Mark A. Watkins, Keith Leighton's patent attorney,

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:

admitted exactly that, acknowledging that JP '214 was material to the prosecution of the '155 patent application, and that he was unable to offer any explanation why JP '214 was not made of record by Leighton, him or his firm during the prosecution of the '155 patent application. *See* Exh. A, Watkins Dep. Trans. pp. 209 and 214.

Leighton suggests that the failure to bring JP '214 to the PTO's attention may have been an "oversight" and thus the requisite intent was absent. However, Leighton ignores the authorities showing that intent is inferred where the patent applicant is shown to be aware of the materiality of the non-disclosure. *See Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 48 U.S.P.Q.2d 1817, 1823 (S.D.N.Y. 1998); *Leybold-Heraeus Tech, Inc.*, 118 F.R.D. 609, 616-17 (E.D. Wis. 1987). And, as shown, Keith Leighton and his attorneys recognized the materiality of JP '214 when they amended the claims in the '367 patent application to distinguish them over JP '214.

With regard to the other fraud upon which we relied, the higher cooling pressure limitation, in substance Leighton argues that the higher cooling pressure limitation was not "material." That is, Leighton contends that the higher cooling pressure limitation was only one limitation in his claimed inventions that "deal exclusively with ... cards with electronics embedded in them" and therefore failure to disclose the then prevalent practice of a higher cooling pressure was not fraud. Leighton's March 21, 2006 letter, pp. 1, 3. This argument wrongly assumes that only a failure to disclose the entire claimed invention can be a "material" misrepresentation. That is not the law. The Federal Circuit has oft defined "materiality": "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Elk Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 31, 49 USPQ2d 1853 (Fed. Cir. 1999) (*citing Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179, 33 USPQ2d 1823 (Fed. Cir. 1995)); *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 48 USPQ2d 1321 (Fed. Cir. 1998).

Given that the sole reason the examiner allowed the '367 patent was that:

> None of the prior art of record taught or suggested that one skilled in the art at the time the invention was made to apply a second pressure upon the assembly during cooling wherein the second pressure was at least 10% greater than the first pressure applied during assembly and heating

no doubt exists that any reasonable examiner would have considered the withheld information—that a higher cooling pressure was a necessary and well known step for obtaining a smooth finish on plastic laminated cards—important in determining whether it was obvious to a person of ordinary skill in the pertinent art to use such a pressure to insure a smooth finish on plastic laminated cards that included electronics. *See* Notice of Allowability, Exh. F to Oberthur's March 16, 2006 Letter Brief. Thus, Keith Leighton's long-standing familiarity with the "higher cooling pressure limitation" and his knowledge that that limitation was the sole reason that the examiner allowed the '367 patent creates a *prima facie* case of fraud on the PTO.

**BAKER & M<sup>c</sup>KENZIE**

Indeed, this evidence, along with the evidence presented by Oberthur with respect to JP '214, is precisely the type of evidence on which the *Bristol-Myers* and *Leybold-Heraeus* courts relied. As in the present case, the party seeking discovery in those cases was able to specify disclosures that should have been presented to the patent examiner but that were in fact not revealed. Keith Leighton, like the patentees in *Bristol-Myers* and *Leybold-Heraeus*, did not fulfill his duty of candor. There is no question that these failures are *prima facie* evidence of fraud on the PTO justifying production of communications with patent counsel and patent counsel's work product.

Leighton also tries to distinguish *Bristol-Myers* and *Leybold-Heraeus*, by arguing that, to show intent to mislead, there must be some article or memorandum in which the inventor refers to the withheld information. These cases do not suggest, let alone mandate, such a requirement, and hold only that an inventor's or his or her counsel's awareness of the materiality of the withheld information will establish an intent to deceive the Patent Office. Here, as set forth above, Leighton and his patent attorneys recognized the materiality of both the higher cooling pressure limitation and the JP '214 patent. Leighton further argues that the withheld information "had nothing to do with the invention described in the patents-in-suit." The PTO records directly contradict this contention. The '367 patent was allowed by the Patent Office only after Leighton distinguished it from the prior art (including JP '214) through use of the higher cooling pressure limitation. The '155 application was allowed without this limitation because Leighton's counsel failed to cite JP '214 to the PTO. These withholdings were material, known by Leighton and his counsel to be material, and clearly relevant to the inventions described in the patents-in-suit.

For these reasons, and the reasons set out more fully in our letter brief of March 16, 2006, we respectfully request that the Court order production of this material.

Yours very truly,

*/s/ James David Jacobs/*

James David Jacobs

Enclosures

cc: Robert Gutkin, Esq.