James David Jacobs (JJ-7351)
Todd S. Sharinn (TS-0581)
Frank M. Gasparo (FG-2958)
**BAKER & McKENZIE**
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100
Attorneys for Defendant Oberthur Card Systems, S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC, ) | |
| ) | |
| Plaintiff and Counterclaim Defendant, ) | |
| ) | |
| vs. ) | 04 Civ. 02496 (CM) |
| ) | |
| OBERTHUR CARD SYSTEMS, S.A., ) | |
| ) | |
| ) | |
| ) | |
| Defendant and Counterclaim Plaintiff ) | |

---

**OBERTHUR CARD SYSTEMS, S.A.**

**MEMORANDUM IN SUPPORT OF OBJECTIONS TO THE MAGISTRATE**

**JUDGE'S ORDER PURSUANT TO FED. R. CIV. P. 72(a)**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

STANDARD OF REVIEW ............................................................................................. 3

STATEMENT OF FACTS .............................................................................................. 3

    A.    Leighton's Fraud in Connection With Procuring the '367 Patent ................... 3

    B.    Leighton's Fraud on the PTO in Connection with Procuring the '155 Patent ........................................................................................................... 8

ARGUMENT .................................................................................................................. 8

CONCLUSION ............................................................................................................. 12

TABLE OF AUTHORITIES

**CASES**

*Bristol-Myers Squibb v. Rhone-Poulenc Rorer, Inc.*, 48 U.S.P.Q. 2d, 1817 (S.D.N.Y. 1998) .......................................................................................................... 10

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ................................................ 10

*In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032 (2d Cir. 1984) ....................... 8, 9

*John Doe, Esq. v. United States*, 82 Fed. Appx. 250 (2d Cir. 2003) .................................. 8

*Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co., Inc.*, 118 F.R.D. 609 (E.D. Wis. 1987) ........................................................................................................ 9

*MacWade v. Kelly*, 230 F.R.D. 379 (S.D.N.Y. 2005) ......................................................... 3

*Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998) ............... 10

*See In Re Omnicom Group, Inc.*, 02 Civ. 4483, 2006 U.S. Dist. LEXIS 7617 (S.D.N.Y. February 27, 2006) ................................................................................... 11

*Specialty Materials, Inc. v. Pleuss-Stauffer AG*, 98 Civ. 7775, 2004 U.S. Dist. LEXIS 178 (S.D.N.Y. January 7, 2004) ................................................................. 9, 11

*Standard Oil Co. v. Montedison SpA*, 540 F.2d 611 (3rd Cir. 1976) .................................. 2

*Turzillo v. P&Z Mergentime*, 532 F.2d 1393 (D.C. Cir. 1976) ........................................... 2

**STATUTES**

28 U.S.C. §636(b)(1)(A) ....................................................................................................... 3

Fed. R. Civ. P. 72(a) ............................................................................................................ 3

Defendant Oberthur Card Systems, S.A. ("Oberthur") submits this Memorandum of Law pursuant to Fed. R. Civ. P. 72(a) in support of its objections to Magistrate Judge Smith's Order entered on March 27, 2006.

PRELIMINARY STATEMENT

The Magistrate Judge's minute order dated March 27, 2006, is clearly erroneous on the facts and held Oberthur to an incorrect standard of law.

During the prosecution of U.S. Pat. Nos. 6,514,367 ("the '367 patent") and 6,214,155 ("the 155 patent"), Keith Leighton committed two frauds on the United States Patent & Trademark Office ("PTO"). The PTO twice rejected claims in the '367 patent application as obvious due to a prior art reference – Japanese Patent 6-175214 ("JP214"). Leighton then amended the application to include a limitation that the pressure during cooling of the laminated cards was at least 10% greater than the pressure during heating (the "higher cooling pressure limitation"). The PTO issued the '367 patent as a result of this limitation. In deposition testimony, however, Keith Leighton admitted that the higher cooling pressure limitation was in use since the 1970s, that he knew this, and indeed he had been using the higher cooling pressure limitation for more than twenty years to insure that plastic laminated cards had smooth, defect free surfaces. He knew that it was an obvious extension to use that higher cooling pressure in the manufacture of plastic laminated cards that included electronic elements to insure that those cards also had smooth, defect free surfaces, yet he failed to inform the patent examiner that he used a higher pressure to manufacture commercial plastic laminated cards more than one year before the filing date of his patent.

