**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/368,846 | 08/05/99 | LEIGHTON | K | 6014-2-CON |

| | EXAMINER |
|---|---|
| IM22/1206 | AFTERGUT, J |

021324
OLDHAM & OLDHAM CO
TWIN OAKS ESTATE
1225 W MARKET STREET
AKRON OH 44313

| ART UNIT | PAPER NUMBER |
|---|---|
| 1733 | |

DATE MAILED:    12/06/00

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

OCS_C_045446

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/368,846 | LEIGHTON, KEITH R. |
| | Examiner | Art Unit |
| | Jeff H. Aftergut | 1733 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____ .

2a) ☐ This action is FINAL.    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-24* is/are pending in the application.

  4a) Of the above claim(s) *18-22* is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-17,23 and 24* is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  a) ☐ All b) ☐ Some * c) ☐ None of:

  1. ☐ Certified copies of the priority documents have been received.

  2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

  3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
  * See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. & 119(e).

**Attachment(s)**

15) ☒ Notice of References Cited (PTO-892)

16) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

17) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ .

18) ☒ Interview Summary (PTO-413) Paper No(s). _Y_ .

19) ☐ Notice of Informal Patent Application (PTO-152)

20) ☐ Other:

OCS_C_045447

Application/Control Number: 09/368,846                                          Page 2
Art Unit: 1733

*Election/Restrictions*

1.      Restriction to one of the following inventions is required under 35 U.S.C. 121:

        I.      Claims 1-19, and 22-24, drawn to a method of laminating a chip bearing card,

                classified in class 156, subclass 153.

        II.     Claims 20 and 21, drawn to a laminated card, classified in class 235, subclass 488.

The inventions are distinct, each from the other because of the following reasons:

2.      Inventions I and II are related as process of making and product made. The inventions

are distinct if either or both of the following can be shown: (1) that the process as claimed can be

used to make other and materially different product or (2) that the product as claimed can be

made by another and materially different process (MPEP § 806.05(f)). In the instant case the

product as claimed can be made by a materially different process such as one where the recess

was formed in the substrate by etching chemically rather than mechanically milling.

Additionally, the chip could be embedded in a piece of plastic with a preformed recess therein

and have a piece of plastic laminated there over in order to form the laminated card.

3.      Because these inventions are distinct for the reasons given above and have acquired a

separate status in the art as shown by their different classification, restriction for examination

purposes as indicated is proper.

4.      Because these inventions are distinct for the reasons given above and have acquired a

separate status in the art because of their recognized divergent subject matter, restriction for

examination purposes as indicated is proper. This application contains claims directed to the

following patentably distinct species of the claimed invention: the species where the recess was

OCS_C_045448

Application/Control Number: 09/368,846                                    Page 3
Art Unit: 1733

formed via a milling operation or the species where the recess was preformed and maintained

with a spacer during the laminating operation.

Applicant is required under 35 U.S.C. 121 to elect a single disclosed species for

prosecution on the merits to which the claims shall be restricted if no generic claim is finally

held to be allowable. Currently, no claims are generic.

Applicant is advised that a reply to this requirement must include an identification of the

species that is elected consonant with this requirement, and a listing of all claims readable

thereon, including any claims subsequently added. An argument that a claim is allowable or that

all claims are generic is considered nonresponsive unless accompanied by an election.

Upon the allowance of a generic claim, applicant will be entitled to consideration of

claims to additional species which are written in dependent form or otherwise include all the

limitations of an allowed generic claim as provided by 37 CFR 1.141. If claims are added after

the election, applicant must indicate which are readable upon the elected species. MPEP §

809.02(a).

Should applicant traverse on the ground that the species are not patentably distinct,

applicant should submit evidence or identify such evidence now of record showing the species to

be obvious variants or clearly admit on the record that this is the case. In either instance, if the

examiner finds one of the inventions unpatentable over the prior art, the evidence or admission

may be used in a rejection under 35 U.S.C. 103(a) of the other invention.

5.      During a telephone conversation with Mark Watkins on 11-30-00 a provisional election

was made with traverse to prosecute the invention of Group I, the species of milling out the

recess for the contacts, claims 1-17, 23, and 24. Affirmation of this election must be made by

OCS_C_045449

Application/Control Number: 09/368,846                                          Page 4
Art Unit: 1733

·applicant in replying to this Office action. Claims 18- 22 have been withdrawn from further

consideration by the examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.

### *Claim Rejections - 35 USC § 112*

6.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the
> subject matter which the applicant regards as his invention.

7.      Claims 1-17, 23 and 24 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

In claim 1, line 12, the line ends with a ".", however the claim does not end here.

Applicant is advised that the claim should only have one period at the end of the claim. It is

suggested that --.-- be changed to --,and;--.


