

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/368,846 | 08/05/1999 | KEITH R. LEIGHTON | 6014-2-CON | 6007 |

21324   7590   05/08/2002
HAHN LOESER & PARKS, LLP
TWIN OAKS ESTATE
1225 W. MARKET STREET
AKRON, OH 44313

| EXAMINER |
|---|
| AFTERGUT, JEFF H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1733 | 11 |

DATE MAILED: 05/08/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

OCS_C_045482

π-11

| Office Action Summary | Application No. | Applicant(s) |
|---|---|---|
| | 09/368,846 | LEIGHTON, KEITH R. |
| | Examiner | Art Unit |
| | Jeff H. Aftergut | 1733 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>05 March 2002</u>.
2a)☒ This action is FINAL.    2b)☐ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-10 and 12-30</u> is/are pending in the application.
    4a) Of the above claim(s) <u>18-22 and 30</u> is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-10,12-17 and 23-29</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
11)☐ The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.
    If approved, corrected drawings are required in reply to this Office action.
12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All b)☐ Some * c)☐ None of:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.
14)☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).
    a)☐ The translation of the foreign language provisional application has been received.
15)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) <u>9½</u>.
4)☐ Interview Summary (PTO-413) Paper No(s). _____.
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other:

U.S. Patent and Trademark Office
PTO-326 (Rev. 04-01)      Office Action Summary      Part of Paper No. 11

Application/Control Number: 09/368,846 Page 2
Art Unit: 1733

*Terminal Disclaimer*

1.  The terminal disclaimer does not comply with 37 CFR 1.321(b) and/or (c) because:

    The person who signed the terminal disclaimer has failed to state his/her capacity to sign for the corporation or other business entity, and he/she has not been established as being authorized to act on behalf of the assignee.

2.  An attorney or agent, not of record, is not authorized to sign a terminal disclaimer in the capacity as an attorney or agent acting in a representative capacity as provided by 37 CFR 1.34 (a). See 37 CFR 1.321(b) and/or (c).

*Double Patenting*

*Election/Restrictions*

3.  Newly submitted claim 30 is directed to an invention that is independent or distinct from the invention originally claimed for the following reasons: claim 30 is directed to the species of forming the cavity with the use of a spacer which was previously identified as a non-elected species which was elected without traverse (see below).

    Since applicant has received an action on the merits for the originally presented invention, this invention has been constructively elected by original presentation for prosecution on the merits. Accordingly, claim 30 has been withdrawn from consideration as being directed to a non-elected invention. See 37 CFR 1.142(b) and MPEP § 821.03.

4.  Applicant's election of Group I, the species of milling to form the cavity, claims 1-10, 12-17, 23-29 in Paper No. 8 is acknowledged. Because applicant did not distinctly and specifically point out the supposed errors in the restriction requirement, the election has been treated as an election without traverse (MPEP § 818.03(a)).

OCS_C_045484

Application/Control Number: 09/368,846  Page 3
Art Unit: 1733

*Double Patenting*

5. The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).
   A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).
   Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

6. Claims 1-17 and 23-29 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-16 of U.S. Patent No. 6,036,099. Although the conflicting claims are not identical, they are not patentably distinct from each other because the claims presented herein are generic to the operation as recited in the earlier patent and therefore the subject matter of the same are covered by the earlier claimed patent, see In re Goodman, 29 USPQ2nd 2010 and paper no. 5, paragraph 11.

7. Claims 1-17 and 23-29 are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1-17 of U.S. Patent No. %,817,207 in view of Templeton, Jr, et al. Applicant is referred to paper no. 5, paragraph 12 for a complete discussion of the rejection.

*Claim Rejections - 35 USC § 103*

8. The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

OCS_C_045485

Application/Control Number: 09/368,846 Page 4
Art Unit: 1733

9. Claim 27 is rejected under 35 U.S.C. 103(a) as being unpatentable over Japanese Patent 6-176214 in view of UK 2,279,610 optionally further taken with UK 2,225,283 for the same reasons as expressed in paper no. 5, paragraph 14.

Newly presented claim 27 does not require the milling out of a cavity in the finished card (or for that matter the formation of a cavity in the card). The reference to Templeton Jr. et al cited in paper no. 5 paragraph 14 was used only to support the conclusion that it would have been obvious to form a cavity via milling in the card. The reference is not needed to reject newly presented claim 27 because the claim does not require the formation of a cavity.

Japanese Patent '214 taught a process for forming a smart card which included the steps of laminating with heat and pressure an assembly which included an IC chip 11 and a thin coil 12 (an antennae). The IC chip 11 and antennae 12 were disposed unsupported between plastic films 14. On either side of plastic films 14 were additional plastic films 15. The assembly was disposed in a press and heat and pressure were applied in order to laminate the layers together to form the smart card. The reference to Japanese Patent '214 failed to teach that the heat and pressure laminating operation included a cooling operation while the press remained under pressure.

