James David Jacobs (JJ-7351)
Frank M. Gasparo (FG-2958)
**BAKER & McKENZIE LLP**
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100

Attorneys for Defendant Oberthur Card Systems, S.A.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LEIGHTON TECHNOLOGIES LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 04 Civ. 02496 (CM)(LMS) |
| | ) |
| OBERTHUR CARD SYSTEMS, S.A., AND | ) |
| OBERTHUR CARD SYSTEMS OF AMERICA | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |


OBERTHUR CARD SYSTEMS, S.A.'s

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF OBJECTIONS TO THE MAGISTRATE
JUDGE'S ORDER PURSUANT TO FED. R. CIV. P. 72(a)

TABLE OF CONTENTS

Page

I.  Oberthur Has Met Its Burden Of Establishing A Prima Facie Case Of Fraud......... 1

    A.  Oberthur Need Only Establish A Prima Facie Case of Fraud ........................ 1

    B.  Oberthur Has Established "But For" Leighton's Material Omissions
        During Prosecution His Patents Would Never Have Been Allowed................ 2

        1.  The Prosecution History Establishes That The '155 Patent
            Would Not Have been Allowed But For Mr. Leighton's
            Omissions To The PTO Examiner.................................... 3

        2.  The Prosecution History Establishes That The '367 Patent
            Would Not Have Been Allowed But For The Omissions To The
            PTO .................................................................... 4

    C.  Oberthur Has Established A Prima Facie Case That Mr. Leighton
        And His Attorneys Intended To Defraud The Patent Office .......................... 5

II.  LEIGHTON'S ARGUMENTS THAT OBERTHUR HAS NOT
     ESTABLISHED A PRIMA FACIE CASE ARE WITHOUT MERIT ...................... 6

    A.  Oberthur's Motion Is Based Upon Admissible Evidence, Not
        Innuendo And Supposition ............................................................ 6

    B.  Mr. Leighton Was Intimately Involved In The Prosecution Process Of
        His Patents And The Cited Evidence Shows That He Frequently
        Communicated With His Patent Counsel .......................................... 7

    C.  Leighton's Speculative Justifications For The Omitted Disclosures To
        The Patent Office Do Not Affect Oberthur's Prima Facie Case .................... 8

III.  CONCLUSION. ........................................................................ 10

TABLE OF AUTHORITIES

**CASES**

*Baxter International, Inc. v. McGaw, Inc.,* 149 F.3d 1321 (Fed. Cir. 1998) ............................. 2

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) ...................................................................................................................... 3

*In re Spalding Sports Worldwide,* 203 F.3d 800 (Fed. Cir. 2000) .......................................... 1, 2

*J.P. Stevens & Co. Inv. v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed. Cir. 1984) ................................. 1

*Paragron Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,*  984 F.2d 1182 (Fed. Cir. 1993) .................................................................................................................. 2

## I.   OBERTHUR HAS MET ITS BURDEN OF ESTABLISHING A PRIMA FACIE CASE OF FRAUD

### A.   Oberthur Need Only Establish A Prima Facie Case of Fraud

Oberthur has met its burden to prevail on its Motion.  *See In re Spalding Sports Worldwide,* 203 F.3d 800, 806-08 (Fed. Cir. 2000) (holding "to pierce the attorney-client privilege, [the moving party] must make a *prima facie* showing of common law fraud").

Common law fraud requires:

> (1) misrepresentation of a material fact, (2) intent to deceive or a state of mind so reckless respecting consequences as to be the equivalent of intent (scienter), (3) justifiable reliance on the misrepresentation by the party deceived, inducing him to act thereon, and (4) injury to the party deceived, resulting from reliance on the misrepresentation.

*J.P. Stevens & Co. Inv. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559 (Fed. Cir. 1984).

Leighton contends that Oberthur has not established a *prima facie* case of materiality and intent.  Accordingly, the following discussion is limited to those elements.

Leighton incorrectly infers that Oberthur must prove fraud by clear and convincing evidence in order to prevail on its Motion.  Leighton Opp. at 8.  For support at page 8 of its Opposition Leighton purportedly quotes from *J.P. Stevens*, 747 F.2d at 1559.   That citation is both inaccurate and misleading.  The quotation nowhere appears in that case.

More importantly, Oberthur does not have to prove fraud by clear and convincing evidence to prevail on the present Motion.  *In re Spalding,* 203 F.3d at 806.  *In re Spalding,* another authority upon which Leighton heavily relies, made clear that "the party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence to make a *prima facie* showing of fraud …."  *In re Spalding,* 203 F.3d at 803-04.

*In re Spalding* also held that Federal Circuit law applies where the applicability of the attorney-client privilege implicates substantive patent law, as it does here. *Id.* ("[A] determination of the applicability of the attorney-client privilege to Spalding's invention record clearly implicates, at the very least, the substantive patent issue of inequitable conduct.").

