Edward DeFranco (ED-6524)
Robert C. Juman (RJ-6350)
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

Kevin Johnson (KJ-8689)
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>        vs.<br><br>OBERTHUR CARD SYSTEMS, S.A. and<br>OBERTHUR CARD SYSTEMS OF<br>AMERICA CORPORATION,<br><br>    Defendants. | 04 Civ. 02496 (CM) (LMS)<br><br>**ANSWER TO THIRD AMENDED<br>COMPLAINT, AFFIRMATIVE<br>DEFENSES AND<br>COUNTERCLAIMS** |
| OBERTHUR CARD SYSTEMS, S.A. and<br>OBERTHUR CARD SYSTEMS OF<br>AMERICA CORPORATION,<br><br>    Counterclaim Plaintiffs,<br><br>        vs.<br><br>LEIGHTON TECHNOLOGIES LLC,<br>GENERAL PATENT CORPORATION<br>INTERNATIONAL, GENERAL PATENT<br>CORPORATION, and IP HOLDINGS LLC,<br><br>    Counterclaim Defendants. | **ELECTRONICALLY FILED** |

Defendants Oberthur Card Systems, S.A. ("OCS-France") and Oberthur Card Systems of America Corporation ("OCSA," and collectively with OCS-France as the "OCS-Entities"), by their undersigned counsel, answer the Third Amended Complaint ("Third Amended Complaint") of Leighton Technologies LLC ("Leighton Technologies") as follows:

1.      OCS-Entities are without sufficient knowledge or information to form a belief as to the truth of each and every allegation of paragraph 1 of the Third Amended Complaint and therefore deny the same, except admit that Leighton Technologies purports to state a claim arising under the patent laws of the United States.

2.      OCS-Entities deny each and every allegation of paragraph 2 of the Third Amended Complaint, except admit that OCSA has solicited business in this judicial district.

3.      OCS-Entities deny each and every allegation of paragraph 3 of the Third Amended Complaint.

4.      OCS-Entities deny each and every allegation of paragraph 4 of the Third Amended Complaint, except that OCS-Entities are without sufficient knowledge or information to form a belief as to the truth of the allegations that Leighton Technologies is a limited liability company organized and existing under the laws of the State of New York with its principal place of business at 75 Montebello Park, Suffern, New York 10901-2740 and therefore deny the same.

5.      OCS-Entities admit that OCS-France is a corporation organized and existing under the laws of France with its principal place of business at 71/73 rue des Hautes-Patures, 92726 Nanterre Cedex, France and that it is a manufacturer and distributor of laminated plastic cards that contain microchips, sometimes referred to as "smart cards," and deny the remaining allegations of paragraph 5 of the Third Amended Complaint.

6.    OCS-Entities admit that OCSA is a Delaware corporation with its principal place of business at 3150 E. Ana Street, Rancho Dominguez, California 90221.

7.    OCS-Entities deny each and every allegation of paragraph 7 of the Third Amended Complaint.

8.    OCS-Entities deny each and every allegation of paragraph 8 of the Third Amended Complaint, except admit that what purports to be a copy of United States Patent No. 5,817,207 (the "'207 patent") is attached to the Third Amended Complaint as Exhibit A.

9.    OCS-Entities deny each and every allegation of paragraph 9 of the Third Amended Complaint, except admit that what purports to be a copy of United States Patent No. 6,214,155 B1 (the "'155 patent," and collectively with the '207 patent as, the "Patents-in-Suit") is attached to the Third Amended Complaint as Exhibit B.

10.    OCS-Entities deny each and every allegation of paragraph 10 of the Third Amended Complaint.

11.    OCS-Entities deny each and every allegation of paragraph 11 of the Third Amended Complaint, except admit that OCS-France has made smart cards in France.

12.    OCS-Entities admit the allegations of paragraph 12 of the Third Amended Complaint.

13.    OCS-Entities admit the allegations of paragraph 13 of the Third Amended Complaint.

14.    OCS-Entities admit that, as demonstrated by discovery taken in the case, at certain times and in certain circumstances OCS-France has provided its U.S. Affiliate with the technological details of, and support for, an OCS-France manufacturing process or other processes.

15.    OCS-Entities deny each and every allegation of paragraph 15 of the Third Amended Complaint to the extent such allegations are intended to assert that OCS-France controls the business operations in the U.S. (the phrase "directed, caused and encouraged" as set forth in the Third Amended Complaint is not defined).  The exact relationship between OCS-France and the OCS-Entities has been provided in discovery.

