**EXHIBIT 19A-L**

**19.A.**

*****CONFIDENTIAL DEPOSITION****

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leighton Technologies, LLC, )

    Plaintiff-Counterclaim  )

    Defendant,        )Case No.

    -vs-        )04Civ

Oberthur Card Systems, S.A.,)2496(CM)

    Defendant-Counterclaim  )

    Plaintiff.        )

- - - oOo - - -

Deposition of KEITH R. LEIGHTON, a
witness herein, called by the Defendant-
Counterclaim Plaintiff, as if upon
cross-examination under the statute, and
taken before Luanne Stone, a Notary Public
within and for the State of Ohio, pursuant
to the issuance of notice and subpoena, and
pursuant to the further stipulations of
counsel herein contained, on Sunday, the 9th
day of October, 2005 at 9:00 o'clock A.M.,
at the Renaissance Hotel, the City of
Cleveland, the County of Cuyahoga and the
State of Ohio.

*****CONFIDENTIAL DEPOSITION*****

**Tackla & Associates**
Court Reporting & Videotaping

Tackla & Associates Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

```
 1   twice as big is going to have twice as much
 2   pressure as a ram which is half its size?
 3        MR. GUTKIN:    Lacks foundation.  You
 4   can answer.
 5        MR. JACOBS:    Let me -- let me refresh
 6   the question.  I think you're right.  It's a
 7   terribly asked question.
 8        MR. GUTKIN:    It's kind of
 9   interesting, though, where you were going.
10        THE WITNESS:  You're getting into
11   physics where I'm not a person to be doing
12   that, so --
13        THE VIDEOGRAPHER: Off the record.
14        (At this time a short recess was had.)
15        THE VIDEOGRAPHER: Back on the record.
16   BY MR. JACOBS:
17   Q   Mr. Leighton, prior to going off the
18   record, you indicated that you weren't a
19   physicist.  So, don't answer; don't guess;
20   don't speculate, but based upon your
21   experience in doing this for many, many
22   years, is it -- is it accurate to say that
23   the pressure in the cold press of a plastic
24   laminating -- plastic card laminating press
25   is much higher than that in the heating
```

```
 1   press?
 2        MR. GUTKIN:    Vague and ambiguous.
 3   You can answer.
 4        THE WITNESS:    I really don't know the
 5   answers to that question.
 6   BY MR. JACOBS:
 7   Q    Okay.
 8   A    Because when I went out to Motorola, I
 9   had some equipment I wasn't even familiar
10   with, and I had a can of worms because I did
11   not know the pressures that they had on
12   their laminator.  The controls were all
13   messed up.
14   Q    Well, with the plastic card laminators,
15   have you ever, prior to going to Motorola,
16   ever worked on a dual-stack laminator for
17   plastic laminated cards?
18   A    No.
19   Q    Okay.  Now, at Motorola, you laminated
20   into the card an RF/ID.
21   A    Yes.
22   Q    What -- what -- what are the components
23   in an RF/ID module or whatever it's called?
24   Let me go back.  What do you call that thing
25   that you laminate into the card?
```

**19.B.**

*****CONFIDENTIAL DEPOSITION****

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leighton Technologies, LLC, )

    Plaintiff-Counterclaim  )

    Defendant,          )Case No.

    -vs-           )04Civ

Oberthur Card Systems, S.A.,)2496(CM)

    Defendant-Counterclaim  )

    Plaintiff.       )

       - - - oOo - - -

    Deposition of KEITH R. LEIGHTON, a

witness herein, called by the Defendant-

Counterclaim Plaintiff, as if upon

cross-examination under the statute, and

taken before Luanne Stone, a Notary Public

within and for the State of Ohio, pursuant

to the issuance of notice and subpoena, and

pursuant to the further stipulations of

counsel herein contained, on Sunday, the 9th

day of October, 2005 at 9:00 o'clock A.M.,

at the Renaissance Hotel, the City of

Cleveland, the County of Cuyahoga and the

State of Ohio.

    *****CONFIDENTIAL DEPOSITION*****

**Tackla**
**& Associates**
Court Reporting & Videotaping

Tackla & Associates
1422 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 ● Fax 216-241-3935

1    A    That was at CSI or formerly 2B System.

2    Q    What kind of press did they have there?

3    A    Single-stack laminator.

4    Q    And was that -- during that lamination

5    step again, you -- you -- you -- you had a

6    heating phase?

7    A    Right.

8    Q    And you had a cooling phase?

9    A    Correct.

10   Q    And was the cooling -- was the pressure

11   used during the cooling at least ten percent

12   greater than the pressure used in the

13   heating?

14   A    Yes.

15   Q    That you remember very clearly?

16   A    That I remember very clearly.

17   Q    But you don't remember that, in fact, at

18   Motorola, the pressure during the cooling

19   was at least ten percent greater than the

20   heating; is that correct?

21   A    The reason I don't remember it at

22   Motorola is they had different size rams.

23   We had a single pump doing two different

24   size rams, so we maintained a ram pressure.

