UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEIGHTON TECHNOLOGIES LLC,

    Plaintiff,

        vs.

OBERTHUR CARD SYSTEMS, S.A. and
OBERTHUR CARD SYSTEMS OF
AMERICA CORPORATION,

    Defendants.

OBERTHUR CARD SYSTEMS, S.A. and
OBERTHUR CARD SYSTEMS OF
AMERICA CORPORATION,

    Counterclaim Plaintiffs,

        vs.

LEIGHTON TECHNOLOGIES LLC,
GENERAL PATENT CORPORATION
INTERNATIONAL, GENERAL PATENT
CORPORATION, and IP HOLDINGS LLC,

    Counterclaim Defendants.

04 Civ. 02496 (CM) (LMS)

**PLAINTIFF LEIGHTON
TECHNOLOGIES LLC'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION OF
SUMMARY JUDGMENT OF NON-
INFRINGEMENT**

**Hon. Colleen McMahon**

**Magistrate Judge Lisa M. Smith**

**PUBLIC VERSION**

**Confidential Information Removed
Pursuant to the Protective Order
Entered on August 20, 2004**

**SUTHERLAND ASBILL & BRENNAN LLP**
Robert A. Gutkin, Esq. (Pro hac vice)
Blair M. Jacobs, Esq. (Pro hac vice)
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2412
Tel: 202-383-0100
Fax: 202-637-3593

*Attorneys for Plaintiff
Leighton Technologies LLC*

January 26, 2007

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD........................................................................................ 2

  A.  Summary Judgment ..................................................................................... 2

  B.  Infringement.................................................................................................. 2

III. STATEMENT OF FACTS ................................................................................ 5

  C.  The Accused Oberthur Smart Cards ........................................................... 5

    1.  American Express – ExpressPay On Blue......................................... 6

    2.  The Xenon Cards ............................................................................... 10

IV.  ARGUMENT .................................................................................................... 12

  A.  The Leighton Patents Do Not Require The Absence Of All Cutouts
      And Protective Carriers From All *Electronic Elements*," But Instead
      Only With Respect To *Said At Least One Electronic Element."* ................... 12

  B.  Oberthur's Non-infringement Arguments  Are Contrary To The Court's
      Markman Ruling .......................................................................................... 13

  C.  Oberthur's Laboratory Experiments Are Merely Variations On The
      Single "Electronic Element" Argument........................................................ 15

    1.  The "*Absence Of A Non-electronic Carrier*" Must Be Read In
        Conjunction with "Directly".............................................................. 15

  D.  Oberthur's Reliance On Prior Art Is Not A Proper Defense To Infringement ................. 17

  E.  Partially Embedding Part of the Wire Antenna Does Not Create a
      "*Non-Electronic Carrier*" .......................................................................... 18

  F.  The Antenna and/or Antenna Bridge in Oberthur's Cards Are "*Directly
      Between*" the Core Plastic Sheets Despite the Presence of The Thin
      Adhesive or Epoxy Layers............................................................................ 19

  G.  Oberthur's Brief Conclusory Statements Do Not Negate Triable Issues
      Of Fact Under The Doctrine Of Equivalents ................................................. 21

V.   CONCLUSION.................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*ACTV, Inc. v. Walt Disney Co.,*
  346 F.3d 1082 (Fed. Cir. 2003) ................................................................................. 20

*AK Steel Corp. v. Sollac & Ugine,*
  344 F.3d 1234 (Fed. Cir. 2003) ................................................................................. 13

*Altiris, Inc. v. Symantec Corp.,*
  318 F.3d 1363 (Fed. Cir. 2003) .............................................................................. 2, 21

*Amgen Inc. v. Hoechst Marion Roussel,*
  314 F.3d 1313 (Fed. Cir. 2003) ................................................................................... 3

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................................... 2

*Aquatex Indus., Inc. v. Techniche Solutions,*
  419 F.3d 1374 (Fed. Cir. 2005) .............................................................................. 3, 22

*Bayer AG v. Housey Pharms., Inc.,*
  340 F.3d 1367 (Fed. Cir. 2003) ................................................................................... 5

*British Telecomms. PLC v. Prodigy Comms. Corp.,*
  189 F. Supp. 2d 101 (S.D.N.Y. 2002) ...................................................................... 13

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,*
  334 F.3d 1294 (Fed. Cir. 2003) ................................................................................. 21

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
  339 U.S. 605 (1950) ................................................................................................ 3, 22

*Hockerson-Halberstadt, Inc. v. Converse Inc.,*
  183 F.3d 1369 (Fed. Cir. 1999) ................................................................................. 20

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
  381 F.3d 1111 (Fed. Cir. 2004) ................................................................................... 2

*Insituform Techs., Inc. v. Cat Contracting, Inc.,*
  161 F.3d 688 (Fed. Cir. 1998) ..................................................................................... 4

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,*
  285 F.3d 1353 (Fed. Cir. 2002) .......................................................................... 3, 22, 23

*Leighton Techs. LLC v. Oberthur Card Sys., S.A.*,
  358 F. Supp. 2d 361 (S.D.N.Y. 2005) ............................................................ 2, 14, 15

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ............................................................................ 15

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
  382 F.3d 1354 (Fed. Cir. 2004) ...................................................................... 3, 22

