**EXHIBIT 28**

Robert A. Gutkin, Esq. (RG-6054)
Blair M. Jacobs, Esq. (BJ-4776)
Christina A. Ondrick, Esq. (CO-8449)
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004-2415
Tel: 202-383-0100
Fax: 202-637-3593

Attorneys for Plaintiff
LEIGHTON TECHNOLOGIES LLC

> DOCKETED
> Sutherland Asbill & Brennan LLP
> Litigation

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC, | ) |
| | ) |
| Plaintiff and Counterclaim Defendant, | ) 04 Civ. 02496 (CM) |
| | ) |
| v. | ) PLAINTIFF LEIGHTON'S |
| | ) SECOND SET OF |
| | ) INTERROGATORIES (Nos. 1-9) |
| OBERTHUR CARD SYSTEMS, S.A., | ) |
| | ) |
| Defendant and Counterclaim Plaintiff. | ) |
| | ) |

## PLAINTIFF LEIGHTON'S SECOND SET OF INTERROGATORIES (Nos. 1-9)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Leighton

Technologies LLC ("Leighton") hereby requests that Defendant Oberthur Card Systems, S.A.

("Oberthur") answer the following interrogatories separately, fully, and under oath, within 30

days of this request. Plaintiffs are subject to a duty to timely supplement all responses to these

interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## DEFINITIONS

The definitions and rules of construction set forth in Local Civil Rule 26.3(c) and (d) are

incorporated herein by reference. In addition,

    1.    "Smart Card" means a plastic card that uses radio frequency identification

("RFID") technology and/or includes an electronic element (as defined by the Court in its

Markman ruling and including a computer chip and/or an antenna). "Smart Card" includes different forms, such as contactless, contact, hybrid, and dual function forms. The foregoing definition of "Smart Card" is intended to include plastic cards as Defendant provides them to its customers (*e.g.*, in a finished form with or without printed graphics and text) and in any component or intermediate form (*e.g.*, a core).

2.      "Oberthur Card Systems, S.A." shall mean (a) Oberthur Card Systems, S.A., (b) any of its divisions, departments, and other organizational or operating units, (c) all predecessor or successor companies or corporations, (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control or affiliated, in any manner, with Oberthur Card Systems, S.A. or its affiliated companies and (e) each of the present and former officers, directors, employees, agents, attorneys, or other representatives of Oberthur Card Systems, S.A..

3.      Any reference to any individual person, either singularly or as a part of a defined group, includes that individual person's employees, agents, successors, assignees, heirs, and representatives.

4.      "Leighton's patents" means one or all of U.S. Patent No. 5,817,207, U.S. Patent No. 6,036,099, U.S. Patent No. 6,214,155 B1 and U.S. Patent No. 6,514,367 B1.

5.      "Infringe" and "infringement" refer to direct infringement, contributory infringement, inducement to infringe, literal infringement, and/or infringement by the doctrine of equivalents.

6.      "Accused products" means, without limitation, any Oberthur Smart Card made, used or offered for sale in the United States.

## INTERROGATORIES

1.    Describe in detail each process that Oberthur has used since October 6, 1998 to manufacture Smart Cards including, but not limited to, each hot lamination process, the temperatures and pressures used therein, and the times that such temperatures and pressures are used.

**RESPONSE:**

2.    For each process described in your response to Interrogatory No. 1, describe in detail the process steps used to provide the Smart Cards with (a) ink, graphics and text; (b) overlaminate films, overlays, and outer layers; (b) cavities to receive chips in the plastic layers of Cards.

**RESPONSE:**

3.    Identify all persons involved in the conception, design, development, or manufacture of Oberthur Smart Cards and each such person's role in such conception, design, development, or manufacture, whether or not such persons are currently or were previously employed by Oberthur, and identify contact information and current place of employment and position for each such person.

**RESPONSE:**

4.      Identify by part number and source, or other similar unique designation, all Smart Cards made, used, sold offered for sale, imported, exported, distributed or otherwise disposed of by Oberthur in the United States.

**RESPONSE:**

5.      Identify all customers or prospective customers to whom Oberthur has presented, supplied, sampled, demonstrated, offered to sell, or sold any accused product and identify each person with knowledge of such contacts and all documents relating thereto.

**RESPONSE:**

6.      To the extent that entities other than Oberthur manufacture, distribute or market the accused products, identify the entities that manufacture, distribute or market the accused products, providing the address, telephone number and person at each entity in charge of such activities, and the dates during which each entity performed such activities and provide a description of the entities' role in the manufacturing or distribution process.

· **RESPONSE:**

7.     Identify the actual and projected sales volumes of the Oberthur Smart Cards and dollar amount, and by actual and expected gross revenues, net profits, and gross profits derived from these sales, and identify persons knowledgeable regarding such sales and all documents relating thereto.

**RESPONSE:**

8.     State the measure of damages that Oberthur contends Leighton would be entitled to receive, if any, in the event that infringement of one or more of Leighton's patents is found and describe in detail all bases and contentions by Oberthur used in determining the measure of damages, including a specific identification of the methodology in computing such measure of damages, and identify all facts and evidence that support (and that Oberthur will rely on at trial to support) Oberthur's identified measure of damages.

**RESPONSE:**

9.     For each of Leighton's patents, state separately the date when Oberthur became aware of the patent, identify the person who learned of the patent on Oberthur's behalf and the manner in which the person learned of the patent, and identify any and all documents which reflect or relate to Oberthur's acquisition of knowledge concerning the patent.

**RESPONSE:**

WO 388270.1                              5

10.    If you contend that Oberthur has not infringed any of Leighton's patents, explain the specific basis for each such contention, including which specific claim element(s) and limitation(s) Oberthur alleges are not met literally or equivalently in each of the accused products, and the reasons why Oberthur so alleges, and identify each person with information relating to such contentions and all facts and documents concerning such contentions.

**RESPONSE:**

11.    If you contend that any of Oberthur's patents fail to comply with the conditions and requirements for patentability specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 102, 103 and/or 112, identify all facts supporting and/or relating to this contention, including identification of all documents and individuals supporting such contention, and further applying each limitation of each claim in Oberthur's patents to any alleged invalidating prior art patent, publication, document, machine or method.

**RESPONSE:**

12.    Identify all prior art, prior uses or sales, prior knowledge and/or prior inventions that Oberthur contends affects the validity of Leighton's patents, and state with specificity how each such piece of prior art, prior use or sale, prior knowledge and/or prior invention meets the requirements of 35 U.S.C. § 102 and which claims and claim elements each such identified piece

WO 388270.1                                        6

of prior art, prior use or sale, prior knowledge and/or prior invention renders invalid, null and/or void.

**RESPONSE:**

13.    If you contend that any of Leighton's patents are unenforceable because of inequitable conduct or other grounds, identify all of the facts, circumstances, documents, and evidence that support that contention including a specific identification of any material information allegedly omitted from disclosure or misrepresented, how such information was material and what facts, circumstances, documents, and evidence supports the assertion that such information was material and was intentionally omitted from disclosure or misrepresented, and identify each person with information relating to such contentions and all facts and documents concerning such contentions.

**RESPONSE:**

14.    Explain the specific basis for Oberthur's contention that this action is barred by 28 U.S.C. § 1498(a) by identifying all facts supporting and/or relating to this contention, including but not limited to identification of documents and individuals supporting such contention, any sales or offers to sales to government entities that Oberthur contends bars

recovery, and the identity of each person at Oberthur possessing knowledge of facts concerning this contention.

**RESPONSE:**


15.     Identify all witnesses that Oberthur will call to testify at trial, including expert witnesses, and summarize the testimony of each witness.

**RESPONSE:**


Dated: April 28, 2005                              SUTHERLAND ASBILL & BRENNAN LLP

By: Robert A. Gutkin, Esq. (RG-6054)
Blair M. Jacobs, Esq. (BJ-4776)
Christina A. Ondrick, Esq. (CO-8449)
Attorneys for Plaintiff
LEIGHTON TECHNOLOGIES LLC
1275 Pennsylvania Avenue, N.W.
Washington, DC  20004-2415
Telephone:  (202) 383-0100

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing PLAINTIFF'S SECOND SET

OF INTERROGATORIES (Nos. 1-9) has been made on counsel for **OBERTHUR CARD**

**SYSTEMS, S.A.**, by sending a copy of this document by first class mail, facsimile, and email on

April 28, 2005 to the following:

> James David Jacobs (JJ-7351)
> Frank M. Gasparo (FG-2958)
> 805 Third Avenue
> New York, New York 10022

Dated: April 28, 2005

_____
Blair M. Jacobs

WO 388270.1

James David Jacobs (JJ-7351)
Frank M. Gasparo (FG-2958)
Susan R. Knox (SK-4110)
BAKER & McKENZIE LLP
805 Third Avenue
New York, New York 10022
Tel. (212) 751-5700
Fax (212) 759-9133

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LEIGHTON TECHNOLOGIES LLC, | ) | 04 Civ. 02496 (CM) (LMS) |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) | DEFENDANT OBERTHUR |
| | ) | CARD SYSTEMS, S.A.'S |
| v. | ) | RESPONSES TO PLAINTIFF |
| | ) | LEIGHTON'S SECOND SET OF |
| OBERTHUR CARD SYSTEMS, S.A., | ) | INTERROGATORIES (NOS. 1-9) |
| | ) | |
| Defendant and Counterclaim Plaintiff. | ) | |
| | ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the

United States District Courts for the Southern and Eastern Districts of New York,

defendant and counterclaim plaintiff Oberthur Card Systems, S.A. ("Oberthur") hereby

responds to Plaintiff Leighton's Second Set of Interrogatories (Nos. 1-9) (the

"Interrogatories"), dated and transmitted by e-mail by Leighton Technologies LLC

("Leighton") on April 28, 2005, as follows:

## GENERAL OBJECTIONS

Oberthur states the following objections to Plaintiff's Interrogatories:

1.    Oberthur objects to the Interrogatories to the extent that they define "Smart

Card" to include "contact" cards even though contact cards are not at issue in this

litigation. A contact card is a card that does not contain an electronic element between the

plastic core sheets during the lamination process, but contains an electronic element that

is inserted after lamination is completed. Documents concerning only contact cards are not relevant to any claim or defense of either party, and requests for such documents are not reasonably calculated to lead to the discovery of relevant evidence. In a telephone call on May 31, 2005 Leighton's counsel Robert Gutkin clarified to Oberthur's counsel James David Jacobs that these Interrogatories do not seek any discovery on software, fulfillment or personalization.

2. Oberthur objects to the Interrogatories to the extent that they are not limited to include only documents created on or after October 6, 1998, the date that the first of the patents-in-suit issued, except for prior art on which Oberthur intends to rely.

3. Oberthur objects to the Interrogatories to the extent that they include inventions used or manufactured by or for the United States Government. Such inventions are outside the scope of this litigation, and such information is therefore not relevant to any claim or defense of either party.

4. Oberthur objects to the Interrogatories to the extent that they are not limited, except with respect to prior art, to include only information concerning cards destined for the United States market. Except with respect to prior art, only cards destined for the United States market can be relevant to any claim or defense of either party.

5. Oberthur objects to the Interrogatories to the extent that they seek information or documents from Oberthur's subsidiaries and not from Oberthur.

6. Oberthur objects to the Interrogatories to the extent that they contain broader definitions or rules of construction than those set forth in the Federal Rules of Civil Procedure or Local Civil Rule 26.3.

7. Oberthur objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, on the grounds that such information is not subject to discovery. Any inadvertent disclosure of privileged information shall not constitute a waiver of any applicable privilege.

8.   Oberthur objects to the Interrogatories to the extent that they seek information already in Leighton's possession, custody or control, or information equally available to Leighton, on the grounds that such Interrogatories are unduly burdensome, oppressive, and harassing.

9.   Oberthur objects to the Interrogatories to the extent that they seek information which is not relevant to the subject matter of this action, and which is not reasonably calculated to lead to the discovery of admissible evidence.

