**EXHIBIT A IS BEING FILED UNDER SEAL PURSUANT TO**

**THE PROTECTIVE ORDER ENTERED IN THIS CASE ON AUGUST 20, 2004**

**BECAUSE IT CONTAINS CONFIDENTIAL INFORMATION**

**EXHIBIT B**

```
0644LEIms.txt
                                                                        1
     0644LEIms
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   LEIGHTON TECHNOLOGIES, LLC,
 3
 4                  Plaintiff,
 4
 5           v.                              04 Civ. 2496(CM)
 5
 6   OBERTHUR CARD SYSTEMS, S.A.,
 6
 7                  Defendant.
 7
 8   ------------------------------x
 8                                           White Plains, N.Y.
 9                                           April 4, 2006
 9                                           11:20 a.m.
10
10   Before:
11
11                  THE HONORABLE COLLEEN McMAHON,
12
12                                           District Judge
13
13                          APPEARANCES
14
14
15   SUTHERLAND, ASBILL & BRENNAN
15        Attorneys for Plaintiff
16   ROBERT A. GUTKIN
16   BLAIR M. JACOBS
17
17
18   BAKER & McKENZIE
18        Attorneys for Defendant
19   JAMES DAVID JACOBS
19   FRANK M. GASPARO
20
20   Also Present:  MIREILLE CLAPIER, Oberthur In-house Counsel
21                  JEAN-CLAUDE HUOT, Oberthur In-house Patent
21                                   Patent Counsel
22
23
24
25
                    MARY M. STATEN, CSR, RPR, RMR
                           (914) 390-4027
                                                                        2
     0644LEIms
 1            THE DEPUTY CLERK:  This is 04 2496, Leighton
 2   Technologies versus Oberthur Card Systems, S.A.
 3            Your appearances, please.
 4            MR. J. JACOBS:  Your Honor, James David Jacobs for
 5   Defendant Oberthur.
 6            MR. B. JACOBS:  Your Honor, Blair Jacobs for Plaintiff
 7   Leighton Technologies.  And Robert Gutkin will also be
 8   presenting this morning.
 9            THE COURT:  Okay.  Have a seat.
10            Interesting briefs.
11            Let me get the chart out.
                              Page 1
```

```
                                  0644LEIms.txt
     5      claims -- Claim 18, for example -- the claims that recite
     6      minimal. They could have written into Claim 20 a pressure such
     7      that less than would crack the chip. They didn't do it. This
     8      is a lot of hand-waving, your Honor. There is no limitation,
     9      as this Court held, against pressure during Step (c)(i) in
    10      Claim 20, plain and simple. Any pressure equal to
    11      encapsulation, greater than encapsulation, or no pressure at
    12      all, no limits on pressure in Step (c)(i).
    13              Your Honor, Mr. Gutkin talked about how there was no
    14      testimony about what the card was, what the card was made of,
    15      how you put the card together. I think your Honor picked out
    16      the page in the Oakwood brochure, the Series 6 brochure,
    17      looking at the Smith declaration, which discusses in quite a
    18      bit of detail of what the cards are made of and what they're
    19      used for. And indeed, your Honor, one of the principal uses
    20      today of these kinds of cards, these contactless cards, in
    21      fact, the very use they claim is the commercial success in
    22      their brief, the Leighton claim, is as a credit card.
    23              Your Honor, Leighton's invention, alleged invention, I
    24      should say, was a new lamination cycle. I would submit whether
    25      it had an electronic element, which is the antenna, which is
                      MARY M. STATEN, CSR, RPR, RMR
                             (914) 390-4027
                                                                          38
            0644LEIms
     1      really unsusceptible to pressure, or a chip which is more
     2      susceptible, or a piece of metal, really doesn't make much
     3      difference. But we show here in the Oakwood reference
     4      inductive coils which are specified on the page, if you look
     5      under "machine reading applications" on the page where it says,
     6      "Cards" -- halfway down the first paragraph -- "Cards for
     7      making many applications have already been designed by Oakwood.
     8      Those include application for varying types," and then it goes
     9      on.
    10              THE COURT: And then we go to the next paragraph,
    11      which talks about packaging and the most sophisticated
    12      microchips.
    13              MR. J. JACOBS: Exactly, your Honor.
    14              The fact of the matter is, the cycle that we disclose
    15      here is Claim 20. Now they talk about these other limitations,
    16      minimal pressure. They do have claims going to that, and I'm
    17      prepared to show you why those claims are obvious.
    18              THE COURT: That was Step 2 of this argument.
    19              MR. J. JACOBS: That's Step 2 of the argument.
    20      Exactly, your Honor.
    21              In the meantime, I think to a person of ordinary skill
