UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>OBERTHUR CARD SYSTEMS, S.A. and OBERTHUR CARD SYSTEMS OF AMERICA CORPORATION,<br><br>  Defendants.<br><br>OBERTHUR CARD SYSTEMS, S.A. and OBERTHUR CARD SYSTEMS OF AMERICA CORPORATION,<br><br>  Counterclaim Plaintiffs,<br><br>vs.<br><br>LEIGHTON TECHNOLOGIES LLC, GENERAL PATENT CORPORATION INTERNATIONAL, GENERAL PATENT CORPORATION, and IP HOLDINGS LLC,<br><br>  Counterclaim Defendants. | Case No: 04 CV 02496 (CM) (LMS)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF STANDING**<br><br><br>Hon. Colleen McMahon<br><br>Magistrate Judge Lisa M. Smith |

March 2, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Edward DeFranco (ED-6524)
  Robert C. Juman (RJ-6350)
  Mark D. Baker (MB-0302)
  51 Madison Avenue, 22nd Floor
  New York, New York  10010-1601
  (212) 849-7000

  Kevin P.B. Johnson (KJ-8689)
  555 Twin Dolphin Drive, Suite 560
  Redwood Shores, CA 94065
  (650) 801-5000

*Attorneys for Defendants Oberthur Card Systems, S.A. and Oberthur Card Systems of America Corporation*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................1

II. BASED ON LEIGHTON'S STATEMENT OF FACTS, THERE ARE NO
    MATERIAL FACTS IN DISPUTE ON THIS MOTION ............................................2

    A. Mr. Leighton's Work Prior to Consulting for Motorola ..................................3

    B. The Terms of Mr. Leighton's Engagement By Motorola .................................4

    C. Mr. Leighton's Work While At Motorola .......................................................4

    D. Mr. Leighton's Post-Motorola Activities ........................................................5

III. EACH OF LEIGHTON TECH'S ARGUMENTS OPPOSING SUMMARY
     JUDGMENT FAILS AS A MATTER OF LAW ........................................................6

    A. The Recording Requirement of 35 U.S.C. § 261 Does Not Apply Here
       Because Leighton Tech Is Not a Bona Fide Purchaser ....................................6

    B. Plaintiff Leighton Tech Misperceives the Law of Conception –
       "Disclosure" Is Not Required Under Federal Circuit Law ...............................8

    C. Leighton Tech Does Not Dispute That Mr. Leighton Developed Key
       Features of His Inventions at Motorola, Nor Does Leighton Tech Dispute
       That Mr. Leighton Laminated Cards At Motorola Using the Process Steps
       Set Forth in His Patent Claims .........................................................................9

    D. Motorola Did Not Breach Its Agreement With Mr. Leighton – It Paid All of
       the Agreed-upon Compensation, And It Was Justified When It Refused To
       Pay Him a Bonus ............................................................................................10

IV. CONCLUSION .........................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Brown v. Barbacid*,
    276 F.3d 1327 (Fed. Cir. 2002) ................................................................................9

*Dorr-Oliver, Inc. v. United States*,
    432 F.2d 447 (Ct. Cl. 1970) ...................................................................................11

*FilmTec Corp. v. Allied-Signal Inc.*,
    939 F.2d 1568 (Fed. Cir. 1991) ........................................................................*passim*

*In re Jolley*,
    308 F.3d 1317 (Fed. Cir. 2002) ................................................................................9

*Katz v. Lear Siegler, Inc.*,
    No. 91-1094, 1993 WL 262564 (Fed. Cir. July 12, 1993) .....................................7, 8

*Stern v. Trusteees of Columbia Univ.*,
    434 F.3d 1375 (Fed. Cir. 2006) ................................................................................9

*Taylor Engines, Inc. v. All Steel Engines, Inc.*,
    192 F.2d 171 (9th Cir. 1951) ....................................................................................8

*Thomas v. Tomco Acquisitions, Inc.*,
    776 F. Supp. 431 (E.D. Wis. 1991) .......................................................................7, 8

### **Statutes**

35 U.S.C. § 261 ...........................................................................................................1, 7

Oberthur respectfully submits this Reply Memorandum in further support of its Motion for an Order dismissing this case for lack of subject matter jurisdiction.

