**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEIGHTON TECHNOLOGIES LLC,

    Plaintiff,

        vs.

OBERTHUR CARD SYSTEMS, S.A. and
OBERTHUR CARD SYSTEMS OF
AMERICA CORPORATION,

    Defendants.

OBERTHUR CARD SYSTEMS, S.A. and
OBERTHUR CARD SYSTEMS OF
AMERICA CORPORATION,

    Counterclaim Plaintiffs,

        vs.

LEIGHTON TECHNOLOGIES LLC,
GENERAL PATENT CORPORATION
INTERNATIONAL, GENERAL PATENT
CORPORATION, and IP HOLDINGS LLC,

    Counterclaim Defendants.

Case No: 04 CV 02496 (CM) (LMS)

**DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY
JUDGMENT OF
NONINFRINGEMENT**

Hon. Colleen McMahon

Magistrate Judge Lisa M. Smith

QUINN EMANUEL URQUHART OLIVER &
  HEDGES, LLP
  Edward DeFranco (ED-6524)
  Robert C. Juman (RJ-6350)
  Mark D. Baker (MB-0302)
  51 Madison Avenue, 22nd Floor
  New York, New York 10010-1601
  (212) 849-7000

  Kevin P.B. Johnson (KJ-8689)
  555 Twin Dolphin Drive, Suite 560
  Redwood Shores, CA 94065
  (650) 801-5000

  *Attorneys for Defendants Oberthur Card
  Systems, S.A. and Oberthur Card Systems of
  America Corporation*

March 2, 2007

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 2

      A.    If the Court Finds That A Chip and Antenna Are One Electronic Element, Summary Judgment of Non-Infringement Is Appropriate (There Is No Dispute That Oberthur's Cards Contain A Non-Electronic Carrier To Protect the Electronic Element) ................................................................... 2

           1.    Leighton Is Incorrect That the Court Ruled At *Markman* That A Chip and Antenna Cannot Be One Electronic Element .............................. 3

           2.    Even If Leighton Were Correct, the Federal Circuit Encourages Modification of A Claim Construction Whenever Necessary .................... 4

           3.    Leighton's Claim Differentiation Argument Misses the Mark ................. 6

           4.    Leighton Tech Is Wrong In Asserting That On This Motion Oberthur Is Relying On the "Practicing the Prior Art" Defense ............... 7

           5.    Contrary to Leighton Tech's Assertions, the Epoxy or Adhesive in Oberthur's Cards Prevents the Electronic Element from Being Positioned "Directly Between" the Plastic Core Sheets ............................ 8

      B.    Contrary To Leighton's Assertions, There Are No Factual Issues On the Issue of Non-Infringement Under the Doctrine of Equivalents ............................. 9

III.   CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Angelo Mongiello's Children, LLC v. Pizza Hut, Inc.,*
70 F. Supp. 2d 196 (E.D.N.Y. 1999) ................................................................6

*CVI/Beta Ventures, Inc. v. Tura LP,*
112 F.3d 1146 (Fed. Cir. 1997), *cert. denied,* 522 U.S. 1109 (1998).....................4

*Evans Med. Ltd. v. American Cyanamid Co.,*
11 F. Supp. 2d 338 (S.D.N.Y. 1998), *aff'd,* 215 F.3d 1347 (Fed. Cir. 1999)...........7

*Jack Guttman, Inc. v. Kopykake Enters., Inc.,*
302 F.3d 1352 (Fed. Cir. 2002) ....................................................................4

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC,*
445 F.3d 1348 (Fed. Cir 2006) .....................................................................5

*Leighton Techs. v. Oberthur Card Sys., S.A.,*
358 F. Supp. 2d 361 (S.D.N.Y. 2005) ......................................................*passim*

*Phillips Petroleum Co. v. Huntsman Polymers Corp.,*
157 F.3d 866 (Fed. Cir. 1998) ....................................................................10

*Utah Med., Prods., Inc. v. Graphic Controls Corp.,*
350 F.3d 1376 (Fed. Cir. 2003) ....................................................................5

Oberthur respectfully submits this Reply Memorandum in further support of its Motion for Summary Judgment of Non-infringement.

