UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

LEIGHTON TECHNOLOGIES LLC,

      Plaintiff,

-against-   04 Civ. 2496 (CM)

OBERTHUR CARD SYSTEMS, S.A., et al.,

      Defendants.

---------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/8/08

### DECISION AND ORDER ON DEFENDANT'S 12(B)(1) MOTION AND SEVERING AND SETTING TRIAL ON THE ISSUE OF OWNERSHIP

McMahon, J.:

The plaintiff, Leighton Technologies LLC ("Leighton Tech") brings this action alleging that defendants Oberthur Card Systems, S.A. and Oberthur Card Systems of America Corporation (collectively "Oberthur") have infringed a series of patents describing a hot lamination process for manufacturing contactless "smart cards." Before the Court is defendant Oberthur's motion to dismiss the complaint for lack of standing.[1] Oberthur argues that plaintiff Leighton Tech did not have legal title to the patents-in-suit[2] at the time of the alleged infringement. Keith Leighton, the sole named inventor on the patents, had signed a

---

[1] Familiarity with the facts set forth in the Court's Markman decision. Leighton Techs., LLC v. Oberthur Card Sys., S.A., 358 F. Supp. 2d 361 (2005) is presumed.

[2] Pursuant to the Stipulation and Order dated July 25, 2006, Leighton Tech agreed to dismiss, without prejudice, claims for infringement of two of the four patents it originally sued on in this case. The two remaining patents-in-suit are U.S. Patent Nos. 5,817,207 (the '207 patent) and 6,214,155 (the '155 patent) (collectively, the "Leighton Patents.")

Confidentiality Agreement with a third-party--Motorola--in 1995, pursuant to which Mr. Leighton assigned to his employer the entire right, title and interest in "all inventions, innovations and ideas developed or conceived ... during the entire period of [his] engagement with Motorola." Oberthur contends that the inventions that are the subject of the patents-in-suit were developed or conceived by Mr. Leighton during his engagement with Motorola, and so are now owned by the successor-in-interest to Motorola's radio frequency identification ("RFID") access control business, HID Corp. ("HID"). As a result, Oberthur argues, Mr. Leighton had no rights in the patents to assign to plaintiff, Leighton Tech, and the plaintiff has no rights to vindicate in this lawsuit.

Because resolution of the motion required further fact-finding, the Court held an evidentiary hearing on November 5 and 6, 2007 to determine whether Mr. Leighton conceived of his invention while employed as a consultant to Motorola Corporation – which, if true, would mean that Motorola, not Leighton, owned the invention – or afterward.

However, the evidence adduced both in the parties written submissions and at the standing hearing raised a more fundamental issue: whether Mr. Leighton invented the patented process at all. Obviously, if he did not invent the patented process, he cannot hold a patent on the invention and he has no action for infringement. And if he was only one of several persons who invented the patented process, he cannot hold a patent on the process in his own name only. The parties did not brief this issue until the Court, after reflecting on the evidence and trying (and failing) to answer the question as it was originally put, asked for input in the form of letter briefs on the point.

Defendant Oberthur submitted a nine-page letter brief, arguing that the Court can and

should dismiss this case on any one of the four different bases:

1. If Mr. Leighton is not an inventor then he owned no patent rights that he could assign to Leighton Tech. Leighton Tech therefore lacks standing.

2. If Motorola employees conceived of the invention claimed in the patents, either alone or together with Mr. Leighton, then the Court can correct inventorship under 35 U.S.C. § 256 by adding their names to the patents. This would defeat standing because all patent owners would not be joined as plaintiff (for the Court's convenience, Oberthur sets forth at the end of this letter examples of record evidence supporting a finding that Motorola employees, not Mr. Leighton, conceived of the patented inventions).

3. Any contribution Mr. Leighton made to the patents is, at best, product development work performed at Motorola. Mr. Leighton assigned all such development rights to Motorola, and retained nothing to assign all such development rights to Motorola, and retained nothing to assign to Leighton Tech. This alternative would not require the Court to correct inventorship, and standing would still be lacking because Leighton Tech. would have no rights whatsoever.

4. A patent is invalid under 35 U.S.C. § 102(f) if the inventor "did not himself invent the subject matter sought to be patented." The patents in suit incorrectly name Mr. Leighton as the inventor, and as a result, the Court should grant summary judgment of invalidity.

