UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEIGHTON TECHNOLOGIES LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>OBERTHUR CARD SYSTEMS, S.A. and OBERTHUR CARD SYSTEMS OF AMERICA CORPORATION,<br><br>  Defendants. | Case No: 04 CV 02496 (CM) (LMS)<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER** |
| OBERTHUR CARD SYSTEMS, S.A. and OBERTHUR CARD SYSTEMS OF AMERICA CORPORATION,<br><br>  Counterclaim Plaintiffs,<br><br>vs.<br><br>LEIGHTON TECHNOLOGIES LLC, GENERAL PATENT CORPORATION INTERNATIONAL, GENERAL PATENT CORPORATION, and IP HOLDINGS LLC,<br><br>  Counterclaim Defendants. | Hon. Colleen McMahon<br><br>Magistrate Judge Lisa M. Smith |

April 16, 2008

QUINN EMANUEL URQUHART OLIVER &
  HEDGES, LLP
  Edward DeFranco (ED-6524)
  Robert C. Juman (RJ-6350)
  Mark D. Baker (MB-0302)
  51 Madison Avenue, 22nd Floor
  New York, New York  10010-1601
  (212) 849-7000

  Kevin P.B. Johnson (KJ-8689)
  555 Twin Dolphin Drive, Suite 560
  Redwood Shores, CA 94065
  (650) 801-5000

  *Attorneys for Defendants Oberthur Card Systems, S.A. and Oberthur Card Systems of America Corporation*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT .......................................................................................................................... 2

    A. Applicable Law ........................................................................................................... 2

    B. Leighton's Laches Defense Is Futile Because Laches Is a Personal Defense That Cannot Be Asserted Against an Unrelated Third Party Such As Oberthur ........................................................................................................................ 3

    C. Leighton's Undue Delay and the Resulting Prejudice To Oberthur Also Warrant Denial of Its Motion .................................................................................... 8

III. CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*A.C. Aukerman Co. v. R.I. Chaides Constr. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992) .................................................................................. 3

*Advanced Cardiovascular Sys. v. Scimed Life Sys., Inc.*,
    988 F.2d 1157 (Fed. Cir. 1993) ............................................................................. 3, 4, 6

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F.3d 566 (2d Cir. 2005) ....................................................................................... 3

*Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*,
    456 F. Supp. 2d 267 (D. Mass. 2006) ....................................................................... 5

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993) ....................................................................................... 8

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
    56 F.3d 359 (2d Cir. 1995) ..................................................................................... 5, 6

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003) ....................................................................................... 3

*Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*,
    512 F. Supp. 2d 1169 (W.D. Wis. 2007) ................................................................... 5

*Five Star Manuf., Inc. v. Ramp Lite Manuf., Inc.*,
    44 F. Supp. 2d 1149 (D. Kan. 1999) ......................................................................... 4

*Gillons v. Shell Oil Co.*,
    86 F.2d 600 (9th Cir. 1936) ....................................................................................... 4

*Gorman v. Consol. Edison Corp.*,
    488 F.3d 586 (2d Cir. 2007) ....................................................................................... 3

*Greater Miami Baseball Club Ltd. Partnership v. Selig*,
    171 F.R.D. 73 (S.D.N.Y. 1997) ............................................................................. 5, 6

*Imatec, Ltd. v. Apple Computer, Inc.*,
    81 F. Supp. 2d 471 (S.D.N.Y. 2000) ...................................................................... 6, 7

*Israel Bio-Engineering Project v. Amgen Inc.*,
    401 F.3d 1299 (Fed. Cir. 2005) .................................................................................. 4

*Jin v. Metropolitan Life Ins. Co.*,
    310 F.3d 84 (2d Cir. 2002) ......................................................................................... 8

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*,
    22 F.3d 458 (2d Cir. 1994) ......................................................................................... 3

*Krumme v. Westpoint Stevens, Inc.*,
    143 F.3d 71 (2d Cir. 1998) .......................................................................................... 8

*Monsanto Co. v. Bayer Bioscience N.V.*,
    2005 WL 5989796 (E.D. Mo. Oct. 28, 2005) ............................................................. 5

*Pannu v. Iolab Corp.*,
    96 F. Supp. 2d 1359 (S.D. Fla. 2000) .......................................................................... 7

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ......................................................................................... 3

*R2 Med. Sys., Inc. v. Katecho, Inc.*,
    931 F. Supp. 1397 (N.D. Ill. 1996) ............................................................................... 4

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ......................................................................................... 8

## **STATUTES**

Fed. R. Civ. P. 15 .................................................................................................................. 2

## **OTHER AUTHORITIES**

ROBERT A. MATTHEWS, JR., ANNOTATED PATENT DIGEST § 26:127 (2008) .................................. 5

Oberthur respectfully submits this Memorandum in opposition to Leighton's Motion for Leave to File an Amended Answer to Oberthur's Counterclaims.