1

The co-pending '155 patent had substantially similar claims to the '367 patent, though it was pending before a different examiner. Four months elapsed between (i) the PTO's initial rejection of the claims of the '367 patent in light of JP214 and (ii) the issuance of the '155 patent. Regardless, Leighton failed to disclose JP214 to the patent examiner during the prosecution of the '155 patent. The '155 patent would not have issued but for this omission.

Because patent prosecution is an ex parte process, one who prosecutes a patent has an uncompromising duty to act with the highest degree of candor and report all relevant facts. *Standard Oil Co. v. Montedison SpA*, 540 F.2d 611, 616 (3rd Cir. 1976); *Turzillo v. P&Z Mergentime*, 174 U.S. App. D.C. 318, 532 F.2d 1393, 1399 (D.C. Cir. 1976).

Oberthur seeks to compel disclosure from Leighton Technologies LLC ("Leighton")[1] of communications between Keith Leighton and his patent counsel, as well as the work product of the patent counsel. Based on the deposition testimony and the file histories of the patents, Oberthur has probable cause (i.e., prima facie evidence) to believe these documents were used in furtherance of frauds committed on the PTO, and are thus subject to the crime-fraud exception to the attorney-client privilege.

On March 16, 2006, Oberthur filed a motion with Magistrate Judge Smith, seeking such disclosure. On March 24, 2006, Magistrate Judge Smith denied Oberthur's motion by Order entered on March 27, 2006, stating that "defendants have not adequately established an intent to defraud by Keith Leighton on either of the two alleged frauds"

---

[1] "Leighton" is also used to refer to Keith Leighton, the inventor and an assignor to Leighton Technologies LLC of the patents-in-suit.

2

(emphasis added). Given Leighton's admissions on the one hand and the clear record that he was aware of the prior art on the other, there is probable cause to believe that the misrepresentations to the PTO were intentional. As the PTO relied on these misrepresentations in granting the patents, the Magistrate Judge clearly erred in finding that Oberthur had not shown a prima facie case that there was fraud. Furthermore, under the case law, Oberthur need not "establish" intent to defraud, but need only show a prima facie case or demonstrate probable cause to believe a fraud was committed. The Magistrate Judge's Order was therefore also contrary to law. Oberthur hereby asks the Court to set aside the Magistrate Judge's order pursuant to Fed. R. Civ. P. 72(a).

## STANDARD OF REVIEW

With respect to non-dispositive matters, a district court "shall modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. §636(b)(1)(A); *MacWade v. Kelly*, 230 F.R.D. 379, 381 (S.D.N.Y. 2005).

## STATEMENT OF FACTS

A.   Leighton's Fraud in Connection With Procuring the '367 Patent

On December 6, 2000, the PTO rejected claims 1, 4-10 and 14-17 of the '367 patent application (Application No. 09/368,846) as obvious, 35 U.S.C. 103(a), and therefore unpatentable. According to the patent examiner:

> Japanese Patent '214 taught a process for forming a smart card which included the steps of laminating with heat and pressure an assembly which included an IC chip 11 and a thin coil 12 (an antennae). The IC chip 11

3

> and antennae 12 were disposed unsupported between plastic films 14. On either side of plastic films 14 were additional plastic films 15. The assembly was disposed in a press and heat and pressure were applied in order to laminate the layers together to form the smart card. The reference to Japanese Patent '214 failed to teach that the heat and pressure laminating operation included a cooling operation while the press remained under pressure.

*See* Office Action, mailed December 6, 2000, pp.6-7. Ex. A.