### *Double Patenting*

8.      A rejection based on double patenting of the "same invention" type finds its support in
the language of 35 U.S.C. 101 which states that "whoever invents or discovers any new and
useful process ... may obtain a patent therefor ..." (Emphasis added). Thus, the term "same
invention," in this context, means an invention drawn to identical subject matter. See *Miller v.
Eagle Mfg. Co.*, 151 U.S. 186 (1894); *In re Ockert*, 245 F.2d 467, 114 USPQ 330 (CCPA 1957);
and *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970).

·    A statutory type (35 U.S.C. 101) double patenting rejection can be overcome by
canceling or amending the conflicting claims so they are no longer coextensive in scope. The
filing of a terminal disclaimer <u>cannot</u> overcome a double patenting rejection based upon 35
U.S.C. 101.

9.      Claim 11 is rejected under 35 U.S.C. 101 as claiming the same invention as that of

claim1 of prior U.S. Patent No. 6,036,099. This is a double patenting rejection. All of the

limitation of dependent claim 11 are claimed in independent claim 1 of the prior application.

OCS_C_045450

Application/Control Number: 09/368,846                                    Page 5
Art Unit: 1733

10.    The nonstatutory double patenting rejection is based on a judicially created doctrine
grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or
improper timewise extension of the "right to exclude" granted by a patent and to prevent possible
harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.
Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686
F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA
1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).
       A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to
overcome an actual or provisional rejection based on a nonstatutory double patenting ground
provided the conflicting application or patent is shown to be commonly owned with this
application. See 37 CFR 1.130(b).
       Effective January 1, 1994, a registered attorney or agent of record may sign a terminal
disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37
CFR 3.73(b).

11.    Claims 1-17, 23, and 24 are rejected under the judicially created doctrine of obviousness-

type double patenting as being unpatentable over claims 1-16 of U.S. Patent No. 6,036,099.

Although the conflicting claims are not identical, they are not patentably distinct from each other

because the claims presented herein are generic to the operation as recited in the earlier patent

and therefore the subject matter of the same are covered by the earlier claimed patent, see In re

Goodman , 29 USPQ2nd 2010.

12.    Claims 1-17, 23 and 24 are rejected under the judicially created doctrine of obviousness-

type double patenting as being unpatentable over claims 1-17 of U.S. Patent No. 5,817,207 in

view of Templeton, Jr. et al.

       The claimed invention in U.S. '207 is essentially the same invention as recited herein,

except that the claims failed to recite that one skilled in the art would have milled the assembly

in order to form contacts with the electronic component disposed within the card. However, as

envisioned by Templeton, Jr. et al such milling to make electrical contact in a card with an

embedded electronic component therein was known. Templeton, et al suggested that one skilled

in the art would have known that subsequent to lamination of a circuit component within a card

OCS_C_045451

Application/Control Number: 09/368,846                                      Page 6
Art Unit: 1733

one would have milled the same . More specifically, an inductive coil 201 was formed upon a

plastic substrate 202 of PVC for example. Onto the substrate 202 one laminated a second

substrate 203 which covered and encapsulated the coil 201. The reference taught that subsequent

to the lamination operation one milled out the contact holes 203b through the substrate in

locations where the contact pads 201a of the inductive coil are in order to facilitate electrical

contact with the inductive coil which was embedded within the plastic sheets. See column 7,

lines 6-17. Because it would have been desirable to make contact with an embedded coil in a

smart card which was a contactless card as envisioned by Templeton, Jr. et al, it would have been

obvious to one of ordinary skill in the art of manufacturing a smart card to incorporate a milling

step after card formation in the operations of US Patent '207 in the formation of a contactless

smart card.


*Claim Rejections - 35 USC § 103*

13.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

14.     Claims 1, 4-10, and 14-17 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Japanese Patent 6-176214 in view of UK 2,279,610 and Templeton, Jr. et al optionally further

taken with UK 2,225,283.

        Japanese Patent '214 taught a process for forming a smart card which included the steps

of laminating with heat and pressure an assembly which included an IC chip 11 and a thin coil 12

JP
'214

OCS_C_045452

Application/Control Number: 09/368,846                                     Page 7
Art Unit: 1733

·(an antennae). The IC chip 11 and antennae 12 were disposed unsupported between plastic films

14. On either side of plastic films 14 were additional plastic films 15. The assembly was

disposed in a press and heat and pressure were applied in order to laminate the layers together to

form the smart card. The reference to Japanese Patent '214 failed to teach that the heat and

pressure laminating operation included a cooling operation while the press remained under

pressure. Additionally, there is no mention of milling the laminated card in order to gain access

to contacts of the chip and/or antennae for purposes of making physical contact with the same.