However, in the art of making a laminated smart card, it was known as evidenced by UK '610 that one skilled in the art when laminating the same together would not have applied high heat and pressure and then removed the same in the lamination operation for processing under such extreme conditions would lead to damage of the chip and/or antennae in the laminate. The reference to UK '610 suggested that one skilled in the art would have interposed a printed circuit 11 with reinforced elements 19 between two outer sheets 37 and 38 of thermoplastic in the PVC

OCS_C_045486

Application/Control Number: 09/368,846                                                         Page 5
Art Unit: 1733

family with interposed polyester layers coated with thermally activated catalyst adhesive and the assembly was disposed between pressing plates. The assembly was heated and then pressure applied to the same in order to encapsulate the electrical components of the card. Subsequent to the application of this heat and pressure, the pressure was maintained while the card was allowed to cool in the press, see page 11, line 16-page 12, line 12. The reference made clear that in order to avoid damaging the integrated circuit which was being encapsulated that one would have heated the assembly, then applied heat and pressure to the assembly in the press and then cooled the assembly while pressure was maintained. Clearly, one viewing the same would have understood that heat and pressure as well as cooling under pressure would have been performed when laminating the card with the integrated circuit therein. Note that Japanese Patent '214 performed the lamination operation in a heated press. Because it was known to laminate the cards in a press under heat and pressure and because the reference to UK '610 suggested heating and cooling in the press to avoid damaging the cards, it would have been obvious to one of ordinary skill in the art of manufacturing a smart card according to the operations of Japanese Patent 6-176214 wherein the pressing operation was performed in a heated press where the pressure was maintained during the cooling operation as suggested by UK 2,279,610.

While it is believed that the reference to UK '610 suggested that one would have ramped up the pressure during the laminating operation, to further evidence that the highest amount of pressure would have been applied when the assembly was cooled, the reference to UK '283 is cited. UK '283 is manufacturing an integrated circuit card where the assembled layers (which included thin plastic layers which had printing on the layers as well as in integrated circuit therein) were laminated together in a press. The reference taught that the press would have been

Application/Control Number: 09/368,846 Page 6
Art Unit: 1733

preheated, the pressure applied and then the assembly removed or the assembly would have been preheated and the pressure applied in steps with the highest pressure applied while the assembly was being cooled in the press, see page 11, lines 3-13. It would have been obvious to one of ordinary skill in the art at the time the invention was made to employ a pressing operation in the manufacture of an integrated circuit card wherein the pressure applied would have been the highest when the card was being cooled in the press as suggested by UK 2,225,283 wherein the laminated card was formed by laminating with heat and pressure in a press as suggested by Japanese Patent 6-176214 and UK 2,279,610.

10.   Claims 1, 4-10, 14-17 and 25-29 are rejected under 35 U.S.C. 103(a) as being unpatentable over Japanese Patent 6-176214 in view of UK 2,279,610 and Templeton, Jr. et al optionally further taken with UK 2,225,283 for the same reasons as expressed in paper no. 5, paragraph 14.

With regard to newly presented claims 25 and 26, note that the reference to UK '610 suggested that minimal pressure would have been applied during the initial closure of the press and that the pressure was simply enough to make the plastic layers contact the heated platens. Additionally recognize that the platens were heated during the pressing operation and thus the laminate was subject to heating during pressure application. The exact amount of pressure would have been a function of the material being worked upon and would have been determined trough routine optimization based upon the plastic layers employed. Regarding claims 27-29 see the discussion in paper no. 5 for the formation of the cards:

OCS_C_045488

Application/Control Number: 09/368,846 Page 7
Art Unit: 1733

11. Claims 2, 3, 11-13, 23, and 24 are rejected under 35 U.S.C. 103(a) as being unpatentable over the references as set forth above in paragraph 10 further taken with UK 2,294,899 for the same reasons as expressed in paper no. 5, paragraph 15.

### *Claim Rejections - 35 USC § 112*

12. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

13. Claim 25 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

In claim 25, line 1, "the pressure" lacks proper antecedent basis because no pressure has been defined for step (c)(i) of the claim. It is suggested that "the" be deleted. In claim 25, line 1, it is suggested that ""is" be changed to --in--.

### *Response to Arguments*

14. Applicant's arguments filed 3-5-02 have been fully considered but they are not persuasive.

The applicant argues that the terminal disclaimer has overcome the double patenting rejection. The applicant is advised that the terminal disclaimer has not been accepted because it was not signed by an attorney of record, see paragraphs 1 and 2 above.

The applicant argues that the reference to UK 2,279,610 is not available as prior art because applicant filed a provisional application and claims the benefit of the same. without addressing whether applicant has support for the claimed subject matter in the earlier filed provisional applications, the applicant is advised that the UK reference published on January 11,

Application/Control Number: 09/368,846                                    Page 8
Art Unit: 1733

1995 which is before applicant's earliest effective date for domestic priority of October 17, 1995. The reference is available as prior art under 35 USC 102(a) because it is a printed foreign patent which was published prior to applicant's effective filing date.

The applicant next addressed the reference to UK 2,225,283 and argues that the reference did not preheat outside of the press and did not change the pressure to supply the highest amount of pressure during the cooling. The applicant is advised that the reference was an optional reference to further express that in the pressure cycle of UK '610 the maximum pressure would have been applied during the cooling operation. Because applicant did not address the teachings of UK '610 (other than to state that it was not a reference), it is believed that applicant agrees with the Office interpretation that the reference produced a card with heat and pressure wherein the same went through a pressure cycle where greater pressure would have been applied in the cooling cycle. UK '283 further evidenced the same. at page 11, lines 10-13 of UK '283 it was clear that those skilled in the art would have gradually increased the pressure during lamination until the cooling cycle was reached where the maximum pressure was applied.

No claims are allowed.

*Conclusion*

15.   Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after

OCS_C_045490

Application/Control Number: 09/368,846 Page 9
Art Unit: 1733

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Jeff H. Aftergut whose telephone number is 703-308-2069. The examiner can normally be reached on Monday-Friday 6:30-3:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Michael W. Ball can be reached on 703-308-2058. The fax phone numbers for the organization where this application or proceeding is assigned are 703-872-9310 for regular communications and 703-872-9311 for After Final communications.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is 703-308-0661.

Jeff H. Aftergut
Primary Examiner
Art Unit 1733

JHA
May 7, 2002

OCS_C_045491