On the facts of *In re Spalding* the Federal Circuit granted a writ of mandamus to vacate the district court's order to produce privileged documents. However, the *In re Spalding* court expressly noted that the party in that case had not made "a *prima facie* showing" in furtherance of a crime or fraud because in that case there was <u>only</u> a bare allegation of a failure to cite a reference to the PTO. *Id.*

Indeed other Federal Circuit cases, albeit in the context of inequitable conduct determinations, explain how the intent element is normally established. Those cases recognize that "[i]ntent need not be proven by direct evidence." *Baxter International, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1329 (Fed. Cir. 1998) "Rather, this element ... must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct." *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984 F.2d 1182, 1190 (Fed. Cir. 1993).

As we demonstrate below, the record reveals that there is far more evidence of intent than a mere allegation of a failure to cite a reference to the PTO.

**B.    <u>Oberthur Has Established "But For" Leighton's Material Omissions During Prosecution His Patents Would Never Have Been Allowed</u>**

Leighton's arguments miss the mark by never addressing whether Leighton's patent claims would have issued if the omitted material prior art was cited to the Examiner during prosecution. Leighton never explains how the omitted prior art is not material. On the other hand, Oberthur's showing in its moving memorandum and summarized below establishes a

*prima facie* case that Leighton's omissions were material.  Because of this materiality, both Mr.

Leighton and his attorneys had an affirmative duty to disclose this prior art to the PTO.  *See*

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259 (Fed. Cir. 1997)

(inferring intent to mislead and holding inequitable conduct because of breach of duty to disclose

a prior art patent that the party should have known was material).

      **1.  The Prosecution History Establishes That The '155 Patent Would Not Have been Allowed But For Mr. Leighton's Omissions To The PTO Examiner**

Mr. Leighton found out during prosecution of the '367 patent that  JP '214 "taught a

process for forming a smart card which included the steps of lamination with heat and pressure

and assembly which include an IC chip and thin coil (an antenna)."  Oberthur Motion at 4, Ex. B.

As explained in detail in Oberthur's Motion, the asserted claims of the '367 patent were actually

rejected by the '367 Examiner over that  key piece of prior art (JP '214).  Based on the patent

prosecution record alone, JP '214 is highly material to the nearly identical '155 patent claims.

Indeed, the Examiner of the '155 patent, given the chance, would undoubtedly have reacted the

same as the Examiner of the '367 patent and rejected the claims in the '155 patent application.

However, Mr. Leighton and his counsel did not give the '155 Examiner the chance to reject the

'155 patent claims.

Leighton does not dispute the materiality of JP '214 with respect to the claimed

inventions of the '155 patent.  Clearly, the '155 patent would not have issued but for Leighton's

failure to cite JP '214 to the Examiner of the '155 patent application.

### 2.  The Prosecution History Establishes That The '367 Patent Would Not Have Been Allowed But For The Omissions To The PTO

No PTO Examiner was ever informed that Mr. Leighton had commercially laminated cards with pressure-temperature cycles that employed a cooling pressure higher than the heating pressure, the very point of novelty that he used to overcome the JP '214 reference.  In an apparent attempt to disprove that the higher cooling pressure limitation was material to the claimed inventions in the '367 patent, Leighton over and over intones that Mr. Leighton's invention was a process for making smart cards, not conventional cards (Opp. at 4-7), implying that the Examiner would not be interested in knowing that Mr. Leighton had been using -- for over twenty years-- pressure-heating cycles, at times with a cooling pressure at least ten percent higher than the heating pressure, to make "commercial laminated cards" or "conventional cards". Leighton Opp. at 6.  However, armed with the knowledge that higher cooling pressures had been used for many years to remove lakes or puddles formed in conventional laminated cards, in the PTO file history the Examiner makes clear that he would have found it obvious to combine with the remaining elements of the '367 claims that same higher cooling pressure in order to remove the same lakes or puddles from smart cards.

> None of the prior art of record taught or suggested that one skilled in
> the art … to apply a second pressure … during cooling wherein the
> second pressure was at least 10% greater than the first pressure ….

Oberthur Motion, Ex. D (Notice of Allowance) at OCS_C_045509.  Unlike Leighton, who argues that the higher cooling pressure used with conventional cards is irrelevant with regard to smart cards, the above passage indicates that the Examiner was not concerned with whether the higher cooling pressure was associated with a particular card type.  The Examiner's responsibility was to assess the state of the lamination art, both conventional and smart cards,

and determine whether it was obvious to combine particular teachings in that art to arrive at Leighton's claimed process.

Indeed, during the prosecution Mr. Leighton recognized that the relevant prior art extended past that which expressly involved smart cards. During the prosecution of the '367 patent Mr. Leighton cited to the examiner such non-smart card prior art, *e.g.*, U.S. Patent No. 3,994,225. *See* Appendix A (showing printing on a non-smart card badge).