16.    OCS-Entities admit that OCSA has made smart cards in the United States in accordance with an OCS-France manufacturing process or other processes, admit that OCSA has sold and offered to sell such smart cards in New York and other places in the United States, and deny the remaining allegations in paragraph 16.

17.    OCS-Entities deny each and every allegation of paragraph 17 of the Third Amended Complaint, except admit that OSCA has solicited business in this judicial district.

18.    OCS-Entities deny each and every allegation of paragraph 18 of the Third Amended Complaint.

19.    OCS-Entities deny each and every allegation of paragraph 19 of the Third Amended Complaint, except admit that OSCA has solicited business in this judicial district.

20.    OCS-Entities deny each and every allegation of paragraph 20 of the Third Amended Complaint.

## COUNT 1
### (ALLEGED INFRINGEMENT OF THE '207 PATENT)

21.    OCS-Entities repeat and reallege their foregoing responses in paragraphs 1 through 20 as if fully set forth herein.

22.    OCS-Entities deny each and every allegation of paragraph 22 of the Third Amended Complaint.

23.     OCS-Entities deny each and every allegation of paragraph 23 of the Third Amended Complaint.

24.     OCS-Entities deny each and every allegation of paragraph 24 of the Third Amended Complaint.

25.     OCS-Entities deny each and every allegation of paragraph 25 of the Third Amended Complaint.

26.     OCS-Entities deny each and every allegation of paragraph 26 of the Third Amended Complaint.

27.     OCS-Entities deny each and every allegation of paragraph 27 of the Third Amended Complaint.

28.     OCS-Entities deny each and every allegation of paragraph 28 of the Third Amended Complaint.

29.     OCS-Entities deny each and every allegation of paragraph 29 of the Third Amended Complaint.

30.     OCS-Entities deny each and every allegation of paragraph 30 of the Third Amended Complaint.

## <u>COUNT II</u>

### (ALLEGED INFRINGEMENT OF THE '155 PATENT)

31.     OCS-Entities repeat and reallege their foregoing responses in paragraphs 1 through 30 as if fully set forth herein.

32.     OCS-Entities deny each and every allegation of paragraph 32 of the Third Amended Complaint.

33.     OCS-Entities deny each and every allegation of paragraph 33 of the Third Amended Complaint.

34.    OCS-Entities deny each and every allegation of paragraph 34 of the Third Amended Complaint.

35.    OCS-Entities deny each and every allegation of paragraph 35 of the Third Amended Complaint.

36.    OCS-Entities deny each and every allegation of paragraph 36 of the Third Amended Complaint.

37.    OCS-Entities deny each and every allegation of paragraph 37 of the Third Amended Complaint.

38.    OCS-Entities deny each and every allegation of paragraph 38 of the Third Amended Complaint.

39.    OCS-Entities deny each and every allegation of paragraph 39 of the Third Amended Complaint.

40.    OCS-Entities deny each and every allegation of paragraph 40 of the Third Amended Complaint.

## DEFENSES

### FIRST AFFIRMATIVE DEFENSE

41.    Leighton Technologies fails to state a claim upon which relief may be granted against the OCS-Entities.

### SECOND AFFIRMATIVE DEFENSE

42.    Leighton Technologies' claims are barred due to its or its predecessors in interests' laches.

### THIRD AFFIRMATIVE DEFENSE

43.    Leighton Technologies is estopped from bringing its claims in this action.

## FOURTH AFFIRMATIVE DEFENSE

44.    This claims set forth in this action are barred at least in part by 28 U.S.C. §

1498(a).

## FIFTH AFFIRMATIVE DEFENSE

45.    This action is barred because of Leighton Technologies' unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

46.    This action is barred because the Patents are invalid, not infringed and

unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE

47.    As more fully set forth and explained in Counterclaim paragraphs 71-129, which

are incorporated by reference as if fully set forth herein, the Patents-in-Suit are unenforceable.

The '155 patent was procured by inequitable conduct and is therefore unenforceable.  Moreover,

U.S. Patent Nos. 6,514,367 (the "'367 patent"), 6,441,736 (the "'736 patent") and 6,557,766 (the

"'766 patent"), each of which is purportedly owned by Leighton Technologies, were also

procured by inequitable conduct.  Furthermore, any patent resulting from U.S. Reissue Patent

Application Serial Number 10/773,810 (the "'736 reissue application") is unenforceable due to

inequitable conduct committed in the prosecution of such patent.  Based on all of the

aforementioned inequitable conduct, the Patents-in-Suit are also unenforceable under, among

other things, the doctrine of infectious unenforceability.