25   Q    So, so, it's possible that you used a

```
1    pressure at Motorola during the cooling that
2    was at least ten percent greater than the
3    pressure during the heating; is that
4    correct?
5    A    I'm not sure.  I'm not sure.
6    Q    Do you have any notes of what you did at
7    Motorola?
8    A    No.
9    Q    Who did you work with at Motorola?
10   A    One of the gentlemen's name was Ken
11   Thompson, and the other one was Noel
12   Eberhard.  Don't ask me to spell it.
13   Q    Now, you described earlier how at
14   Motorola they had a large dwell time,
15   correct?
16   A    Right.
17   Q    And that was because they had the wrong
18   type of press?
19   A    Correct.
20   Q    And that meant because that the pressure
21   in the cooling press was lower than the
22   pressure in the heating press, correct?
23   A    Correct, that's correct.
24   Q    And, so, they went to -- how did they
25   correct that problem?
```

**19.C.**

*****CONFIDENTIAL DEPOSITION****

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leighton Technologies, LLC, )

   Plaintiff-Counterclaim  )

   Defendant,        )Case No.

   -vs-         )04Civ

Oberthur Card Systems, S.A.,)2496(CM)

   Defendant-Counterclaim  )

   Plaintiff.      )

- - - oOo - - -

Deposition of KEITH R. LEIGHTON, a
witness herein, called by the Defendant-
Counterclaim Plaintiff, as if upon
cross-examination under the statute, and
taken before Luanne Stone, a Notary Public
within and for the State of Ohio, pursuant
to the issuance of notice and subpoena, and
pursuant to the further stipulations of
counsel herein contained, on Sunday, the 9th
day of October, 2005 at 9:00 o'clock A.M.,
at the Renaissance Hotel, the City of
Cleveland, the County of Cuyahoga and the
State of Ohio.

*****CONFIDENTIAL DEPOSITION*****

**Tackla**
**& Associates**
Court Reporting & Videotaping

Tackla & Associates Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

1    Q    Anything else?

2    A    It would be much easier.  No, I would

3    say that would cover it.

4    Q    Are the pressures and temperatures you

5    use in your invention different than that

6    that were used at Motorola?

7         MR. GUTKIN:    Vague and ambiguous.

8    Lacks foundation, compound.

9         THE WITNESS:    I don't recall all the

10   temperatures that I used at Motorola,

11   because I was in there using many different

12   temperatures at Motorola.  When I left, I

13   don't know what they did.

14   BY MR. JACOBS:

15   Q    I'm not asking what they did while --

16   after you left.  I'm asking solely while you

17   were there.  You can't testify to what you

18   don't know.

19   A    Yeah.

20   Q    Well, Motorola did use a heating phase

21   and followed by a cooling phase, correct?

22   A    Right, that's correct.

23   Q    Did -- at Motorola, the pressures during

24   the cooling phase were greater than the

25   pressures during the heating phase?

1    A    I don't know about the surface pressure.

2    Their ram pressure might have been greater,

3    but what the surface pressure of the plastic

4    core sheet, I'm not certain what that was.

5    Q    Did you ever know what the surface

6    pressure at the core sheet was at Motorola?

7    A    No, I don't think I ever got that broken

8    down mathematically.

9    Q    And you don't have any documents that

10    would refresh your recollection --

11    A    No.

12    Q    -- as to that?

13    A    No.    Everything I did at Motorola stayed

14    at Motorola as far as information is

15    concerned.    The documentation that I made

16    was in a scrapbook log that was kept at

17    Motorola.

18    Q    Do you know where that log is today?

19    A    No, I don't.

20    Q    Did you make entries in that log?

21    A    Only what I was doing there.    Yes, I

22    made entries in that log, but those entries

23    that I made in the log would only be good

24    for that type of laminator.    It would not

25    work on any other laminator.

**19.D.**

*****CONFIDENTIAL DEPOSITION****

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leighton Technologies, LLC, )

   Plaintiff-Counterclaim  )

   Defendant,        )Case No.

   -vs-         )04Civ

Oberthur Card Systems, S.A.,)2496(CM)

   Defendant-Counterclaim  )

   Plaintiff.      )

- - - oOo - - -

Continued deposition of KEITH R. LEIGHTON, a witness herein, called by the Defendant- Counterclaim Plaintiff, as if upon cross-examination under the statute, and taken before Luanne Stone, a Notary Public within and for the State of Ohio, pursuant to the issuance of notice and subpoena, and pursuant to the further stipulations of counsel herein contained, on Monday, the 10th day of October, 2005 at 9:00 o'clock A.M., at the Renaissance Hotel, the City of Cleveland, the County of Cuyahoga and the State of Ohio.

*****CONFIDENTIAL DEPOSITION*****

**Tackla**
**& Associates**
Court Reporting & Videotaping

Tackla & Associates
1220 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

1    that correct?

2    A:      Yes, and they were very happy with

3    what I produced, and then they said:  Okay,

4    now we're over the easy part; let's go to

5    the hard part, and they changed their

6    contract agreement, giving me an air wound

7    coil the size of a dollar to place in their

8    card, much more difficult to do.  So, all my

9    formulas had to again be changed, and, then,

10   they provided me with a live chip in the

11   first ones.

12   Q:      What temperature did -- when you made

13   this first card or cards that proved your

14   idea, what temperature -- did you use a

15   heating phase and a cooling phase followed

16   by --

17   A:      Yes.

18   Q:      -- a recycling phase?

19   A:      But I cannot recall the temperatures

20   that I used there or the pressures that I

21   used.

22   Q:      How did you determine which

23   temperatures you should use in the heating

24   phase?

25   A:      I liquefied the plastic that I had

TACKLA & ASSOCIATES

**19.E.**

*****CONFIDENTIAL DEPOSITION****

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leighton Technologies, LLC, )

   Plaintiff-Counterclaim  )

   Defendant,          )Case No.