*Mannesmann Demag Corp. v. Engineered Metal Prods. Co. Inc.*,
  793 F.2d 1279 (Fed. Cir. 1986) ............................................................................ 3

*Nat'l Sec. Archive v. United States Dep't of Defense*,
  880 F.2d 1381 (D.C. Cir. 1989) .......................................................................... 21

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*,
  224 F.3d 1356 (Fed. Cir. 2000) ............................................................................ 5

*Pall Corp. v. Micron Separations, Inc.*,
  66 F.3d 1211 (Fed. Cir. 1995) .............................................................................. 3

*Pause Tech., LLC v. TiVo, Inc.*,
  419 F.3d 1326 (Fed. Cir. 2005) .......................................................................... 20

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......................................................... 20

*Prima Tek II, LLC v. Polypap, SARL*,
  318 F.3d 1143 (Fed. Cir. 2003) ............................................................................ 2

*State of Montana v. United States*,
  124 F.3d 1269 (Fed. Cir. 1997) ............................................................................ 2

*Tandon Corp. v. United States Int'l Trade Comm'n*,
  831 F.2d 1017 (Fed. Cir. 1987) .................................................................... 13, 15

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*,
  279 F.3d 1357 (Fed. Cir. 2002) .................................................................... 17, 18

*Tex. Digital Sys., Inc. v. Telegenix, Inc.*,
  308 F.3d 1193 (Fed. Cir. 2002) .......................................................................... 21

*Transmatic, Inc. v. Gulton Indus., Inc.*,
  53 F.3d 1270 (Fed. Cir. 1995) .............................................................................. 3

*United States v. Diebold, Inc.*,
   369 U.S. 654 (1962)........................................................................................................ 2

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
   212 F.3d 1377 (Fed. Cir. 2000)....................................................................................... 4

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
   392 F.3d 1325 (Fed. Cir. 2004)................................................................................. 13, 15

**Statutes**

35 U.S.C. §271.................................................................................................................... 3

35 U.S.C. § 271(g).......................................................................................................... 4, 5

## I.  <u>INTRODUCTION</u>

Plaintiff Leighton Technologies LLC ("Leighton") submits this Memorandum of Points and Authorities in Opposition to the Motion by Oberthur Card Systems, S.A. and Oberthur Card Systems of America Corp. (collectively "Oberthur") for Non-infringement.  Leighton is the assignee of the U.S. Patent Nos. 5,817,207 (the "'207 patent") and 6,214,155 (the "'155 patent") from the sole inventor Keith Leighton.  True and correct copies of the patents are attached as Exs. "1" and "2" to the Declaration of Robert A. Gutkin ("Gutkin Dec.").  Oberthur's Motion focuses exclusively on the claim limitation in both the '155 and '207 patents of ***<u>positioning said at least one electronic element in the absence of a non-electronic carrier directly between said first and second plastic core sheets</u>***.

The Motion fails because:

- Oberthur requires the Court change its *Markman* ruling of the definition of an "electronic element".

- Oberthur improperly attempts to rely upon practicing prior art to support its argument for non-infringement.

- Oberthur seeks to construe individual words in the claim in isolation from the remainder of the claim, and contrary to how the words are understood by one of ordinary skill in the art.

- Oberthur's expert fails to provide any support for his positions as to how one of ordinary skill in the art, in card manufacturing, would understand claim language, as well as key manufacturing concepts.

- Oberthur's expert does not demonstrate that the limitation is missing under the Doctrine of Equivalents ("DOE"), should the Court feel the need to examine the DOE.

To defeat Oberthur's Motion, Leighton need only establish that there are triable issues of material fact as to whether the limitation at issue is present in the Oberthur smart cards.  In fact, the Oberthur smart cards each have ***at least one electronic element in the absence of a non-***

*electronic carrier directly between said first and second plastic core sheets",* and for that reason

it is clear that Oberthur's Motion should be denied.

## II. <u>LEGAL STANDARD</u>

### A.    Summary Judgment

"Summary Judgment is appropriate only when the movant has established that no

genuine issue of material fact exists and that the movant is entitled to judgment as a matter of

law." *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (citation

omitted). Indeed, "[s]ummary judgment is improper where 'the evidence is such that a

reasonable jury could return a verdict for the non-moving party.'" *Innova/Pure Water, Inc. v.*

*Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, the Court must

construe the evidence in the light most favorable to the non-movant and draw all justifiable

inferences in the non-movant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962).

### B.    Infringement

The '155 and '207 patents cover highly coordinated lamination processes using heat,

cooling and the application of pressure to manufacture contactless smart cards. *See Leighton*

*Techs. LLC v. Oberthur Card Sys., S.A.*, 358 F. Supp. 2d 361, 364 (S.D.N.Y. 2005). The patents

are not limited to a single card structure or lamination cycle. As with any patent, there are

preferred and alternative embodiments of the inventions provided, and the claim coverage is

broader than the scope of the embodiments. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363,

1372 (Fed. Cir. 2003) ("merely because the specification only describes one embodiment is not a

sufficient reason to limit the claims to that embodiment."); *Prima Tek II, LLC v. Polypap, SARL*,

318 F.3d 1143, 1148 (Fed. Cir. 2003) ("the mere fact that the patent drawings depict a particular

embodiment of the patent does not operate to limit the claims to that specific configuration."). High yields; protecting the electronics inside the card; and, obtaining a smooth card that can accept printing are all goals of the Leighton inventions, and certainly part of the invention history. However, the claims of a patent, not the goals or the specification, govern determining infringement under 35 U.S.C. §271. *See Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1347 (Fed. Cir. 2003).