10. Oberthur objects to the Interrogatories to the extent that the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

11. Oberthur objects to the Interrogatories to the extent that they seek trade secrets, proprietary and confidential information.

12. Oberthur's responses are without prejudice to its right to object to the relevancy, materiality, or admissibility of any information provided.

13. Oberthur's responses are made with the caveat that it has not completed its investigation of the facts underlying this action, or its discovery, or its trial preparation, and, as a result, may discover additional information in the course of that investigation, discovery, and trial preparation.  Furthermore, although Oberthur has made a diligent search and reasonable inquiry to locate responsive information, discovery and investigation and trial preparation are continuing, and Oberthur reserves the right to use at trial information which is subsequently located.

## SPECIFIC OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

| Objections | Interrogatory | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| Card Type[1] | ● | ● | ● | ● | ● | ● | ● | | | | | | | | |
| Date range[2] | | | ● | ● | ● | ● | ● | | | | | | | | |
| Government[3] | ● | ● | ● | ● | ● | ● | ● | | | | | | | | |
| U.S. Market[4] | ● | ● | ● | | ● | ● | ● | | | | | | | | |
| Subsidiaries[5] | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● | ● |

[1]Oberthur objects to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories define "Smart Card" to include "contact" cards even though contact cards are not at issue in this litigation. In a telephone call on May 31, 2005 Leighton's counsel Robert Gutkin clarified to Oberthur's counsel James David Jacobs that these interrogatories do not seek any discovery on software, fulfillment or personalization.

[2]Oberthur objects to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories are not limited to include only documents created on or after October 6, 1998, the date that the first of the patents-in-suit issued, except for prior art on which Oberthur intends to rely.

[3]Oberthur objects to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence.

The Interrogatories include inventions used or manufactured by or for the United States Government.   Such inventions are outside the scope of this litigation.

[4]Oberthur objects to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories are not limited, except with respect to prior art, to include only information concerning cards destined for the United States market.

[5]Oberthur objects to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories seek, among other things, information in the possession, custody or control of one of Oberthur's subsidiaries and not of Oberthur.  Oberthur will produce discovery not otherwise objectionable from all locations, wherever they are in the world, relating to cards made in or destined for sale or use in the United States.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:

Describe in detail each process that Oberthur has used since October 6, 1998 to manufacture Smart Cards including, but not limited to, each hot lamination process, the temperatures and pressures used therein, and the times that such temperatures and pressures are used.

RESPONSE TO INTERROGATORY NO. 1:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection.  Without waiving the

foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 2:

For each process described in your response to Interrogatory No. 1, describe in detail the process steps used to provide the Smart Cards with (a) ink, graphics and text; (b) overlaminate films, overlays, and outer layers; (b) cavities to receive chips in the plastic layers of Cards.

RESPONSE TO INTERROGATORY NO. 2:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 3:

Identify all persons involved in the conception, design, development or manufacture of Oberthur Smart Cards and each such person's role in such conception, design, development, or manufacture, whether or not such persons are currently or were previously employed by Oberthur, and identify contact information and current place of employment and position for each such person.

RESPONSE TO INTERROGATORY NO. 3:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than the names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this interrogatory as phrased for the reasons stated in the chart preceding these Responses, and Oberthur also objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.

Without waiving the foregoing objections, Oberthur will provide business records sufficient to identify persons involved in the conception, design, development or manufacture of cards (a) contactless, hybrid or dual function cards (b) destined for the United States (c) and not used or manufactured by or for the United States Government.

INTERROGATORY NO. 4:

Identify by part number and source, or other similar unique designations, all Smart Cards used, sold or offered for sale, imported, exported, distributed or otherwise disposed of by Oberthur in the United States.

RESPONSE TO INTERROGATORY NO. 4:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 5:

Identify all customers or prospective customers to whom Oberthur has presented, supplied, sampled, demonstrated, offered to sell, or sold any accused product and identify each person with knowledge of such contacts and all documents relating thereto.

RESPONSE TO INTERROGATORY NO. 5:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than the names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objections Oberthur will provide business records sufficient to identify such persons to the extent that the acts in question involve (a) contactless, hybrid or dual function cards (b) that were created on or after October 6,

1998 (c) destined for the United States (d) and not used or manufactured by or for the United States Government.

INTERROGATORY NO. 6:

To the extent that entities other that Oberthur manufacture, distribute or market the accused products, identify the entities that manufacture, distribute or market the accused products, providing the address, telephone number and person at each entity in charge of such activities, and the dates during which each entity performed such activities and provide a description of the entities' role in the manufacturing or distribution process.

RESPONSE TO INTERROGATORY NO. 6:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 7:

Identify the actual and projected sales volumes of the Oberthur Smart Cards and dollar amount, and by actual and expected gross revenues, net profits, and gross profits derived from these sales, and identify persons knowledgeable regarding such sales and all documents relating thereto.

RESPONSE TO INTERROGATORY NO. 7:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than that names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Oberthur also objects to this interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objection, Oberthur will provide business records sufficient to identify persons with knowledge of sales of (a) contactless, hybrid or dual

function cards (b) that were created on or after October 6, 1998 (c) destined for the United States (d) and not used or manufactured by or for the United States Government.

INTERROGATORY NO. 8:

State the measure of damages that Oberthur contends Leighton would be entitled to receive, if any, in the event that infringement of one or more of Leighton's patents is found and describe in detail all bases and contentions by Oberthur used in determining the measure of damages, including a specific identification of the methodology in computing such measure of damages, and identify all facts and evidence that support (and that Oberthur will rely on at trial to support) Oberthur's identified measure of damages.

RESPONSE TO INTERROGATORY NO. 8:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 9:

For each of Leighton's patents, state separately the date when Oberthur became aware of the patent, identify the person who learned of the patent on Oberthur's behalf and the manner in which the person learned of the patent, and identify any and all documents which reflect or relate to Oberthur's acquisition of knowledge concerning the patent.

RESPONSE TO INTERROGATORY NO. 9:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 10:

If you contend that Oberthur has not infringed any of Leighton's patents, explain the specific basis for each such contention, including which specific claim element(s) and limitation(s) Oberthur alleges are not met literally or equivalently in each of the accused products, and the reasons why Oberthur so alleges, and identify each person with information relating to such contentions and all facts and documents concerning such contentions.

RESPONSE TO INTERROGATORY NO. 10:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection.   Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 11:

If you contend that any of Oberthur's patents fail to comply with the conditions and requirements for patentability specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 102, 103 and/or 112, identify all facts supporting and/or relating to this contention, including identification of all documents and individuals supporting such contention, and further applying each limitation of each claim in Oberthur's patents to any alleged invalidating prior art patent, publication, document, machine or method.

RESPONSE TO INTERROGATORY NO. 11:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection.  Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 12:

Identify all prior art, prior uses or sales, prior knowledge and/or prior inventions that Oberthur contends affects the validity of Leighton's patents, and state with specificity how each such piece of prior art, prior use or sale, prior knowledge and/or prior invention meets the requirements of 35 U.S.C. § 102 and which claims and claim elements each such identified piece of prior art, prior use or sale, prior knowledge and/or prior invention renders invalid, null and/or void.

RESPONSE TO INTERROGATORY NO. 12:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 13:

If you contend that any of Leighton's patents are unenforceable because of inequitable conduct or other grounds, identify all of the facts, circumstances, documents, and evidence that support that contention including a specific identification of any material information allegedly omitted from disclosure or misrepresented, how such information was material and what facts, circumstances, documents, and evidence supports the assertion that such information was material and was intentionally omitted from disclosure or misrepresented, and identify each person with information relating to such contentions and all facts and documents concerning such contentions.

RESPONSE TO INTERROGATORY NO. 13:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than that names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objections, as presently advised the following individuals have information regarding Leighton's inequitable conduct:

1.  Michael H. Minns
    Hahn Loese & Parks LLP
    1225 West Market Street
    Akron, OH 44313
    (330) 864-5550

2.  Mark A. Watkins
    Hahn Loese & Parks LLP
    1225 West Market Street
    Akron, OH 44313
    (330) 864-5550

INTERROGATORY NO. 14:

Explain the specific basis for Oberthur's contention that this action is barred by 28 U.S.C. § 1498(a) by identifying all facts supporting and/or relating to this contention, including but not limited to identification of documents and individuals supporting such contention, any sales or offers to sales to government entities that Oberthur contends bars recovery, and the identity of each person at Oberthur possessing knowledge of facts concerning this contention.

RESPONSE TO INTERROGATORY NO. 14:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objection, Oberthur will provide business records sufficient to identify persons at Oberthur possessing such knowledge.

INTERROGATORY NO. 15:

Identify all witnesses that Oberthur will call to testify at trial, including expert witnesses, and summarize the testimony of each witness.

RESPONSE TO INTERROGATORY NO. 15:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than the names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus this interrogatory requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objection Oberthur has not completed its investigation of the facts underlying this action, or its discovery, or its trial preparation, and, as a result, may discover additional information in the course of that investigation, discovery, and trial preparation.

As soon as Oberthur has identified witnesses that it intends to call at trial, it will supplement its response to this Interrogatory.

Dated: New York, New York
       June 6, 2005

                                        BAKER & McKENZIE LLP

                                By: _Susan Knox_____
                                    James David Jacobs (JJ-7351)
                                    Frank M. Gasparo (FG-2958 )
                                    Susan R. Knox (SK-4110)
                                    805 Third Avenue
                                    New York, New York 10022
                                    Tel. (212) 751-5700
                                    Fax (212) 759-9133

                                    Attorneys for Oberthur Card
                                        Systems, S.A.

James David Jacobs (JJ-7351)
Frank M. Gasparo (FG-2958)
Susan R. Knox (SK-4110)
BAKER & McKENZIE LLP
805 Third Avenue
New York, New York 10022
Tel. (212) 751-5700
Fax (212) 759-9133

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC, ) | 04 Civ. 02496 (CM) (LMS) |
| ) | |
| Plaintiff and Counterclaim Defendant, ) | DEFENDANT OBERTHUR |
| ) | CARD SYSTEMS, S.A.'S |
| v. ) | SECOND SUPPLEMENTAL |
| ) | RESPONSES TO PLAINTIFF |
| OBERTHUR CARD SYSTEMS, S.A., ) | LEIGHTON'S SECOND SET OF |
| ) | INTERROGATORIES (NOS. 1-9) |
| Defendant and Counterclaim Plaintiff. ) | |
| ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, defendant and counterclaim plaintiff Oberthur Card Systems, S.A. ("Oberthur") hereby further supplements Defendant Oberthur Card Systems, S.A.'s Responses to Plaintiff Leighton's Second Set of Interrogatories (Nos. 1-9), served on June 6, 2005, and Defendant Oberthur Card Systems, S.A.'s Supplemental Responses to Plaintiff Leighton's Second Set of Interrogatories (Nos. 1-9), served on July 22, 2005, as follows:

## GENERAL OBJECTIONS

Oberthur states the following objections to Plaintiff's Interrogatories:

1. Oberthur objected to the Interrogatories to the extent that they define "Smart Card" to include "contact" cards even though contact cards are not at issue in this litigation. A contact card is a card that does not contain an electronic element between the plastic core sheets during

the lamination process, but contains an electronic element that is inserted after lamination is completed. Documents concerning only contact cards are not relevant to any claim or defense of either party, and requests for such documents are not reasonably calculated to lead to the discovery of relevant evidence. In a telephone call on May 31, 2005 Leighton's counsel Robert Gutkin clarified to Oberthur's counsel James David Jacobs that these Interrogatories do not seek any discovery on software, fulfillment or personalization; however, Oberthur will provide summary documents concerning its revenues derived from software, fulfillment or personalization.

2. Oberthur objected to the Interrogatories to the extent that they are not limited to include only documents created on or after October 6, 1998, the date that the first of the patents-in-suit issued, except for prior art on which Oberthur intends to rely. This objection does not apply to interrogatories seeking prior art. In an order entered on June 22, 2005, the court in essence sustained the objection.