    22      in the art -- and this Court is in the position to judge, and
    23      you can say a lot of things it's not, but it's not hard to say
    24      what it is. You're looking at the chart. It's not at all hard
    25      to imagine what this is to a lay person. And this is supposed
                      MARY M. STATEN, CSR, RPR, RMR
                             (914) 390-4027
                                                                          39
            0644LEIms
     1      to be a person who is skilled in the art of making plastic
     2      laminated cards.
     3              This brochure, the Oakwood brochure, is distributed to
     4      people who manufacture plastic laminated cards. These aren't
     5      neophytes. To say they don't know how this goes together for a
     6      person who has been making plastic laminated cards for two,
     7      three or four or five years, to even say that proposition makes
     8      no sense. And here they have the cycle. This is Claim 20,
     9      your Honor. May not be Claim 18. May not be the other claims.
                                    Page 18
```

```
                        0644LEIms.txt
10      But this is claim 20 of the '367 patent.
11              Another thing, your Honor, I think, which is implicit
12      in our argument -- and we covered this in our brief -- there is
13      a question of yield. Any manufacturing process, when you do
14      mass manufacturing, has certain bad apples you make. Even with
15      the Leighton process, you're going to have -- the best Oberthur
16      can do with its commercial production is .8 percent waste.
17      When they make 100 cards, about .8 are bad. That's the best
18      they do. Even with a process totally refined, it will be
19      worse.
20              There is no allegation by Leighton here that the
21      process that is shown here in Oakwood would totally fail. Yes,
22      it might crack a few chips, it may crack 90 percent of the
23      chips. I'm not saying it would. I'm saying hypothetically it
24      might. The point is, your Honor, there is no yield limitation
25      in these claims. And the fact that Oakwood has a high waste
                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
                                                                        40
        0644LEIms
 1      factor does not count against the fact that it's anticipatory.
 2              We cite a number of cases in our brief, very strong
 3      cases, on this very point, where the Federal Circuit said that
 4      there is no manufacturing requirement if you teach a process
 5      that can produce a card. It might produce a hundred bad ones,
 6      it's still enabling, it's still good prior art.
 7              Their whole argument is based upon -- to read into
 8      these limitations, the whole argument is based upon a silent
 9      proposition that without doing it, you're going to have a high
10      waste factor. So even the fact that you can't read it in
11      because of the general claim construction, there is no reason
12      to read it in based upon the reasoning of their argument.
13              THE COURT: Okay. Let's go on to obviousness.
14              MR. GUTKIN: May I have a chance to respond to that?
15              THE COURT: One minute.
16              (Pause)
17              MR. GUTKIN: Our argument is not based on waste. It's
18      based on the claim construction. It's got a first, second,
19      third step. There are other claims. We are interpreting the
20      claim that's at issue consistent with the claim construction.
21              The only other point I want to make is that Mr. Jacobs
22      says this is obvious to anybody. We lodged a transcript from a
23      deposition about two weeks ago from Mr. Gruen that was taken in
24      Munich. He is the president of the International Card
25      Manufacturers Association. It was Mr. Jacobs's witness, but we
                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
                                                                        41
        0644LEIms
 1      got an opportunity to cross-examine him. He's been active in
 2      the plastics card industry since 1979.
 3              On Page 68 of his deposition, Mr. Gruen testifies that
 4      there was no fixed technology for manufacturing cards with
 5      electronic elements in them at the time of the invention.
 6      Answer, quote, "Before 1994, there was no fixed technology.
 7      There were a lot of experimental stages. The manufacturers did
 8      not know where they end up, so everything was being tested and
 9      experimented." That's Pages 68 and 69.
10              Again, is it fair? That's prior to '93, the
11      technology for putting in electronics. These cards were
12      changing. It was a process from the early Eighties into the
13      Nineties, over that quite long time.
14              So while Mr. Jacobs may say it's clear, and I may say
                            Page 19
```