## I. INTRODUCTION

Leighton disputes very few of the facts raised by Oberthur, and none of the facts that it does dispute are necessary for this Court to resolve the standing issue. With respect to the facts Leighton Tech disputes, it fails to offer any supporting documentation or other evidence for its assertions, other than the uncorroborated declaration of Mr. Leighton. For the convenience of the Court, Oberthur summarizes below in Section II the many facts Leighton Tech concedes.

Leighton Tech sets forth a collection of legal arguments as to why Motorola is not the rightful owner of the Leighton patents. None address the fundamental question that the undisputed facts beg to be answered: How can it possibly be that Mr. Leighton developed the detailed structural and process limitations in his patent claims when it is undisputed that (i) he first made functioning RFID cards at Motorola, and (ii) he made no other cards – and had no access to any other lamination equipment – after leaving Motorola and before filing his first patent application?

The obvious answer (fully supported by the undisputed factual record) is that while at Motorola, Mr. Leighton conceived of a card structure and manufacturing process, at least portions of which made their way into his patent claims. Mr. Leighton assigned any such rights to Motorola. As a result, Leighton Tech lacks standing, and none of its arguments to the contrary withstands scrutiny. Leighton Tech's arguments are summarized as follows:

**Notice under Section 261.** Leighton Tech is not a bona fide purchaser under 35 U.S.C. § 261 "without notice" of Motorola's rights. Mr. Leighton is a member of Leighton Tech. LLC, and is entitled to almost half of any profits realized from this case. (DeFranco Dec., Ex. 14.) Leighton Tech knew about his work at Motorola and was on notice of Motorola's potential rights.

1

**Requirements for Conception.** Leighton Tech argues that Mr. Leighton could not conceive of any invention at Motorola unless he both developed every claim limitation and then told someone. To the contrary, Federal Circuit law does not require either of those requirements.

**The Motorola Laminator.** Leighton Tech also argues that Mr. Leighton did not conceive any inventions at Motorola because the Motorola laminator was deficient, and could not obtain the settings Mr. Leighton intended to use. As a matter of law, Mr. Leighton's intended use of lamination settings that fall within the scope of his patent claims is sufficient for there to be a conception. *See FilmTec Corp. v. Hydranautics*, 982 F.2d 1546, 1552-53 (Fed. Cir. 1992).

**Motorola's Alleged Breach.** Motorola also did not breach the Confidentiality Agreement when it refused to provide Mr. Leighton with a bonus. Motorola paid Mr. Leighton the agreed-upon consideration for that agreement, and it was justified in refusing to pay him a bonus when he failed to provide the required documentation.

**The Licensing Discussions.** Leighton suggests that Motorola's ownership of the Leighton Patents should be doubted because Motorola never asserted ownership of the patents, and even considered licensing them. Leighton fails to inform the Court of two important and undisputed facts: (1) HID, the company which purchased Motorola's RFID card business, asserts ownership to the Leighton Patents in a suit pending in California; and (2) the licensing discussions between Motorola and Leighton ended once Motorola sold the card business.

## II. BASED ON LEIGHTON'S STATEMENT OF FACTS, THERE ARE NO MATERIAL FACTS IN DISPUTE ON THIS MOTION

Leighton Tech contests few facts, and none necessary for the Court to resolve this motion. Leighton Tech argues that Mr. Leighton did not "conceive" any inventions at Motorola because the consulting agreements were not signed when he "suggested that Motorola scrap their process of using cutouts and gels to laminate the electronics in their cards, and instead place their electronics

2

directly between the plastic sheets." (Leighton Tech Br. 21-22.) Even if true (and there is no evidence demonstrating that it is), this argument misses the mark. Mr. Leighton developed a process to make the Motorola cards after his consultancy began, not during the parties' initial meeting. Because he developed this process while engaged as a consultant, Motorola owns the right to it as a result of the Confidentiality Agreement.