## I.    INTRODUCTION

This motion is unique in that there are no material facts in dispute regarding the structure of Oberthur's RFID cards. Leighton Tech does not dispute that: (1) Oberthur's RFID cards contain a hole; (2) the hole is used to protect the fragile RFID chip during lamination; and (3) a layer of epoxy or adhesive lies in between the electronic element and the core sheets. For example, in its Rule 56.1 Response, Leighton Tech "agrees that in each of the Oberthur cards a hole is cut directly above the chip, and that in the course of lamination that hole protects the chip." (Rule 56.1 Response ¶ 6.) Non-infringement must follow as a matter of law because the Oberthur cards contain the protective non-electronic carrier that the Leighton Patent claims specifically exclude. There must be no protection at all for the patent claims to be infringed. That is not the case here.

In fact, Leighton Tech's opposition brief makes it clear that the principal issue on this motion is not any factual dispute, but whether the Court ruled on claim construction that a chip and antenna must be separate electronic elements. In order to confect an infringement argument, Leighton Tech splits the electronic element in Oberthur's cards into pieces, and then asserts that infringement may be found if any one piece lacks the protection of a non-electronic carrier. That ignores the intrinsic evidence in the record which requires that a chip and antenna combination be one electronic element. It also ignores the specific portions of the Court's Claim Construction Order in which the Court viewed a chip and antenna as one electronic element.

Contrary to Leighton Tech's assertions, the parties did not ask the Court to consider at *Markman* whether a chip and antenna together constitute one electronic element. Instead, the Court

1

considered and rejected Oberthur's assertion that an electronic element *could only be* a chip and antenna combination (and not, for example, an antenna alone). Those are two different issues.

Even if the Court did choose to clarify or amend its claim construction order, the Federal Circuit has ruled that it is appropriate for the Court to do so at any time. Moreover, after the Court issued its *Markman* ruling, the Federal Circuit clarified the law on claim construction, explaining that it is appropriate to consider the structure of an accused device during *Markman*. This Court did not have the benefit at *Markman* of the undisputed facts presented here regarding Oberthur's RFID cards. Those facts further confirm that the chip and antenna are one electronic element.

Leighton Tech's attempt to broaden the patent claims by ignoring the very limitations it was required to add during prosecution to distinguish the prior art should be rejected. The lack of any disputed material facts makes this case a prime candidate for summary judgment.

## II.   ARGUMENT

### A.   If the Court Finds That A Chip and Antenna Are One Electronic Element, Summary Judgment of Non-Infringement Is Appropriate (There Is No Dispute That Oberthur's Cards Contain A Non-Electronic Carrier To Protect the Electronic Element)

Leighton's main argument in its opposition brief is based in law, not fact, and is therefore appropriate to resolve on summary judgment. Leighton Tech asserts the chip and antenna in Oberthur's cards are two electronic elements, and because the non-electronic carrier (the hole) protects only the chip and not the antenna, the claim limitation of the "absence of a non-electronic carrier" is met. Nowhere in its papers, however, does Leighton dispute there is no infringement if the chip and antenna are one electronic element. That is because that structure falls outside of all of Leighton's claims as a matter of law.

2

## 1. Leighton Is Incorrect That the Court Ruled At *Markman* That A Chip and Antenna Cannot Be One Electronic Element

Leighton Tech asserts that "Oberthur asks the Court to change the claim construction of *'electronic element'* so that in all claims the term means the combination of both a chip **_and_** antenna." (Leighton Tech Br. 14) (emphasis in original). That is not correct. Although Oberthur asserted at *Markman* that an electronic element **_can only be_** the combination of a chip and an antenna, on this motion Oberthur takes a different position: that the disclosure of the Leighton Patents makes plain that a chip and antenna, when used together, constitute **_one_** electronic element. That is in keeping with the Court's Claim Construction Order. Leighton's position that Oberthur seeks to change the Court's construction for an "electronic element" is also belied by the fact that it does not even cite that construction in its brief. The Court construed electronic element as:

> [A] device or thing that has (1) distinct characteristics related to electricity; together with (2) terminals at which it may be connected to other distinctly electrical devices or things in order to form a circuit (3) in which electrons move through devices called semiconductors.

*Leighton Techs. v. Oberthur Card Sys., S.A.*, 358 F. Supp. 2d 361, 370 (S.D.N.Y. 2005). The chip and antenna combination in Oberthur's cards certainly falls squarely within the Court's construction.

In arguing that the Court already considered this issue, Leighton cites to several portions of the Court's Claim Construction Order. (Leighton Tech Br. 14-15.) Leighton Tech's citations are incomplete – they ignore portions of the Order confirming that a chip and antenna combination form one electronic element. For example, in describing the patents the Court explained:

> Significantly, there is nothing – no container, no recess and no physical buffer of any sort – that protects **_the embedded electronic element_** during lamination in any of the Patents at issue here – **_whether a microchip and antenna, or just an antenna_**.