Plaintiff Leighton Technologies LLC submitted a nineteen-page letter brief, arguing that because the evidence for standing implicates the merits (e.g., challenges to validity under 35 U.S.C. §§ 102, 103), the Court could not decide the standing issue at this time. Moreover, plaintiff argued that the issue of inventorship goes to the patent's validity, which creates questions of fact that cannot be resolved by the Court. Finally, plaintiff argued that, if the Court were to consider the validity issue, the alleged "corroborating" evidence offered at the standing hearing does not corroborate the claim that Motorola had already made cards using the process at issue.

The immediate question is whether this Court should decide the standing motion at this

Case 1:04-cv-02496-CM   Document 178   Filed 01/08/2008   Page 4 of 9

juncture. The answer is no.

### A.  *The jurisdictional issue must be left for trial*

Although the pending 12(b)(1) motion concerned the timing of inventorship, the testimony at the standing hearing raised the merits-based issue of whether Mr. Leighton invented the patented process at all.

In order to sue for patent infringement, "the plaintiff must have held legal title to the patent during the time of infringement." Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579 (Fed.Cir. 1991) (citing Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 40-41 (1923)); accord TM Patents, L.P. v. Int'l Bus. Mach. Corp., 121 F. Supp. 2d 349, 358 (S.D.N.Y. 2000) ("[P]atent ownership is a prerequisite for application of the infringement statute, and also confers standing."); RAD Data Commc'ns, Inc. v. Patton Elecs. Co., 882 F. Supp. 351, 353 (S.D.N.Y. 1995). "The issuance of a patent by the PTO is prima facie proof of the patentee's legal title." Acrotel, Ltd. v. IDT Corp., 486 F. Supp. 2d 277, 281 (S.D.N.Y. 2007); see also Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir.1993); Arachnid, 939 F.2d at 1578 n. 2 ("The entity to whom the grant of a patent is made by the PTO [or that entity's successor in title] holds the 'legal title' to the patent.").

Mr. Leighton has a patent issued by the PTO, which he assigned to Leighton Technologies. This is prima facie evidence that he is the inventor. But that is all the patent is. If the evidence reveals that Mr. Leighton was not the inventor of the patented process, then he was not entitled to an issuance of a patent on the invention. Even if he was one of several inventors, a patent issued only to him would be invalid and so Leighton Tech would suffer no injury in fact as

a result of any alleged infringement. The patent could be saved only by correcting inventorship as listed on the patent; otherwise, it must be invalidated.

Because Oberthur has not filed a motion for summary judgment based on patent invalidity on the ground of inventorship (choosing instead to file an invalidity motion challenging the patent only as anticipated by prior art), the Court is in the unique situation of confronting inventorship – a merits-based defense – in the standing context.[3]

"[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction ... before deciding a case on the merits." Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir.2006) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)). This directive, however, "does not inevitably mean that a district court must make a definitive ruling on Article III standing before giving *any* consideration to the merits." Id. at 87. "Where an issue of standing is so closely related to, if not inextricably entwined with, an issue on the merits, district courts have some "leeway as to the procedure it wishes to follow." Id. at 87-88. However, if the "overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court *must* leave the jurisdictional issue for the trial." Id. (emphasis added).[4]

---

[3] Ordinarily, the question of inventorship is raised as a ground for challenging a patent's validity, see, e.g., Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 978 (Fed. Cir.1997), or a claim for correction of ownership, see, e.g., Moor v. Honeywell, 2006 WL 680987 (D.N.J. March 15, 2006).

[4] Defendant argues that Alliance is inapposite because it involved a question of statutory standing, not constitutional standing. However, the language quoted is contained in a paragraph discussing the procedure for determining Article III standing, not statutory standing.

Because Mr. Leighton has a patent issued by the PTO, defendants must, to successfully challenge plaintiff's standing, rebut plaintiff's prima facie showing. See Astra Aktiebolag v. Andrx Pharms., Inc., 222 F. Supp. 2d 423, 514 n.50 (S.D.N.Y. 2002). Virtually the same evidence would be submitted on inventorship and standing. Thus, the inventorship/validity and jurisdictional questions (as framed by the Court) are so intertwined on the merits (indeed the question of inventorship is dispositive of this standing motion) that the Court must leave the jurisdictional issue for trial.

A line of cases concerning factual attacks on subject matter jurisdiction lends further support for the Court's position.[5] Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: facial attacks, which challenge the sufficiency of the allegations, and factual attacks, which challenge the existence of the subject matter jurisdiction in fact, irrespective of the pleadings. Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002); see also Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Clearly, the court has subject matter jurisdiction over an action for patent infringement. Thus, the attack in this case is factual.