## I.   INTRODUCTION

A motion to amend a pleading should be denied where, as here, the proposed amendment is futile as a matter of law.  It is black-letter law that laches is a personal defense, and therefore can only be asserted against the party responsible for the delay and those in privity with that party.  Here, Oberthur is not in privity with those that Leighton contends are responsible for the delay – Motorola (now HID) and the true inventors of the Leighton patents (Jean-Marc Delbecq and Noel Eberhardt).  As a result, Leighton's defense of laches simply cannot apply to Oberthur.  The Court can therefore resolve Leighton's motion on the sole ground that its new laches defense is futile as a matter of law.

Leighton provides no legal support for its contention that the actions of unrelated third parties somehow preclude Oberthur from challenging standing and inventorship.  Rather, Leighton devotes most of its brief to the peripheral issue of whether there is sufficient evidence of delay by HID and the omitted inventors Mr. Delbecq and Mr. Eberhardt.  However there is no need to explore this factual issue, and Oberthur will refrain from doing so here.  Instead, the Court can simply deny this motion on the ground that laches does not apply to Oberthur as a matter of law.

Leighton's motion should also be denied because it is untimely and unfairly prejudicial.  This case is scheduled for trial in July regarding standing and inventorship.  This motion comes after four years of litigation, and a mere three months before trial.  Yet Leighton has had access to the facts on inventorship for years.  Indeed, Leighton is the only party here that has a relationship with any of the participants on the inventorship issues – Mr. Leighton himself.

Leighton certainly was in a position years ago to explore the inventorship issue with Mr. Leighton. Also, Leighton's access to Mr. Leighton himself combined with other discovery, such as the deposition testimony of Mr. Delbecq in early March 2006 (discussed below), should certainly have put Leighton on notice of the inventorship issue. Although inventorship did not become unequivocally a matter of record until the percipient witnesses testified at the November trial on standing, Leighton is hard pressed to say now that it was taken by surprise or that it is unfairly prejudiced by having the issue remain in the case.

Moreover, Leighton neglects to mention that the Court expressly addressed inventorship in its December 2007 and January 2008 letters and opinions. Leighton offers no explanation for its decision to wait until now before raising a laches defense. Oberthur's trial preparations would be severely hampered if Leighton were permitted to add a new defense at this late stage. Moreover, Leighton wrongly attempts to shift the blame for its last minute amendment to Oberthur. While Leighton emphasizes Oberthur produced documents from Mr. Eberhardt in February, in fact both parties have encountered difficulties obtaining documents from unrelated third parties. In each instance, Oberthur has produced information and documents as soon as it has become aware of them. As a result, any delay in obtaining documents cannot be used to justify Leighton's late addition of a laches defense. Leighton chose to wait until just three months remain before trial to raise a new defense, and it must now bear the consequence of that decision.

## II.    ARGUMENT

### A.    Applicable Law

The Federal Rules allow a party to amend its pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. Pro. 15(a). After that, however, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut.*

2

*Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). Four factors are relevant: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005). If even one of these factors is present, the Court may deny leave to amend. *See, e.g.*, *DeMaria v. Andersen*, 318 F.3d 170, 182 (2d Cir. 2003) (denying leave to amend solely because the amendment would be futile). Here, at least three factors warrant denial of Leighton's motion.

### B. Leighton's Laches Defense Is Futile Because Laches Is a Personal Defense That Cannot Be Asserted Against an Unrelated Third Party Such As Oberthur

Courts regularly deny motions for leave to amend when the proposed amendment would be futile. *See, e.g.*, *Patane v. Clark*, 508 F.3d 106, 113 n.6 (2d Cir. 2007) (affirming denial of leave to amend because "[a] district court may properly deny a motion to amend when it finds that amendment would be futile"); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 589, 595 (2d Cir. 2007) (affirming this Court's denial of a motion to amend because the proposed amendment was futile as a matter of law). Leighton's proposed amendment is futile because the defense of laches cannot be asserted against a third party, such as Oberthur, who is not in privity with the parties whose conduct allegedly gave rise to the defense.