The PTO rejected the application for the '367 patent again on May 8, 2002, when the application included the newly presented claim 27, on grounds of the same prior art. As set forth by the patent examiner:

> Claim 27 is rejected under 35 U.S.C. 103(a) as being unpatentable over Japanese Patent 6-176214 ... for the same reasons as expressed in paper no. 5, paragraph 14.
>
> * * *
>
> Japanese patent '214 taught a process for forming a smart card which included the steps of laminating with heat and pressure an assembly which included an IC chip 11 and a thin coil 12 (an antennae). The IC chip 11 and antennae 12 were disposed unsupported between plastic films 14. On either side of plastic films 14 were additional plastic films 15. The assembly was disposed in a press and heat and pressure were applied in order to laminate the layers together to form the smart card. The reference to Japanese Patent '214 failed to teach that the heat and pressure laminating operation included a cooling operation while the press remained under pressure.

*See* Office Action, mailed May 8, 2002, p. 4, Ex. B.

On October 2, 2002, in response to the foregoing two office actions, Leighton amended his claims to add:

> "... (iii) cooling said core while applying a second pressure to said core, *the second pressure being at least 10% greater than the first pressure ... .*"

4

*See* Amendment dated October 2, 2002, p. 2, Ex. C. The PTO relied on this amendment to grant the '367 patent. In fact, the PTO cited the higher cooling pressure limitation as the distinguishing feature and the sole reason for allowing the '367 patent to overcome the obviousness rejections. *See* Notice of Allowability, dated October 9, 2002, p.2, Ex. D.

However, <u>Keith Leighton admitted at deposition that he had been using the higher cooling pressure limitation since approximately 1970 in connection with the manufacture of plastic cards</u>:

> . . . When is the first time you made a plastic laminated card in which the pressure during the cooling phase was at least ten percent greater than the pressure during the heating phase?
>
> Mr. Gutkin: Vague and ambiguous.
>
> BY MR. JACOBS:
>
> Q    You can answer the question.
>
> A    I'm not sure what you're trying to get at here.
>
> Q    Do you understand the question?
>
> A    <u>When was the first time that I made a plastic card where I increased the pressure during the cooling cycle?</u>
>
> Q    <u>That's exactly right, by at least ten percent.</u>
>
> A    <u>I may have done that back in 1970.</u> I'm not sure. I'm not sure. Like I say, different plastic, depending upon what is printed on the sheets, required different temperatures.

*See* Leighton Deposition I, p. 37, Ex. E (emphasis added).

5

Again, at the second day of his deposition, Mr. Leighton admitted that he had been using an increased pressure during the cooling cycle since the 1980's to made plastic cards.

> Q   So, you run some tests where the pressure and the cooling is higher than the pressure in the heating, correct?
>
> A   Right.
>
> Q   And you run some other tests where the pressure in the cooling is lower than the pressure in the heating, correct?
>
> A   That's set up for failure when the pressure is lower on the cooling. That's a set-up for failure.
>
> \* \* \*
>
> A   <u>And nine times out of ten, it's going to be an increase in pressure, because as soon as you have a drop in pressure, the surface that you have on your plastic card will not be uniform.</u>  You're – you'll have a glossy card, but it will look like it's got water laying on the surface of it when it's coming out of the laminator.  <u>It will look like puddles in it, or what we call lakes in the industry.</u>
>
> Q   <u>And was that term used - - lakes, was that used back in the 1980's?</u>
>
> A   <u>Yes.  As long as I've been in there, as long as I've been making cards, trying to figure out what causes them.</u>
>
> Q   And the way, as long as you were making cards, is to get rid of the lakes is to raise the pressure in the cooling?
>
> A   I've found through my experience that what causes these is a drop in temperature during the cooling cycle.
>
> Q   Uh-huh, and <u>the cure to removing the lakes is to raise the pressure during the cooling cycle?</u>
>
> A   <u>That's correct.</u>
>
> Q   <u>And that was something that you used during the '80's?</u>
>
> A   <u>Yes.</u>

*See* Leighton Deposition II, pp.181-183, Ex. F (emphasis added).