However, in the art of making a laminated smart card, it was known as evidenced by UK

'610 that one skilled in the art when laminating the same together would not have applied high

heat and pressure and then removed the same in the lamination operation for processing under

such extreme conditions would lead to damage of the chip and/or antennae in the laminate. The

reference to UK '610 suggested that one skilled in the art would have interposed a printed circuit

11 with reinforced elements 19 between two outer sheets 37 and 38 of thermoplastic in the PVC

family with interposed polyester layers coated with thermally activated catalyst adhesive and the

assembly was disposed between pressing plates. The assembly was heated and then pressure

applied to the same in order to encapsulate the electrical components of the card. Subsequent to

the application of this heat and pressure, the pressure was maintained while the card was allowed

to cool in the press, see page 11, line 16-page 12, line 12. The reference made clear that in order

to avoid damaging the integrated circuit which was being encapsulated that one would have

heated the assembly, then applied heat and pressure to the assembly in the press and then cooled

the assembly while pressure was maintained. Clearly, one viewing the same would have

understood that heat and pressure as well as cooling under pressure would have been.performed

OCS_C_045453

Application/Control Number: 09/368,846                                    Page 8
Art Unit: 1733

when laminating the card with the integrated circuit therein. Note that Japanese Patent '214

performed the lamination operation in a heated press. The combination fails to suggest that one

would have milled out openings in the card after formation in order to provide open contacts in

the card.

However, the reference to Templeton, et al suggested that one skilled in the art would

have known that subsequent to lamination of a circuit component within a card one would have

milled the same . More specifically, an inductive coil 201 was formed upon a plastic substrate

202 of PVC for example. Onto the substrate 202 one laminated a second substrate 203 which

covered and encapsulated the coil 201. The reference taught that subsequent to the lamination

operation one milled out the contact holes 203b through the substrate in locations where the

contact pads 201a of the inductive coil are in order to facilitate electrical contact with the

inductive coil which was embedded within the plastic sheets. See column 7, lines 6-17. Because

it would have been desirable to make contact with an embedded coil in a smart card which was a

contactless card as envisioned by Templeton, Jr. et al, it would have been obvious to one of

ordinary skill in the art of manufacturing a smart card to incorporate a milling step after card

formation in the operations of Japanese Patent 6-176214 wherein the pressing operation was

performed in a heated press where the pressure was maintained during the cooling operation as

suggested by UK 2,279,610.

With respect to claims 4-5, the references as set forth above suggested the use of PVC

and/or polyester materials and one skilled in the art would have been determined the suitable

thickness for the material through routine experimentation. Regarding claims 6-7 and 9-10, note

that UK '610 suggested that one skilled in the art would have increased the pressure after

OCS_C_045454

Application/Control Number: 09/368,846                                        Page 9
Art Unit: 1733

increasing the temperature (ramped the same up). One skilled in the art would have optimized

the specific pressure used in order to achieve a good bond without disrupting the ability of the

circuit to operate properly. Regarding claim 15, note that Templeton taught one would have

provided an electrical contact in the cavity formed by milling. Regarding claims 16 and 17, one

skilled in the art would have understood what kind of chips would have been useful for the

manufacture of the cards. Regarding claims 8 and 14, the references as set forth above suggested

the use of multiple films over the chip, for example Japanese Patent '214 suggested the use of

multiple films 14 and 15 over the assembly. The specific pressures and temperatures employed

in the operation would have been determined through routine experimentation.

          While it is believed that the reference to UK '610 suggested that one would have

ramped up the pressure during the laminating operation, to further evidence that the highest

amount of pressure would have been applied when the assembly was cooled, the reference to UK

'283 is cited. UK '283 is manufacturing an integrated circuit card where the assembled layers

(which included thin plastic layers which had printing on the layers as well as in integrated

circuit therein) were laminated together in a press. The reference taught that the press would

have been preheated, the pressure applied and then the assembly removed or the assembly would

have been preheated and the pressure applied in steps with the highest pressure applied while the

assembly was being cooled in the press, see page 11, lines 3-13. It would have been obvious to

one of ordinary skill in the art at the time the invention was made to employ a pressing operation

in the manufacture of an integrated circuit card wherein the pressue applied would have been the

highest when the card was being cooled in the press as suggested by UK 2,225,283 wherein the

laminated card was formed by laminating with heat and pressure in a press as suggested by

OCS_C_045455

Application/Control Number: 09/368,846                                   Page 10
Art Unit: 1733

Japanese Patent 6-176214 and UK 2,279,610 wherein after lamination the card would have been

milled in order to expose the contact pads of the electronic component within the card as

suggested by Templeton, Jr. et al.

For a discussion of the dependent claims, see above.

15.    Claims 2 , 3, 11-13, 23, and 24 are rejected under 35 U.S.C. 103(a) as being unpatentable

over the references as set forth above in paragraph 14 further taken with UK 2,294,899.