In sum, the '367 patent would not have issued but for the failure to bring to the Examiner's attention the commercial use of a higher cooling pressure for over twenty years. The omitted prior art is clearly material to the patentability of the '367 patent.

C.    **Oberthur Has Established A Prima Facie Case That Mr. Leighton And His Attorneys Intended To Defraud The Patent Office**

Mr. Leighton and his attorneys knew of the materiality of the omitted prior art. They knew of the materiality of JP '214 with respect to the '155 patent application. Mr. Leighton was forced to amend his '367 patent claims to avoid it. Similarly, his commercial use of temperature-pressure cycles with higher cooling pressures to remove lakes or puddles formed in laminated cards was crucial information that he possessed and was the focus of the inventions he was claiming in the '367 patent application. The Examiner identified only this point for novelty in his statement of reasons for allowance. But for that single limitation the Examiner would not have allowed the '367 patent application.

Mr. Leigthon and his attorneys knew that the Examiners were relying on these limitations, which the non-cited prior art taught, to find patentability in Mr. Leighton's inventions. Yet, even with this knowledge of the Examiners' reliance Mr. Leighton and his attorneys did not cite the prior art to the Examiners.

In light of Mr. Leighton's clear knowledge of the materiality of the prior art and the Examiners' reliance, the most plausible, and certainly a fair, inference for Mr. Leighton's and his attorneys' two immense omissions is that Mr. Leighton and his attorneys intended to defraud the Patent Office. Given this inference, Oberthur has established a prima facie case that Mr. Leighton and his attorneys intended to defraud the Patent Office.

## II. LEIGHTON'S ARGUMENTS THAT OBERTHUR HAS NOT ESTABLISHED A PRIMA FACIE CASE ARE WITHOUT MERIT

### A. Oberthur's Motion Is Based Upon Admissible Evidence, Not Innuendo And Supposition

Leighton incorrectly argues that Oberthur's "Motion is based on innuendo and supposition, not evidence." *See, e.g.,* Leighton Opp. at 1 ("[Oberthur] has garnered no evidence that justifies completely disregarding the attorney-client privilege[.]"); *see also* Leighton Opp. at 3. The evidence cited in Oberthur's Motion shows irrefutably that: (i) Mr. Leighton and his attorneys communicated regularly throughout the prosecution of the patents at issue (Oberthur Motion at 7, Ex. G); (ii) Mr. Leighton was involved substantively in the prosecution of his patents (*id.*); (iii) the PTO Examiner reviewing Mr. Leighton's '367 patent rejected the application twice in view of JP '214 — which, according to the Examiner, showed a process for forming a smart card with an electronic element laminated therein (Oberthur Motion at 3-4, Exs. A, B, C); (iv) Mr. Leighton and his attorneys amended the claims in the '367 patent in response to the JP '214 rejections by adding the "at least 10%" pressure limitation (Oberthur Motion at 4, Exs. B, C); (v) the Examiner reviewing the '367 patent application agreed to allow the '367 claims over the JP '214 patent only after the claims were amended to recite the "at least 10%" pressure limitation; (vi) Mr. Leighton, unbeknownst to the Examiner who allowed the '367

6

patent claims, had used the "at least 10%" pressure cycle process to create commercially

laminated cards (Oberthur Motion at 6-7, Ex. F); and, (vii) Mr. Leighton did not cite JP '214 to

the Examiner on the copending application that matured into the '155 patent.

**B.**      **Mr. Leighton Was Intimately Involved In The Prosecution Process Of**
            **His Patents And The Cited Evidence Shows That He Frequently**
            **Communicated With His Patent Counsel**

Leighton wrongly argues that "Oberthur fails to make any showing or provide any

evidence that even suggest that communications were made in furtherance of a  fraud or crime."

Leighton Opp. at 1.   Numerous communications occurred between Mr. Leighton and his patent

counsel during prosecution of Mr. Leighton's patents.  Oberthur Motion at 7.  Indeed, Mr.

Watkins, Mr. Leighton's patent counsel, testified during discovery that Mr. Leighton "certainly

reviewed everything that we prepared" and discussed with his attorneys the prior art.  *See*

Oberthur Motion at 7, and Exhibit G.  Oberthur's Motion goes far beyond speculation and

reveals that a series of omissions or commissions, or both, must have been made by Mr.