## EIGHTH AFFIRMATIVE DEFENSE

48.    This action is barred because Plaintiff Leighton Technologies lacks standing to

sue.

## NINTH AFFIRMATIVE DEFENSE

49.     OSC-Entities reserve the right to raise additional affirmative defenses at trial as such facts supporting any such affirmative defense become known to OSC-Entities during the pendency of this action.

## COUNTERCLAIMS

50.     For their counterclaims against Counterclaim Defendants Leighton Technologies, General Patent Corporation, General Patent Corporation International, and IP Holdings LLC, the OCS-Entities allege as follows:

### I.     JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 2201 and 2202.

### II.     THE PARTIES

52.     OCS-France is a corporation organized and existing under the laws of France with its principal place of business at 71/73 rue des Hautes-Patures, 92726 Nanterre, Cedex, France.

53.     OCSA is a Delaware corporation having its principal place of business at 3150 E. Ana Street, Rancho Dominguez, California 90221.

54.     OSCA sells plastic laminated cards, including what Plaintiff defines as smart cards to banks, financial institutions, government, communications companies and other entities within the United States.

55.     Upon information and belief, Leighton Technologies is a limited liability company organized and existing under the law of New York State with its principal place of business at Montbello Park, 75 Montbello Road, Suffern, New York 10901.

56.    Upon information and belief, General Patent Corporation ("GPC") is a New York corporation with its principal place of business at Montbello Park, 75 Montbello Road, Suffern, New York 10901.

57.    Upon information and belief, General Patent Corporation International ("GPCI") is a New York corporation with its principal place of business at Montbello Park, 75 Montbello Road, Suffern, New York 10901.

58.    Upon information and belief, IP Holdings LLC ("IPH") is a limited liability company organized and existing under the law of New York State with its principal place of business at Montbello Park, 75 Montbello Road, Suffern, New York 10901.

59.    Upon information and belief, GPCI owns 33% of Leighton Technologies and IPH owns 17% of Leighton Technologies.

### III.    GENERAL ALLEGATIONS

60.    Counterclaim Defendant Leighton Technologies alleges in the Third Amended Complaint, as it has done at various times before and most notably through its Complaint, Amended Complaint, and Second Amended Complaint filed in the present action, that the OCS-Entities infringe the Patents-in-Suit.

61.    Counterclaim Defendant Leighton Technologies maintains its allegations that OCS-Entities infringe the Patents-in-Suit despite learning, since its filing of this action, through discovery and most notably Mr. Leighton's Deposition that, among other things, Mr. Leighton has been increasing the pressure exerted by the laminating machines during cooling to at least 10% more than the pressure used while heating the same since at least 1970 and well before the dates on which he filed his patent applications for the Patents-in-Suit; that manipulating the pressure in such a way was well known in the industry since at least 1970 and well before the

dates on which he filed such patent applications; and that the inventions claimed in the Patents-in-Suit were never his to use, make, assign, license or otherwise transfer ownership therein.

62.      The Patents-in-Suit are invalid because each of them fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

63.      OCS-Entities' smart cards do not infringe any claim of the Patents-in-Suit.

### FOR AND AS A FIRST COUNTERCLAIM
**(Patent Invalidity, Unenforceability, and Noninfringement As To Counterclaim Defendant Leighton Technologies)**

64.      OCS-Entities repeat and reallege the allegations in paragraphs 1 through 63 inclusive as if fully set forth herein.

65.      This is a claim for a declaratory judgment of non-infringement, unenforceability and invalidity, arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

66.      Counterclaim Defendant Leighton Technologies has at various times alleged and currently alleges in the Third Amended Complaint that OCS-Entities' smart cards infringe the Patents-in-Suit.

67.      OCS-Entities do not infringe any claim of the Patents-in-Suit.

68.      The Patents-in-Suit are invalid because each of them fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and 112.

69.      By reason of the foregoing, an actual and justiciable case and controversy exists between OCS-Entities and Counterclaim Defendant Leighton Technologies as to whether the Patents-in-Suit are invalid and not infringed.

70.      OCS-Entities are entitled to a declaratory judgment that they have not infringed, contributed to the infringement of or induced the infringement of, and are not infringing, contributing to the infringement of or inducing the infringement of any valid and enforceable claim of the Patents-in-Suit.

## FOR AND AS A SECOND COUNTERCLAIM
### (Inequitable Conduct As To Counterclaim Defendant Leighton Technologies)

71.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 70 inclusive as if fully set forth herein.