   -vs-            )04Civ

Oberthur Card Systems, S.A.,)2496(CM)

   Defendant-Counterclaim  )

   Plaintiff.       )

- - - oOo - - -

Continued deposition of KEITH R. LEIGHTON, a witness herein, called by the Defendant- Counterclaim Plaintiff, as if upon cross-examination under the statute, and taken before Luanne Stone, a Notary Public within and for the State of Ohio, pursuant to the issuance of notice and subpoena, and pursuant to the further stipulations of counsel herein contained, on Monday, the 10th day of October, 2005 at 9:00 o'clock A.M., at the Renaissance Hotel, the City of Cleveland, the County of Cuyahoga and the State of Ohio.

*****CONFIDENTIAL DEPOSITION*****

**Tackla & Associates**
Court Reporting & Videotaping

Tackla & Associates Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

1   Q:      So, you -- and you took this Empire

2   PVC, and you melted it.

3   A:      That is correct.

4   Q:      Did you melt it in the laminating

5   press?

6   A:      That is correct.

7   Q:      So, you ran a number of experiments;

8   is that correct?

9   A:      Yes.

10   Q:      Until you determined that you had

11   reached a temperature where the plastic

12   would melt?

13   A:      That's correct.

14   Q:      How did you determine what pressure

15   you should use in the heating cycle?

16   A:      That was through many tests to go

17   through to find out if I was achieving a

18   point where it would be coming out smooth

19   without voids in the plastic which I would

20   overcome by the second laminating step in

21   the first place.  I mean, they had a

22   requirement they wanted to use.  I had to

23   assist them in what they wanted to do.

24   Q:      Could you explain how you determined

25   the pressure during the heating phase?

TACKLA & ASSOCIATES

1    A:    I kept trying until I found a

2    temperature and pressure that would produce

3    a smooth prelam to begin with, which took

4    many tests.

5    Q:    Did you use a different pressure

6    during the cooling than you did during the

7    heating?

8    A:    Yes.

9    Q:    Did you use a higher pressure during

10   the cooling than you used in the heating?

11   A:    I don't recall all of that, because

12   they had an antique circuit board, single

13   function pump, and they changed the plumbing

14   on their rams, so what the actual pressures

15   were, I'm not sure.

16   Q:    Well, based on your experience and

17   your knowledge, was the pressure higher in

18   the cooling than the pressure in the

19   heating?

20   A:    I tried to obtain that, yes.

21   Q:    So, you tried -- your goal was to

22   obtain a higher pressure during the cooling

23   than in the heating?

24   A:    Right, from my previous knowledge

25   that I use on all the card manufacturing.

                              TACKLA & ASSOCIATES

1   Q:    But because of the machinery and the

2   lack of valves, you don't know exactly how

3   much higher it was in the cooling than it

4   was in the heating, correct?

5   A:    Right.  They had a gauge that showed

6   bar pressure, but that was pump pressure,

7   and they changed the plumbing, trying to get

8   the two laminators to close at the same

9   time.

10   Q:    And this --

11   A:    By doing that, it threw all records

12   off.

13   Q:    And this plumbing was changed prior

14   to the time of your second visit to

15   Motorola?

16   A:    I'm not sure of the time that they

17   changed it, but they realized they had a

18   problem.  They had a Burkle serviceman

19   coming out there, trying to advise them what

20   to do.

21   Q:    That wasn't Mr. Sanko?

22   A:    No.

23   Q:    Someone else?

24   A:    It was a man from Burkle, and that

25   man from Burkle agreed with me.  I met the

TACKLA & ASSOCIATES

**19.F.**

\*\*\*\*\*CONFIDENTIAL DEPOSITION\*\*\*\*

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Leighton Technologies, LLC, )

   Plaintiff-Counterclaim  )

   Defendant,        )Case No.

   -vs-          )04Civ

Oberthur Card Systems, S.A.,)2496(CM)

   Defendant-Counterclaim  )

   Plaintiff.       )

- - - oOo - - -

Continued deposition of KEITH R. LEIGHTON, a witness herein, called by the Defendant- Counterclaim Plaintiff, as if upon cross-examination under the statute, and taken before Luanne Stone, a Notary Public within and for the State of Ohio, pursuant to the issuance of notice and subpoena, and pursuant to the further stipulations of counsel herein contained, on Monday, the 10th day of October, 2005 at 9:00 o'clock A.M., at the Renaissance Hotel, the City of Cleveland, the County of Cuyahoga and the State of Ohio.

\*\*\*\*\*CONFIDENTIAL DEPOSITION\*\*\*\*\*

**Tackla**
**& Associates**
Court Reporting & Videotaping

Tackla & Associates Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 ● Fax 216-241-3935

```
 1   pin this down.  In your first couple of days
 2   at Motorola during your second visit when
 3   you proved out your idea --
 4   A:     Uh-huh.
 5   Q:     -- it was impossible because of
 6   whatever happened to the presses to tell how
 7   much higher the pressure was in the cooling
 8   than it was in the heating?
 9   A:     That's correct.
10   Q:     How big was the -- going back to your
11   first couple of days when they gave you
12   about the dime size electronics, recalling
13   your testimony from yesterday, the chip sat
14   inside the wire wound antenna, correct?
15   A:     Right.
16   Q:     How much smaller was the chip than
17   the inner diameter of the coil?
18   A:     It could be a couple thousandths of
19   an inch thinner.  The coil actually acted as
20   a buffer, taking the pressure off the chip
21   on the particular card.
22   Q:     Yeah.
23   A:     But they had, in turn -- the ones
24   that they had been producing, they had that
25   premade up with a soft gel acting as a
```

TACKLA & ASSOCIATES

19.G.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - -

LEIGHTON TECHNOLOGIES, LLC,    )

          plaintiff,        )

   vs.                          )  Case No.