A patent is infringed so long as any one of its claims is infringed. *See Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1220 (Fed. Cir. 1995). "Literal infringement requires that the accused device include every limitation of the patent claim." *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1277 (Fed. Cir. 1995); *see also Mannesmann Demag Corp. v. Engineered Metal Prods. Co. Inc.,* 793 F.2d 1279, 1282 (Fed. Cir. 1986). Under the Doctrine of Equivalents ("DOE"), an accused product or process that does not literally infringe may still infringe if there are only "insubstantial differences" between the claim language and the accused product. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,* 285 F.3d 1353, 1359 (Fed. Cir. 2002). An element in the accused product is deemed equivalent to a claim limitation when the element in the accused product "performs substantially the same function in substantially the same way to obtain the same result." *Aquatex Indus., Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382 (Fed. Cir. 2005) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950)). An equivalence determination is performed from the perspective of one of ordinary skill in the relevant art. *See Lighting World, Inc. v. Birchwood Lighting, Inc.,* 382 F.3d 1354, 1357 (Fed. Cir. 2004) (internal quotation marks and citations omitted).

The standard for granting summary judgment of non-infringement under the doctrine of equivalents is particularly high:

> ***Infringement under the doctrine of equivalents requires an
> intensely factual inquiry.*** And, this court is well aware of the
> difficulty of granting summary judgment motions on issues
> requiring delicate balancing of many factual components.
> Ultimately this court may sustain summary judgment of non-
> infringement under the doctrine of equivalents, where that doctrine
> is legally applicable, ***only if it discerns no genuine issues of
> material fact and that no reasonable jury could find equivalence.
> This standard sets a high hurdle which this court does not lightly
> attempt to surmount*** . . . . In this review, this court must examine
> the record for genuine issues of material fact and must determine
> that no reasonable jury could reach a different conclusion.
> *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377,
> 1381 (Fed. Cir. 2000) (internal citations omitted; emphasis added).

Each factor in the Doctrine of Equivalents analysis must be carefully considered. *See Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 693-94 (Fed. Cir. 1998) (rejecting analysis where "the district court's identification of the limitation's 'function' merges with the 'way' and the 'result'").

In the present matter, Oberthur imports certain parts, known as prelams, from companies outside of the United States for use in its Xenon smart cards. (Gutkin Dec. Ex. 3 (Stipulation Regarding Accused Products, hereafter "Stipulation" at 4)). Leighton alleges that those prelams are made without permission, using the processes in the '207 and '155 patents. 35 U.S.C. § 271(g) states in the relevant part:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

In situations where the process results in a product, under section 271(g), "whoever without authority imports into the United States or offers to sell, sells, or uses" a physical article "made

by a process patented in the United States" shall be liable as an infringer. *See Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1371, 1377 (Fed. Cir. 2003).[1]

## III.    STATEMENT OF FACTS

### C.    The Accused Oberthur Smart Cards

Oberthur makes two types of contactless smart cards that are issue. Those cards are referred to as the American Express cards, or AmEx cards, and the Xenon cards.

Oberthur makes the AmEx cards using an inlay that it receives from Texas Instruments. (Gutkin Dec. Ex. 3 (Stipulation at 2 and 3)). The inlay consists of electronic elements such as a chips, antenna, antenna bridge or crimp junction (*See* Figs. 3-6 below), etc., mounted on a thin layer of polyethelene terephthalate (PET). (Gutkin Dec. Ex. 3 (Stipulation at 3)). As illustrated below at Figs. 4-6, the antenna and crimp junction are located on the top and bottom of the PET, and connected through the thin substrate. (Gutkin Dec. Ex. 4 (Rogers 4/27/06 Tr. Ex.TI-2, Doc. No. TI-0000020)). As mentioned in all of the Leighton Patents, the electronic elements can take many forms, including for example electronic elements that have been mounted on circuit boards, and those that have not. A sample Texas Instrument inlay produced by Oberthur in discovery will be lodged with the Court.

Oberthur makes the Xenon cards by importing prelams from companies in Ireland and Thailand to Oberthur's facility in Exton, Pennsylvania, where the cards are finished. (Gutkin

---

[1] To reduce the number of issues at trial, and also to overcome difficulties in obtaining discovery from a non-party in Thailand, both sides entered into the Stipulation. (Gutkin Dec. Ex. 3). In cases where:
- a substantial likelihood exists that the product was made by the patented process; and,
- the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine;

the burden under §271(g) shifts to the alleged infringer to prove that the product that was imported, sold, offered for sale or used was not made by the patented process. *See Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359-60 (Fed. Cir. 2000).