3. Oberthur objected to the Interrogatories to the extent that they include inventions used or manufactured by or for the United States Government. Such inventions are outside the scope of this litigation, and such information is therefore not relevant to any claim or defense of either party. Notwithstanding and without waiving this objection, Oberthur will produce documents that relate to cards made, used, sold or offered for sale for the United States Government.

4. Oberthur objected to the Interrogatories to the extent that they are not limited to include only information concerning cards made, used, sold or offered for sale in the United States market. This objection does not apply to interrogatories seeking prior art. The parties agreed to limit the interrogatories in accordance with this objection.

5. Oberthur objected to the Interrogatories to the extent that they seek information or documents from Oberthur's subsidiaries and not from Oberthur. Oberthur will produce discovery not otherwise objectionable from all locations, wherever they are in the world, relating to cards made, used, sold or offered for sale in the United States.

6. Oberthur objects to the Interrogatories to the extent that they contain broader definitions or rules of construction than those set forth in the Federal Rules of Civil Procedure or Local Civil Rule 26.3.

7. Oberthur objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, on the grounds that such information is not subject to discovery. Any inadvertent disclosure of privileged information shall not constitute a waiver of any applicable privilege.

8. Oberthur objects to the Interrogatories to the extent that they seek information already in Leighton's possession, custody or control, or information equally available to Leighton, on the grounds that such Interrogatories are unduly burdensome, oppressive, and harassing.

9. Oberthur objects to the Interrogatories to the extent that they seek information which is not relevant to the subject matter of this action, and which is not reasonably calculated to lead to the discovery of admissible evidence.

10. Oberthur objects to the Interrogatories to the extent that the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

11. Oberthur objects to the Interrogatories to the extent that they seek trade secrets, proprietary and confidential information.

12. Oberthur's responses are without prejudice to its right to object to the relevancy, materiality, or admissibility of any information provided.

13. Oberthur's responses are made with the caveat that it has not completed its investigation of the facts underlying this action, or its discovery, or its trial preparation, and, as a result, may discover additional information in the course of that investigation, discovery, and trial preparation. Furthermore, although Oberthur has made a diligent search and reasonable inquiry to locate responsive information, discovery and investigation and trial preparation are

continuing, and Oberthur reserves the right to use at trial information which is subsequently
located.

## SPECIFIC OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

| Objections | Interrogatory | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| Card Type[1] | ● | ● | ● | ● | ● | ● | ● | | | | | | | | |
| Date range[2] | | | ● | ● | ● | ● | ● | | | | | | | | |
| Government[3] | ● | ● | ● | ● | ● | ● | ● | | | | | | | | |
| U.S. Market[4] | ● | ● | ● | | ● | ● | ● | | | | | | | | |
| Subsidiaries[5] | ● | ● | ● | ● | ● | | ● | ● | ● | ● | ● | ● | ● | ● | ● |

[1]Oberthur objected to these Interrogatories on the grounds that they are overly broad and
burdensome and seek information that is not relevant to any claim or defense of either party and
not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories
define "Smart Card" to include "contact" cards even though contact cards are not at issue in this
litigation. In a telephone call on May 31, 2005 Leighton's counsel Robert Gutkin clarified to
Oberthur's counsel James David Jacobs that these interrogatories do not seek any discovery on
software, fulfillment or personalization; however, Oberthur will provide summary documents
concerning its revenue deriving from software, fulfillment or personalization.

[2]Oberthur objected to these Interrogatories on the grounds that they are overly broad and
burdensome and seek information that is not relevant to any claim or defense of either party and
not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories are
not limited to include only documents created on or after October 6, 1998, the date that the first
of the patents-in-suit issued. This objection does not apply to interrogatories seeking prior art.
In an order entered on June 22, 2005, the court in essence sustained the objection.

[3]Oberthur objected to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories include inventions used or manufactured by or for the United States Government. Such inventions are outside the scope of this litigation. Notwithstanding and without waiving this objection, Oberthur will produce documents that relate to cards made, used, sold or offered for sale for the United States Government.

[4]Oberthur objected to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories are not limited to include only information concerning cards made, used, sold or offered for sale in the United States market. This objection does not apply to interrogatories seeking prior art. The parties agreed to limit the interrogatories in accordance with this objection.

[5]Oberthur objected to these Interrogatories on the grounds that they are overly broad and burdensome and seek information that is not relevant to any claim or defense of either party and not reasonably calculated to lead to the discovery of relevant evidence. The Interrogatories seek, among other things, information in the possession, custody or control of one of Oberthur's subsidiaries and not of Oberthur. Oberthur will produce discovery not otherwise objectionable from all locations, wherever they are in the world, relating to cards made, used, sold or offered for sale in the United States.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:

Describe in detail each process that Oberthur has used since October 6, 1998 to manufacture Smart Cards including, but not limited to, each hot lamination process, the temperatures and pressures used therein, and the times that such temperatures and pressures are used.

RESPONSE TO INTERROGATORY NO. 1:

Oberthur is producing copies of paper documents that it located after a reasonable search that answer this Interrogatory. The documents bear the following Bates numbers:

OCS_A_009677 -- OCS_A_010262

OCS_A_028883 -- OCS_A_028895

OCS_A_040661 -- OCS_A_040853

OCS_A_041125 -- OCS_A_042588

OCS_A_043491 -- OCS_A_042651

OCS_A_000003 -- OCS_A_000008

OCS_A_000009 -- OCS_A_000014

OCS_A_000015 -- OCS_A_000018

OCS_A_000019 -- OCS_A_000022

OCS_A_000023 -- OCS_A_000027

OCS_A_000028 -- OCS_A_000031

OCS_A_000032 -- OCS_A_000035

OCS_A_000038 -- OCS_A_000041

OCS_A_000106 -- OCS_A_000109

OCS_A_000110 -- OCS_A_000113

OCS_A_000319 -- OCS_A_000321

OCS_A_000323 -- OCS_A_000325

OCS_A_000326 -- OCS_A_000328

OCS_A_000331 -- OCS_A_000333

OCS_A_000335 -- OCS_A_000337

OCS_A_000345 – OCS_A_000354

OCS_A_000355 – OCS_A_000364

OCS_A_000365 – OCS_A_000374

OCS_A_000376 – OCS_A_000381

OCS_A_000383 – OCS_A_000388

OCS_A_000389 – OCS_A_000393

OCS_A_000426 – OCS_A_000431

OCS_A_000433 – OCS_A_000443

OCS_A_000445 – OCS_A_000452

OCS_A_000454 – OCS_A_000455

OCS_A_000457 – OCS_A_000458

OCS_A_000460 – OCS_A_000462

OCS_A_000463 – OCS_A_000465

OCS_A_000467 – OCS_A_000469

OCS_A_000470 – OCS_A_000472

OCS_A_000474 – OCS_A_000476

OCS_A_000478 – OCS_A_000480

OCS_A_000481 – OCS_A_000483

OCS_A_000485 – OCS_A_000487

OCS_A_000488 – OCS_A_000490

OCS_A_000491 – OCS_A_000493

OCS_A_000494 – OCS_A_000496

OCS_A_000497 – OCS_A_000499

OCS_A_000501 – OCS_A_000503

OCS_A_000504 – OCS_A_000506

OCS_A_000507 – OCS_A_000509

OCS_A_000512 – OCS_A_000514

OCS_A_000516 – OCS_A_000523

OCS_A_000525 – OCS_A_000530

OCS_A_000532 – OCS_A_000547

OCS_A_000549 – OCS_A_000560

OCS_A_000563 – OCS_A_000565

OCS_A_000576 – OCS_A_000578

OCS_A_000580 – OCS_A_000582

OCS_A_000583 – OCS_A_000585

OCS_A_000730 – OCS_A_000738

OCS_A_000739 – OCS_A_000749

OCS_A_000750 – OCS_A_000756

OCS_A_000758 – OCS_A_000766

OCS_A_000878 – OCS_A_000880

OCS_A_000881 – OCS_A_000882

OCS_A_000885 – OCS_A_000886

OCS_A_000897 – OCS_A_000898

OCS_A_000899 – OCS_A_000900

OCS_A_000901 – OCS_A_000902

OCS_A_000904 – OCS_A_000905

OCS_A_000940 – OCS_A_000941

OCS_A_000943 – OCS_A_000944

OCS_A_000968 – OCS_A_000969

OCS_A_000972 – OCS_A_000973

OCS_A_000974 – OCS_A_000975

OCS_A_000986 – OCS_A_000987

OCS_A_000990 – OCS_A_000991

OCS_A_001021 – OCS_A_001025

OCS_A_001027 – OCS_A_001030

OCS_A_001043 – OCS_A_001045

OCS_A_001046 – OCS_A_001048

OCS_A_001050 – OCS_A_001052

OCS_A_001053 – OCS_A_001055

OCS_A_001063 – OCS_A_001067

OCS_A_001069 – OCS_A_001073

OCS_A_001075 – OCS_A_001077

OCS_A_001078 – OCS_A_001080

OCS_A_001081 – OCS_A_001083

OCS_A_001084 – OCS_A_001086

OCS_A_001087 – OCS_A_001089

OCS_A_001090 – OCS_A_001095

OCS_A_001106 – OCS_A_001107

OCS_A_001110 – OCS_A_001112

OCS_A_001114 – OCS_A_001116

OCS_A_001117 – OCS_A_001119

OCS_A_001120 – OCS_A_001122

OCS_A_001123 – OCS_A_001125

OCS_A_001329 – OCS_A_001330

OCS_A_001331 – OCS_A_001332

OCS_A_001333 – OCS_A_001334

OCS_A_001335 – OCS_A_001336

OCS_A_001337 – OCS_A_001338

OCS_A_001413 – OCS_A_001424

OCS_A_001468 – OCS_A_001470

OCS_A_001471 – OCS_A_001473

OCS_A_001474 – OCS_A_001475

OCS_A_001476 – OCS_A_001477

OCS_A_001478 – OCS_A_001479

OCS_A_001480 – OCS_A_001481

OCS_A_001788 – OCS_A_001799

OCS_A_001800 – OCS_A_001811

OCS_A_001812 – OCS_A_001823

OCS_A_001852 – OCS_A_001853

OCS_A_001854 – OCS_A_001855

OCS_A_001856 – OCS_A_001857

OCS_A_001858 – OCS_A_001859

OCS_A_001860 – OCS_A_001861

OCS_A_001862 – OCS_A_001863

OCS_A_001864 – OCS_A_001865

OCS_A_001866 – OCS_A_001867

OCS_A_001868 – OCS_A_001869

OCS_A_001952 – OCS_A_001953

OCS_A_001954 – OCS_A_001962

OCS_A_001963 – OCS_A_001971

OCS_A_002231 – OCS_A_002246

OCS_A_004939 – OCS_A_004991

OCS_A_005088 – OCS_A_005090

OCS_A_005092 – OCS_A_005106

OCS_A_005217 – OCS_A_005224

OCS_A_005602 – OCS_A_005623

OCS_A_006084 – OCS_A_006088

OCS_A_006090 – OCS_A_006095

OCS_A_006097 – OCS_A_006099

OCS_A_006101 – OCS_A_006103

OCS_A_006105 – OCS_A_006109

OCS_A_006113 – OCS_A_006131

OCS_A_006133 – OCS_A_006135

OCS_A_006144 – OCS_A_006149

OCS_A_006152 – OCS_A_006177

OCS_A_006179 – OCS_A_006183

OCS_A_006185 – OCS_A_006190

OCS_A_006192 – OCS_A_006194

OCS_A_006196 – OCS_A_006198

OCS_A_006200 – OCS_A_006204

OCS_A_010277 – OCS_A_010284

OCS_A_010286 – OCS_A_010293

OCS_A_010295 – OCS_A_010302

OCS_A_010304 – OCS_A_010311

OCS_A_010313 – OCS_A_010320

OCS_A_010322 – OCS_A_010326

OCS_A_010328 – OCS_A_010332

OCS_A_010362 – OCS_A_010371

OCS_A_010373 – OCS_A_010379

OCS_A_010381 – OCS_A_010387

OCS_A_010389 – OCS_A_010395

OCS_A_010397 – OCS_A_010405

OCS_A_010433 – OCS_A_010439

OCS_A_010441 – OCS_A_010446

OCS_A_010448 – OCS_A_010450

OCS_A_010452 – OCS_A_010454

OCS_A_010482 – OCS_A_010490

OCS_A_010492 – OCS_A_010495

OCS_A_010497 – OCS_A_010500

OCS_A_010502 – OCS_A_010505

OCS_A_010533 – OCS_A_010538

OCS_A_010540 – OCS_A_010542

OCS_A_010544 – OCS_A_010547

OCS_A_010549 – OCS_A_010552

OCS_A_010582 – OCS_A_010587

OCS_A_010589 – OCS_A_010591

OCS_A_010593 – OCS_A_010595

OCS_A_010597 – OCS_A_010599

OCS_A_010601 – OCS_A_010603

OCS_A_011202 – OCS_A_011202

OCS_A_011790 – OCS_A_011796

OCS_A_012190 – OCS_A_012224

OCS_A_012653 – OCS_A_012697

OCS_A_014118 – OCS_A_014123

OCS_A_014455 – OCS_A_014460

OCS_A_018648 – OCS_A_018649

OCS_A_021745 – OCS_A_022024

OCS_A_022025 – OCS_A_022140

OCS_A_029671 – OCS_A_029826

OCS_A_037881 – OCS_A_037885

OCS_A_040130 – OCS_A_040136

OCS_A_042887 – OCS_A_042888

OCS_A_042999 – OCS_A_042999

OCS_A_043000 – OCS_A_043000

OCS_A_043001 – OCS_A_043002

OCS_A_043004 – OCS_A_043004

OCS_A_043005 – OCS_A_043005

OCS_A_043007 – OCS_A_043007

OCS_A_043008 – OCS_A_043008

OCS_A_043009 – OCS_A_043009

OCS_A_043010 – OCS_A_043010

OCS_A_043136 – OCS_A_043136

OCS_A_043897 – OCS_A_043897

INTERROGATORY NO. 2:

     For each process described in your response to Interrogatory No. 1, describe in detail the process steps used to provide the Smart Cards with (a) ink, graphics and text; (b) overlaminate films, overlays, and outer layers; (b) cavities to receive chips in the plastic layers of Cards.

RESPONSE TO INTERROGATORY NO. 2:

     Oberthur is producing copies of paper documents that it located after a reasonable search that answer this Interrogatory. The documents bear the following Bates numbers:

OCS_A_009677 – OCS_A_010262

OCS_A_028883 – OCS_A_028895

OCS_A_040661 – OCS_A_040853

OCS_A_041125 – OCS_A_042588

OCS_A_043491 – OCS_A_042651

OCS_A_000003 – OCS_A_000008

OCS_A_000009 – OCS_A_000014

OCS_A_000015 – OCS_A_000018

OCS_A_000019 – OCS_A_000022

OCS_A_000023 – OCS_A_000027

OCS_A_000028 – OCS_A_000031

OCS_A_000032 – OCS_A_000035

OCS_A_000038 – OCS_A_000041

OCS_A_000106 – OCS_A_000109

OCS_A_000110 – OCS_A_000113

OCS_A_000319 – OCS_A_000321

OCS_A_000323 – OCS_A_000325

OCS_A_000326 – OCS_A_000328

OCS_A_000331 – OCS_A_000333

OCS_A_000335 – OCS_A_000337

OCS_A_000345 – OCS_A_000354

OCS_A_000355 – OCS_A_000364

OCS_A_000365 – OCS_A_000374

OCS_A_000376 – OCS_A_000381

OCS_A_000383 – OCS_A_000388

OCS_A_000389 – OCS_A_000393

OCS_A_000426 – OCS_A_000431

OCS_A_000433 – OCS_A_000443

OCS_A_000445 – OCS_A_000452

OCS_A_000454 – OCS_A_000455

OCS_A_000457 – OCS_A_000458

OCS_A_000460 – OCS_A_000462

OCS_A_000463 – OCS_A_000465

OCS_A_000467 – OCS_A_000469

OCS_A_000470 – OCS_A_000472

OCS_A_000474 – OCS_A_000476

OCS_A_000478 – OCS_A_000480

OCS_A_000481 – OCS_A_000483

OCS_A_000485 – OCS_A_000487

OCS_A_000488 – OCS_A_000490

OCS_A_000491 – OCS_A_000493

OCS_A_000494 – OCS_A_000496

OCS_A_000497 – OCS_A_000499

OCS_A_000501 – OCS_A_000503

OCS_A_000504 – OCS_A_000506

OCS_A_000507 – OCS_A_000509

OCS_A_000512 – OCS_A_000514

OCS_A_000516 – OCS_A_000523

OCS_A_000525 – OCS_A_000530

OCS_A_000532 – OCS_A_000547

OCS_A_000549 – OCS_A_000560

OCS_A_000563 – OCS_A_000565

OCS_A_000576 – OCS_A_000578

OCS_A_000580 – OCS_A_000582

OCS_A_000583 – OCS_A_000585

OCS_A_000730 – OCS_A_000738

OCS_A_000739 – OCS_A_000749

OCS_A_000750 – OCS_A_000756

OCS_A_000758 – OCS_A_000766

OCS_A_000878 – OCS_A_000880

OCS_A_000881 – OCS_A_000882

OCS_A_000885 – OCS_A_000886

OCS_A_000897 – OCS_A_000898

OCS_A_000899 – OCS_A_000900

OCS_A_000901 – OCS_A_000902

OCS_A_000904 – OCS_A_000905

OCS_A_000940 – OCS_A_000941

OCS_A_000943 – OCS_A_000944

OCS_A_000968 – OCS_A_000969

OCS_A_000972 – OCS_A_000973

OCS_A_000974 – OCS_A_000975

OCS_A_000986 – OCS_A_000987

OCS_A_000990 – OCS_A_000991

OCS_A_001021 – OCS_A_001025

OCS_A_001027 – OCS_A_001030

OCS_A_001043 – OCS_A_001045

OCS_A_001046 – OCS_A_001048

OCS_A_001050 – OCS_A_001052

OCS_A_001053 – OCS_A_001055

OCS_A_001063 – OCS_A_001067

OCS_A_001069 – OCS_A_001073

OCS_A_001075 – OCS_A_001077

OCS_A_001078 – OCS_A_001080

OCS_A_001081 – OCS_A_001083

OCS_A_001084 – OCS_A_001086

OCS_A_001087 – OCS_A_001089

OCS_A_001090 – OCS_A_001095

OCS_A_001106 – OCS_A_001107

OCS_A_001110 – OCS_A_001112

OCS_A_001114 – OCS_A_001116

OCS_A_001117 – OCS_A_001119

OCS_A_001120 – OCS_A_001122

OCS_A_001123 – OCS_A_001125

OCS_A_001329 – OCS_A_001330

OCS_A_001331 – OCS_A_001332

OCS_A_001333 – OCS_A_001334

OCS_A_001335 – OCS_A_001336

OCS_A_001337 – OCS_A_001338

OCS_A_001413 – OCS_A_001424

OCS_A_001468 – OCS_A_001470

OCS_A_001471 – OCS_A_001473

OCS_A_001474 – OCS_A_001475

OCS_A_001476 – OCS_A_001477

OCS_A_001478 – OCS_A_001479

OCS_A_001480 – OCS_A_001481

OCS_A_001788 – OCS_A_001799

OCS_A_001800 – OCS_A_001811

OCS_A_001812 – OCS_A_001823

OCS_A_001852 – OCS_A_001853

OCS_A_001854 – OCS_A_001855

OCS_A_001856 – OCS_A_001857

OCS_A_001858 – OCS_A_001859

OCS_A_001860 – OCS_A_001861

OCS_A_001862 – OCS_A_001863

OCS_A_001864 – OCS_A_001865

OCS_A_001866 – OCS_A_001867

OCS_A_001868 – OCS_A_001869

OCS_A_001952 – OCS_A_001953

OCS_A_001954 – OCS_A_001962

OCS_A_001963 – OCS_A_001971

OCS_A_002231 – OCS_A_002246

OCS_A_004939 – OCS_A_004991

OCS_A_005088 – OCS_A_005090

OCS_A_005092 – OCS_A_005106

OCS_A_005217 – OCS_A_005224

OCS_A_005602 – OCS_A_005623

OCS_A_006084 – OCS_A_006088

OCS_A_006090 – OCS_A_006095

OCS_A_006097 – OCS_A_006099

OCS_A_006101 – OCS_A_006103

OCS_A_006105 – OCS_A_006109

OCS_A_006113 – OCS_A_006131

OCS_A_006133 – OCS_A_006135

OCS_A_006144 – OCS_A_006149

OCS_A_006152 – OCS_A_006177

OCS_A_006179 – OCS_A_006183

OCS_A_006185 – OCS_A_006190

OCS_A_006192 – OCS_A_006194

OCS_A_006196 – OCS_A_006198

OCS_A_006200 – OCS_A_006204

OCS_A_010277 – OCS_A_010284

OCS_A_010286 – OCS_A_010293

OCS_A_010295 – OCS_A_010302

OCS_A_010304 – OCS_A_010311

OCS_A_010313 – OCS_A_010320

OCS_A_010322 – OCS_A_010326

OCS_A_010328 – OCS_A_010332

OCS_A_010362 – OCS_A_010371

OCS_A_010373 – OCS_A_010379

OCS_A_010381 – OCS_A_010387

OCS_A_010389 – OCS_A_010395

OCS_A_010397 – OCS_A_010405

OCS_A_010433 – OCS_A_010439

OCS_A_010441 – OCS_A_010446

OCS_A_010448 – OCS_A_010450

OCS_A_010452 – OCS_A_010454

OCS_A_010482 – OCS_A_010490

OCS_A_010492 – OCS_A_010495

OCS_A_010497 – OCS_A_010500

OCS_A_010502 – OCS_A_010505

OCS_A_010533 – OCS_A_010538

OCS_A_010540 – OCS_A_010542

OCS_A_010544 – OCS_A_010547

OCS_A_010549 – OCS_A_010552

OCS_A_010582 – OCS_A_010587

OCS_A_010589 – OCS_A_010591

OCS_A_010593 – OCS_A_010595

OCS_A_010597 – OCS_A_010599

OCS_A_010601 – OCS_A_010603

OCS_A_011202 – OCS_A_011202

OCS_A_011790 – OCS_A_011796

OCS_A_012190 – OCS_A_012224

OCS_A_012653 – OCS_A_012697

OCS_A_014118 – OCS_A_014123

OCS_A_014455 – OCS_A_014460

OCS_A_018648 – OCS_A_018649

OCS_A_021745 – OCS_A_022024

OCS_A_022025 – OCS_A_022140

OCS_A_029671 – OCS_A_029826

OCS_A_037881 – OCS_A_037885

OCS_A_040130 – OCS_A_040136

OCS_A_042887 – OCS_A_042888

OCS_A_042999 – OCS_A_042999

OCS_A_043000 – OCS_A_043000

OCS_A_043001 – OCS_A_043002

OCS_A_043004 – OCS_A_043004

OCS_A_043005 – OCS_A_043005

OCS_A_043007 – OCS_A_043007

OCS_A_043008 – OCS_A_043008

OCS_A_043009 – OCS_A_043009

OCS_A_043010 – OCS_A_043010

OCS_A_043136 – OCS_A_043136

OCS_A_043897 – OCS_A_043897

INTERROGATORY NO. 3:

Identify all persons involved in the conception, design, development or manufacture of Oberthur Smart Cards and each such person's role in such conception, design, development, or manufacture, whether or not such persons are currently or were previously employed by Oberthur, and identify contact information and current place of employment and position for each such person.

RESPONSE TO INTERROGATORY NO. 3:

The parties agreed that Oberthur would respond to this Interrogatory by identifying three individuals who have knowledge of each of the conception, design, development and manufacture of contactless, hybrid or dual function cards.