Leighton also disputes the admissibility of the notes by a Motorola employee, Mr. Delbecq, that contain a lamination cycle that falls within the scope of the Leighton Patents. (*Id.* at 22.) As an initial matter, the Court need not consider these notes to resolve this motion, because Mr. Leighton clearly testified regarding the lamination process that he intended to use at Motorola. In any event, these notes are admissible because Mr. Leighton recognized them and said he saw them when he was "trying to come up with a formula for [Motorola's] own purpose." (DeFranco Dec., Ex. 47, 10/10/05 Leighton Tr. at 102:18-103:21.) Mr. Leighton further testified that "it's possible somebody else drew up this flow chart from the information that I give [sic] to them from the deliverables that they were still working on."[1] (*Id.*)

### A.   Mr. Leighton's Work Prior to Consulting for Motorola

Leighton Tech does not dispute any material facts concerning Mr. Leighton's experience with RFID cards prior to consulting for Motorola: (1) Mr. Leighton had never before seen an electronic element laminated in a card; (2) Mr. Leighton had only previously laminated butterfly wings and a thin layer of decorative metallic foil; and (3) the first time Mr. Leighton laminated an RFID card was during his engagement by Motorola. (Leighton Tech's 56.1 Response ¶¶ 10, 14, 15.)

---

[1] Leighton Tech further argues that the lamination settings in Mr. Delbecq's figure would not have worked. (Leighton Tech Br. 22.) That is irrelevant under the proper legal analysis. Moreover, Leighton does not dispute that the lamination cycle is within the scope of the Leighton Patents.

3

### B.     The Terms of Mr. Leighton's Engagement By Motorola

Similarly, the parties also do not dispute any material facts concerning the terms of Mr. Leighton's engagement by Motorola. During the parties' initial meeting they prepared notes regarding the hiring of Mr. Leighton, which they all signed. (*Id.* at ¶ 16.)[2] The parties subsequently corresponded regarding the proposed terms of Mr. Leighton's engagement by Motorola. According to the terms of the March 3, 1995 Purchase Order, Mr. Leighton would be paid $7,500 for four weeks of consulting services, and receive a "$1500 bonus for completed process after 4 weeks which produces > 10K cards prior to the end of 4th week." (*Id.* at ¶¶ 18, 25.) On March 22, 1995, Mr. Leighton agreed to provide Motorola with a list of deliverables, including a "specification," "processes," and "procedures." (*Id.* at ¶¶ 27-28.) Mr. Leighton also assigned to Motorola all inventions that he developed or conceived during his engagement. (*Id.* at ¶ 23.)

### C.     Mr. Leighton's Work While At Motorola

Leighton does not dispute that while at Motorola, Mr. Leighton made cards in which the electronics (a chip and antenna) were positioned directly between two plastic sheets. (*Id.* at ¶ 34.) In fact, during his depositions Mr. Leighton described the three-step process that he tried to use to laminate the Motorola RFID cards (*see* Oberthur's 56.1 Statement ¶ 38):

- First, heat and a pressure would be applied to "just close" the laminator (Ex. 40, Leighton 10/23/06 Dep. Tr. 650:13-651:2, Ex. 41, Leighton 10/23/06 Tr. 679:21-680:24);

- Second, once the plastic was softened, the pressure would be increased to "facilitate encapsulating the electronics," and maintain the heating temperature (Ex. 9, Leighton 10/23/06 Tr. 668:5-670:11); and

---

[2]   Leighton Tech contends that after the initial meeting Mr. Leighton made "no subsequent progress . . . on how [the cards] should be laminated." (Leighton Tech Br. 2.) However, Mr. Leighton never discounted his work at Motorola when he described it to others. Instead, he routinely stated that he "developed" the process to make the Motorola cards. (DeFranco Dec., Ex. 17.)