*Leighton*, 358 F. Supp. 2d at 369 (emphasis added).

In addition, the Court noted that in the patents, "the preferred embodiment" for an electronic element are "microchips and antennas":

Plaintiff has specifically disclaimed to the court any effort to invoke patent rights in whatever the 'electronic element' might be. However, Plaintiff's use of broad language in the specifications clearly evinces an attempt to include any sort of electronic element that presently can or might in the future be usefully implanted in a smart card – **not just microchips and antennas, which appear to be the preferred embodiment given today's technology**.

*Id.* at 372-73 (emphasis added).

In fact, in its *Markman* brief, Leighton Tech relied upon portions of the patent specification disclosing that an electronic element can be the combination of a chip and antenna:

While the specifications do not expressly define "electronic element," they provide examples consistent with Plaintiff's construction. For example, the '207 Patent states that

[e]lectronic element 20 may take a wide variety of forms and perform a wide variety of functions. . . . [It includes] a micro-chip 22 including a wire antenna 24 connected thereto, a micro-chip 22' and a circuit board antenna 24', a read/write micro-chip 22" and a wire coil antenna 24", or any other suitable electronic.

(*See* Leighton Tech's Claim Construction Brief, p. 15 (11/10/04), DKT 28, emphasis added).

Leighton also notes that it is not asserting in this case the dependent claims that are directed to define one type of electronic element as a chip and antenna. But as Leighton Tech stated in its claim construction brief: "A claim term used in multiple claims must be construed consistently throughout such claims. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997)." (*Id.* at 12) (citations omitted). Moreover, Leighton's argument highlights that it most likely did not assert these claims because it wanted to avoid the language of the dependent claims at all costs.

## 2. Even If Leighton Were Correct, the Federal Circuit Encourages Modification of A Claim Construction Whenever Necessary

The Court's construction of "electronic element" is consistent with Oberthur's position. However, to any extent the Court may find it necessary to clarify or amend its claim construction, it is entirely proper for it to do so. As the Federal Circuit explained in *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002):

4

> District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves. *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221, 37 USPQ2d 1529, 1532 (Fed. Cir. 1996). This is particularly true where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear from the intrinsic evidence.

*See also Utah Med. Prods., Inc. v. Graphic Controls*, 350 F.3d 1376, 1381-82 (Fed. Cir. 2003).

The Federal Circuit has recently issued several decisions clarifying the claim construction process, including several in which it made plain that it is entirely appropriate to consider the structure of the accused products when construing claims. *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006) ("Without knowledge of the accused products, this court cannot assess the accuracy of the infringement judgment under review and lacks a proper context for an accurate claim construction.") This Court did not have at *Markman* the full record on the structure of Oberthur's RFID cards, as it does now in view of all of the undisputed facts. Those facts support Oberthur's interpretation of the Court's construction for "electronic element."

Leighton's expert proposes his own amendment to the Court's construction. Dr. Everett contends that a chip and antenna do not constitute a single electronic element if they had "separate and independent existences before they are joined together to form a circuit." (Everett Dec. ¶ 14.) That proposed construction fails because it is not required by the claim language or the specification.

Furthermore, Dr. Everett contradicts himself when he states that he might consider "chips with integrated antennas" as a single electronic element. (*Id.*) How can a chip with an integrated antenna be an "electronic element" under the Court's claim construction, while the chip and antenna combination depicted in the patent specification and explicitly described as "an electronic element" not be? That litigation-inspired distinction simply does not hold up.

### 3.    Leighton's Claim Differentiation Argument Misses the Mark

Leighton Tech also makes a claim differentiation argument in which it asserts that because certain dependent claims "specifically require the absence of all appreciable cutouts," Oberthur is improperly trying to read limitations "from dependent claims into the broader independent claims." (Leighton Tech Br. 12-13.)    Leighton is wrong.    There is no violation of the rule of claim differentiation because the independent and dependent claims are of different scope – the independent claims exclude any form of non-electronic carrier and are thus broader than the dependent claims. Moreover, the issue of whether the chip and antenna together form one electronic element has nothing to do with claim differentiation. It is a matter of claim construction. The Court expressly addressed this issue in its Claim Construction Order:

> [D]ependent claims 13 and 14 of the '207 patent narrow the scope of the term 'electronic element' as it appears in independent claim 1 by specifying that the 'electronic element' must be a 'micro-chip and an associated wire antenna' (claim 13) or 'a micro-chip and an associated circuit board antenna' (claim 14). *Defining 'electronic element' to mean only a 'micro-chip and an antenna' would improperly impose the limitations of dependent claims 13 and 14 onto independent claim 1.*

*Leighton*, 358 F. Supp. 2d at 373 (emphasis added).