"[W]here the relevant facts are dispositive of both the 12(b)(1) motion and portions of the merits, the trial court should grant the motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007); Lawrence, 919 F.2d at 1529-30; Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987); Richmond,

---

[5] Indeed, Alliance relied, in part, on this line of cases. See Alliance, 436 F.3d at 87-88.

Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991). "If the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the factfinder can determine the facts, and the jurisdictional dispute will be reevaluated at that point." Torres-Negron, 504 F.3d at 163.

Inventorship, as discussed below, concerns a factual determination of what a person's contribution was, and whether it was a significant contribution. At the very least, there are conflicting factual inferences that could be drawn from the facts before the Court about whether Mr. Leighton was the true inventor. Thus, the case should proceed to trial so that the factfinder, not the Court, can determine the facts. See Lawrence, 919 F.2d at 1530.

## B. *The Court will not convert Oberthur's 12(b)(1) motion into a motion for summary judgment*

Inventorship is a question of law that relies on underlying findings of fact, which are reviewed by appellate courts for clear error. Seawall v. Walters, 21 F.3d 411, 415 (Fed. Cir. 1994); see also Hess, 106 F.3d at 980; Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1376 (Fed. Cir. 2004); Moor, 2006 WL 680987, at *2 (" In *Caterpillar,* the Federal Circuit found that the determination of what a person's contribution was, and whether it was a significant contribution, were findings of fact; it was only the ultimate legal conclusion, as to the naming of inventors on the patent, that was a matter of law.") A district court should not grant summary judgment on inventorship where there are genuine issues of material fact. See Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 412 F.3d 1331, 1337 (Fed. Cir. 2005).

I am not inclined to follow Oberthur's suggestion that I convert its 12(b)(1) motion into a

motion for summary judgment. I agree that document production is complete, Mr. Leighton was deposed for three days and then testified before the Court, and Motorola witnesses testified at deposition and before the Court. I cannot imagine a fuller factual record. But for that very reason, Oberthur could have moved for summary judgment on this issue last summer if it felt there were no disputed issues of fact. It chose not to do so, bringing instead a convoluted standing motion that (as it well knew) raised merits-based issues. As a result, the issue of inventorship (as opposed to the timing of conception) has not been fully briefed.[6] I therefore will not convert the standing motion to a motion for summary judgment.

Furthermore, I am not inclined to give Oberthur leave to supplement its motion for summary judgment on the ground of invalidity (which I have already denied) to permit Oberthur to raise this new argument in the proper context. However, there is substantial evidence (some might even call it overwhelming evidence) that Kenneth Leighton did not conceive of the invention as the invention has been construed by the court in the Markman hearing. Because resolution of that issue would dispose of the case without the need for consideration of the pending motion for summary judgment on the ground of non-infringement or for a long trial on some of the technical issues relating to prior art and obviousness — I would rather sever it and schedule a separate (and prompt) trial on the issue of inventorship, obtain the necessary findings of fact from a jury, and either invalidate the patent on the ground that Leighton is not the (sole)

---

[6] As this Court noted in its July 11, 2007 decision, the submission of affidavits in connection with a motion under Rule 12(b)(1) does not convert it to a motion for summary judgment under Rule 56. Defendant's motion is a jurisdictional challenge under Rule 12(b)(1), and nothing more. Defendants previously submitted a motion for summary judgment seeking to invalidate the patent, but this motion was based on anticipation and obviousness, and was denied by the Court.

inventor or reach the conclusion that he is the inventor – which would then allow this court to decide precisely when he conceived of his invention (thus resolving the issue of standing as it was originally presented to me). See Fed. R. Civ. P. 42(b). Only then would we have to consider the remaining issues.

Finally, the Court will not correct the ownership of the patent, as suggested by Oberthur. First, as discussed earlier, the issue of ownership has to be decided by a jury. If Mr. Leighton did not conceive of the process at all, then he is not the inventor and the patents issued in his name are invalid. If he is not an inventor, then this case must be dismissed because Leighton Tech. cannot prosecute it.

Additionally, HID is not a party here, and tackling the issue of its ownership would unnecessarily complicate the case before me. I previously suggested that the issue of ownership ought to be decided in California, where HID has raised it in another infringement action brought by Leighton. However, the judge in California is apparently deferring to this court (or, at least, has stayed the action before her pending a ruling on the standing motion that was originally presented to this court). I will, therefore, get the issue of inventorship decided – at least to the point of deciding whether Leighton or someone else conceived of the invention.

Dated: January 8, 2008

_____

U.S.D.J.

BY ECF TO ALL COUNSEL