Laches is an equitable defense to infringement and inventorship, and the applicable standard is the same for both. *See, e.g.*, *Advanced Cardiovascular Sys. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993) (drawing an analogy, in a case concerning laches and inventorship, to the defense of laches in a "suit for patent infringement"); Mot. at 4-5 (citing infringement and inventorship cases interchangeably). However, laches is a strictly personal defense. *A.C. Aukerman Co. v. R.I. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) ("[t]he defense, being personal to the particular party and equitable in nature, must have flexibility in its application"); *see Israel Bio-Engineering Project v. Amgen Inc.*, 401 F.3d 1299,

3

1306 (Fed. Cir. 2005) ("a laches defense is personal to the defendant raising it"); *Five Star Manuf., Inc. v. Ramp Lite Manuf., Inc.*, 44 F. Supp. 2d 1149, 1156 (D. Kan. 1999) ("[g]enerally, the defense of laches is personal to the defendant."); *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1412 (N.D. Ill. 1996) ("[a]s a general matter, the defense of laches is personal to the defendant").[1]

As a result, laches cannot be asserted against an unrelated third party who is not in privity with those responsible for an alleged delay. *See SciMed*, 988 F.2d at 1160 (invalidity claim by unrelated third party not affected by the alleged laches of an omitted inventor); *R2 Med. Sys.*, 931 F. Supp. at 1412 (noting that the defense can be applied against "a transferee of the patent" or a "transferee of the entire business or its assets"); *Five Star Manuf.*, 44 F. Supp. 2d at 1156 ("[a] defendant may not tack on the time of another party unless there is 'some formal transfer of the technology and goodwill of the accused product.'" (citing *R2 Med. Sys.*, 931 F. Supp. at 1412); *cf. Gillons v. Shell Oil Co.*, 86 F.2d 600, 605 (9th Cir. 1936) ("'generally speaking plaintiff is barred from relief by the laches of one with whom he stands in privity, as a grantee by the laches of his grantor, an assignee by that of his assignor, etc.'") (citation omitted). For example, the *SciMed* court reversed a finding that an inventorship claim by the omitted inventor was barred by laches. 988 F.2d at 1165. However, the inventor's alleged laches did not preclude SciMed, the accused infringer who was unrelated to the omitted inventor, from raising the defense of invalidity based on inventorship. 988 F.2d at 1160.

A well-known patent law treatise also makes plain that laches cannot be asserted against an unrelated third party:

---

[1] Since laches is an equitable defense, Oberthur specifically reserves the right to move *in limine* to preclude Leighton from introducing any evidence or argument regarding laches to the jury (to the extent Leighton is even permitted to assert laches as a defense).

4

> It seems debatable that if a patentee succeeds in defeating a claim of an alleged omitted inventor on the basis of laches or equitable estoppel, rather than on the merits, the patentee may later find that it "won the battle, but lost the war." While the patentee may have foreclosed the alleged omitted inventor from raising future challenges to the inventorship, ***accused infringers not in privity with the omitted inventor would not be bound by the judgment in the patentee's favor on the omitted-inventor issue. An accused infringer could litigate the inventorship issue under a § 102(f) invalidity defense for incorrect inventorship***. If an accused infringer meets its burden to prove that the omitted inventor was a true inventor, the patentee may find itself judicially estopped to ask a court to correct the patent under § 256 to add the omitted inventor.

ROBERT A. MATTHEWS, JR., ANNOTATED PATENT DIGEST § 26:127 (2008) (emphasis added) (DeFranco Declaration ("DeFranco Decl."), Exh. 1).[2] Parties who are in privity "'include[] those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'" *Greater Miami Baseball Club Ltd. Partnership v. Selig*, 171 F.R.D. 73, 77 (S.D.N.Y. 1997) (citation omitted) (finding no privity because the interests of the plaintiff and defendant diverged in several significant ways); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (privity determination "often requires a court to inquire whether a party 'control[led] or substantially predominate[d] in the control of the presentation on behalf of a party' to the prior action") (citation omitted).

Here, Oberthur is not in privity with HID, Mr. Delbecq or Mr. Eberhardt. None of these persons assigned Oberthur any ownership rights in the Leighton patents. Oberthur has only a covenant that HID will not assert the patents against Oberthur. (Gutkin Decl., Exh. H).