The record could not be clearer that in October, 2002 – and indeed for at least twenty years prior thereto – Mr. Leighton had manufactured commercial plastic laminated cards with a higher cooling pressure. Nevertheless, without disclosing this prior art, which clearly suggested that a higher cooling pressure should be used to insure that plastic laminated cards with electronic elements had smooth, defect free surfaces, Leighton added the higher cooling pressure limitation to all his claims and argued to the examiner that this limitation lent patentability to is otherwise unpatentable claims. The examiner then allowed the '367 application expressly relying on the higher cooling pressure limitation. *See* Notice of Allowability, p. 2, Ex. D ("None of the prior art of record taught or suggested that one skill in the art at the time the invention was made to apply a second pressure upon the assembly during cooling wherein the second pressure was least 10% greater than the first pressure .....").

As set forth in the deposition of Leighton's patent counsel, Mark Watkins, Mr. Leighton discussed the prior art with his counsel and reviewed everything that counsel prepared:

> A    I don't have any specific recollection as to conversations that I had with Mr. Leighton, <u>but I feel certain that we would have discussed the prior art that he was aware of in the context of any work we did for him.</u>
>
> * * *
>
> A    He would provide written materials maybe which we would either - - as I said, with the provisional application, maybe we even filed it, or perhaps, you know, <u>he certainly reviewed everything that we prepared</u>.

*See* Watkin's Deposition, pp.107-108; 116, Ex. G (emphasis added).

7

  B.  Leighton's Fraud on the PTO in Connection with Procuring the '155 Patent

Leighton committed another fraud on the PTO during the prosecution of the '155 patent application. The '155 application was co-pending with the '367 application. Despite knowing that the '155 application was before a different examiner, Leighton failed to bring JP214 to the attention of the '155 examiner in the four months between the PTO's rejection of the '367 application and the allowance of the '155 patent. Since the claims in these co-pending applications were substantially similar, and Leighton added the allegedly inventive higher cooling pressure limitation to the '367 claims to distinguish those claims over the JP214 patent, Leighton clearly knew of JP214's materiality to the related '155 application. Nevertheless, Leighton never rectified this failure in the '155 application. The examiner clearly relied on this and the patent issued on April 10, 2001.

## ARGUMENT

"The crime-fraud exception applies when there is probable cause to believe that: (1) a fraud or crime has been committed; and (2) the communication in question was intended to further the fraud or crime." *John Doe, Esq. v. United States*, 82 Fed. Appx. 250, 252 (2d Cir. 2003). "It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir. 1984).

"There is no question that the crime-fraud exception embraces common-law fraud … . It is equally apparent that a deliberate decision by an applicant for a patent not to

8

disclose prior art to the Patent Office, because such disclosure would call into question the basis for issuance of the requested patent, may constitute fraud on the Patent Office, and could trigger the exception." *Specialty Materials, Inc. v. Pleuss-Stauffer AG*, 98 Civ. 7775, 2004 U.S. Dist. LEXIS 178 at *25 (S.D.N.Y. January 7, 2004) (citations omitted) (order compelling testimony of non-party attorney under crime-fraud exception to the attorney-client privilege where the defendants concealed prior art from the PTO); *see also Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co., Inc.*, 118 F.R.D. 609, 615 (E.D. Wis. 1987) ("The 'crime-fraud' exception applies when a patent has been fraudulently procured in the U.S. Patent Office.").

Some circuits require the party seeking to apply the crime-fraud exception to make a "prima facie" showing of the crime or fraud rather than simply having "probable cause" that the fraud occurred. As the Second Circuit has stated, "As a practical matter, there is little difference here between the two tests. Both require that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re Grand Jury Subpoena*, 731 F.2d at 1039 (citations omitted). As the Second Circuit further stated in that case, "[T]he fraudulent nature of the objective need not be established definitively; there need only be present a reasonable basis for believing that the objective was fraudulent." *Id.*

A showing of fraud requires proof of the following elements: (1) a representation of a material fact; (2) the falsity of that representation; (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter); (4) a justifiable reliance upon the misrepresentation by the party

9

deceived which induced him to act thereon; and (5) injury to the party deceived as a result of his reliance on the misrepresentation. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069-70 (Fed. Cir. 1998), *quoting Norton v. Curtiss*, 433 F.2d 779, 792-94 & n 12 (CCPA 1970).