The references as set forth above in paragraph 14 suggested the overall operation, they

failed to suggest that one would have provided the platens with a matte surface thereon such that

the finished exterior surfaces of the card had a matte finish. Additionally, the references failed to

mention a printing operation used in manufacturing the card (it should be noted that UK '283

suggested that layes 2 and 6 would have been provided with printing thereon, see page 5, lines 3-

5 of the UK document). However, in the art of manufacturing a smart card where an integrated

circuit was disposed within the card, it was known at the time the invention was made to provide

the exterior of the card with a matte finish where the same was provided by employed pressing

plates which had a matte finish thereon in order to reduce the spectral reflection as suggested by

UK '899, see page 4, lines 4-6. Additionally, in manufacturing such smart cards, it was well

known at the time the invention was made to provide printed information upon the same where

the printed information would have been provided upon the layers prior to the pressing operation

as in printed information 8 and additional information would have been printed upon the cards

exterior after formation as in image 10. It would have been within the purview of the ordinary

artisan to select suitable printing techniques from those which were readily available to the

artisan and the specified printing techniques claimed are taken as conventional in the art of

OCS_C_045456

Application/Control Number: 09/368,846                                    Page 11
Art Unit: 1733

·making smart cards. It would have been obvious to one of ordinary skill in the art of laminating

to form a smart card to provide the card with a matte finish (in order to reduce reflection) as well

as to provide the card with printing thereon in order to facilitate a useful card as suggested by

UK 2,294,899 in the manufacture of a smart card as set forth above in paragraph 14.

### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Jeff H. Aftergut whose telephone number is 703-308-2069. The

examiner can normally be reached on Monday-Friday 6:30-3:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Michael W. Ball can be reached on 703-308-2058. The fax phone numbers for the

organization where this application or proceeding is assigned are 703-305-3599 for regular

communications and 703-305-7718 for After Final communications.

Any inquiry of a general nature or relating to the status of this application or proceeding

should be directed to the receptionist whose telephone number is 703-308-0661.

Jeff H. Aftergut
Primary Examiner
Art Unit 1733

JHA
December 1, 2000

OCS_C_045457

| | | | Application/Control No. | | Applicant(s)/Patent Under Reexamination | | | |
|---|---|---|---|---|---|---|---|---|
| *Notice of References Cited* | | | 09/368,846 | | LEIGHTON, KEITH R. | | | |
| | | | Examiner | | Art Unit | | Page 1 of 1 | |
| | | | Jeff H. Aftergut | | 1733 | | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|
| ☐ | A | 5,817,207 | Oct. 1998 | Leighton | 156 | 298 | ☐ | ☐ |
| ☐ | B | 6,036,099 | Mar. 2000 | Leighton | 235 | 488 | ☐ | ☐ |
| ☐ | C | 5,519,201 | May. 1996 | Templeton, Jr. et al | 235 | 492 | ☐ | ☐ |
| ☐ | D | | | | | | ☐ | ☐ |
| ☐ | E | | | | | | ☐ | ☐ |
| ☐ | F | | | | | | ☐ | ☐ |
| ☐ | G | | | | | | ☐ | ☐ |
| ☐ | H | | | | | | ☐ | ☐ |
| ☐ | I | | | | | | ☐ | ☐ |
| ☐ | J | | | | | | ☐ | ☐ |
| ☐ | K | | | | | | ☐ | ☐ |
| ☐ | L | | | | | | ☐ | ☐ |
| ☐ | M | | | | | | ☐ | ☐ |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | N | 2,279,610 | Jan. 1995 | UK | GEC Avery Lmtd. | — | — | ☐ | ☐ |
| ☐ | O | 6-176214 | Jun. 1994 | Japan | — | — | — | ☐ | ☐ |
| ☐ | P | 2,225,283 | May. 1990 | UK | — | — | — | ☐ | ☐ |
| ☐ | Q | 2,294,899 | May. 1996 | UK | — | — | — | ☐ | ☐ |
| ☐ | R | | | | | | | ☐ | ☐ |
| ☐ | S | | | | | | | ☐ | ☐ |
| ☐ | T | | | | | | | ☐ | ☐ |

**NON-PATENT DOCUMENTS**

| * | | DOCUMENT (Including Author, Title Date, Source, and Pertinent Pages) | DOCUMENT SOURCE ** APS | OTHER |
|---|---|---|---|---|
| ☐ | U | | ☐ | ☐ |
| ☐ | V | | ☐ | ☐ |
| ☐ | W | | ☐ | ☐ |
| ☐ | X | | ☐ | ☐ |

*A copy of this reference is not being furnished with this Office action. (See Manual of Patent Examining Procedure, Section 707.05(a).)
**APS encompasses any electronic search i.e. text, image, and Commercial Databases.
U.S. Patent and Trademark Office
PTO-892 (Rev. 03-98)                 Notice of References Cited                 Part of Paper No. 5

OCS_C_045458