Leighton and his counsel.  *See* Leighton Opp. at 3 (citing to *In re Omnicron Group Inc.*).   The

results speak for themselves.  During prosecution of the Leighton patents two key decisions

necessarily were made and communicated in one form or another between Mr. Leighton and his

counsel that led to Mr. Leighton's fraudulently procured patent claims:

> 1.  The failure to explain to the PTO Examiner who was reviewing the '367 patent
> application that Mr. Leighton had been using, for over twenty years, a higher cooling
> pressure to ensure that plastic laminated cards had smooth, defect free surfaces, *i.e.,* no
> "lakes" as described in Mr. Leighton's cited testimony. (Oberthur Motion at 3-7); and,

> 2.  The failure to cite the key piece of prior art, JP '214, found by the PTO Examiner
> examining the '367 patent application to a <u>different</u> PTO Examiner examining the
> copending '155 patent application.  (Oberthur Motion at 8).

Now that Mr. Leighton and Mr. Watkins have been deposed, it is clear that analysis of the withheld communications between Mr. Leighton and his patent counsel will show, at a minimum, when and how they made these two key decisions.  In the face of their affirmative duty to disclose the prior art to the PTO, at some point, Mr. Leighton and his attorneys had to address the issue of the JP '214 patent cited in the '367 patent application.   Additionally, at some point, a decision necessarily was made by Mr. Leighton to keep the Examiners ignorant of the fact that he had been trying to solve the problem of "puddles" or "lakes" on the surface of commercial laminated cards since at least the 1980's by raising the cooling pressure during the cooling cycle, sometimes by "at least ten percent".   Oberthur Motion at 5, Exs. E and F.

## C.    Leighton's Speculative Justifications For The Omitted Disclosures To The Patent Office Do Not Affect Oberthur's Prima Facie Case

That the key prior art reference (JP '214) was never disclosed to the Examiner of the '155 patent is not in factual dispute.  *See* Leighton Opp. at 7.  Leighton admits "the facts and evidence that Oberthur has proffered might demonstrate some type of failure to disclose."  *See* Leighton Opp. at 8.  Yet, Leighton suggests that there may be some innocent reasons for this almost unimaginable oversight:  "perhaps it was an administrative oversight" that the '155 patent Examiner while examining claims of nearly exactly the same scope of the copending '367 patent application, was never notified of JP '214 or that "maybe one of the patent attorneys decide that the examiner of the '155 application would not find JP '214 relevant."  Leighton Opp. at 7.

Even if Leighton could marshal evidence supporting these so-called explanations, Oberthur has satisfied its burden of making out a *prima facie* case.  Leighton's arguments in no way detract from Oberthur's *prima facie* case of Mr. Leighton's fraud, proofs sufficient if this were a trial to entitle Oberthur to present its case to the trier of fact.  Leighton can also present its

speculative scenarios to the trier of fact, but they are irrelevant as to whether Oberthur's proofs rise to a *prima facie* case.

Even more revealing is that Leighton does not even attempt to submit evidence in support of its many speculative justifications for not disclosing the prior art to the Patent Office. It does not submit a single declaration from among the many persons whom it suggests we depose. Leighton has free access to all of these individuals -- Mr. Leighton's four attorneys who prosecuted his patent applications and Mr. Leighton himself. A strong reasonable inference can be drawn that these individuals have nothing to say that disproves that Mr. Leighton and his attorneys acted fraudulently.

With no little irony Leighton claims this motion should be denied because we have not yet taken the depositions of three of the attorneys who prosecuted the Leighton patent applications. According to Leighton, "other depositions may shed light on why JP '214 was not disclosed during the examination of the co-pending '155 application." *Id.*

As we just noted, if any of these individuals has information to provide, Leighton could have provided the Court with his declaration. Yet, it failed to do so. That the deposition of the principal attorney who prosecuted the Leighton patents has already been taken further suggests that any secondary prosecuting attorneys have little to say. At this point, approximately one year after the start of discovery, and approximately one month from the end of discovery, there is no need to waste more time and money on deposing other patent attorneys before receiving the withheld communications particularly since they apparently had minor or no involvement in the prosecution of the Leighton patents and since the discovery from Mr. Leighton and his principal patent counsel, thus far, has already established that at least two key pieces of prior art were not

9

cited in the chain of applications at issue in this case. Efficiency for the Court and for the parties dictates that Oberthur should be provided the shielded communications before the remaining depositions, not after the depositions, so that Oberther can question the deponents on those communications.

### III.    CONCLUSION.

Oberthur respectfully requests that the Court grant Oberthur's Motion to reverse Magistrate Judge Smith's March 27, 2006 Order and Order Leighton to produce the requested communications and permit Oberthur to use these communications to depose the pertinent individuals.

| | |
|---|---|
| Dated:  New York, New York<br>April 27, 2006<br><br>Of Counsel:<br>Frank M. Gasparo | BAKER & McKENZIE LLP<br>_____/S/_____<br>By: James David Jacobs (JJ-7351)<br>Attorneys for Oberthur Card Systems, S.A.<br>1114 Avenue of the Americas<br>New York, New York 10036<br>(212) 626-4100 |