72.    This is a claim for a declaratory judgment of unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

73.    As more fully set forth below, at least the inventors and the attorneys who prosecuted the '155, '367, '736 and '766 patents and the '736 reissue application breached their duty of candor to the United States Patent and Trademark Office ("USPTO") by failing to disclose material information to the USPTO with the intent to deceive the USPTO.

**A.    Inequitable Conduct During The Prosecution Of The '155 And '736 Patents**

74.    Upon information and belief, on October 7, 1996, Keith Leighton, the purported predecessor in interest of Leighton Technologies, filed U.S. Patent Application Serial Number 08/727,789 (the "'207 patent application"), which matured into the '207 patent. The '207 patent claims priority from U.S. Provisional Patent Application Serial Number 60/005,685, which was filed on October 17, 1995.

75.    Upon information and belief, on September 22, 1998, Keith Leighton, the purported predecessor in interest of Leighton Technologies, filed U.S. Patent Application Serial Number 09/158,290 (the "'155 patent application"), which matured into the '155 patent and is a continuation application of the '207 patent application.

76.    Upon information and belief, on August 5, 1999 Mr. Leighton filed U.S. Patent Application Serial Number 09/368,646 (the "'367 patent application"), which matured into the '367 patent and is a continuation-in-part application of the '207 patent application.

77.     Upon information and belief, on June 28, 2000 Mr. Leighton filed U.S. Patent Application Serial Number 09/606,945 (the "'736 patent application"), which matured into the '736 patent.

78.     Upon information and belief, on February 6, 2004, Leighton Technologies filed the '736 reissue application, which is currently pending before the USPTO and seeks to reissue certain claims of the '736 patent.  The '736 reissue application claims priority to, among other things, the Patents-in-Suit.

79.     Mr. Leighton's Attorneys of Record listed with the USPTO in connection with the prosecution of the '155 patent application were the law firm of Oldham and Oldham Co., L.P.A. (the "Oldham Firm"), and from that firm most notably Mark A. Watkins, Esq., Registration Number 33,813 ("Attorney Watkins").

80.     Mr. Leighton's Attorneys of Record listed with the USPTO in connection with the prosecution of the '367 patent application were initially the Oldham Firm and from that firm most notably Attorney Watkins, and then the firm Hahn, Loeser & Parks, LLP (the "Hahn Firm"), and most notably from that firm Attorney Watkins with Michael H. Minns, Esq., Registration Number 31,985 ("Attorney Minns").

81.     Mr. Leighton's Attorneys of Record listed with the USPTO in connection with the prosecution of the '736 patent application were initially the Oldham Firm and from that firm most notably Attorney Watkins, and then the Hahn Firm, and most notably from that firm Attorneys Watkins and Minns and John D. DeLong, Esq., Registration Number 44,648 ("Attorney DeLong").

82.     The '155, '367 and '736 patent applications were examined by three different patent examiners at the USPTO.

83.     The '155, '367 and '736 patent applications were prosecuted by the same Attorneys of Record – specifically Attorneys Watkins, Minns and DeLong.

84.     On December 6, 2000, the USPTO mailed to Mr. Leighton's Attorneys of Record a rejection of all of the then-pending claims in the '367 patent application. In forming this rejection, the examiner relied upon, among other things, the following references as prior art: (i) Japanese Patent Application Publication 6-176214 ("JP 214"), and (ii) United Kingdom Patent Application Nos. 2,225,283 (the "'283 application"), 2,279,610 (the "'610 application"), and 2,294,899 (the "'899 application," and, together with JP 214 and the '283 and '610 applications, the "'367 prior art references").

85.     On December 6, 2000, the '155 patent application was pending in the USPTO and did not issue until April 10, 2001.

86.     On December 6, 2000, the '736 patent application was pending in the USPTO and did not issue until August 27, 2002.

87.     Mr. Leighton and his Attorneys of Record did not disclose the '367 prior art references to the examiners of the '155 or '736 patent applications before the '155 and '736 patents issued on April 10, 2001 and August 27, 2002, respectively.

88.     Mr. Leighton and his Attorneys of Record did not disclose the co-pending '367 and '736 patent applications to the examiner of the '155 patent application before the '155 patent issued on April 10, 2001. Similarly, Mr. Leighton and his Attorneys of Record did not disclose the co-pending '155 and '367 patent applications to the examiner of the '736 patent application before the '736 patent issued on August 27, 2002.