                         )  04 Civ. 02496 (CM)

OBERTHUR CARD SYSTEMS, S.A. )

and OBERTHUR CARD SYSTEMS    )

OF AMERICA CORP.,            )

         defendants.        )

- - - - -

(Volume III - pages 522 through 875)

- - - - -

Continued videotaped deposition of

KEITH LEIGHTON, a witness herein, called by the

defendants as if upon cross-examination, and

taken before David J. Collier, RPR, Notary

Public within and for the State of Ohio,

pursuant to Notice of Deposition and pursuant to

the further stipulations of counsel herein

contained, on Monday, the 23rd day of October,

2006 at 8:02 a.m., at the offices of Tackla &

Associates, 1020 Ohio Savings Plaza, City of

Cleveland, County of Cuyahoga and the State of

Ohio.



**Tackla**
**& Associates**
Court Reporting & Videotaping

1020 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 ● Fax 216-241-3935

1    A    Yes.

2    Q    Did the heating step follow the -- I'm

3    sorry.  Did the cooling step follow the heating

4    step?

5    A    Yes.

6    Q    Was it immediate?

7    A    They had a problem with their laminator

8    because they modified their rams and the

9    plumbing from the pump.

10   Q    All right.  Yeah.  You said this at your

11   earlier deposition, it was -- it was a printed

12   circuit board laminator; is that right?

13   A    Right.  That's correct.

14   Q    And it was designed so that the pressure

15   during cooling would be less than during

16   heating, generally?

17   A    We didn't actually know the pressures.

18   Q    Okay.

19   A    Because they have a bar pressure on that

20   laminator that they could only get a pump

21   pressure reading, but on this laminator that

22   Motorola had, they had the hot side a large ram,

23   the cold side was a smaller ram, and those

24   should actually be reversed for card

25   manufacturing purpose.

1  Q    Right.

2  A    They tried to modify the rams in their

3  laminator.

4  Q    They tried --

5  A    To make them close in equal time, but they

6  couldn't do that while I was there.

7  Q    Did they try that prior to when you started

8  working there?

9  A    Yes.

10  Q    Okay.

11  A    I'm not sure when they modified their rams.

12  That was done before I come in.

13  Q    Do you remember the length of time -- well,

14  let's start at the beginning.  I'd like you to

15  walk us through your memory of the process that

16  was used to make the card in Exhibit A.  In

17  other words, if you could walk us through the

18  steps, heating started at this temperature and

19  this pressure for this long, if you remember.

20           MR. GUTKIN:      Object to form.

21  A    I don't recall.  I don't recall

22  temperatures.

23  Q    You don't recall any temperatures at all?

24  A    No.

25  Q    No ranges at all?

**19.H.**

`

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - -

LEIGHTON TECHNOLOGIES, LLC, )

           plaintiff,     )

    vs.                )  Case No.

                   )  04 Civ. 02496 (CM)

OBERTHUR CARD SYSTEMS, S.A. )

and OBERTHUR CARD SYSTEMS )

OF AMERICA CORP., )

         defendants.   )

- - - - -

(Volume III - pages 522 through 875)

- - - - -

    Continued videotaped deposition of

KEITH LEIGHTON, a witness herein, called by the

defendants as if upon cross-examination, and

taken before David J. Collier, RPR, Notary

Public within and for the State of Ohio,

pursuant to Notice of Deposition and pursuant to

the further stipulations of counsel herein

contained, on Monday, the 23rd day of October,

2006 at 8:02 a.m., at the offices of Tackla &

Associates, 1020 Ohio Savings Plaza, City of

Cleveland, County of Cuyahoga and the State of

Ohio.



**Tackla**
**& Associates**
Court Reporting & Videotaping

1020 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

1    had a service man from Burkle doing everything

2    that they asked him to do.

3    Q    Right.

4    A    And he told them, junk it, get a plastic

5    card laminator.

6    Q    Right.  But they didn't junk it, right?

7    A    That's correct.

8    Q    That's the laminator that you were forced

9    to use when you were consulting for Motorola?

10   A    That's all they had when I was there.

11   Q    And you knew one problem that you had to

12   fix was the pressure during heating and cooling

13   at least had to be the same, the ram pressures

14   had to be the same, right, or else you weren't

15   going to make an acceptable card?

16   A    In working with it, we tried different

17   tests.

18   Q    Okay.  And that was one test you tried?

19   A    That's one test we tried, yes.

20   Q    Right.  Because that's exactly what you

21   said earlier, that's why --

22   A    Right.

23   Q    -- that printed circuit board press was not

24   good for making cards, because the pressures had

25   to be at least the same in the heating and

1  cooling rams; is that right?

2  A    Right.  And we didn't even know the

3  pressures even.

4  Q    Okay.

5  A    Whether I was -- whether on the cold side

6  it could be less than on the hot side.  I didn't

7  know.

8  Q    You didn't know what actually was happening

9  in the press?

10  A    That's correct.

11  Q    But you at least knew that the ram on the

12  cooling side was much smaller than the ram on

13  the hot side, right?

14  A    Right.

15  Q    So you knew the pressure was less

16  generally, right?

17  A    Right.

18  Q    As it existed for printed circuit boards,

19  right?