Dec. Ex. 3 (Stipulation at 7-9)).  The prelams imported by Oberthur consist of electronics, such as a chip, antenna, antenna bridge, etc., sandwiched between two sheets of plastic core stock, upon which two sheets of overlaminate film are then added.  (Gutkin Dec. Ex. 3 (Stipulation pp. 4-7)).  Sample prelams, prior to lamination, produced by Oberthur in discovery will be lodged with the Court.

### 1.    American Express – ExpressPay On Blue

Oberthur has made millions of contactless smart cards for American Express.  (Gutkin Dec. Ex. 5 (Oberthur Doc. Nos. OCS_Z_096803-096807), and Ex. 6 (Mosteller 2/24/06 Tr. 29:12 - 30:13; 38:1 – 40:8)).  Figure 1 below includes pictures of an American Express card produced in discovery by Oberthur in this case.  (Gutkin Dec. Ex. 7 (Picture of Oberthur Exhibit No. OCS_Z_096786)).

REDACTED

While Oberthur has made a number of different contactless smart cards for American Express, the only differences between those cards are minor artwork, and in the case of the "Clear Blue" card, no hologram.  (Gutkin Dec. Ex. 8 (Mosteller 2/24/06 Tr. 30:19 – 31:16; 32:13

– 34:16)). The AmEx contactless smart cards are all constructed similarly and use the same lamination cycles.[2] (Gutkin Dec. Ex. 9 (Mosteller 2/24/06 Tr. 75:6-20)).

**REDACTED**

---

[2] Since the lamination cycle is not at issue in Oberthur's Motion, Leighton does not discuss it in any detail.

**REDACTED**

**REDACTED**

**REDACTED**


### 2.    The Xenon Cards

Oberthur has made millions of contactless smart cards for Citizens Bank, Chase Bank and others, referred to as the Xenon cards, using prelams imported from Ireland and Thailand. (Gutkin Dec. Exs. 5 and 14 (Oberthur Doc. Nos. OCS_Z_096803-096807; Mosteller 2/24/06 Tr. 55:4 – 57:12)). The "prelams" are purchased by Oberthur from Aontec Teoranta ("Aontec"), located in Galway, Ireland, and Smartrac N.V. ("Smartrac"), with production facilities located in Bangkok, Thailand. (Gutkin Dec. Exs. 15 and 16 (Aontec and Smartrac webpages). The structure of the prelams made by both Aontec and Smartrac are similar, although the manufacturing processes are somewhat different.[3] (Gutkin Dec. Ex. 3 (Stipulation at pp. 4-7)). Moreover, the prelams made by Aontec and Smartrac are similar to layers 1, 2, and 3 of the materials used by Oberthur to make the AmEx cards.

After importing the prelams to its manufacturing facility in Exton, Pennsylvania, Oberthur then incorporates the prelams into its finished Xenon cards. (Gutkin Dec. Ex. 17 (Mosteller 2/24/06 Tr. 57:13-15)). Oberthur adds a printed core layer and an overlay layer of PVC onto each side of the prelam, and then laminates the card using a heat and cooling cycle with varying pressure over time. (Gutkin Dec. Ex. 3 (Stipulation pp. 7-9)).

———————————————

**REDACTED**

Oberthur began making its Xenon contactless smart cards using Aontec prelams in approximately October, 2005, and continues to make the Xenon card today using Smartrac prelams. (Gutkin Dec. Ex. 19 (Mosteller 2/24/06 Tr. 58:2 – 60:20)). To date, all of these cards have been made at Oberthur's facility in Exton, Pennsylvania. (Gutkin Dec. Ex. 17 and 20 (Mosteller 2/24/06 Tr. 57:13-18; 133:14-20)).

**REDACTED**

**REDACTED**

IV.   __ARGUMENT__

A.   **The Leighton Patents Do Not Require The Absence Of All Cutouts And Protective Carriers From All "*Electronic Elements*," But Instead Only With Respect To "*Said At Least One Electronic Element.*"**

Oberthur argues that a chip ***and*** antenna must be a single electronic element, and therefore the presence of a cutout for the chip in their cards, means that the single electronic element is in a cutout.  Oberthur's argument fails when the chip is just one of multiple electronic elements present in the card, since there are no cutouts for the antenna or the antenna bridge. (Everett Dec. ¶ 9, p. 15, Fig. 2 (Example of card with a cutout for the antenna)).  There are

_____

[4] Those samples will be separately lodged with the Court.

dependent claims that specifically require the absence of all appreciable cutouts.[5]  Those claims have not been asserted.   Therefore, Oberthur again improperly attempts to read limitations from dependent claims into the broader independent claims, in violation of the doctrine of claim differentiation.  *See Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1329-30 (Fed. Cir. 2004); *see also AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003); *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). The broader asserted independent claims (claims 1 and 15 of the '155 and 1 and 16 of the '207) require that a "*non-electronic carrier*" be absent from only "*said at least one electronic element.*"

The claim language of independent claims 1 and 16 in the '207 Patent, and independent claims 1 and 15 in the '155 patent are very similar.  The use of the words "*said at least one*" modifies the following words "*electronic element.*"  *See British Telecomms. PLC v. Prodigy Comms. Corp.*, 189 F. Supp. 2d 101, 112 (S.D.N.Y. 2002) (construing "central computer means" based on definitions of "computer" and its modifier "central").  "*Said at least one*" does not mean every "*electronic element.*" (Everett Dec. ¶ 16).  The presence of additional "*electronic elements*" that do not satisfy the limitations is of no consequence to the claim, providing that "*said at least one electronic element*" satisfies the limitations.