The following three individuals have knowledge of the conception, design, development and manufacture of contactless, hybrid or dual function cards:

1.  B. Chalus, c/o Oberthur Card Systems, S.A., 35 avenue de l'Ile Saint Martin, 92726 Nanterre Cedex, France

2.  François Launay, Corporate Process Director, Oberthur Card Systems, S.A., Centre Industriel de Caen 14, rue Jean-Baptiste Colbert BP 5028, 14076 Caen Cedex 5, France

3.  Barry Mosteller, Director, Quality & Engineering, Oberthur Card Systems, 523 James Hance Court, Exton, PA 19341.

INTERROGATORY NO. 4:

Identify by part number and source, or other similar unique designations, all Smart Cards used, sold or offered for sale, imported, exported, distributed or otherwise disposed of by Oberthur in the United States.

RESPONSE TO INTERROGATORY NO. 4:

Oberthur has used, sold or offered for sale, imported, exported, distributed or otherwise disposed of the following contactless, hybrid or dual-function cards in the United States:

a.      American Pacific contactless

b.  American Express – Express Pay on Blue

c.  American Express "Pebble" (fob)

d.  Amercian Express "Versa"

e.  Chase contactless

f.  Citibank N.A. contactless

g.  Citizens' Bank contactless

h.  HSBC contactless

i.  United States Department of Commerce contactless

j.  United States Government Accountability Office contactless

k.  United States General Services Administration contactless (2 types, one via BearingPoint Inc. and one via XTec)

l.  United States Postal Service hybrid

m.  Mint contactless

n.  MARAD dual-interface (XTec)

o.  MBNA contactless

p.  MasterCard USA Paypass

q.  Metaca contactless

r.  M&T Bank contactless

s.  Navy Federal Credit Union contactless

t.  OTI contactless

u.  Sun Microsystems contactless

v.  Webster Bank contactless

## INTERROGATORY NO. 5:

Identify all customers or prospective customers to whom Oberthur has presented, supplied, sampled, demonstrated, offered to sell, or sold any accused product and identify each person with knowledge of such contacts and all documents relating thereto.

RESPONSE TO INTERROGATORY NO. 5:

Oberthur has presented, supplied, sampled, demonstrated, offered to sell, or sold contactless, hybrid or dual-function cards to the following customers or prospective customers in the United States or to the following cusomers or prospective customers outside of the United States for cards that may be made in the United States:

a.   ActivCard

b.   Allegheny Plastics

c.   American Pacific Technology

d.   American Express Travel Related Services Company, Inc.

e.   Anteon Corporation

f.   Bank of America

g.   Bank of Montreal

h.   BearingPoint Inc.

i.   Booz Allen Hamilton Inc.

j.   BridgePoint

k.   Canadian Imperial Bank of Commerce (CIBC)

l.   Citibank N.A.

m.   Citizens' Bank

n.   CoreStreet

o.   DataCard

p.   Discover Bank

q.   Electronic Data Systems Corp. (EDS)

r.   Fifth Third Bank

s.   Government of Canada

t.   Government of Mexico

u.   Hibernia National Bank

v.   HID Corporation

w.      IC Group

x.      Identity Alliance

y.      Indala Corporation

z.      J.P. Morgan Chase

aa.     Key Bank

bb.     Litronic

cc.     Lockheed Martin

dd      MARAD (United States Department of Transportation Maritime

        Administration)

ee.     M&T Bank

ff.     MAXIMUS

gg.     MBNA America Bank, N.A.

hh.     MasterCard International Incorporated

ii.     Metaca

jj.     Mint

kk.     Monterrey Subway Project

ll.     National Institute for Science and Technology

mm.     Navy Federal Credit Union

nn.     Norseman Defense Technologies

oo.     Northrop Grumman Corporation

pp.     On Track Innovations Ltd.

qq.     Ontario Provincial Police

rr.     Operational Research Consultants

ss.     People's Bank

tt.     Saflink

uu.     Science Applications International Corporation (SAIC)

vv.     State of Illinois

ww.    Sun Microsystems

xx.    SuperCom Ltd.

yy.    Technology Partners

zz.    TFS Technology

aaa.    Unisys

bbb.    United States Bureau of Engraving and Printing

ccc.    United States Department of Commerce

ddd.    United States Department of Defense

eee.    United States Department of Energy

fff.    United States Department of Homeland Security

ggg.    United States Department of Interior

hhh.    United States Department of Labor

iii.    United States Department of State

jjj.    United States Federal Aviation Administration

kkk.    United States Government Accountability Office

lll.    United States General Printing Office

mmm. United States General Services Administration

nnn.    United States National Security Agency

ooo.    United States Postal Service

ppp.    Viisage

qqq.    Washington Metropolitan Area Transit Authority

rrr.    Washington Mutual Bank

sss.    Webster Bank

ttt.    Wells Fargo Bank

uuu.    XTec

Oberthur has also participated in trade fairs and conventions, at which it has had

informal, unrecorded communications with prospective customers.

The following individuals at Oberthur have knowledge of Oberthur's contacts with customers or prospective customers:

1. Thierry Burgess, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

2. Brent Bowen, Oberthur Card Systems, 523 James Hance Court, Exton, PA 19341

3. Michael Cariou, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

4. Melissa Carrick, Oberthur Card Systems, 523 James Hance Court, Exton, PA 19341

5. Francine Dubois, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

6. Stephanie Gallahan, Oberthur Card Systems, 4250 Pleasant Valley Road, Chantilly, VA 20151

7. Christophe Goyet, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

8. Patrick Hearn, Oberthur Card Systems, 4250 Pleasant Valley Road, Chantilly, VA 20151

9. Catherine McClaugherty, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

10. Matthew Nally, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

11. Liz Palmer, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

12. Jeffrey Schultz, Oberthur Card Systems, 523 James Hance Court, Exton, PA 19341

Documents concerning Oberthur's contacts with customers or prospective customers are included in the documents that Oberthur is producing.

INTERROGATORY NO. 6:

To the extent that entities other that Oberthur manufacture, distribute or market the accused products, identify the entities that manufacture, distribute or market the accused products, providing the address, telephone number and person at each entity in charge of such activities, and the dates during which each entity performed such activities and provide a description of the entities' role in the manufacturing or distribution process.

RESPONSE TO INTERROGATORY NO. 6:

The parties agreed that Oberthur would respond to this Interrogatory by identifying three individuals who have knowledge of each of manufacture, sales and marketing of contactless, hybrid or dual function cards by entities other than Oberthur.

The following three individuals have knowledge of the manufacture of contactless, hybrid or dual function cards by entities other than Oberthur:

1. Jean-François Arzel, Director, Support and Projects, Oberthur Card Systems, 35 avenue de l'Ile Saint Martin, 92726 Nanterre Cedex, France

2. Jean-Daniel Chatellier, Director of Purchases, Oberthur Card Systems, S.A., 35 avenue de l'Ile Saint Martin, 92726 Nanterre Cedex, France

3. Nigel Sealey, Oberthur Card Systems, S.A., 35 avenue de l'Ile Saint Martin, 92726 Nanterre Cedex, France

The following three individuals have knowledge of the distribution and marketing of contactless, hybrid or dual function cards by entities other than Oberthur:

1. Jean-François Arzel, Director, Support and Projects, Oberthur Card Systems, S.A., 35 avenue de l'Ile Saint Martin, 92726 Nanterre Cedex, France

2. Philippe Tartavull, Oberthur Card Systems, 3150 E. Ana Street, Rancho Dominguez, CA 90221

3. Xavier Drilhon, Managing Director, Oberthur Card Systems, S.A., 35 avenue de l'Ile Saint Martin, 92726 Nanterre Cedex, France

INTERROGATORY NO. 7:

Identify the actual and projected sales volumes of the Oberthur Smart Cards and dollar amount, and by actual and expected gross revenues, net profits, and gross profits derived from these sales, and identify persons knowledgeable regarding such sales and all documents relating thereto.

RESPONSE TO INTERROGATORY NO. 7:

Oberthur is producing copies of paper documents that it located after a reasonable search that answer this Interrogatory as it relatese to sales or manufacture of hybrid, contactless or dual-interface cards in the United States.  The documents bear the following Bates numbers:

OCS_A_007403 – OCS_A_007428

OCS_A_013186 – OCS_A_013188

OCS_A_021607 – OCS_A_021608

OCS_A_021625 – OCS_A_021626

OCS_A_028793 – OCS_A_028819

OCS_A_029577 – OCS_A_029578

OCS_A_030545 – OCS_A_030648

OCS_A_030727 – OCS_A_030738

OCS_A_030829 – OCS_A_030829

OCS_A_031099 – OCS_A_031104

OCS_A_031293 – OCS_A_031293

OCS_A_031294 – OCS_A_031294

OCS_A_031302 – OCS_A_031302

OCS_A_031308 – OCS_A_031311

OCS_A_031314 – OCS_A_031318

OCS_A_031319 – OCS_A_031319

OCS_A_031490 – OCS_A_031497

OCS_A_031537 – OCS_A_031542

OCS_A_031555 – OCS_A_031570

OCS_A_032634 – OCS_A_032634

OCS_A_032636 – OCS_A_032636

OCS_A_032637 – OCS_A_032638

OCS_A_032642 – OCS_A_032642

OCS_A_032643 – OCS_A_032643

OCS_A_032644 – OCS_A_032644

OCS_A_032645 – OCS_A_032645

OCS_A_032649 – OCS_A_032649

OCS_A_032650 – OCS_A_032650

OCS_A_032651 – OCS_A_032651

OCS_A_032652 – OCS_A_032652

OCS_A_032653 – OCS_A_032653

OCS_A_032654 – OCS_A_032654

OCS_A_032667 – OCS_A_032667

OCS_A_032668 – OCS_A_032668

OCS_A_032669 – OCS_A_032674

OCS_A_032675 – OCS_A_032681

OCS_A_033026 – OCS_A_033027

OCS_A_034328 – OCS_A_034332

OCS_A_034333 – OCS_A_034337

OCS_A_034338 – OCS_A_034342

OCS_A_034343 – OCS_A_034346

OCS_A_034424 – OCS_A_034424

OCS_A_034426 – OCS_A_034426

OCS_A_034427 – OCS_A_034431

OCS_A_035675 – OCS_A_035678

OCS_A_036513 – OCS_A_036557

OCS_A_036558 – OCS_A_036590

OCS_A_036608 – OCS_A_036608

OCS_A_036616 – OCS_A_036616

OCS_A_036623 – OCS_A_036623

OCS_A_036624 – OCS_A_036624

OCS_A_036625 – OCS_A_036625

OCS_A_036628 – OCS_A_036628

OCS_A_036650 – OCS_A_036723

OCS_A_036726 – OCS_A_036773

OCS_A_037092 – OCS_A_037134

OCS_A_037135 – OCS_A_037227

OCS_A_037228 – OCS_A_037229

OCS_A_037245 – OCS_A_037299

OCS_A_037300 – OCS_A_037300

OCS_A_037303 – OCS_A_037304

OCS_A_037309 – OCS_A_037324

OCS_A_037331 – OCS_A_037331

OCS_A_037332 – OCS_A_037366

OCS_A_037367 – OCS_A_037400

OCS_A_037401 – OCS_A_037422

OCS_A_037423 – OCS_A_037458

OCS_A_037459 – OCS_A_037481

OCS_A_040915 – OCS_A_040915

INTERROGATORY NO. 8:

State the measure of damages that Oberthur contends Leighton would be entitled to receive, if any, in the event that infringement of one or more of Leighton's patents is found and describe in detail all bases and contentions by Oberthur used in determining the measure of damages, including a specific identification of the methodology in computing such measure of damages, and identify all facts and evidence that support (and that Oberthur will rely on at trial to support) Oberthur's identified measure of damages.

RESPONSE TO INTERROGATORY NO. 8:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 9:

For each of Leighton's patents, state separately the date when Oberthur became aware of the patent, identify the person who learned of the patent on Oberthur's behalf and the manner in which the person learned of the patent, and identify any and all documents which reflect or relate to Oberthur's acquisition of knowledge concerning the patent.