- Third, the highest pressure was applied during cooling. (Ex. 10, Leighton 10/10/05 Tr. 49:16-25; *see also* Ex. 42, Leighton 10/10/05 Tr. 153:10-154:7; Ex. 43, Leighton 10/23/06 Tr. 598:15-599:6).

Leighton Tech does not dispute that Mr. Leighton testified that he tried to laminate the Motorola cards using these steps. Instead, it tries to discount this testimony by arguing that Mr. Leighton "was unable to accurately control or determine what pressure was on both the hot and cold side of the laminator." (Leighton Tech's 56.1 Response ¶ 38.) However, as discussed *infra*, Mr. Leighton's intended utilization of the lamination steps above is dispositive of the standing issue here, and whether the Motorola laminator could achieve these settings is legally irrelevant.

### D.   Mr. Leighton's Post-Motorola Activities

Some of the post-Motorola events are in dispute, but are not material to resolution of this motion. Motorola paid Mr. Leighton for each of the five weeks of his consultancy. (*Id.* ¶ 46.) In a July 12, 1995 letter, Motorola refused to pay Mr. Leighton a bonus on the grounds that: (1) the process developed by Mr. Leighton resulted in poor yields of card quantities; and (2) Mr. Leighton failed to provide many of the promised "deliverables," such as documentation of the specifications of the process he developed for Motorola. (*Id.* at ¶ 48.) Mr. Leighton never responded. Leighton Tech disputes this, and argues that the parties discussed this issue in subsequent letters. (*Id.* at ¶ 49.) However, the six letters cited by Leighton Tech do not discuss the bonus. Indeed, the earliest correspondence is dated *nineteen months* after the July 12, 1995 letter.[3]

---

[3]   Leighton Tech notes that Motorola did not claim ownership of the Leighton Patents when it corresponded with Mr. Leighton after he left. (Leighton Tech Br. 14.) That is irrelevant. In 2001, Motorola sold its card business to HID. (3/2/07 DeFranco Dec., Exs. 73-74.) Motorola then wrote to Mr. Leighton and explained that it would not need a license. (Leighton Dec., Exs. 17-18.) A lawsuit between HID and Leighton Tech is currently pending in federal court in California, and HID is arguing in that suit that it owns the Leighton Patents. (3/2/07 DeFranco Dec., Ex. 75.)

Instead of responding to Motorola's refusal to give him a bonus, Mr. Leighton wrote two different companies on July 17 and 18, 1995 in which he described the invention for the first time: "I have other plastic card innovations that I would like to share with you because I believe you would be interested. One is a RFID card with a thickness of .032" which I am planning to have patented." (DeFranco Dec., Ex. 61; *see also* Ex. 11.) Although Leighton Tech disputes this fact, it fails to cite any contradictory evidence.

### III. EACH OF LEIGHTON TECH'S ARGUMENTS OPPOSING SUMMARY JUDGMENT FAILS AS A MATTER OF LAW

#### A. The Recording Requirement of 35 U.S.C. § 261 Does Not Apply Here Because Leighton Tech Is Not a Bona Fide Purchaser

Leighton Tech relies on 35 U.S.C. § 261 to assert that "assignment of the Leighton Patents to Leighton cut off any interest that Motorola may have had" because "Motorola did not record any assignment interest in the Leighton Patents with the PTO." (Leighton Tech Br. at 17-18.)

Leighton Tech cannot claim the benefit of § 261 because it had notice of Motorola's rights. On its face, the language of Section 261 makes clear that it is "not intended to vest a 'subsequent purchaser' who had notice of the original assignment with any greater rights to the patent than the original assignee." *Thomas v. Tomco Acquisitions, Inc.*, 776 F. Supp. 431, 435 (E.D. Wis. 1991). In other words, under § 261 an assignment that is not recorded at the Patent Office is only void as against a subsequent purchaser for value who lacked notice about the unrecorded assignment.