The dependent claims at issue contain the limitation that the "core layers are devoid of any appreciable cutouts." (Leighton Tech Br. 13 n.5.)    As is typical in patent claims, these dependent claims set forth one example (a cutout) of a more broadly worded limitation of the independent claims (the "non-electronic carrier").    Because the electronic element in Oberthur's cards is protected by a non-electronic carrier, the cards do not infringe the independent or dependent claims.

In fact, it is proper to consider the dependent claims to assist in resolving the issue here regarding the proper interpretation of the construction of terms in the independent claims.    *See Angelo Mongiello's Children, LLC v. Pizza Hut, Inc.*, 70 F. Supp. 2d 196, 205 (E.D.N.Y. 1999) ("[t]he interpretation of a disputed claim term requires reference to other claims, and, unless there is

'a clear indication to the contrary' a term must be interpreted consistently in all claims") (citation omitted). There can be no dispute that the dependent patent claims themselves treat a chip and antenna combination as a single electronic element:  dependent claims 13-15 cover processes "wherein said at least one electronic element" is a "chip" in combination with either "an associated wire antenna" (claim 13), a "circuit board antenna" (claim 14), or simply "an associated antenna" (claim 15). Thus, to follow the rule that claim terms must be construed consistently, a chip and antenna must be one electronic element.

Leighton Tech also relies on the fact that the independent claims use the common patent language of "at least one" to modify the term "electronic element." (Leighton Tech Br. 13.) That is irrelevant.  As Oberthur has noted, "hybrid cards" have two separate chips and two electronic elements that are not connected. (Oberthur Br. 16.) Leighton Tech does not dispute that fact.

### 4. Leighton Tech Is Wrong In Asserting That On This Motion Oberthur Is Relying On The "Practicing the Prior Art" Defense

Oberthur presented prior art in which the electronic element was the combination of a chip and antenna in which only the chip was protected by a non-electronic carrier.  Leighton Tech contends that Oberthur's reference to the prior art is an improper attempt to rely upon practicing the prior art as a defense. (Leighton Tech Br. 17.) That is not why Oberthur cited to the prior art. The Federal Circuit has confirmed that the prior art may be considered on claim construction, particularly to preserve the validity of a patent. *Evans Med. Ltd. v. American Cyanamid Co.*, 11 F. Supp. 2d 338, 352 (S.D.N.Y. 1998), *aff'd*, 215 F.3d 1347 (Fed. Cir. 1999) (unpublished).[1]

The prior art shows that it is not necessary to protect the antenna when the only electronic element present in the card is a chip and antenna.  It also confirms the Court's conclusion that the

---

[1]    Also, Dr. Everett's prior art analysis is flawed for at least the reason that the antennas in the references are unprotected and are placed directly between core sheets. (*See* Everett Dec. ¶ 20.)

*absence of any* non-electronic carrier "is the critical improvement of [the Leighton ] patents over [the] prior art . . . which required protection for the electronic element during lamination." *Leighton*, 358 F. Supp. 2d at 369. Thus, the prior art further confirms that it is improper for Leighton Tech to split the electronic element into pieces in order to assert infringement.

Leighton Tech's argument that the patents have no yield requirement misses the point. (Leighton Tech Br. 17.) Oberthur's experiments confirm that the electronics were damaged 86% and 74% of the time when no hole was present for protection. (Oberthur Br. 18.) The tests show that the hole is without question a non-electronic carrier that protects the chip – a fact Leighton Tech did not squarely admit in this case until it filed its opposition brief.[2]

> ### 5.    Contrary to Leighton Tech's Assertions, the Epoxy or Adhesive in Oberthur's Cards Prevents the Electronic Element from Being Positioned "Directly Between" the Plastic Core Sheets

Leighton Tech does not dispute that Oberthur's cards contain a layer of epoxy or adhesive between the electronic element and the plastic core sheets. Leighton Tech also does not dispute that the layer serves a distinct purpose (adhesion of the layers) – it is not added merely to avoid infringement. Instead, Leighton Tech asserts that "directly" is used in the Leighton patents in conjunction with "the absence of a non-electronic carrier, be it a protective disk, cavity, air pocket, or a buffer." (Leighton Tech Br. 19.) In other words, to Leighton Tech, because there is no protective function served by the layer, the claim requirement that the "electronic element" be positioned "directly between" the plastic core sheets can be ignored.