---

[2] Courts regularly cite to this reference in patent decisions. *See, e.g., Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1176 (W.D. Wis. 2007); *Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*, 456 F. Supp. 2d 267, 283 (D. Mass. 2006); *Monsanto Co. v. Bayer Bioscience N.V.*, No. 4:00 Cv 01915, 2005 WL 5989796, at *16 (E.D. Mo. Oct. 28, 2005).

5

Furthermore, Oberthur has no significant connections with Mr. Delbecq and Mr. Eberhardt, neither of whom has ever worked for Oberthur. Like the accused infringer in *SciMed*, Oberthur had no reason to challenge inventorship until this case began. *SciMed*, 988 F.2d at 1160. Moreover, Oberthur controls the litigation of this action, not anyone else.

In addition, there can be no privity because Oberthur does not adequately represent the interests of HID, Mr. Delbecq or Mr. Eberhardt. As a result, HID's ownership interest in the Leighton patents is not sufficiently represented by Oberthur. For example, HID's interest could benefit from correction of the Leighton patents or a request that the patent be formally transferred to HID. However, Oberthur does not seek such relief. As a result, there is no privity between Oberthur and HID. *See Selig*, 171 F.R.D. at 77; *Central Hudson*, 56 F.3d at 368.

Furthermore, Oberthur's post-litigation contact with Mr. Delbecq, Mr. Eberhardt and HID does not support a defense of laches. A finding of privity requires a significantly stronger relationship between Oberthur and these parties. Indeed, any contacts with Mr. Delbecq, Mr. Eberahrdt and HID have all arisen from Oberthur's preparation of its defense in this case. It would be inequitable to hold Oberthur responsible for any allegedly delay solely because Oberthur took steps to establish an inventorship defense against Leighton's charge of infringement.

A decision from this District reinforces that the defense of laches cannot be applied to Oberthur. *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F. Supp. 2d 471 (S.D.N.Y. 2000). In *Imatec*, Apple argued that the plaintiffs lacked standing to sue for patent infringement because the inventor's former employer, FONAR, owned the patents pursuant to an assignment agreement. *Id.* at 481-82. The plaintiffs contended that Apple's defense was barred by the statute of limitations, since FONAR had not taken any action against the inventor. *Id.* at 483 n.5. In

6

holding that the plaintiffs' lacked standing, Judge Koeltl noted that FONAR's delay in asserting its rights should not be imputed to Apple, a third party (*id.*) (emphasis added):

> The plaintiffs also assert that the defense of lack of standing is barred by the statute of limitations. That argument has no merit. First, the defendant asserts a defense of lack of standing because the plaintiffs have no legal title to the patents-in-suit. ***The plaintiffs cite no viable authority for the proposition that such defense is limited by any statute of limitations; a statute of limitations generally applies to claims and counterclaims, not to a defense of lack of standing. The issue of any limitations on FONAR's rights to the patents should be decided in a suit in which FONAR sought to assert its rights to any inventions that [the inventor] assigned to it.*** Second, FONAR's rights have not in fact lapsed since there is no allegation that FONAR has exercised its rights to require [the inventor] to execute the necessary documents to obtain the patents. The statute of limitations on FONAR's rights would only begin to run at that point if [the inventor] refused to assign the patents."

For the same reasons here, the defense of laches cannot prevent Oberthur from contesting Leighton's standing to sue for infringement. Indeed, Leighton cites just one case in support of its contention that "laches will also bar claims of incorrect inventorship brought by a third-party . . . where the underlying co-inventor(s) would be otherwise equitably barred from claiming incorrect inventorship." *Pannu v. Iolab Corp.*, 96 F. Supp. 2d 1359, 1369 (S.D. Fla. 2000); Mot. 5. However, *Pannu* is easily distinguished from the facts here: in *Pannu*, the omitted inventor (Dr. Link) and the accused infringer (Iolab) were in privity. Indeed, Dr. Link founded the company that acquired Iolab, and was also a prominent shareholder. *Id.* at 1365. As a result, the court held Dr. Link's laches could be imputed to Iolab: "[a] claimed co-inventor, who is estopped to challenge the validity of a patent, may not circumvent the equitable bar by having the joint inventorship issue raised as an affirmative defense in an infringement action brought against a corporation in which he has an ownership interest." *Id.* at 1369.

7

Here, by contrast, no such connection exits between Oberthur and Mr. Delbecq, Mr. Eberhardt or HID. Since there is no privity, Leighton's proposed amendment to add a new defense of laches is therefore futile.