Courts have applied the crime-fraud exception where the patent applicant failed to disclose prior art and such omission resulted in the issuance of the patent. *See, e.g., Specialty Minerals, Inc. v. Pleuss-Stauffer AG*, 98 Civ. 7775, 2004 U.S. Dist. LEXIS 178 (S.D.N.Y. January 7, 2004). "[P]roof of scienter required in fraud cases is often a matter of inference from circumstantial evidence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91 n.30 (1983) (internal citations omitted). As the Supreme Court has stated, "We have noted elsewhere that circumstantial evidence [of intent] is more than sufficient." *Id.*

*Bristol-Myers Squibb v. Rhone-Poulenc Rorer, Inc.*, 48 U.S.P.Q. 2d, 1817 (S.D.N.Y. 1998), *vacated on other grounds*, 48 U.S.P.Q. 2d 1823 (Fed. Cir. 1998), is a close analogy. There, the inventors had written an article that questioned the operability of the inventions claimed in the patent in suit. They also informed their patent agent that aspects of their invention were inoperable. Judge Patterson held that the inventors' and patent agent's knowledge of this information, their knowledge of its materiality, and their failure to cite it to the patent examiner created a *prima facie* case of fraud. Consequently, he ordered the withheld documents produced.

Leighton perpetrated at least two frauds on the PTO. First, Leighton failed to disclose the use of a higher cooling pressure in the prior art. Based Leighton's

10

knowledge of the materiality of this omission and his affirmative representations that the art of record did not disclose the higher cooling pressure limitation, the reasonable inference is that the misrepresentation was intentional. The PTO relied upon Leighton's representation and omissions and would not have issued the '367 patent but for them. The representation was clearly material and Leighton had a duty of candor under law to disclose all of the pertinent facts to the examiner.

Second, Leighton failed to disclose prior art reference JP214 to the PTO in the prosecution of the '155 patent application. The co-pending '155 patent had substantially similar claims to the '367 patent, though it was pending before a different examiner. Four months transpired between the PTO's initial rejection of the claims of the '367 patent in light of JP214 and the issuance of the '155 patent. Regardless, Leighton failed to disclose this prior art to the patent examiner during the prosecution of the '155 patent. Once again the materiality of the omission and his knowledge of that materiality create a clear inference of intent. The '155 patent would not have issued but for this omission.

Thus, on the facts, the Magistrate Judge's ruling is clearly erroneous.

The March 27, 2006 Order is also contrary to law. Magistrate Judge Smith ruled, without citation to precedent, that Oberthur had not "adequately established" intent to defraud. However, the case law does not require Oberthur to "establish" fraud, but only to demonstrate probable cause or prima facie evidence, which recent precedent construes as whether it is "more likely than not" that the party perpetrated a fraud. *See In Re Omnicom Group, Inc.*, 02 Civ. 4483, 2006 U.S. Dist. LEXIS 7617 (S.D.N.Y. February 27, 2006). The Magistrate Judge simply applied the wrong standard of law.

11

## CONCLUSION

For the foregoing reasons, this Court should grant Oberthur's request to set aside Magistrate Judge Smith's March 27, 2006 Order and order Leighton to produce communications between Keith Leighton and his patent counsel, and the patent counsel's work product.

Dated: New York, New York
      April 7, 2006

                                    BAKER & McKENZIE LLP

                                    By: James David Jacobs (JJ-7351)
                                    *Attorneys for Oberthur Card Systems, S.A.*
                                    1114 Avenue of the Americas
                                    New York, New York 10036
                                    (212) 626-4100