89.    The '367 prior art references and the co-pending '367, '155 and '736 patent applications were material to the patentability of the claims in the '155 and '736 patent applications.

90.    The '367 prior art references and the co-pending '367, '155 and '736 patent applications were not cumulative of the other references of record during the prosecution of the '155 and '736 patent applications.

91.    Upon information and belief, Mr. Leighton and his Attorneys of Record intended to deceive the USPTO by failing to cause the '367 prior art references and the co-pending '367, '155 and '736 patent applications to be made of record during their prosecution of the '155 and '736 patent applications.

92.    By failing to cause the '367 prior art references and the co-pending '367, '155 and '736 patent applications to be made of record during their prosecution of the '155 and '736 patent applications, Mr. Leighton and his attorneys of record violated their duty to disclose to the USPTO all information known to them to be material to the patentability of the claims of the '155 and '736 patent applications and engaged in inequitable conduct.

**B.    Inequitable Conduct During The Prosecution Of The '367 Patent**

93.    During the prosecution of the '367 patent application, the Examiner participated in two Interviews with applicant's Attorneys of Record, on November 30, 2000 and October 9, 2002, and mailed to applicant's Attorneys of Record, among other things, Office Actions on December 6, 2000 and May 8, 2002.  Through both of these Office Actions, the Examiner specifically rejected all of the then pending claims under 35 U.S.C. § 103, relying upon, among other things, the reference JP 214 as prior art.

94.    On October 2, 2002, in response to these rejections of all of the then-pending claims in the '367 patent application, Mr. Leighton, by and through his Attorneys of Record, amended the '367 patent application by adding a limitation that required the pressure during cooling to be at least 10% greater than the pressure during heating.

95.    In addition, Mr. Leighton, by and through his Attorneys of Record, represented to the Examiner that the prior art neither taught nor suggested "to increase the pressure during cooling to **at least 10% greater than the pressure applied during heating** . . . ." Emphasis in original.

96.    The Examiner and Mr. Leighton's Attorneys of Record participated in a second Interview on October 9, 2002.

97.    Following the second Interview, the Examiner issued a Notice of Allowability dated October 9, 2002. The Notice of Allowability included an Examiner's Amendment through which the Examiner specifically explained that his "reasons for allowance: "[were that] [n]one of the prior art of record taught or suggested that one skilled in the art at the time the invention was made to apply a third pressure upon the assembly during cooling wherein **the second pressure was at least 10% greater than the first pressure** applied during assembly and heating." Emphasis added.

98.    The '367 patent issued on February 4, 2003.

99.    Mr. Leighton and his Attorneys of Record did not disclose the co-pending '155 and '736 patent applications to the examiner of the '367 patent application.

100.    Upon information and belief, Mr. Leighton and his Attorneys of Record were aware of prior art that suggested and taught the greater than 10% pressure limitation at the time of filing the Amendment After Final Rejection dated October 2, 2002 and participating in the

second Interview on October 9, 2002. For example, Mr. Leighton testified during his October 9, 2005 deposition that he was aware of prior art that suggested and taught the greater than 10% pressure limitation at this time.

101.    That prior art and the co-pending '155 and '736 patent applications were material to the patentability of the claims in the '367 patent application.

102.    That prior art and the co-pending '155 and '736 patent applications were not cumulative of the other references of record in the '367 patent application.

103.    Upon information and belief, Mr. Leighton and his Attorneys of Record intended to deceive the USPTO by failing to cause this prior art and the co-pending '155 and '736 patent applications to be made of record during their prosecution of the '367 patent application.

104.    By failing to cause this prior art and the co-pending '155 and '736 patent applications to be made of record during their prosecution of the '367 patent application, Mr. Leighton and his Attorneys of Record violated their duty to disclose to the USPTO all information known to them to be material to patentability of the claims of the '367 patent application and engaged in inequitable conduct.

**C.    Inequitable Conduct During The Prosecution Of The '766 Patent**

105.    Upon information and belief, on October 2, 2000, Keith Leighton, the purported predecessor in interest of Leighton Technologies, filed U.S. Patent Application Serial Number 09/677,501 (the "'766 patent application"), which matured into the '766 patent.

106.    The '766 patent issued on May 6, 2003.

107.    Mr. Leighton's Attorneys of Record listed with the USPTO in connection with the prosecution of the '766 patent application were initially the Oldham Firm and from that firm

most notably Attorney Watkins, and then the Hahn Firm, and most notably from that firm Attorney Watkins.