20  A    Right.

21  Q    But you couldn't measure exactly what it

22  was as changes were made to it?

23  A    Right.  The gauges weren't showing what

24  they were doing.

25  Q    But your goal was to make it at least the

**19.I.**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - -

LEIGHTON TECHNOLOGIES, LLC, )

        plaintiff,     )

  vs.          ) Case No.

           ) 04 Civ. 02496 (CM)

OBERTHUR CARD SYSTEMS, S.A. )

and OBERTHUR CARD SYSTEMS  )

OF AMERICA CORP.,      )

        defendants.   )

- - - - -

(Volume III - pages 522 through 875)

- - - - -

Continued videotaped deposition of
KEITH LEIGHTON, a witness herein, called by the
defendants as if upon cross-examination, and
taken before David J. Collier, RPR, Notary
Public within and for the State of Ohio,
pursuant to Notice of Deposition and pursuant to
the further stipulations of counsel herein
contained, on Monday, the 23rd day of October,
2006 at 8:02 a.m., at the offices of Tackla &
Associates, 1020 Ohio Savings Plaza, City of
Cleveland, County of Cuyahoga and the State of
Ohio.



Tackla
& Associates
Court Reporting & Videotaping

1020 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

597

1  same, right, heating and cooling, you knew that

2  much going into it, that that was a goal, to

3  make --

4  A    Right.

5  Q    -- acceptable cards?

6  A    I tried to make a product using their wrong

7  equipment.

8  Q    Right.  And one way you tried to fix their

9  wrong equipment was to equalize -- at least

10  equalize the pressures in the heating and the

11  cooling phases.

12  A    Trying to, yeah.

13  Q    Okay.  And did you succeed at that, do you

14  know, or you couldn't tell for sure?

15  A    I didn't know for sure.

16  Q    But you think you did, didn't you?  You

17  think you got the pressure at least to the point

18  in cooling where it was in the heating phase

19  when you were at Motorola?

20  A    I don't know that.

21  Q    You don't know for sure?

22  A    No.

23  Q    You're not -- you have no idea whether you

24  did or not?

25  A    No.

598

```
1    Q      Do you believe you did?
2    A      No.
3    Q      How close do you think you came?
4    A      I come -- oh, if I had a card that looked
5    good, the failure rate was very bad, I was
6    crushing chips and breaking chips.
7    Q      So if you -- if you got good results, then
8    you thought that you had increased the pressure
9    on the cooling side sufficiently so that you
10   weren't damaging chips as much?
11   A      If I was damaging chips, it showed on the
12   stainless steel laminating plates, because it
13   embossed them.
14   Q      Right, but that's not exactly what I asked.
15          I'm trying to figure out how much
16   pressure you put on the cooling side when you
17   were working at Motorola.  Are you with me?
18   A      Yes, but I don't know what it was.
19   Q      Right.  That's -- that's what I'm trying to
20   explore.
21   A      Um-hum.
22   Q      You said that based on the equipment, it
23   was not -- it was not possible for you to tell
24   exactly what the pressures were.
25   A      That's correct.
```

Tackla & Associates

1  Q     Right?  But you knew you wanted to increase

2  the pressure on the cooling side from what had

3  existed in the Motorola Burkle laminator at the

4  time; is that right?

5  A     That's what I was trying to do --

6  Q     Okay.

7  A     -- because that's what I had foreknowledge

8  of before I even started.

9  Q     And although you couldn't measure it, you

10 knew that you increased the pressure

11 sufficiently in the cooling phase when you made

12 cards in which the electronic element was not

13 crushed; is that fair?

14 A     Repeat that one.

15 Q     In other words, whatever pressure you were

16 able to achieve in the cooling phase, even

17 though you couldn't measure it, you knew it was

18 sufficient when the chips weren't crushed?

19       MR. GUTKIN:        Object to form.

20 A   I'm not fully understanding what you're

21 saying here.

22 Q     Think about it.

23 A     In the lamination process that I had at

24 Motorola --

25 Q     There was no gauge on the machine for you

Tackla & Associates

1    to tell what the pressure was during cooling?

2    A    Only pump pressure.

3    Q    Okay.  And what was the pump pressure that

4    you read?

5    A    I don't recall.

6    Q    Do you have any idea at all?

7    A    No.

8    Q    Okay.  And --

9    A    I know that in the process you have a tray

10   of cards going into the hot side, at the same

11   time you have a tray of cards going into the

12   cold side, and when you close the laminator on

13   the hot side, you're also closing it on the cold

14   side.

15   Q    Okay.  And there were a number of platens

16   in that -- in those presses?

17   A    That's correct, four daylight openings.

18   Q    And there was no compensation in there?

19   A    No.

20   Q    So the full force of all the platens was on

21   the cards in the hot phase and the cold phase?

22   A    That's correct.

23   Q    Okay.  And when you say -- what units were

24   you able to read on the Burkle laminator that

25   you were using for Motorola of pressure?  What

601

1    were the units of pressure you could read off

2    the machine?

3    A    They had what they call a bar pressure.

4    Q    Okay.  And bar pressure is units of what?

5    A    I'm not sure what their bar pressure units

6    were because all I had to go by was on the pump,

7    they had a gauge, it was a dial gauge that told

8    the --

9    Q    What were the units --

10   A    PSI pressure.

11   Q    You must remember the units on the dial

12   gauge.  What were the units on there?

13   A    I'm not -- I'm not sure.

14   Q    You can't remember?

15   A    No, I can't remember.

16   Q    Really?

17   A    Really.

18   Q    They were in some units of bar pressure on

19   that gauge?