**B.    Oberthur's Non-infringement Arguments  Are Contrary To The Court's Markman Ruling**

---

[5] Dependent claim 17 in the '207 Patent states:

"*The method as recited in claim 16 wherein said first and second core layers are devoid of any appreciable cutouts.*"

Dependent claim 16 in the '155 Patent states:

"*The methods as recited in claim 15 wherein said first and second core layers are devoid of any appreciable cutouts.*"

Oberthur's arguments for non-infringement depend upon the Court changing its March 9, 2005, Decision Construing Disputed Claim Terms ("*Markman* Decision"). *Leighton Techs. LLC v. Oberthur Card Sys., S.A.*, 358 F. Supp 2d 361 (SDNY 2005); Oberthur Motion pp. 13, 16, 17, 18, 23, 24. The limitation that Oberthur seeks to avoid is the following:

> **"positioning said at least one electronic element in absence of a non-electronic carrier directly between said first and second plastic core sheets…"**

To avoid admitting that its card products satisfy this limitation, Oberthur asks the Court to change the claim construction of "*electronic element*" so that in all claims the term means the combination of both a chip *and* antenna.[6]  Oberthur raised this same argument in its claim construction brief, and at the *Markman* Hearing, and lost.  In reaching its conclusion the Court stated:

> **"It is easy to reject Defendant's proposed definition of 'electronic element' as 'a combination of a microchip and antenna' with regard to the '207 and '155 patents. Such a construction, as Plaintiff correctly observes, would violate almost every rule of claim construction."** *Leighton Techs. LLC v. Oberthur Card Sys., S.A.*, 358 F. Supp 2d 361, 374 (SDNY 2005)

As it did at the *Markman* Hearing, Oberthur again encourages the Court to look at the accused products and then construe the patent limitations.  (Gutkin Dec. Ex. 22 (2/9/05 *Markman* Hearing Tr. 73:14-24)).  There is no support offered by Oberthur to justify changing the claim construction of "*electronic element*," other than by doing so it would assist Oberthur's non-infringement arguments. Leighton will not repeat the voluminous discussion and reasoning, other than to mention a few points from the Court's *Markman* Decision.

---

[6] Oberthur's reliance on the dependent claims for support is misplaced for another reason.  One of ordinary skill in the art would know of the existence of certain single electronic elements that have both a chip and an antenna. (Everett Dec.¶ 9, p.14 and ¶14, p.18).  These "antenna on chips" are completely different from what Oberthur uses in its cards, and for that reason the dependent claims requiring such a single electronic element have not been asserted.  (*Id.*).

- Although Oberthur argued that "*electronic element*" should be treated differently between the four related Leighton Patents, the Court disagreed with the argument and decided the term should be defined in the same way across all of the patents. *Leighton Techs.*, 358 F. Supp 2d at 374-75.

- "The specifications do not suggest that the term "electronic element " should be defined as narrowly as defendant urges."

  > Electronic element 20 may take a wide variety of forms and perform a wide variety of functions (microprocessor chip, circuit board, transponder, etc.)." *Leighton Techs.*, 358 F. Supp 2d at 370.

- It is hornbook law that a patent is not limited to its disclosed embodiments. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

- Reading limitations from dependent claims into the broader independent claims violates the doctrine of claim differentiation. *See Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1329-30 (Fed. Cir. 2004); *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987).

**C.    Oberthur's Laboratory Experiments Are Merely Variations On The Single "Electronic Element" Argument**

Oberthur argues that even if the chip and antenna are separate "*electronic elements*", as the Court decided they were in the *Markman* Decision, there is a "*non-electronic carrier*" present for both "*electronic elements*." Oberthur's argument consists of trying to "borrow" the "*non-electronic carrier*" from the chip, because it is in fact absent with the antenna and the antenna bridge. Even if there is a cutout for the chip in each of Oberthur's cards, the antenna and the antenna bridge do not have such a cutout and are in direct contact with the plastic layers above and below. (Everett Dec. ¶¶ 15-16, pp. 18-19).

**1.    The "*Absence Of A Non-electronic Carrier*" Must Be Read In Conjunction with "Directly"**

Oberthur's argument is contrary to the reason the limitation was added to the claims during the prosecution. As the Court is aware from prior briefing in connection with the *Markman* Hearing, Claim 1 of the '207 application originally recited:

1. A hot lamination process for the manufacture of a plastic card, said process comprising the steps of:
a) providing first and second plastic core sheets;
b) positioning at least one electronic element between said first and second plastic core sheets to form a layered core…

(Gutkin Dec. Ex. 23 (January 8, 1998 Amendment to App. No. 08/727,789)).

However, the claim was rejected in light of the '024 Patent, which taught protecting the disclosed electronic element by use of a cavity in the card into which an electronic element with a protective carrier was also placed.   In order to overcome the office action rejection, Leighton amended the claim to include the limitation of positioning the electronic element "in the absence of a non-electronic carrier directly between said first and second plastic core sheets." (*Id.*).