RESPONSE TO INTERROGATORY NO. 9:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses. Without waiving the foregoing objection, Oberthur will attempt to ascertain the response to this Interrogatory, and if it does so, will identify the date when Oberthur became aware of each patent and the person who learned of the patent on Oberthur's behalf.

INTERROGATORY NO. 10:

If you contend that Oberthur has not infringed any of Leighton's patents, explain the specific basis for each such contention, including which specific claim element(s) and limitation(s) Oberthur alleges are not met literally or equivalently in each of the accused products, and the reasons why Oberthur so alleges, and identify each person with information relating to such contentions and all facts and documents concerning such contentions.

RESPONSE TO INTERROGATORY NO. 10:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection.   Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 11:

If you contend that any of Oberthur's patents fail to comply with the conditions and requirements for patentability specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 102, 103 and/or 112, identify all facts supporting and/or relating to this contention, including identification of all documents and individuals supporting such contention, and further applying each limitation of each claim in Oberthur's patents to any alleged invalidating prior art patent, publication, document, machine or method.

RESPONSE TO INTERROGATORY NO. 11:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection.  Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 12:

Identify all prior art, prior uses or sales, prior knowledge and/or prior inventions that Oberthur contends affects the validity of Leighton's patents, and state with specificity how each such piece of prior art, prior use or sale, prior knowledge and/or prior invention meets the

requirements of 35 U.S.C. § 102 and which claims and claim elements each such identified piece of prior art, prior use or sale, prior knowledge and/or prior invention renders invalid, null and/or void.

RESPONSE TO INTERROGATORY NO. 12:

Oberthur objects to this Interrogatory on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

INTERROGATORY NO. 13:

If you contend that any of Leighton's patents are unenforceable because of inequitable conduct or other grounds, identify all of the facts, circumstances, documents, and evidence that support that contention including a specific identification of any material information allegedly omitted from disclosure or misrepresented, how such information was material and what facts, circumstances, documents, and evidence supports the assertion that such information was material and was intentionally omitted from disclosure or misrepresented, and identify each person with information relating to such contentions and all facts and documents concerning such contentions.

RESPONSE TO INTERROGATORY NO. 13:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than that names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objections, as presently advised the following individuals have information regarding Leighton's inequitable conduct:

1. Michael H. Minns.

Hahn Loese & Parks LLP
1225 West Market Street
Akron, OH 44313
(330) 864-5550

2.  Mark A. Watkins
Hahn Loese & Parks LLP
1225 West Market Street
Akron, OH 44313
(330) 864-5550

INTERROGATORY NO. 14:

Explain the specific basis for Oberthur's contention that this action is barred by 28 U.S.C. § 1498(a) by identifying all facts supporting and/or relating to this contention, including but not limited to identification of documents and individuals supporting such contention, any sales or offers to sales to government entities that Oberthur contends bars recovery, and the identity of each person at Oberthur possessing knowledge of facts concerning this contention.

RESPONSE TO INTERROGATORY NO. 14:

Oberthur is producing copies of paper documents that it located after a reasonable search that answer this Interrogatory.  The documents bear the following Bates numbers:

OCS_A_006339 – OCS_A_006339

OCS_A_006340 – OCS_A_006340

OCS_A_006345 – OCS_A_006345

OCS_A_006671 – OCS_A_006671

OCS_A_006672 – OCS_A_006672

OCS_A_006673 – OCS_A_006673

OCS_A_006675 – OCS_A_006675

OCS_A_006676 – OCS_A_006676

OCS_A_006740 – OCS_A_006740

OCS_A_006772 – OCS_A_006773

OCS_A_006775 – OCS_A_006775

OCS_A_006776 – OCS_A_006776

OCS_A_008099 – OCS_A_008099

OCS_A_008102 – OCS_A_008102

OCS_A_008103 – OCS_A_008103

OCS_A_008105 – OCS_A_008105

OCS_A_008275 – OCS_A_008289

OCS_A_017058 – OCS_A_017058

OCS_A_019344 – OCS_A_019344

OCS_A_019345 – OCS_A_019345

OCS_A_019355 – OCS_A_019355

OCS_A_020565 – OCS_A_020566

OCS_A_020868 – OCS_A_020868

OCS_A_020930 – OCS_A_020930

OCS_A_022406 – OCS_A_022406

OCS_A_022407 – OCS_A_022407

OCS_A_022436 – OCS_A_022436

OCS_A_022444 – OCS_A_022445

OCS_A_022463 – OCS_A_022463

OCS_A_022465 – OCS_A_022465

OCS_A_023695 – OCS_A_023719

OCS_A_023720 – OCS_A_023726

OCS_A_024083 – OCS_A_024083

OCS_A_024087 – OCS_A_024087

OCS_A_024089 – OCS_A_024089

OCS_A_024093 – OCS_A_024093

OCS_A_031131 – OCS_A_031131

OCS_A_031401 – OCS_A_031401

OCS_A_038602 – OCS_A_038602

OCS_A_042247 – OCS_A_042247

INTERROGATORY NO. 15:

Identify all witnesses that Oberthur will call to testify at trial, including expert witnesses, and summarize the testimony of each witness.

RESPONSE TO INTERROGATORY NO. 15:

Oberthur objects to this Interrogatory to the extent that it seeks any information other than the names of witnesses, on the grounds that it violates Local Civil Rule 33.3 and thus this interrogatory requires no further response or objection. Without waiving the foregoing objection Oberthur also objects to this Interrogatory as phrased for the reasons stated in the chart preceding these Responses.

Without waiving the foregoing objection Oberthur has not completed its investigation of the facts underlying this action, or its discovery, or its trial preparation, and, as a result, may discover additional information in the course of that investigation, discovery, and trial preparation.

As soon as Oberthur has identified witnesses that it intends to call at trial, it will supplement its response to this Interrogatory.

Dated: New York, New York
      August 22, 2005

                                BAKER & McKENZIE LLP

                                By:
                                James David Jacobs (JJ-7351)
                                Frank M. Gasparo (FG-2958 )
                                Susan R. Knox (SK-4110)
                                805 Third Avenue
                                New York, New York 10022
                                Tel. (212) 751-5700
                                Fax (212) 759-9133

                                Attorneys for Oberthur Card Systems, S.A.

EXHIBIT 29

529bleih

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------------------x

3    LEIGHTON TECHNOLOGIES, LLC,

4         Plaintiff-Counterclaim Defendant,

5
                v.                                04 Civ. 2496(CM)
6
                                                 MARKMAN HEARING
7
     OBERTHUR CARD SYSTEMS, S.A.,
8
          Defendant-Counterclaim Plaintiff.
9
     ------------------------------------------x
10
                                                 White Plains, N.Y.
11                                               February 9, 2005
                                                 10:00 a.m.
12

13   Before:

14                THE HONORABLE COLLEEN McMAHON,

15                                               District Judge

16
                            APPEARANCES
17

18   SUTHERLAND, ASBILL & BRENNAN, LLP
          Attorneys for Plaintiff-Counterclaim Defendant
19   ROBERT A. GUTKIN
     BLAIR M. JACOBS
20   NEIL G. COHEN
     CHRISTINE ONDRICK
21

22   BAKER & McKENZIE
          Attorneys for Defendant-Counterclaim Plaintiff
23   JAMES DAVID JACOBS
     FRANK M. GASPARO
24

25   Also present:  MIREILLE CLAPIER, Oberthur inhouse counsel

529bleih

1    certainly understand that their invention is a process.

2         MR. J. JACOBS:  Okay.

3         THE COURT:  And I've gotten them to admit that this

4    morning in no uncertain terms when I said you're claiming the

5    process for making the card, not the component that goes into

6    the card.

7         MR. J. JACOBS:  Well, your Honor, you're absolutely

8    right.  And maybe I'm trying to kill a horse here, beat a horse

9    to death, but the point of the matter is what I'm trying to

10   point out is that there's a high correlation between the

11   purpose of this invention, particularly this purpose, which was

12   stressed to the examiner, and the fact of what the electronic

13   element is.  Because if that electronic element is not

14   sensitive to laminating pressure, you can be -- the pressure

15   can be infinite, then that isn't the sensitive electronic

16   element, and that's not what Leighton was trying to stress in

17   this invention.  That doesn't go to his invention.

18        Probably the Court can see where I'm going with this.

19   But an antenna is not sensitive.  It's a piece of wire.  An

20   antenna alone cannot be an electronic element.  It makes no

21   sense with respect to what --

22        THE COURT:  Well, you know, I hear what you're saying,

23   but the claim does not say a highly coordinated heating,

24   cooling and pressure cycle to encapsulate the sensitive

25   electronic element.

529bleih

1          At the very start this morning, your Honor, I

2     explained, or I tried to explain, that Leighton's invention

3     here was built on a lot of prior art, and during the file

4     wrapper, he set forth that his purpose was to protect -- and

5     that's the wrong section -- was to protect the chip.

6          THE COURT:  It was to manufacture the card without

7     having the core, but, nonetheless, not damaging the electronic

8     element.

9          MR. J. JACOBS:  Very well said, your Honor.  Thank

10    you.

11         THE COURT:  Thank you.

12         MR. J. JACOBS:  You can't apply pressure before you

13    heat the core.  Otherwise, you're going to crack the sensitive

14    electronic element.  And I think, as a result of our second

15    point, we made the point of the sensitivity to the electronic

16    element.  It's the microchip, because the antenna is a mere

17    wire, plus not being an electronic element, of course.

18         All these, at least from my viewpoint -- and I hope

19    we've -- if we haven't done it already -- convinced the Court

20    that all these definitions sort of tie together.  These aren't

21    isolated words that we've selected to bring to the Court's

22    attention.  It really goes back to this amendment which now I

23    have on the screen, which describes how Leighton got this

24    patent allowed.  And it was this highly coordinated pressure,

25    heating, cooling cycle.

529bleih

1   and the pea.  You apply a platen pressure to flat plastic

2   sheets, and you have a pea in there, which is what your

3   microchip is.  Any pressure probably is going to crush it, is

4   going to start damaging it.  It's a sensitive piece of

5   microelectronics.  It's not an antenna, which is a piece of

6   wire, which is hard to crush.

7          THE COURT:  I wish that were true in my jewelry

8   cabinet.

9          MR. J. JACOBS:  I didn't say bend.  I said crush.

10          THE COURT:  All right.  Fair enough.  That's fair

11   enough.

12          MR. J. JACOBS:  So, in fact, what they try to do is

13   apply minimal or no pressure to the plantens.  But they want

14   the heat to transfer from the plantens, so they close the

15   plantens on the sandwich.  You want to heat the transfer from

16   the platens where the heat is flowing through to the sandwich,

17   so you close the plantens, but you try to keep it to little or

18   no pressure, as the patent teaches.

19          THE COURT:  All right.

20          MR. J. JACOBS:  And it means little or none.  But we

21   claim, in Claim 16, there's no pressure.

22          THE COURT:  Minimal.

23          MR. J. JACOBS:  I mean Claim 1.

24          THE COURT:  You say there's none.  But, certainly, in

25   Claim 16, it's minimal.

**EXHIBIT 30**

529bleih

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------------------x

3   LEIGHTON TECHNOLOGIES, LLC,

4        Plaintiff-Counterclaim Defendant,

5
            v.                          04 Civ. 2496(CM)
6
                                        MARKMAN HEARING
7
    OBERTHUR CARD SYSTEMS, S.A.,
8
         Defendant-Counterclaim Plaintiff.
9
    -------------------------------------------x
10
                                        White Plains, N.Y.
11                                      February 9, 2005
                                        10:00 a.m.
12

13  Before:

14             THE HONORABLE COLLEEN McMAHON,

15                                      District Judge

16
                        APPEARANCES
17

18  SUTHERLAND, ASBILL & BRENNAN, LLP
         Attorneys for Plaintiff-Counterclaim Defendant
19  ROBERT A. GUTKIN
    BLAIR M. JACOBS
20  NEIL G. COHEN
    CHRISTINE ONDRICK
21

22  BAKER & McKENZIE
         Attorneys for Defendant-Counterclaim Plaintiff
23  JAMES DAVID JACOBS
    FRANK M. GASPARO
24

25  Also present:  MIREILLE CLAPIER, Oberthur inhouse counsel

529bleih

1    all the patents, appears in all the claims.  In a

2    representative claim of the '207 claim up there, electronic

3    element is claimed as being between said first and second

4    plastic core sheets.