The notice requirement of § 261 "is broader than actual notice, and includes constructive and inquiry notice." *Katz v. Lear Siegler, Inc.*, No. 91-1094, 1993 WL 262564, at *4 (Fed. Cir. July 12, 1993). Constructive notice "'may be based on any fact within the knowledge, or means of knowledge, of the purchaser of the unrecorded assignment, and which fact should logically lead him, upon inquiry, to a knowledge of the existence and purport of that assignment itself.'" *Id.* (citation omitted).

6

Leighton Tech had actual notice of Mr. Leighton's activities at Motorola, and his assignment of inventions to Motorola. In 2003 Mr. Leighton and General Patent Corporation ("GPC"), among others, entered into an agreement to enforce the Leighton Patents. (Oberthur Br. 4.) As part of that agreement, they formed Leighton Tech, a limited liability company in which they are members. (*Id.*) Before Mr. Leighton assigned the Leighton Patents to Leighton Tech, he told GPC about his activities at Motorola: "In the course of my discussions with General Patent Corporation, I told them about my experience at Motorola and that I had not invented anything while employed there." (Leighton Dec. ¶ 25.) Thus, at the time Leighton Tech was formed and obtained "title" to the Leighton Patents, GPC (the manager of Leighton Tech) had actual knowledge about Motorola's interest in the Leighton Patents.

Even if it did not have actual knowledge, it cannot be disputed that GPC had constructive knowledge about Motorola's interest in the Leighton Patents. When Mr. Leighton told GPC that he had not invented anything while working at Motorola even though he produced functioning RFID cards, GPC was on notice to investigate the situation further. GPC would have readily learned that (1) the cards Mr. Leighton made at Motorola lacked any protection for the electronic element – a key feature of the Leighton Patents; and (2) Mr. Leighton intended to use the lamination cycle claimed in his patents to make the Motorola cards.

Where, as here, a party such as GPC is experienced in the business of acquisition and enforcement of patents, it is especially appropriate to find that it had constructive knowledge of another's rights in the patents. *Katz*, 1993 WL 262564, at *4 (upholding a finding of constructive notice because, *inter alia*, the alleged bona fide purchaser was "experienced in the business of acquisition and enforcement of patents," and its "purpose in acquiring the patents at issue was to enforce them against purported infringers by litigation or threat of litigation.").

Moreover, Mr. Leighton's knowledge about Motorola's rights should be imputed to Leighton Tech, because Mr. Leighton owns the right to almost half of Leighton Tech's profits. *See Taylor Engines, Inc. v. All Steel Engines, Inc.*, 192 F.2d 171, 174 (9th Cir. 1951) (imputing knowledge to a joint venture because the individuals who formed the venture knew about another party's rights in patents assigned to the venture); *see also Thomas*, 776 F. Supp. at 435-36 (holding that the president of a company, who assigned patent rights previously owned by the company to himself, was not a bona fide purchaser because he knew the patents were owned by another party).

### B. Plaintiff Leighton Tech Misperceives the Law of Conception – "Disclosure" Is Not Required Under Federal Circuit Law

Next, Leighton Tech argues that Mr. Leighton "fully conceived of the claimed invention after his engagement by Motorola," because conception "requires disclosure" and "must encompass all limitations of the claimed invention." (Leighton Tech Br. 20-21.) While at Motorola, Leighton Tech claims that Mr. Leighton "did not form a definite and permanent idea of the completed and operative invention in his mind with respect to all of the limitations," and therefore did not "disclose[] any inventions to Motorola during the period of his engagement." (*Id.* at 21.) This argument fails for at least two reasons.

First, the three cases cited by Leighton Tech in support of its position do not concern the meaning of the term "conception" in an assignment agreement. *See Stern v. Trusteees of Columbia Univ.*, 434 F.3d 1375, 1377-78 (Fed. Cir. 2006) (claim to be added as a co-inventor); *Brown v. Barbacid*, 276 F.3d 1327, 1330 (Fed. Cir. 2002) (interference proceeding); *In re Jolley*, 308 F.3d 1317, 1318 (Fed. Cir. 2002) (interference proceeding). Indeed, many of Leighton Tech's cases involved interference proceedings, in which stringent proof of "conception" is appropriate. For these reasons, the requirements for conception set forth in Leighton's case do not apply here.