This argument ignores the plain language of the claims as well as the Court's claim construction ruling. The claims explicitly and unequivocally set forth the "directly between"

---

[2]    Leighton Tech also argues that the embedding of Oberthur's antenna "does not create a non-electronic carrier." (Leighton Tech Br. 18.) But Leighton Tech fails to refute Dr. Kazmer's assertion that embedding protects the antenna during lamination. (Kazmer Dec. ¶ 41).

requirement. That limitation must be present or there can be no infringement. Moreover, the Court construed "directly between said first and second plastic core sheets" to mean "in immediate physical contact." *Leighton*, 358 F. Supp. 2d at 377. The construction did not further require that the presence of the "directly between" limitation in an accused device turn on whether the layer or structure which prevents "immediate physical contact" also protects the electronic element.

And once again, Leighton Tech ignores the Court's Claim Construction Order. In commenting on its construction for the claim term "directly," the Court made crystal clear that *"nothing"* is between the "electronic element" and the plastic cover sheet:

> Defendant urges additional language, however, defining "directly" to mean that "there is nothing between the 'electronic element' and the first plastic core sheet and nothing between the 'electronic element' and the second plastic core sheet." (Def. Br. at 25.) That just says the same thing in more words that add nothing to the definition. I therefore elect to go with Plaintiff's sparser and more elegant version.

*Id.* at 377. Moreover, some of the patent claims contain a limitation that the outer surfaces of the plastic core sheets be "coated with a layer of ink." (*See* Johnson Dec., Ex. 1 ('207 patent, claim 1)). Leighton has not disputed that the accused cards must contain this layer for there to be infringement. It is inconsistent for Leighton Tech to assert that the Court should ignore the presence of an epoxy layer in Oberthur's products to avoid summary judgment of non-infringement, while admitting that an even thinner layer of ink must be present for there to be infringement. If the invention did not require the "directly between" limitation, that limitation should not have been included in the claims. But it was included, and it must be met for there to be infringement.

### B. Contrary To Leighton's Assertions, There Are No Factual Issues On the Issue of Non-Infringement Under the Doctrine of Equivalents

With respect to the doctrine of equivalents, rather than dispute that its positions violate the claim vitiation and prosecution history estoppel doctrines, Leighton Tech instead cites to the declaration of its technical expert, Dr. David Everett, to explain why the structure of Oberthur's

cards satisfy the "function, way, result" test. (Everett Dec. ¶¶ 24-31.) Leighton Tech ignores that these are legal limitations on the doctrine of equivalents precluding any application of equivalents.

Moreover, Dr. Everett does not raise any material issues of fact regarding the doctrine of equivalents. In paragraphs 24-27, Dr. Everett merely sets forth his understanding of the law and of the positions set forth in Oberthur's brief. In paragraph 28, Dr. Everett repeats his opinion that the chip and antenna are not a single electronic element. In paragraph 29, Dr. Everett asserts – without any explanation, supporting documentation, or tests of any kind – that embedding the antenna in a core sheet is an "insubstantial difference" from putting the antenna directly between two core sheets. Such conclusory statements by an expert are insufficient to defeat summary judgment. *See Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998).

In paragraph 30, Dr. Everett discusses the bridge between the antenna and the microchip, but he does not explain how in his opinion the structure of the bridge and antenna are different. In paragraph 31, Dr. Everett contends that the epoxy and adhesive layers in Oberthur's cards are insubstantially different from placing the electronic element "directly between said first and second plastic core sheets" because they provide "no protection." The Court construed the term "directly" to mean "[i]n immediate physical contact." A lack of "immediate physical contact" is the opposite of the claim limitation. Lack of a non-electronic carrier is an additional claim requirement.

## III.  CONCLUSION

Oberthur respectfully requests that the Court grant summary judgment of non-infringement.

Dated: March 2, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES

By:   /s/ Kevin P.B. Johnson
      Kevin P.B. Johnson (KJ-8689)

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on this 2nd day of March, 2007.


/s/ Edward J. DeFranco (ED-6524)