### C. Leighton's Undue Delay and the Resulting Prejudice To Oberthur Also Warrant Denial of Its Motion

The Court should also deny Leighton's proposed amendment as a result of its undue delay in bringing its motion to amend, and the resulting prejudice to Oberthur.

Undue delay and prejudice to the non-movant are each sufficient of themselves to warrant denial of a motion to amend. *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (prejudice to the opposing party is "'the most important factor'" and "'the most frequent reason for denying leave to amend'") (citation omitted); *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (finding that plaintiff's motion to amend was untimely because it was filed "over four years after she filed her original complaint and over three years after the close of discovery"). In determining prejudice, courts typically consider whether the non-movant would be required to expend significant additional resources, and whether the amendment would cause a substantial delay in final resolution of the case. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *Krumme v. Westpoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998).

Leighton's request to add a new defense of laches is untimely because it has been aware of the facts supporting Oberthur's inventorship claim for years now. Indeed, Leighton is the only party here with complete access to the purported inventor, Mr. Leighton. It has worked closely with Mr. Leighton since at least 2003 and therefore had every opportunity to discover the facts on inventorship from its own witness. Moreover, Mr. Delbecq testified at deposition in March 2006 that he and Mr. Eberhardt developed the process for making the AVC-132 cards:

8

> Q. And who designed the AVC 132?
> A. Who designed the AVC 132?
> Q. The structure of the AVC 132 as we see it is in Exhibit 2017 A.
> A. I - it was - most likely, the very first documentation of the design were done - was done either by myself or Noel Eberhardt.

(DeFranco Decl., Exh. 2 (3/22/06 Delbecq Tr. 181:17-23)). As the Court knows, the process for making AVC-132 cards is the same as the process claimed in the Leighton patents. (*Id.* at Exh. 3 (11/6/07 Hearing Tr. 17:6-17)). Thus, Leighton had the opportunity years ago to put this testimony together with facts discovered from its own witness on inventorship. Leighton's claim now that it never realized inventorship would be an issue in this case only highlights its lack of diligence. Moreover, the Court expressly addressesed the issue of inventorship in its letter to counsel dated December 3, 2007. (*Id.* at Ex. 4). Therefore Leighton cannot fairly argue that Oberthur's response on December 18 addressing inventorship was "an abrupt change in its position." (Mot. 8). In any case, Leighton offers no explanation for its decision to wait until just three months remain until trial before raising a new defense.

Leighton also contends that Oberthur contributed to Leighton's delay. (Mot. 7-8). That is wrong. There is no dispute that both parties have encountered difficulties obtaining and producing documents from unrelated third parties. Indeed, Leighton received documents from the files of Mr. Delbecq in the HID litigation. However, it neither produced these documents to Oberthur, nor informed Oberthur of their existence. Oberthur only recently obtained these documents from counsel for HID, and produced them to Leighton pursuant to its discovery obligations. (*See* Mot. 8). As Leighton admits, the parties are working together to resolve this discovery dispute, as they have done in the past. (Mot. 8) ("The parties are close to reaching agreement regarding the production of the Eberhardt documents, as well as Oberthur's claim that documents produced by HID in the California litigation should have been produced in this

9

litigation by Leighton."). Therefore Leighton cannot reasonably contend that its delay in raising a new defense is somehow due to Oberthur's production in February of documents from Mr. Eberhardt.

Finally, Leighton's motion should also be denied because it would substantially prejudice Oberthur. Trial on standing and inventorship will occur a mere three months from now. Leighton's proposed laches defense would force Oberthur to re-work its trial strategy at this late stage in its preparations. This would work substantial prejudice to Oberthur and have a detrimental effect on its trial presentation to the Court.

### III.  CONCLUSION

For the foregoing reasons, Oberthur respectfully requests that the Court deny Leighton's motion.

Dated: April 16, 2008                         QUINN EMANUEL URQUHART OLIVER & HEDGES

                                              By:   /s/ Edward J. DeFranco
                                                    Edward DeFranco (ED-6524)
                                                    Robert C. Juman (RJ-6350)
                                                    Mark D. Baker (MB-0302)
                                                    51 Madison Avenue, 22nd Floor
                                                    New York, New York  10010-1601
                                                    (212) 849-7000

                                                    Kevin P.B. Johnson (KJ-8689)
                                                    555 Twin Dolphin Drive, Suite 560
                                                    Redwood Shores, CA 94065
                                                    (650) 801-5000

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, if any, on this 16th day of April, 2008.

      /s/ Edward J. DeFranco (ED-6524)