108.    The Examiner of the '766 patent was different from the Examiners of the '207, '155, '367, and '736 patent applications.

109.    During prosecution of the '766 patent application and before the date on which the '766 patent issued, Leighton and his attorneys did not submit any prior art references to the USPTO that were material to the patentability of the claims in the '766 patent application.

110.    The only prior art made of record during the prosecution of the '766 patent application were six references that were made of record by the Examiner.

111.    During prosecution of the '766 patent application and before the date on which the '766 patent issued, Leighton and his attorneys of record were aware of prior art references material to the patentability of the claims in the '766 patent application, such as, for example, the '207, '155, '367 and '736 patents themselves, and the prior art made of record during the prosecution of each of those patents (collectively, "the Leighton prior art").

112.    The Leighton prior art was material to the patentability of the claims in the '766 patent application.

113.    The Leighton prior art was not cumulative of the other references of record during the prosecution of the '766 patent application.

114.    Upon information and belief, Mr. Leighton and his Attorneys of Record intended to deceive the USPTO by failing to cause the Leighton prior art to be made of record during their prosecution of the '766 patent application.

115.    By failing to cause the Leighton prior art to be made of record during their prosecution of the '766 patent application, Mr. Leighton and his attorneys of record violated their

duty to disclose to the USPTO all information known to them to be material to the patentability of the claims of the '766 patent application and engaged in inequitable conduct.

**D.    Inequitable Conduct During Prosecution Of The '736 Reissue Application**

116.    On February 6, 2004, the plaintiff in this action, Leighton Technologies, filed a reissue application for the '736 patent. Leighton Technologies was the assignee of the '736 patent at the time the application was filed. The Attorneys of Record for Leighton Technologies in the '736 reissue application at the time it was filed were Neil Cohen and Paul J. Lerner. Messrs. Cohen and Lerner are principals of Counterclaim Defendant GPCI.

117.    In the reissue application, Leighton Technologies set forth two purported errors upon which it based its reissue request: first, that "one or more steps were erroneously added to Claim 1" of the patent; and, second, that the '736 patent failed to make reference to a prior copending application. Specifically, Leighton Technologies stated as follows:

> Independent claim 1 recites one or more steps that are not required to distinguish the invention over the prior art. One error relied upon as a basis for this reissue is that these one or more steps were erroneously added to Claim 1 and thus unnecessarily limit the scope thereof. New claims 19-44 remedy this error. A second error relied upon is that [the] applicant failed to make reference to a prior copending application. This second error is also remedied by the reissue.

118.    To correct the alleged error regarding the priority date, Leighton Technologies submitted a Preliminary Amendment with its reissue application in which it amended the specification to claim priority from, among other things, two Patents-in-Suit in this Action and the provisional application from which the Patents-in-Suit claim priority.

119.    In addition, in the same Preliminary Amendment, Leighton Technologies added several new claims in which it deleted limitations or "steps" it represented "were erroneously added to Claim 1 [of the '736 patent] and thus unnecessarily limit the scope thereof" (the "deleted limitations"). For example, Claim 1 of the reissue application (original Claim 1 of the

'736 patent) is set forth below, with the steps deleted by Leighton Technologies in the "new claims" shown in brackets and italics:

A process for incorporating at least one electronic element in the manufacture of a plastic device comprising the steps of:
(a) providing first and second plastic core sheets;
(b) positioning said at least one electronic element [*in the absence of a non-electronic carrier directly*] between said first and second plastic core sheets to form a core, [*said plastic core sheets defining a pair of inner and outer surfaces of said core*];
(c) positioning said core in a laminator apparatus, and subjecting said core to a heat and pressure cycle, said heat and pressure cycle comprising the steps of:
(i) heating said core [*for a first period of time*];
(ii) applying a first pressure to said core [*for a second prior of time*] such that said at least one electronic element is encapsulated by said core;
(iii) cooling said core while applying a second pressure to said core;
(d) [*coating at least one of said outer surfaces of said core with a layer of ink; and*]
(e) [*applying a layer of overlaminate film to at least one outer surface of said core*].

120.    In contrast to its representation to the USPTO that "one or more steps were erroneously added to Claim 1 and thus unnecessarily limit the scope thereof," Leighton Technologies has represented to the Court during this Action (such as during the claim construction and summary judgment hearings) that its invention was patentable because it included certain steps it seeks to eliminate in its reissue application. For example, Leighton Technologies has asserted in this Action that the claims of the Patents-in-Suit are novel in that they do not require the use of a non-electronic carrier and, as a result, the electronic element can be directly located between two plastic core sheets.