20   A    Pump pressure.

21   Q    Pump pressure.

22   A    Yeah.  Pump pressure can go up to maybe

23   1,000 pounds of pump pressure.

24   Q    Okay.  And it's just --

25   A    Those gauges are normally zero to 1,000

1    pounds on pump pressure.

2    Q    Okay.  So you can't remember exactly, but

3    the units probably were pounds of pressure on

4    the Burkle --

5    A    Right.

6    Q    -- press?

7    A    Right.

8    Q    Okay.  And there was some pressure on the

9    hot side and some pressure on the cold side --

10   A    Right.

11   Q    -- right?

12        And it wasn't compensated, so that

13   means that whatever sheet was at the bottom of

14   all the different platens got all the force of

15   all the platens on top; is that correct?

16   A    That's correct.

17   Q    We're not talking -- we're talking about

18   some pressure on the hot side between zero and

19   1,000 pounds, right?

20   A    Right.

21   Q    And some pressure on the cold side in the

22   Motorola Burkle laminator between zero and 1,000

23   pounds?

24   A    Right.

25   Q    Right?

**19.J.**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - -

LEIGHTON TECHNOLOGIES, LLC, )

          plaintiff,    )

   vs.             ) Case No.

                ) 04 Civ. 02496 (CM)

OBERTHUR CARD SYSTEMS, S.A. )

and OBERTHUR CARD SYSTEMS )

OF AMERICA CORP., )

          defendants.   )

- - - - -

(Volume III - pages 522 through 875)

- - - - -

Continued videotaped deposition of

KEITH LEIGHTON, a witness herein, called by the

defendants as if upon cross-examination, and

taken before David J. Collier, RPR, Notary

Public within and for the State of Ohio,

pursuant to Notice of Deposition and pursuant to

the further stipulations of counsel herein

contained, on Monday, the 23rd day of October,

2006 at 8:02 a.m., at the offices of Tackla &

Associates, 1020 Ohio Savings Plaza, City of

Cleveland, County of Cuyahoga and the State of

Ohio.



**Tackla**
**& Associates**
Court Reporting & Videotaping

1020 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 ● Fax 216-241-3935

604

1  Q    So what's the minimum pressure, given

2  everything you know?  You were there, you were

3  working with the Burkle machine, you were the

4  engineer hired to fix it, right?  What's the

5  minimum pressure that any of the cards saw on

6  the hot side of the Burkle laminator used at

7  Motorola?

8  A    I don't know.

9  Q    What -- it was at least 400 pounds, right?

10 A    Your bottom platen carried the weight of

11 the top platen of four daylight openings.

12 Q    Right.

13 A    So I'd say start off with -- before any

14 pressure is applied to it, just bringing the

15 laminator to closing, you had close to 2,000

16 pounds of dead weight on top of the PVC sheets.

17 Q    Okay.  So that's 2,000 pounds minimum on

18 the card before you apply any pressure?

19 A    Correct.

20 Q    And the gauge on the machine was 1,000, it

21 went up to 1,000 pounds?

22 A    That's pump pressure.

23 Q    Pump pressure.  Okay.

24        In addition to the pressure of the

25 weight of the plates, that's what you mean by

1    "pump pressure"?

2    A    Correct.

3    Q    So the pump on the press could apply up to

4    another 1,000 pounds or so on top of the weight

5    of all the platens?

6    A    Right.  Having a large ram on the hot side,

7    when you start to raise, the pumped fluid goes

8    into the ram, it's going to go to the biggest

9    opening first.

10   Q    Okay.

11   A    Lesser resistance.  The cold side,

12   unfortunately, raised up slower than the hot

13   side did in closing the laminator, then I had to

14   equalize.  So I to this day have no idea what

15   the pressures were on the hot or the cold side.

16   Q    Okay.  But you understand --

17   A    Or the bar pressures.

18   Q    You understand that -- I'm not a -- I'm a

19   chemical engineer but I'm not a -- I've never

20   done anything in this field, okay?  So you have

21   to help me understand the ranges of the

22   magnitudes of what we're talking about, okay?

23   And you have to help the judge and the jury

24   understand the kind of numbers we're dealing

25   with.  Do you understand that?

1   A    I understand that, yes.

2   Q    So for you to say "I have no idea," it

3   helps us certainly to put it in perspective when

4   you talk about the numbers that we're talking

5   about here, like thousands of pounds, okay?  Do

6   you understand what I'm saying?

7   A    Um-hum.

8   Q    So although you may not remember exactly,

9   it is very helpful for us for you -- for you to

10  give us your best memory of the approximate

11  numbers that we're talking about.  Is that fair?

12  A    Yes.

13  Q    Okay.  So let's go back to the hot side of

14  the Burkle laminator used at Motorola.

15          You said during the heating phase that

16  was used in that press, okay, the minimum

17  pressure on any of the laminated cards would be

18  2,000 pounds; is that right?

19          MR. GUTKIN:        Object to form.

20  A    Yes, I believe that's -- that would be

21  true.