During the course of the *Markman* Hearing, the Court explained the recess of the '024 Patent as follows:

> "That's okay. I think I understand what the '024 patent did. As I conceptualize it, it put the electronic element in a little pouch to keep it safe." (Gutkin Dec. Ex. 24 (*Markman* Hearing Tr. 63:24-64:3)).

Oberthur's argument that the cutout in the plastic core sheet into which the chip fits after lamination, constitutes a "*non-electronic carrier*" for the antenna and the antenna bridge located elsewhere in the card, completely ignores the relationship of the "*electronic element*" to "*non-electronic carrier*" to "*directly between said first and second plastic core sheets*".   Said "*electronic element*" is placed in a recess, and/or placed in a structure like the disk in the '024 Patent, such that the electronic element is prevented from being placed directly between the plastic core sheets.

Oberthur's laboratory experiment wherein a chip that has been connected by welds to other electronic elements in a circuit, is manipulated by being squeezed in the lamination process so as to reduce yields by damaging the chip and/or other electronic elements a certain percentage

of times, does not alter the fact that the antenna and/or antenna bridge do not have a "*non-electronic carrier*" preventing them from being placed directly between plastic core sheets. (Everett Dec. ¶ 18, p.19 and 20, Ex. B).[7] At the prior Summary Judgment hearing, Oberthur's counsel in the course of arguing the applicability of a prior art reference to the Leighton patents stated: "The point is your Honor, there is no yield limitation in these [Leighton patent] claims". (Gutkin Dec. Ex. 26 (Summary Judgment Hearing 4/4/06 Tr. 39:24-25)). Therefore, it is unclear what Oberthur is trying to show with its lab experiment. (Everett Dec. ¶18, pp.19-20).[8]

**D.    Oberthur's Reliance On Prior Art Is Not A Proper Defense To Infringement**

Relying upon practicing prior art as a defense to infringement has been attempted by others, and soundly rejected by the Federal Circuit. In *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1360 (Fed. Cir. 2002), the patentee moved for a preliminary injunction prohibiting the alleged infringer from continuing to manufacture the allegedly infringing product. The district court granted the patentee's motion for an injunction based, in part, on a finding of the patentee had established a likelihood of success on the merits regarding infringement. *Id.* at 1362-63. The alleged infringer challenged the injunction on appeal to the Federal Circuit by arguing, that the allegedly infringing products "cannot literally infringe because they merely practice the prior art, or that which would have been obvious in light of the prior art." *Id.* at 1365.

---

[7] Oberthur's experiment is problematic for another reason. Dr. Kazmer does not provide any authority that he has ever made prelams before. Mr. Mosteller, Oberthur's corporate designee at deposition, also in charge of the experiment, when asked about the specifics of the prelams, testified that he had never seen the prelams made and did not know the construction of the prelams. (Gutkin Dec. Ex. 25 (Mosteller 2/24/06 Tr. 134:15-135:5)).

[8] It is also difficult for other reasons to understand what Oberthur is attempting to prove by its experiment. Oberthur here argues the AmEx antenna does not need any protection, and at the Markman Hearing argued that the wire antenna did not need any protection. (Gutkin Dec. Ex. 29 (Markman Hearing Tr. 20:18-21; 100:12-17; 124:3-6)).

In finding that the alleged infringer's contention lacked merit, the Court stated "there is no 'practicing the prior art' defense to literal infringement." *Id.* Accused infringers who assert such a defense are seeking to avoid the "clear and convincing evidence" standard necessary to invalidate a patent claim, in favor of the lower "preponderance of the evidence" standard necessary to show non-infringement. *Id.* at 1367.

The patent and patent application relied upon by Oberthur do not begin to satisfy the "clear and convincing evidence" standard necessary to invalidate a patent claim. In fact, as set forth in the Everett Declaration, the cited prior art does not even show part of the Leighton inventions. (Everett Dec. ¶ 20, pp. 22-26).

## E. Partially Embedding Part of the Wire Antenna Does Not Create a "*Non-Electronic Carrier*"

In the Xenon cards, Oberthur's suppliers partially embed or tack a part of the antenna onto the surface of a plastic sheet prior to lamination. The tacking procedure, which is similar to gluing the antenna to the plastic sheet, is performed to maintain the position of the antenna during the preparation for lamination. (Everett Dec. ¶ 19, pp. 20 and 21). After tacking is completed, portions of the antenna and the entirety of the bridge still remain on the surface of the plastic sheet. A portion of the antenna is located below the surface of the plastic sheet. The antenna wires can be seen and felt on the surface of the plastic. (*Id.*).

Before lamination, the antenna directly contacts both core sheets without the presence of any air pocket or other carrier to protect the antenna from the high pressures experienced during lamination. (*Id.*); (See also ftn. 8, *supra*). This situation is not changed by the partial embedding process. Moreover, regardless of the embedding of a part of the wire antenna, the bridge that connects the microchip to the antenna is not embedded at all, and is also not protected by a cutout, recess or other protective structure acting as a "*non-electronic carrier.*" (*Id.*). The cutout

for the microchip immediately surrounds the chip frame, which is positioned well away from the antenna bridge. (*Id.*). Therefore, the "*non-electronic carrier*" limitation reads literally on the partially embedded antenna element as well as the antenna bridge element.