5          THE COURT:  Let me see if I can -- we've read all of

6    this, so I can actually focus on some questions.

7          Your client claims a process, a process for enclosing

8    something in which you do not claim any kind of patent rights

9    at all, via the electronic element, in plastic to get it onto a

10   card, right?  You're claiming the process.  You're not claiming

11   the thing.

12         MR. GUTKIN:  I believe that that's a correct

13   statement.

14         THE COURT:  You're not claiming any rights in the

15   electronic element itself.

16         MR. GUTKIN:  No, no.

17         THE COURT:  You're just claiming the process for

18   enclosing the electronic element, or encapsulating, or whatever

19   the word is that gets used, the electronic element and

20   embedding it in the card.

21         MR. GUTKIN:  That's one of the claims, that's correct.

22   And in the letter two patents, there's also claims with milling

23   the card.

24         THE COURT:  But it's the process, basically, of

25   getting the element incorporated into the card.

**EXHIBIT 31**

# United States Patent [19]

## Haghiri-Tehrani et al.

[11] **4,450,024**

[45] **May 22, 1984**

[54] **IDENTIFICATION CARD WITH AN IC-MODULE AND METHOD FOR PRODUCING IT**

[75] Inventors: **Yahya Haghiri-Tehrani; Joachim Hoppe,** both of Munich, Fed. Rep. of Germany

[73] Assignee: **GAO Gesellschaft für Automation und Organisation mbH,** Munich, Fed. Rep. of Germany

[21] Appl. No.: **288,496**

[22] Filed: **Jul. 30, 1981**

[30] **Foreign Application Priority Data**

Aug. 7, 1980 [DE] Fed. Rep. of Germany ....... 3029939

[51] Int. Cl.³ .............................................. **B60J 1/00**
[52] U.S. Cl. .................................... **156/108;** 156/182; 156/293; 156/295; 156/306.6; 156/309.6; 156/309.9; 156/322; 156/324.4; 264/272.17; 264/279.1; 428/901; 428/916; 283/75
[58] Field of Search ............ 156/182, 322, 295, 331.7, 156/108, 306.6, 293, 309.6, 309.9, 324.4; 264/272.17, 279.1; 428/67, 901, 76, 916, 138; 235/488; 29/831, 841, 577 C; 40/2.2

[56] **References Cited**

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,274,722 | 9/1966 | Kollar et al. | 156/108 |
| 3,411,981 | 11/1968 | Thomas | 156/309.9 |
| 3,417,497 | 12/1968 | Hannon | 40/2.2 |
| 3,811,977 | 5/1974 | Kramer | 156/108 |
| 4,216,577 | 8/1980 | Badet et al. | 264/272.17 |

*Primary Examiner*—John J. Gallagher
*Attorney, Agent, or Firm*—Andrus, Sceales, Starke & Sawall

[57] **ABSTRACT**

An identification card equipped with an integrated circuit, in which the circuit along with its connection leads is arranged on a carrier element which is embeddedly enclosed by the card on all sides by use of the hot lamination technique. In order to protect the sensitive arrangement, the carrier element is subjected to the full laminating pressure only when one or more layers in the card construction have softened.

This is achieved, for example, by providing buffer zones in the card laminate at least in the area of the arrangement in the form of cavities or layers that are easy to deform elastically. The buffer zones protect the arrangement from local pressure peaks in the initial phase of the laminating process. It is also possible to control the laminating pressure as a function of the temperature or the degree of softening of the card layers.

**12 Claims, 9 Drawing Figures**



U.S. Patent    May 22, 1984    Sheet 1 of 2    4,450,024



FIG.1

FIG.2a

FIG.2b

FIG.3a

FIG.3b

U.S. Patent    May 22, 1984    Sheet 2 of 2    4,450,024



FIG. 4a



FIG. 4b



FIG. 5a



FIG. 5b

4,450,024

**1**

# IDENTIFICATION CARD WITH AN IC-MODULE AND METHOD FOR PRODUCING IT

The invention concerns an identification card or a similar data carrier with an IC module for the process- 5 ing of electrical signals, whereby the IC module along with its connection leads is arranged on a separate car- rier element which is small in comparison to the identifi- cation card. The invention further concerns a method of 10 producing this type of identificatin card.

Identification cards with embedded IC modules have been known for some time. The DE-OS No. 26 59 573, for example, discloses an IC module in which all the connection leads are arranged on a separate carrier 15 plate consisting of rigid material. The carrier plate is glued into an appropriately prepared recess in the card or is connected at the edges with the card by a high-fre- quency welding process. These methods entail only a slight degree of thermal and mechanical stress for the 20 arrangement, but are elaborate in respect to the card production, since several procedural steps, some of which are technically complicated, must be carried out in the production of the identification card. The incor- poration of the carrier element is intended in the case of 25 this known identification card to take place in the so- called embossing area, so that these cards do not meet the usual norms which require the embossing area to be used only for embossings.

The object of the invention thus consists in providing 30 an identification card with an IC module which avoids the above-mentioned disadvantages and can be pro- duced with considerably fewer technical resources.

According to the invention this object is solved through a carrier element laminated into a card compos- 35 ite and connected with the identification card on all sides and over its entire surface. The method of produc- tion is characterized in that during the heating phase of the identification card layers the laminating pressure is kept lower than in the final laminating phase, at least in 40 the area of the carrier element.

The invention uses the hot lamination technique, which has been known for some time and is established in practical operation, in order to apply the carrier element provided with the IC module and the connec- 45 tion leads to the card composite in one procedural step during the melting of the various card layers.

The processing of a separate carrier element pro- duced independently of the identification card produc- tion in order to produce IC identification cards by using 50 the so-called hot lamination technique proves to be particularly advantageous for this purpose.

The carrier element, which also bears all the connec- tion leads in addition to the integrated circuit, is particu- larly suited to resist mechanical stress. This is especially 55 true of the stress to which the identification card is exposed in daily use.

The employment of a laminating technique that has been tried out for some time in practical operation al- lows for the possibility of a rational production of the 60 cards.

Furthermore, hot-laminated identification cards are characterized by an excellent appearance which is due to, among other things, the smooth and highly transpar- ent cover layers of the card. Moreover, hot-laminated 65 identifications cards are very well ensured against forg- ery, as this technique requires a considerable degree of practical experience and the various layers of a hot-

**2**

laminated identification card can be separated from each other only by destroying the card.

Identification cards with integrated circuits, for the production of which cards heat and/or heat and pres- sure are used, are already known (DE-OS No. 22 20 721, DE-OS No. 26 33 164). However, unlike the inven- tion at hand, the identification cards of the publications are based on an entirely different construction of the IC card. The network bonded with the integrated circuit is arranged over a large surface of a middle card layer. In these arrangements the connection points between the network and the IC arrangement are greatly endan- gered during production of the card as well as during its handling.

The prior publications, which mention the identifica- tion card production only in passing, are not oriented towards practical application in respect to the identifi- cation card technology. The production techniques are taken over from the usual identification card produc- tion, without taking into consideration the specific problems arising in the incorporation of IC modules and their connection leads into identification cards.

However, the DE-OS No. 26 59 573 is the first to deal with the practical problems arising in the production and handling of IC identification cards. It refers to the fact that production by means of a hot lamination tech- nique is not possible as the IC arrangement is too greatly endangered especially by the thermal stress. In order to avoid the difficulties that arise from this, an- other much more elaborate and technically impractical manner of card production is therefore adopted. Al- though the arguments raised in the DE-OS No. 26 59 573 against the hot lamination technique were substanti- ated by a number of experiments, it turned out that the production of IC identification cards by the so-called hot lamination technique is nonetheless possible if spe- cial measures are taken to protect the IC module and its connection leads. It also turned out that not only the thermal stress, but also the great mechanical stress dur- ing the laminating process can endanger the IC arrange- ment to the same degree, especially when local pressure peaks appear in the area of the arrangement. This type of stress can break the silicon wafer and/or destroy the junctions of the crystal and the connection leads, which are endangered by the effect of the heat anyway.

The basic idea of the invention consists essentially in applying the full laminating pressure to the carrier ele- ment only after one or more layers of the card compos- ite have been softened. This can take place, for example, by providing buffer zones in the card composite before it is laminated, or in the laminating device, which buffer zones keep the full laminating pressure away from the carrier element during the initial phase. A further possi- bility is to control the laminating pressure as a function of the temperature and/or the degree of softness of the identification card layers. The appearance of local pres- sure peaks is not possible as the operations according to the invention all involve the full laminating pressure being applied over the entire surface of the material that is already softened or is elastically deformable in a cold state and surrounds the carrier element.

In the following, the embodiments of the invention are described in more detail with reference to the at- tached drawings. These show:

FIG. 1—the top view of an identification card with an embedded integrated circuit,

FIGS. 2a, b—the first embodiment of the card con- struction before and after lamination in cross-section,

4,450,024

**3**

FIGS. 3a, b—the second embodiment of the card construction before and after lamination in cross-section,

FIGS. 4a, b—the third embodiment of the card construction before and after lamination in cross-section and

FIGS. 5a, b—the fourth embodiment of the card construction before and after lamination in cross-section.

FIG. 1 shows an identification card 1 with an embedded IC module 5. The IC module itself is placed in a carrier element 6 which has a disk-shaped construction in the embodiment shown. The contact surfaces 7 are provided for contacting.

The carrier element 6 is produced independently of the card production. The construction of the carrier element, the type of materials employed, the arrangement and construction of the contacts can vary greatly depending on the technical resources and the range of application of the elements in the finished identification card.

The identification card shown in FIG. 1 meets the ISO norm in its dimensions and in the arrangement of further functional areas. Accordingly, the magnetic strip 15 is on the reverse side of the card, as also shown in FIGS. 2a, b.

The fields 9 and 10, respectively, are provided for machine-readable and non-machine-readable embossed data.

FIG. 1 shows an advantageous arrangement of the carrier element 6 outside the embossing fields 9 and 10, respectively, in an area of the card subjected to little stress.

The embodiments described in the following show by way of example by what means local pressure peaks can be kept away from the carrier element, although the whole card composite, including the area in which the carrier element is arranged, receives the full laminating pressure at least in the final phase of the laminating process.

It is thus possible to produce identification cards with an integrated circuit with the quality of usual hot-laminated cards without endangering the circuit and its connection leads.

FIGS. 2a and 2b show the first embodiment of the invention before and after the laminating process. The proportions of the various elements of the card are not always shown in correct scale in this and the following embodiments, for the sake of clarity.

The simple card composite shown in cross-section consists of a—possibly many-layered and printed—card core or card bed 11 and the cover films 12 and 13. The card core and the cover films can consist of PVC (polyvinyl chloride). Paper can also be used as a card bed. The card bed is provided with a closely fitted recess to accept the carrier element 6. The thickness of the card bed is chosen relative to the thickness of the carrier element 6 in such a way that a cavity 14 results in the unlaminated card composite between the surface of the carrier element and the cover film 12.

The carrier element is only subjected to little stress in the initial phase of the laminating process due to the buffer zone formed by the cavity 14. In the further course of the laminating process the card composite is gradually heated up so that the PVC-layers soften. In the softening phase of the layers the cavity 14 disappears and the full laminating pressure now also takes effect in the area of the carrier element 6. In this phase

**4**

the softened layers form a cushion which keeps local pressure peaks away from the carrier element.

As shown in the laminated card composite (FIG. 2b), the carrier element 6 is connected with the identification card 1 on all sides and over its entire surface, i.e. it is laminated in. In the process a magnetic strip 15, if required, is embedded in the film material in such a way that a smooth surface also results in the area of the magnetic strip.