8

The proper meaning of the term "conception" in the Confidentiality Agreement is provided by *FilmTec*, 982 F.2d at 1551 (citation omitted): "[c]onception is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention ....'" *FilmTec* addressed the meaning of the term "conception" in an assignment agreement, and the Federal Circuit did not require disclosure to others, or discovery of every single limitation, in order to conceive an invention. Indeed, *FilmTec* specifically distinguished interpretation of a contract from the issues involved in an interference. *Id.* at 1553 n.8.

### C. Leighton Tech Does Not Dispute That Mr. Leighton Developed Key Features of His Inventions at Motorola, Nor Does Leighton Tech Dispute That Mr. Leighton Laminated Cards At Motorola Using the Process Steps Set Forth in His Patent Claims

The Leighton Patents contain limitations directed to card structure and a lamination process for making those cards. As shown in Oberthur's initial brief, the undisputed facts prove that Mr. Leighton developed these key and allegedly novel limitations while at Motorola. The cards he made at Motorola lacked any protection for the electronic element. Moreover, Mr. Leighton tried to laminate those cards using a process that falls within the scope of the process described in the broadest claims in his patents. Leighton Tech does not argue that the structure of the cards Mr. Leighton made at Motorola, or the process to laminate them, are different from the Leighton Patent claims. Instead, it makes several arguments that are not supported by the facts or the law.

First, Leighton Tech argues that the laminator Mr. Leighton used at Motorola was unable to achieve the lamination settings that he intended to use. (Leighton Tech Br. 21.) However, as set forth in Oberthur's initial brief, the intended utilization of those settings is enough to vest title in Motorola as a matter of law. *See FilmTec*, 982 F.2d at 1552-53. Second, whether or not Motorola's employees were willing to admit whether or not Mr. Leighton "invented" anything is irrelevant to whether Mr. Leighton conceived of an invention under the Confidentiality Agreement.

9

Third, Leighton Tech argues that "equitable rights of ownership of strangers to the suit [Motorola] cannot be raised as defenses against the legal titleholder of a patent." (Leighton Tech Br. 16.) This is an incorrect statement of law. The issue of whether Leighton Tech has standing is distinct from the issue of whether Oberthur can assert that title to the Leighton Patents lies in another entity. *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) ("[t]he question of FilmTec's right to maintain the action against Allied should not be confused with the question of whether Allied could defend by arguing that title to the patent was in a third party - the Government - and therefore Allied has a good defense against any infringement suit.") Indeed, the Courts in the cases cited by Leighton Tech actually ruled on the standing issue. *Dorr-Oliver, Inc. v. United States*, 432 F.2d 447, 451 (Ct. Cl. 1970); *FilmTec*, 982 F.2d at 1550-51.

### D. Motorola Did Not Breach Its Agreement With Mr. Leighton – It Paid All of the Agreed-upon Compensation, And It Was Justified When It Refused To Pay Him a Bonus

Leighton Tech does not dispute that (1) courts have held that a bonus is different from compensation (Oberthur Br. 18); (2) Motorola provided Mr. Leighton all the compensation (apart from the bonus) that it promised under the Confidentiality Agreement (Oberthur Br. 18); and (3) Mr. Leighton's bonus was contingent on the delivery of several documented processes which he did not provide. (*See* Leighton Tech Br. 22-23.) As a result, Leighton Tech's argument that Motorola breached the Agreement by not providing a bonus must be rejected.

### IV. CONCLUSION

Oberthur respectfully requests that its motion to dismiss be granted.

DATED:   March 2, 2007                     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

                                           By:   /s/ Edward J. DeFranco
                                                 Edward J. DeFranco (ED-6524)

10

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on this 2nd day of March, 2007.

/s/ Edward J. DeFranco (ED-6524)