121.    Upon information and belief, in its reissue application Leighton intentionally did not specifically identify the claim limitations that were allegedly erroneously added to its claims, apparently because it sought to have the USPTO issue broad patents claims that it could potentially assert against the OCS-Entities and other companies in the industry. Leighton Technologies filed the reissue on the '736 patent, and not on either of the two Patents-in-Suit in this case, because the deadline to file a broadening reissue patent application had already expired

with respect to the Patents-in-Suit. Leighton Technologies has never informed the Court in this Action of its pending reissue application and its attempt to obtain broader patent claims, or of its representations to the USPTO and this Court which are contradictory.

122.   In addition, for its proposed reissue claims Leighton Technologies seeks to claim priority to the October 17, 1995 date of the filing of the provisional application to which the '207 patent claims priority. Upon information and belief, in doing so, Leighton Technologies is attempting to pre-date prior art which has been cited against its various patent applications. The failure to not claim priority to the original application for the '207 patent was not an "error" as Leighton Technology asserts. This is exemplified by the fact that the priority date was not amended during the '736 application process even though the '207 patent was cited as prior art. Upon information and belief, Leighton Technologies' proposed amendment in the reissue application constitutes inequitable conduct because it is being made as part of Leighton's overall litigation strategy and not to correct an error made during the prosecution of the original '736 application.

123.   As of July 5, 2006, Leighton Technologies, Mr. Leighton, and the Attorneys of Record had not informed the USPTO of its inconsistent positions or made any of the material litigation documents or things generated in this Action of record in the prosecution of the '736 reissue application (the "material litigation information"), even though a substantial amount of such documents and things (e.g., filings relating to claim construction and validity issues) are material to the patentability of the subject matter of the '736 reissue application. Such documents are material to patentability because, for example, the Patents-in-Suit and '736 reissue application are related and claim similar subject matter, and Leighton Technologies has

taken the position in this case that the novelty of the inventions disclosed in the Patents-in-Suit was based on the deleted limitations.

It was not until Oberthur's counsel provided a draft of this Answer and Counterclaims on July 5, 2006, and also served a subpoena on Leighton's patent counsel who was handling the reissue prosecution, that Leighton made any attempt to inform the USPTO of some of the pertinent events in this litigation. Specifically, on July 5, 2006, counsel for the OCS-Entities sent a draft of this Answer and Counterclaims to counsel for Leighton which included the allegations set forth above in this paragraph. On that same day, the OCS-Entities also served a subpoena for documents and things on Leighton's Attorney of Record in the prosecution of the '736 reissue application. On the next day (July 6, 2006), after having received notice of the OCS-Entities' inequitable conduct positions, Leighton's prosecution counsel submitted an Information Disclosure Statement (IDS) to the '736 reissue Examiner. Upon information and belief, that IDS was submitted in response to the inequitable conduct allegations made by the OCS-Entities.

124.    Leighton Technologies' inconsistent positions before the USPTO and this Court constitute inequitable conduct. Furthermore, Leighton Technologies' failure to disclose material litigation information to the USPTO regarding the contrary positions it has taken in this Action violate its duty of disclosure to the USPTO. Specifically, pursuant to the USPTO's Manual of Patent Examining Procedure ("MPEP"), a patent applicant's duty of disclose set forth in 37 C.F.R. § 1.56 requires, among other things, that:

> Where the subject matter for which a patent is being sought is or have been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the [USPTO]. Examples of such material information include evidence of possible prior uses or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure." Another example of such

material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner. MPEP § 2001.06(c).

125.    Upon information and belief, Leighton Technologies, Mr. Leighton and the Attorneys of Record intended to deceive the USPTO by failing to cause the material litigation information to be made of record during their prosecution of the '736 reissue application.

126.    By failing to cause the material litigation information to be made of record during their prosecution of the '736 reissue application, Leighton Technologies, Mr. Leighton and the Attorneys of Record violated their duty to disclose to the USPTO all information known to them to be material to the patentability of the claims of the '736 reissue application and engaged in inequitable conduct.

127.    Even if Leighton Technologies were to submit all the material litigation information to the USPTO after receiving this allegation of inequitable conduct, such submission would not remedy the inequitable conduct which Leighton Technologies has already committed.

**E.    The Patents Are Unenforceable**

128.    For at least the reasons set forth above, the '155, '736, '766 and '367 patents (and any patent resulting from the '736 reissue application) were procured by inequitable conduct and are, therefore, unenforceable. Based on such inequitable conduct, the Patents-in-Suit are also unenforceable under, among other things, the doctrine of infectious unenforceability.