22  Q    And is that true of the cards they were

23  making when they were there as well as the cards

24  that you worked with when you began consulting

25  for them?

```
 1            MR. GUTKIN:        Object to form.
 2   A    I pulled so many tests there, I can't re --
 3   recall what pressures that were used.
 4   Q    Right.  But -- that's going back to what
 5   you said a minute ago.  But again, I'm trying to
 6   get general pressures, all right?
 7   A    Um-hum.
 8   Q    We're still talking about a lot of
 9   pressure --
10   A    Right.
11   Q    -- in the tests that you ran, right?
12   A    Right.
13   Q    We're not talking about five pounds of
14   pressures, we're talking about hundreds,
15   thousands of pounds of pressure.
16   A    That's correct.  Right.
17   Q    That's what you used in the heating phase,
18   right?
19   A    Right.
20   Q    At Motorola.
21   A    Right.
22   Q    And in the cooling phase you were trying to
23   get pressures that approached what was used in
24   the heating phase, right?
25   A    It was impossible for me to get a pressure
```

1    greater than the hot side using the same pump

2    because my fluids went at the same time closing

3    the hot side.

4    Q    Okay.  But you were trying to get -- in

5    terms of the minimum pressure on the cooling

6    side, it was at least the type of range we're

7    talking about here, in the range of 2,000 pounds

8    on the cooling side, right?

9    A    Right.  Close to that, yes.

10   Q    Correct.  And it would increase as you went

11   up in the laminator --

12   A    Um-hum.

13   Q    -- to the higher layers and levels where

14   there were additional platens.

15   A    Right.

16   Q    Right?

17        So you were trying to equalize the

18   pressure on the cooling side to the pressure on

19   the heating side in the Burkle laminator at

20   Motorola; is that right?

21   A    They were trying to.

22   Q    They were trying to and you were trying --

23   A    Right.

24   Q    -- to too, right?

25   A    Yeah.

Tackla & Associates

1    Q     Why are you differentiating between you and

2    them?  They were trying when you got there,

3    right?

4    A     Because they were trying by mechanical

5    means by changing the plumbing prior to my going

6    there and trying to change the dwell times

7    electronically in their circuit boards, in the

8    controls.  I had no control of that.

9    Q     Right.  But I didn't ask you how it was

10   being done, I just said you were trying to do

11   the same thing, you were trying to increase the

12   pressure during the cooling phase, weren't you,

13   generally?

14   A     I could do no more than shut their

15   laminators.  The pump took over the controls.

16   Q     Okay.  But you were trying to increase the

17   pressure during the cooling phase, weren't you,

18   at Motorola?

19   A     All I was trying to do is come out with a

20   product with what I had to work with.

21   Q     Okay.  But you knew at the time when you

22   got there they said this laminator is backwards,

23   it's for circuit boards, right?

24   A     Right.

25   Q     It's got a much smaller ram on the cooling

Tackla & Associates

1    side, right?

2    A    Right.

3    Q    You knew that was a problem, right?

4    A    That's a problem right off the bat.

5    Q    And you found out they knew it was a

6    problem too, right?

7    A    Right.

8    Q    You wanted to increase the pressure on the

9    cooling side.

10   A    Yeah, but they couldn't do it.

11   Q    If you could get it to the same pressure as

12   the heating side, that would have been a good

13   thing, right?

14   A    If they could have at least equalized it,

15   but we couldn't achieve that goal.

16   Q    Well, you didn't know if it was equalized

17   or not, did you?

18   A    No.

19   Q    I thought you didn't know exactly what

20   pressure you got on the cooling side?

21   A    That's correct.

22   Q    So it might have been equal, you don't

23   know?

24   A    I doubt it.

25   Q    But you don't know for sure, do you?

1 A No, I don't.

2 Q And it might have been more, you don't know

3 for sure, do you?

4 A No.

5 Q So you didn't know --

6 A No.  I'll take that back.  It was not more.

7 Q How do you know?  You don't know for sure.

8 A Because we had more pressure from the ram

9 size on the hot side.

10 Q Well, how do you know?

11 A Both openings closed at the same time.

12 Q But you said you were trying -- you said

13 you were trying to equalize the values; do you

14 remember that?  You said that earlier, right?

15 A I don't recall whether I did or not.

16 Q Okay.  But you were trying to, weren't you?

17    I remember you said it.  You said it

18 earlier today.  You were trying to equalize the

19 pressures on the heating and cooling side; do

20 you remember that?

21 A No.  I get confused in your question, so --

22 Q You do, okay.  All right.  Well, we'll let

23 that testimony stand before.  I don't want to

24 test what you remember, if you said it earlier

25 or not, but you did say you couldn't remember

1   exactly what the pressures are that you had on
2   either side; do you remember that?
3   A    I couldn't remember the pressures because I
4   didn't know what they were.
5   Q    Okay.  So you don't know exactly what --
6   A    No.
7   Q    -- pressure --
8   A    No.
9   Q    -- you ultimately got on the heating side.
10   A    No.
11   Q    You don't know exactly what pressure you
12   ultimately got on the cooling side.
13   A    No.
14   Q    Okay.  But it was -- it was some pressure
15   in the hundreds of thousands of pounds; is that
16   right?
17   A    Hundreds of thousands of --
18   Q    Hundreds or thousands of pounds.
19   A    Hundreds or thousands.
20   Q    Right.
21   A    Yeah.
22   Q    For example, you said that the minimum
23   pressure that would be experienced was on the
24   order of 2,000 pounds on the heating or cooling
25   side.

```
 1   A     Um-hum.

 2   Q     Is that right?

 3   A     Rephrase that.

 4   Q     The minimum pressure that would be

 5   experienced on either side, given the weight of

 6   the platens, was 2,000 pounds?

 7   A     That's correct.

 8   Q     And what was the size of the sheet that was

 9   being laminated, do you remember, in very --

10   A     No.

11   Q     -- approximate terms?

12   A     No, I don't.

13   Q     Well, it was --

14   A     I don't remember.

15   Q     But you got to remember generally.  Again,

16   we don't -- have no idea.  We weren't there.

17   We're not in this business.  I mean, we're not

18   talking about two inches by two inches, right?

19   A     I would be guessing.

20   Q     Okay.  But I need your best approximation.

21   It's not two inches by two inches?

22   A     We were, I believe, cutting 24 up --

23   Q     Okay.

24   A     -- on a sheet.

25   Q     And about how big was a sheet?
```

**19.K.**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - -

LEIGHTON TECHNOLOGIES, LLC, )

        plaintiff,     )

vs.              ) Case No.