### F.    The Antenna and/or Antenna Bridge in Oberthur's Cards Are "*Directly Between*" the Core Plastic Sheets Despite the Presence of The Thin Adhesive or Epoxy Layers

Oberthur's argument about the presence of a thousandth of an inch of adhesive is based upon incorrectly construing a single word "*directly*" in isolation from the other words in the same claim "*positioning said at least one electronic element in the absence of a non-electronic carrier directly between said first and second plastic core sheets*". The argument is contrary to established case law; ignores the very reason that the language was added to the patents in the first place, which was to overcome the '024 patent; and does not comport with how one of ordinary skill in the art would understand the word in the context of the invention. (Everett Dec. ¶¶ 21-23, pp. 26-28). "*Directly*" is used in the Leighton patents in conjunction with the absence of a non-electronic carrier, be it a protective disk, cavity, air pocket, or a buffer. There is no such protective structure in the AmEx card for the electronic elements, other than for the chip.

An analogy that the Court used in a different context at the *Markman* hearing illustrates the problems with Oberthur's argument. In the analogy, assume that plastic sheets and tablecloths are similar. You can buy tablecloths with or without printing, and with or without coatings. Regardless of the way it is finished, it is still a tablecloth. You can also take your tablecloth home, and spill food, ink, or whatever else you want onto it, and it is still a tablecloth. If you now place a hot pot on the tablecloth, it is still directly on the tablecloth regardless of whether it is printed or plain, or clean or dirty. If you want to protect your tablecloth from the hot pot, you might use a trivet, a potholder, or you might even hold your pot above the tablecloth so it does not touch the tablecloth. In these

latter cases in which you do something to protect the tablecloth, the hot pot is not placed directly on the tablecloth. (Everett Dec. ¶¶ 21-23, pp. 26-28).

Applying the above analogy to Oberthur's plastic sheets, you can buy plastic sheets with or without printing, and with or without coatings. (*Id.*). Regardless of the way it is finished, one of ordinary skill in the art would still consider the above to be a plastic sheet. Alternatively, a card manufacturer can buy a plastic sheet, and print on it or coat it. It is still a plastic sheet. If you place a single electronic element between two plastic sheets, it is still directly between the plastic sheets, regardless of whether the sheets are printed or plain, clean or dirty, coated or not coated. If you want to protect the electronic element from pressure, you might use a non-electronic carrier, or you might make sure that there is air space between the plastic sheet and the electronic element. In these latter cases the electronic element would not be placed directly between the plastic sheets.

In the recent key case on claim construction, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (*en banc*), the Federal Circuit stated that terms within a claim must be read in light of the entire claim, and the patent. A corollary is that claim terms are understood in the context of the claim, and not in isolation. *See, e.g., Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005).

> However, "[p]roper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation." *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999); *accord Phillips*, [415 F.3d at 1314] ("[T]he context in which a term is used in the asserted claim can be highly instructive."); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088-90 (Fed. Cir. 2003) ("While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must

be considered . . . ."); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) (same).[9]

As set forth in the Everett declaration, lamination adhesives have been used since the 1980's to improve the adhesion of plastic sheets. (Everett Dec. ¶ 23, p.28). The use of adhesives is sometimes necessary to prevent the cards from being peeled apart, as per the requirements of ISO 7810. (*Id.*). The failure of two plastic sheets to properly bond to each other can make it easier for the cards to be peeled apart. One of ordinary skill in the art would know that plastic sheets are available from plastic manufacturers printed or not printed, and coated or not coated. (Everett Dec. ¶ 22, p.27). Oberthur uses a silkscreen process, identical to applying ink, to apply a .001 inch of lamination adhesive.[10]  The application of this plastic adhesive adds no additional protection to electronic elements that Oberthur states need no protection. Instead the sole purpose of the adhesive is to facilitate the adhesion of the upper and lower sheets, which is necessary because of the presence of a thin layer of glue which is used to make the inlay layer of the AmEx card. (Gutkin Dec. Ex. 4 (Rogers 4/27/06 Tr. Ex.TI-2, Doc. No. TI-0000074)).

### G.     Oberthur's Brief Conclusory Statements Do Not Negate Triable Issues Of Fact Under The Doctrine Of Equivalents

As set forth above, the limitation is either literally present in Oberthur's cards, or sufficient issues of material fact exist such that summary judgment is not appropriate. However,

---

[9] *See, also, Tex. Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1202 (Fed. Cir. 2002) (claim terms are to be given "the full range" of their plain and ordinary meaning to one skilled in the art), *cert. denied*, 123 S. Ct. 2230 (2003); *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1372-73 (Fed. Cir. 2003) (definition of the whole preferred over definition of the sub-parts); *Nat'l Sec. Archive v. United States Dep't of Defense*, 880 F.2d 1381, 1383 (D.C. Cir. 1989) ("It is often the case that two words, used in conjunction, convey a meaning different from what they would bear if interpreted separately.").