The contacts or coupling elements 7 are covered in the embodiment by the film 12. This embodiment is thus suitable for indirect (contactless) contacting (e.g. capacitive or optical). If the energy transfer is to take place optically, the cover film 12 should be constructed so as to be transparent in the area of the coupling elements 7 according to the type of light employed. When IR (infrared) light is employed, the cover film can be blackened in the area of the carrier elements, so that stray light is simultaneously kept away from the IC arrangement.

In principle direct contacting can also be carried out, if, for example, the cover layer 12 is pierced for contacting with appropriate contact elements.

FIGS. 3a and 3b show the second embodiment of the invention, in which one or more buffer zones are formed by intermediate layers in the card composite, for example by a so-called laminating adhesive. For this purpose the cover films 12 and 13 are coated with the laminating adhesive 17 before the laminating process (FIG. 3a).

Adhesive suitable for this purpose (e.g. polyurethane hotmelt adhesive) should be elastic at normal temperature and have a softening temperature below that of the cover layers chosen for the card composite.

In the above-mentioned embodiment the recess of the card core 11 is punched with a diameter larger than that of the carrier element 6. Thus a free gap 18 arises around the carrier element 6, in addition to the cavity 14 shown in FIG. 2a. The recess need not in this case be fitted to the carrier element within such narrow limits as in the arrangement shown in FIG. 2a.

The carrier element is hardly subjected to any stress in the initial phase of the laminating process in the card construction shown in FIG. 3a either. As soon as the laminating temperature reaches the softening temperature of the adhesive 17 and finally surpasses it, the laminating adhesive 17 flows into the cavities 14 and 18 and thus forms a homogeneous casing for the carrier element 6.

The carrier element thus protected from local pressure peaks can now accept the full laminating pressure over its area and transfer it to the surroundings. In the meantime the cover films have also reached the softening temperature so that finally an intimate composite of all layers with each other and with the carrier element which is closed in on all sides, results.

In the complete laminated identification card (FIG. 3b) the carrier element 6 is surrounded by the adhesive 17 which is elastic in a cold state and keeps the mechanical stress arising in the daily use of the card away from the carrier element to a considerable degree.

Polyurethane can be processed not only as a fusion adhesive, but also in the form of a fusion adhesive film in the card composite. If a very soft polyurethane fusion adhesive film (e.g. platilon U02-TM Plate Bonn GmbH) is used in the card composite, it is possible to choose the thickness of the various card layers relatively to the thickness of the carrier element within such limits so as

4,450,024

5

to make the cavity 14 very small or completely disappear, if need be. A very soft fusion adhesive film is able to accept local pressure peaks to a certain degree, even when the card composite is in a cold state. When the film softens the laminating process then proceeds as described above.

FIGS. 4a and 4b show the third embodiment of a card construction according to the invention, in which the buffer zones are formed by using, among other things, compound films.

The arrangement shown in FIG. 4a shows the construction of the card layers before lamination.

The many-layered card core consists of a paper layer 23 and the films 22 and 24 arranged on both sides of this layer. These films consist of the thermoplastic material polyethylene (PE). PE can be varied within broad ranges as far as its mechanical and thermal qualities are concerned depending on its density. PE with low density is, unlike PVC, relatively soft while having great plastic deformability and a low softening point.

In the extended card core a recess is punched depending on the diameter of the carrier element 27, which recess leaves a gap free all around the carrier element. The thickness of the various layers of the card core is chosen relative to the thickness of the carrier element 27 in such a way that a cavity 29 also remains between the carrier element and the cover layers 21 and 22 next to it. The cover layers 20, 21 and 25, 26 consist of polyethylene-coated polyvinyl chloride films which are processed as compound films. The upper cover layer 20, 21 is provided with appropriate recesses 31 to conduct the contacts 30 of the carrier element 27.

In a cold state the carrier element 27 is hardly affected by the pressure of the laminating plate due to the selected layer construction. In the course of the laminating process the PE layers are first subjected to the flow phase so that the cavities 28, 29 are filled up with the PE material. The casing protects the carrier element from local pressure peaks during the high pressure necessary in the final phase of lamination and also provides good protection against mechanical deformation in the daily use of the card.

In the embodiment of an IC identification card shown in FIG. 4b, the contacts of the carrier element 27 are directed to the surface of the cover layer, so that in this case direct contacting is possible.

FIGS. 5a and 5b show a fourth embodiment of the invention, in which only so-called compound films are used to form the buffer zones.

The compound films used in this example as cover layers are polyester films (PETP) 32 and 40, respectively, which are coated with polyethylene (PE) 33 and 39, respectively. The symmetrically adjacent second compound films consist of PE 34, 38 and PVC 35, 37. The card core itself 36 can consist optionally of PVC or paper due to this special card construction.

FIG. 5b shows the identification card after the laminating process, which can proceed as explained in connection with FIGS. 4a, 4b. As mentioned, the cover films of this identification card consist of a special polyester.

PETP (polyethylene glycol terephthalate) is a thermoplastic polyester with very great rigidity, great abrasive resistance, little tendency to contract and a high softening point. These films are thus especially well suited for identification cards that are exposed to great stress in daily use.

6

As the polyester films employed have only little tendency to contract, unlike, for example, PVC films, it is possible to heat the card composite at first without using pressure, until the PE layers go into the flow phase. The card compound softened in this way is then pressed together under pressure. The card layers that have been softened in a heating unit can thus subsequently be pressed together e.g. with the help of two rollers, by the so-called roller lamination technique.

In the above embodiments buffer zones are provided in the layer construction of the card composite to protect the carrier element.

It is, however, also possible to provide the carrier element itself with a buffer zone over its entire surface or only partially—before lamination. Usable materials, their properties and their behavior during the laminating process have been mentioned in connection with the description of FIGS. 3a and 3b. The carrier element could be dipped in an appropriate resin for a casing of its entire surface.

If the carrier element itself consists of rigid material, a partial coating of the element can, for example, be provided by covering the contact side with a fusion adhesive film as a buffer zone.

A further possibility of protecting the carrier element from local pressure peaks during lamination consists in coating the laminating plates with a soft, flexible material at least in the area of the carrier element. Silicon rubber is, for example, appropriate for this purpose.

Finally it is also possible to protect the carrier element against local mechanical stress during incorporation into identification cards, if the laminating pressure is adjusted as a function of the temperature. In this case the contracting tendency of the film type employed must be taken into consideration, as it rises with the temperature.

The laminating pressure will thus be increased as a function of the temperature in such a way that the films involved do not warp, but on the other hand the carrier element is subjected to the full laminating pressure in the final phase of the laminating process, after the card layers have softened. By use of the method of controlling the laminating pressure as a function of the temperature, integrated circuits can be embedded in identification cards undangerously, without any need of additional measures.

On the other hand, it may prove useful for certain cases of application, e.g. the processing of films with a great contracting tendency, to combine the method of controlling the laminating pressure with one or more of the above-mentioned protective measures.

What is claimed is:

1. A method for producing a multi-layer identification card having an IC-module for processing electrical signals, the IC-module with its connection leads being arranged on a separate carrier element that is small relative to the identification card, said method avoiding localized pressures on the carrier element during production of the card and comprising the steps of:
  providing an identification card assembly including an internal layer having a recess for the carrier element and at least one covering layer heat sealable to the internal layer, at least one of said layers being thermally softenable;
  inserting the carrier element in the recess;
  before or after inserting the carrier element in the recess, establishing a buffer proximate to the carrier element for limiting the application of force to

4,450,024

7

the carrier element prior to thermal softening of the card layer; and

applying heat and pressure to the identification card assembly to heat seal the layers together, said buffer limiting the application of force to the carrier element prior to softening of the thermally softenable layer to avoid localized pressure on the carrier element.

2. The method as in claim 1 wherein the step of establishing the buffer is further defined as forming the recess in the internal layer of the identification card assembly to provide spacing between at least one of the layers and the carrier element prior to the softening of the thermally softenable layer.

3. A method as in claim 2 wherein the step of establishing the buffer is further defined as providing an additional card layer intermediate the internal layer and covering layer having a lower thermal softening point than that of the covering layer or internal layer.

4. A method as in claim 2 wherein the step of establishing the buffer is further defined as at least partially encasing the carrier element in a material having a thermal softening point lower than that of the covering layer.

5. A method as in claim 1 wherein the step of establishing the buffer is further defined as providing an

8

elastic means intermediate the carrier element and at least one of the layers to which pressure is applied.

6. A method as in claim 5 wherein the step of establishing the buffer is further defined as at least partially encasing the carrier element in an elastic material.

7. A method as in claim 5 wherein the step of establishing the buffer is further defined as forming the buffer by incorporating an elastic layer in the identification card assembly.

8. A method as in claim 5 further defined as providing an elastic means intermediate the carrier element and layer that has a higher degree of elasticity in the unheated state than the layers of the card assembly.

9. A method as in claim 1 further defined as controlling the temperature of the assembly as a function of the temperature of the assembly.

10. A method as in claim 1 further defined as controlling the pressure applied to the assembly as a function of the amount of softening of the thermally softenable layer.

11. A method as in claim 2 further defined as applying the heat to the identification card assembly and thereafter applying pressure to the assembly.

12. A method as in claim 7 wherein the step of establishing the buffer is further defined as forming the buffer as an elastic coating on one of the layers of the card.

*   *   *   *   *

**EXHIBIT 32**

529bleih

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  -------------------------------------------x

3  LEIGHTON TECHNOLOGIES, LLC,

4        Plaintiff-Counterclaim Defendant,

5
              v.                          04 Civ. 2496(CM)
6
                                          MARKMAN HEARING
7
   OBERTHUR CARD SYSTEMS, S.A.,
8
        Defendant-Counterclaim Plaintiff.
9
   -------------------------------------------x
10
                                          White Plains, N.Y.
11                                        February 9, 2005
                                          10:00 a.m.
12

13 Before:

14              THE HONORABLE COLLEEN McMAHON,

15                                        District Judge

16
                        APPEARANCES
17

18 SUTHERLAND, ASBILL & BRENNAN, LLP
        Attorneys for Plaintiff-Counterclaim Defendant
19 ROBERT A. GUTKIN
   BLAIR M. JACOBS
20 NEIL G. COHEN
   CHRISTINE ONDRICK
21

22 BAKER & McKENZIE
        Attorneys for Defendant-Counterclaim Plaintiff
23 JAMES DAVID JACOBS
   FRANK M. GASPARO
24

25 Also present:  MIREILLE CLAPIER, Oberthur inhouse counsel

529bleih

1   protects, it holds, it serves a protective purpose, and it has

2   structure.  That's what's clear from the dictionary

3   definitions.  That's what's clear from the prior art.  And

4   that's what's clear from the specification when we look through

5   and we confirm everything.  Those points are the key points

6   that it has structure, that it protects, and that it holds.

7        Most of those points aren't disputed, if you look at

8   the proposed construction.

9        THE COURT:  There is nothing there that does any of

10  those things.  That's the point of your patent, that there's

11  nothing that does any of those things.

12       MR. B. JACOBS:  That's exactly right.  We eliminated

13  that and, in eliminating that, came up with something novel and

14  something new.  That is the main reason why the first patent,

15  the '207 patent, issued.  The '024, that's correct.

16       So what we did was we amended the claims in the

17  absence of a nonelectronic carrier.  We took out that

18  protective holder, that disk-shaped holder that was essentially

19  shown in the prior art, and we explained that that's one of the

20  benefits, one of the many benefits of this process, that we're

21  able to --

22       THE COURT:  You put down plastic sheet number one.

23  You put down the electronic element on top of that.  You put

24  plastic sheet number two on top of that.

25       MR. B. JACOBS:  And then do the lamination through the

**EXHIBIT 33 IS BEING FILED UNDER SEAL PURSUANT TO**

**THE PROTECTIVE ORDER ENTERED IN THIS CASE ON AUGUST 20, 2004**

**BECAUSE IT CONTAINS CONFIDENTIAL INFORMATION**