129.    By reason of the foregoing, an actual and justiciable case and controversy exists between OCS-Entities and Counterclaim Defendant Leighton Technologies as to whether the Patents-in-Suit are unenforceable, and the OCS-Entities are entitled to a declaratory judgment that the Patents-in-Suit are unenforceable.

## FOR AND AS A THIRD COUNTERCLAIM
### (Patent Misuse As To Counterclaim Defendants Leighton Technologies, GPC, GPCI, and IPH)

130.    OCS-Entities repeat and reallege the allegations in paragraphs 1 through 129 inclusive as if fully set forth herein.

131.    This is a claim for a declaratory judgment of unenforceability, arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

132.    In paragraph 10 of the Third Amended Complaint the Counterclaim Defendant Leighton Technologies asserts that it "is the owner by assignment [from Mr. Leighton] of . . . the Patents . . . and has right to sue, and recover damages, for infringement thereof."

133.    Upon information and belief, Mr. Leighton was never the owner of any right, title or interest in and to the inventions claimed by the Patents-in-Suit, and thus Mr. Leighton could not convey good and proper title of the same onto Counterclaim Defendant Leighton Technologies.

134.    Upon information and belief, the Counterclaim Defendants Leighton Technologies, GPC, GPCI, and IPH knew or should have known that Mr. Leighton was never the owner of any right, title or interest in and to the inventions claimed by the Patents-in-Suit, and thus that Mr. Leighton could not convey good and proper title of the same onto Counterclaim Defendant Leighton Technologies.

135.    Upon information and belief, Counterclaim Defendants Leighton Technologies, GPC, GPCI, and IPH knew or should have known when each was issued that the Patents-in-Suit were invalid, or were procured and rendered unenforceable by inequitable conduct, or both.

136.    For the reasons set forth above, Counterclaim Defendant Leighton Technologies, GPC, GPCI, and IPH have misused one or more of the Patents-in-Suit by attempting to obtain licenses therefrom.

137. For the reasons set forth above, Counterclaim Defendant Leighton Technologies, GPC, GPCI, and IPH have misused one or more of the Patents-in-Suit by asserting claims of infringement despite knowing that the Patents-in-Suit upon which the claims are based are invalid and unenforceable.

138. By reason of the foregoing, an actual and justiciable case and controversy exists between OCS-Entities and Counterclaim Defendant Leighton Technologies, GPC, GPCI, and IPH as to whether the Patents-in-Suit are each unenforceable by reason of the aforementioned patent misuse.

139. The OCS-Entities are entitled to a declaratory judgment that the Patents-in-Suit are unenforceable by reason of the aforementioned patent misuse.

## PRAYER FOR RELIEF

WHEREFORE, OCS-Entities request judgment as follows:

A. For an order dismissing Counterclaim Defendant Leighton Technologies' patent infringement claims with prejudice with Counterclaim Defendant Leighton Technologies to recover nothing thereon;

B. For a declaration that the Patents-in-Suit are invalid, unenforceable, and not infringed;

C. For a declaration that this case is exceptional under 35 U.S.C. § 285;

D. For a finding that the Counterclaim Defendant Leighton Technologies' bad faith initiation of the present action has been willful, and awarding OCS-Entities its damages trebled;

E. For an award to OCS-Entities of their costs, interest, and attorneys' fees; and

F. For such other and further relief as the Court may deem just and proper.

DATED:    New York, New York
          August 9, 2006

QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP


By: _____
    Edward DeFranco (ED-6524)
    Robert C. Juman (RJ-6350)
    51 Madison Avenue, 22nd Floor
    New York, New York  10010-1601
    (212) 849-7000

    Kevin Johnson (KJ-8689)
    555 Twin Dolphin Drive, Suite 560
    Redwood Shores, CA 94065
    (650) 801-5000


*Attorneys for Defendants Oberthur Card
Systems, S.A. and Oberthur Card Systems of
America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DEFENDANTS' ANSWER TO

THIRD AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

was served on the following on August 9, 2006 by overnight mail and email:

> Robert A. Gutkin, Esq. (Pro hac vice)
> Blair M. Jacobs, Esq. (Pro hac vice)
> Christina A. Ondrick (Pro hac vice)
> SUTHERLAND ASBILL & BRENNAN LLP
> 1275 Pennsylvania Avenue, N.W.
> Washington, DC 20004-2415

By: _____
        Mark Baker