              ) 04 Civ. 02496 (CM)

OBERTHUR CARD SYSTEMS, S.A. )

and OBERTHUR CARD SYSTEMS )

OF AMERICA CORP.,        )

        defendants.   )

- - - - -

(Volume III - pages 522 through 875)

- - - - -

Continued videotaped deposition of KEITH LEIGHTON, a witness herein, called by the defendants as if upon cross-examination, and taken before David J. Collier, RPR, Notary Public within and for the State of Ohio, pursuant to Notice of Deposition and pursuant to the further stipulations of counsel herein contained, on Monday, the 23rd day of October, 2006 at 8:02 a.m., at the offices of Tackla & Associates, 1020 Ohio Savings Plaza, City of Cleveland, County of Cuyahoga and the State of Ohio.



**Tackla**
**& Associates**
Court Reporting & Videotaping

1020 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 ● Fax 216-241-3935

1    remember that?

2    A    Yes.    I was wondering, can he read back

3    through where we left off at?

4    Q    Let me -- let me just pick up.

5    A    I have to get my chain of thought here.

6    Q    Yeah, let me just pick up with it, okay?

7    A    Okay.

8    Q    We were talking about the heat soak time,

9    do you remember that, some period of time --

10   A    Right.

11   Q    -- that it takes?

12   A    Right.

13   Q    And you said 15 minutes or so.

14   A    Right.

15   Q    Okay.  And then there is an additional time

16   once the temperature is equalized across all the

17   inlays of the heating cycle; is that right?

18   A    Right.  That's correct.

19   Q    Okay.  Do -- do the inlays -- in the

20   process you used at Motorola, would the inlays

21   see heat pretty immediately or would it take

22   some amount of time before they would feel any

23   heat?

24   A    Well, to -- for the heat to go through the

25   book entirely from top and bottom, we had to

1    shut the laminator, and this is where the

2    pressure comes in uncontrolled, I'm not sure

3    just how much, and we stay in it for a period of

4    time to soften that plastic to be able to flow

5    the inlays into the plastic.

6    Q    Let me -- let me break that down, okay?

7    Going back to what you said before, the press,

8    the laminators heated --

9    A    Right.

10   Q    -- right, before the --

11   A    Prior to -- right.

12   Q    Prior to inserting the -- what would you

13   call the inlay surrounded by the metal plates

14   that are inserted?

15   A    That's a book.

16   Q    Okay.  Is the entire book inserted?

17   A    Right.

18   Q    And a book has however many inlays

19   surrounded by steel plates?

20   A    That's correct.

21   Q    And felt on the outside?

22   A    Right.

23   Q    Is that the book?

24   A    Top and bottom.  That would be the book.

25   Q    Okay.  And --

**19.L.**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - -

LEIGHTON TECHNOLOGIES, LLC, )

            plaintiff,     )

    vs.               ) Case No.

                     ) 04 Civ. 02496 (CM)

OBERTHUR CARD SYSTEMS, S.A. )

and OBERTHUR CARD SYSTEMS   )

OF AMERICA CORP.,        )

           defendants.   )

- - - - -

(Volume III - pages 522 through 875)

- - - - -

Continued videotaped deposition of KEITH LEIGHTON, a witness herein, called by the defendants as if upon cross-examination, and taken before David J. Collier, RPR, Notary Public within and for the State of Ohio, pursuant to Notice of Deposition and pursuant to the further stipulations of counsel herein contained, on Monday, the 23rd day of October, 2006 at 8:02 a.m., at the offices of Tackla & Associates, 1020 Ohio Savings Plaza, City of Cleveland, County of Cuyahoga and the State of Ohio.



**Tackla**
**& Associates**
Court Reporting & Videotaping

1020 Ohio Savings Plaza
1801 E. Ninth Street
Cleveland, Ohio 44114
216-241-3918 • Fax 216-241-3935

1    pre-lam between those plates.

2    Q    Okay.

3    A    So you'd have a buildup of close to

4    100 pounds.

5    Q    Okay.  So there would be a steel plate in

6    between each one of the inlays --

7    A    Right.

8    Q    -- when you used four of them?

9    A    Right.

10   Q    Okay.  So by --

11   A    Top and bottom plates.  Yes.

12   Q    So by virtue of being in the book alone,

13   what was the minimum pressure that the inlays

14   would experience back at Motorola?

15   A    Before closing the laminator?

16   Q    Yeah.

17   A    You would have the weight of the platens

18   that were above it that weighed close to

19   400 pounds, plus it had the weight of the metal

20   plates that were on top of the pre-lams, and I'd

21   say -- I'd say roughly, if we used all daylight

22   openings, which at that time we couldn't even do

23   because we didn't have that many inlays, we had

24   approximately 600 pounds before any contact with

25   the top of the platen.