[10] In fact, at the deposition of Oberthur's corporate designee, Mr. Mosteller, he explained that the adhesive was applied just like ink, and referred to the adhesive as printing. (Gutkin Dec. Ex. 27 (Mosteller Tr. 88:4-90:4)).

in the event that the Court is inclined to consider non-infringement under the Doctrine of Equivalents ("DOE"), Oberthur merely reiterates its argument on literal infringement, and falls short of satisfying its heavy burden of showing the absence of genuine issues of material fact.[11]

Under the DOE, an accused product or process that does not literally infringe may still infringe under the DOE if there are only "insubstantial differences" between the claim language and the accused product. *See Leggett & Platt, Inc. v. Hickory Spring Mfg. Co.,* 285 F.3d 1353, 1359 (Fed. Cir. 2002). An element in the accused product is deemed equivalent to a claim limitation when the element in the accused product "performs substantially the same function in substantially the same way to obtain the same result." *Aquatex Indus., Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382 (Fed. Cir. 2005) (quoting *Graver Tank & Mfg. Co. v Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950)). An equivalence determination is performed from the perspective of one of ordinary skill in the relevant art. *See Lighting World, Inc. v. Birchwood Lighting,* 382 F.3d 1354, 1357 (Fed. Cir. 2004) (internal quotation marks and citations omitted).

A DOE infringement analysis is "an intensely factual inquiry" and, as a result, "a summary conclusion that a reasonable jury could not find infringement is often illusive." *Leggett & Platt, Inc.,* 285 F.3d at 1357 & 1360. In analyzing Oberthur's motion under the DOE, this Court must draw all reasonable inferences in favor of Leighton Technologies. *Id.* at 1360.

Here, Oberthur fails to carry its burden for several reasons. Initially, Oberthur's expert, Dr. Kazmer, fails to establish that he has ordinary skill in the relevant art. *See Lighting World,*

---

[11] Oberthur's reference to the fact that Dr. Everett has indicated that he might further address the DOE in his rebuttal report, is irrelevant to this Motion. Moreover, as set forth in the Gutkin Declaration at Ex. 28 (Oberthur's Responses to Interrogatory No. 10), Oberthur not Leighton created any delay, by refusing to respond to written discovery asking Oberthur to identify any limitations missing from the accused products.

*Inc.*, 382 F.3d at 1357. While experienced in plastics engineering, Dr. Kazmer does not offer evidence of experience with smart card manufacturing. (Kazmer Dec. Ex. A).

Moreover, Oberthur's brief DOE analysis is merely a repetition of its argument that the "*electronic element*" in its cards (*i.e.*, the microchip, antenna and bridge) is protected by a "*non-electronic carrier*" during the lamination process, because a recess is positioned over just the chips in Oberthur's cards. (Gutkin Dec. Ex. 4 (Rogers 4/27/06 Tr. Ex. TI-2, Doc. No. TI-0000074) (Oberthur Memo p. 24). Oberthur argues that finding infringement under DOE therefore would violate the doctrines of claim vitiation and prosecution history estoppel. (*See* Oberthur Memo pp. 24-25).

As discussed above, this argument is misplaced because the antennae and/or the bridge connecting the chip to the antennae in Oberthur's cards, which are separate "*electronic elements*," are not protected by a cutout, recess or other "*non-electronic carrier*" and instead are placed directly between plastic core sheets. This process is identical to the process claimed in the patents-in-suit. Therefore, the doctrines of claim vitiation and prosecution history estoppel are irrelevant, and Oberthur's arguments regarding them are misplaced.

Any remaining differences between Oberthur's cards and the asserted claims are marred by factual disputes between the parties, and therefore Oberthur cannot show the absence of genuine dispute on the material facts with respect to DOE infringement. Dr. Everett, a person of ordinary skill in the relevant art, has provided a detailed analysis of how Oberthur's manufacturing process for the AmEx and Xenon cards infringe under the DOE, satisfying the "function, way, result" standard. (Everett Dec., ¶ 24-32, pp. 29-35). Moreover, where there are substantial material factual disputes between experts, courts have found summary judgment to be inappropriate. *See Leggett & Platt, Inc.,* 285 F.3d at 1360 (finding affidavits from expert created

genuine issue of material fact that precluded summary judgment of non-infringement under

DOE); *Kraft Foods, Inc. v. Int'l Trading Co.,* 203 F.3d 1362, 1373 (Fed. Cir. 2000) (noting

expert affidavit created genuine issue of material fact regarding DOE infringement).

## V.    **CONCLUSION**

At a minimum, there are issues of material fact as to whether Oberthur's cards have the

limitation at issue.  Summary Judgment is not appropriate under these circumstances, and

therefore Oberthur's Motion should be denied.

January 26, 2007                          SUTHERLAND ASBILL & BRENNAN LLP

                                          ____/s/Robert A. Gutkin_____
                                          By:  Robert A. Gutkin, Esq. (Pro hac vice)
                                              Blair M. Jacobs (Pro hac vice)
                                              1275 Pennsylvania Avenue, N.W.
                                              Washington, DC  20004-2415
                                              Tel:  202-383-0100
                                              Fax: 202-637-3593

                                              *Attorneys for Plaintiff*
                                              *LEIGHTON TECHNOLOGIES LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF LEIGHTON

TECHNOLOGIES LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-

INFRINGEMENT, was served on the following on January 26, 2007 by e-mail and overnight

mail:

Edward DeFranco
Kevin Johnson
Mark Baker
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010


/s/ Robert A. Gutkin